**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: RECALLED ABBOTT INFANT FORMULA LIABILITY LITIGATION | ) ) ) | Case No. 22 C 4148 MDL 3037 |
| This Document Relates to All Cases | ) | Hon. Judge Matthew F. Kennelly |

**JOINT STATUS REPORT FOR OCTOBER 14, 2022 STATUS CONFERENCE**

Pursuant to the Court's order of August 30, 2022 [ECF No. 14], the parties submit this Joint Status Report in advance of the October 14, 2022 status conference. The parties identify below the primary issues they believe merit the Court's attention but will be prepared to discuss other items as the Court desires.

**I.      PROPOSED DISCOVERY ORDERS.**

Pursuant to the Court's order of August 30, 2022 directing the parties to submit "proposals in regard to discovery orders," Dkt. 14, the parties have met and conferred in good faith and reached agreement on three proposed orders governing discovery, which the parties jointly submit for entry by the Court:

(i)     Protective Order (attached as Exhibit A);

(ii)    Rule 502(d) and Privileged Materials Order (attached as Exhibit B);

(iii)   Stipulated Order Regarding the Protocol for Producing Documents and Electronically Stored Information (attached as Exhibit C).

Upon filing this report, the parties will forward Microsoft Word versions of the three proposed orders to the Court, as they are being filed on the docket.

**II.     PLAN FOR ABBOTT'S FORTHCOMING MOTIONS TO DISMISS.**

**Current and Forthcoming Complaints.** As discussed at the initial conference on August 30, 2022, the MDL features both (i) individual claims seeking recovery for personal injuries allegedly caused by Abbott's formula, and (ii) class claims premised on economic losses

1

caused by Abbott's conduct. At present, the parties have identified 25 personal injury complaints that have been transferred to (or at likely to be transferred to) this MDL. With respect to the class action/economic loss claims, pursuant to the Court's August 30 order, Plaintiffs will be filing a consolidated complaint regarding those claims on October 14 (the day of the upcoming hearing). [ECF No. 14.] The parties anticipate that the consolidated class action complaint will entail claims brought under the laws of several dozen states.

**Agreed-Upon Proposal for Briefing Regarding Economic Loss Complaint.** The parties have conferred and reached agreement with regard to a proposal for addressing Plaintiffs' to-be-filed consolidated class action complaint on economic loss claims. Specifically, the parties propose:

(i) Abbott to file its motion to dismiss by December 13, 2022 (60 days from filing of the consolidated class complaint)

(ii) Plaintiffs' response briefs and/or an amended complaint[1] to be filed on February 13, 2023 (62 days from Abbott's motion to dismiss)

(iii) Abbott's reply brief to be filed on March 13, 2023 (30 days from Plaintiffs' response).

The parties propose they meet and confer within 10 days of the filing of Plaintiffs' consolidated class action complaint and submit a proposal regarding page limits for the briefing at that time.

**Contested Proposals for Briefing Regarding Personal Injury Complaints.** The parties have also met and conferred regarding briefing as to the personal injury complaints, but have been unable to reach agreement and seek guidance from the Court. The parties state their respective positions as follows:

---

[1] In the event Plaintiffs file an amended complaint rather than oppose Abbott's motion, the parties will meet and confer within 10 days to propose an amended briefing schedule to the Court.

2

Abbott's Position: Abbott proposes to file a single omnibus motion to dismiss addressing all 25 personal injury complaints filed at present and to do so on the same schedule agreed-to above regarding the economic loss actions.

Abbott believes that a single omnibus motion addressing all pending personal injury cases is not only feasible, it will most efficiently advance the litigation. For one, the cases share a common core of allegations; in fact, although there are 25 separate personal injury complaints at present, many contain substantially identical allegations, likely owing to the fact that most of the cases were filed by a small group of law firms.[2] Abbott believes those core allegations—and any common deficiencies—can be efficiently addressed in an omnibus pleading, and any individual issues related to each Plaintiff (such as different diagnoses or differences in governing state laws) can be addressed in categorical fashion.

Abbott notes that the Court adopted this approach in the lead up to the *In Re: Testosterone Replacement Therapy Products Liability Litigation* MDL. There, prior to formal creation of an MDL in June 2014, the Court (which was then overseeing dozens of cases filed in this district) ordered the various defendants to file consolidated motions to dismiss addressing all then-pending cases before the Court—a number that far exceeded the 25 cases that Abbott proposes to address in its omnibus pleading here.[3] The parties then briefed the dozens of complaints in omnibus fashion and the Court issued an opinion as to the same. While the Court *later* ordered the filing

---

[2] Twenty (20) of the 25 pending cases were initiated by one of five law firms (all of whom are represented in Plaintiffs' MDL leadership, including the two co-lead counsels' firms). Within the complaints filed by a particular law firm—and even across firms—the complaints often vary as to only a handful of allegations.

[3] *See* Case No. 17-cv-1478, Pretrial Order No. 2 (ECF 31), Apr. 4, 2014 ("To the extent that defendants move to dismiss cases or claims, each defendant is to file a consolidated motion and memorandum addressing all of the cases naming that defendant already transferred and about to be transferred . . . .").

of a master complaint in the MDL (after its formation) and directed *future* Rule 12 motions toward that master complaint, the parties' briefing and the Court's handling of an omnibus Rule 12 motion addressing the dozens of individual pre-MDL complaints in that case signals it can be done again here.

During the August 30, 2022 conference, the Court suggested the possibility of choosing bellwether cases for purposes of the motion to dismiss process. Abbott considered this option, but does not believe it (nor the process Plaintiffs propose below) is optimal for several reasons:

*First*, an omnibus motion would save unnecessary delay. Rather than address all pending complaints in a single pleading (as Abbott proposes to do), the proposal set forth by Plaintiffs below would defer Rule 12 motions practice until the selection of bellwethers, which itself cannot fairly occur—at the earliest—until Plaintiffs' submission of their Plaintiff Fact Sheets and the associated collection of medical records recently ordered and authorized by the Court in Case Management Order No. 3 (ECF No. 32). Plaintiffs' fact-sheet submissions are not due until late November for the first 24 cases (and even later for the newly-filed 25th case), at which point the parties will first begin reviewing those forms, collecting records, and assessing and conferring over any deficiencies. Given that collection and meet-and-confer process (which is expressly contemplated by CMO #3), Plaintiffs' suggestion that the bellwether selection process could begin in January is not realistic—and, in any event, that would just be the *beginning* of the selection process, which itself is likely to take weeks, if not months, before the initial bellwether cases are finalized and briefing of Rule 12 motions could begin—during which time Abbott believes an omnibus motion to dismiss could be fully (or near fully) briefed. Put simply, if all complaints can be addressed at once now, there is no reason for delay.

*Second*, Plaintiffs' concern raised below regarding differences in the various individual complaints can and should be handled in the context of the omnibus briefing process. Abbott intends to set forth common grounds for dismissal of various of the complaints in its omnibus brief—including for failure to adequately plead that the subject products caused the complained-of injuries, failure to plead one or more elements of various state-law claims, and failure to plead fraud-based claims with the particularity required by Rule 9(b), among other grounds—in each case setting out (whether in the brief itself and/or in an easy-to-reference appendix) the cases that are subject of each argument. Abbott's approach by no means sacrifices the "separate identities" of individual cases or individual complaints, as Plaintiffs suggest; Abbott understands that the complaints will remain separate and is not asking for the filing of a Master Complaint. However, where Plaintiffs' various separate complaints contain common deficiencies, the best and most efficient way to proceed is for Abbott to point that out at one time *now*—again, making clear which arguments apply to which complaints (and which counts within each complaint). If Plaintiffs do not believe such common arguments apply to one or more of the cases, they can argue as much in their opposition.

*Third*, and relatedly, the omnibus approach will significantly limit any disputes over the application of the Court's ultimate motion to dismiss order, which Abbott believes will conserve significant party and judicial resources as the MDL progresses. Once again, Abbott proposes to address all 25 pending cases, as appropriate, in its motion, allowing the Court to rule at one time as to at least the cases pending in the MDL today. And while Abbott concedes that future cases may yet be filed and added to this MDL,[4] any new cases can be efficiently addressed in light of

---

[4] Abbott notes that, to its knowledge, no new cases were filed between August 31 and yesterday, October 6. (Last night — after the parties had exchanged drafts of this joint report— one of

5

the Court's ruling on Abbott's proposed omnibus motion, perhaps with limited supplemental briefing by the parties to address new cases (whether one by one or at regular junctures if new cases are filed in close succession). Plaintiffs' proposal, by contrast, would kick the can down the road, with the parties addressing only a limited number of complaints under Rule 12 at the outset as part of the bellwether process, and deferring for a later day the inevitable fights over the applicability of the Court's orders on those handful of motions as to both: (i) the majority of the already-pending complaints, *and* (ii) any complaints that are still yet-to-be filed.

*Fourth*, an early order addressing all pending cases has the prospect of reducing the ultimate discovery burden in the MDL as well as in facilitating potential future mediation or settlement of these matters. Plaintiffs' suggestion that "opinions on representative cases" would achieve the same result is flawed for the same reasons set forth above: such opinions will only spur debate and likely briefing as to the effect of the Court's orders on the not-yet-addressed cases (as opposed to just addressing all cases now, as Abbott proposes to do), and the delay in selecting the supposedly "representative" cases will limit the potential effectiveness of such opinions in governing discovery and/or facilitating potential resolution in the interim.

*Finally*, Plaintiffs' arguments with respect to the Preterm Infant Nutrition MDL are inapposite. Once again, Abbott is not asking Plaintiffs to file a Master Complaint in this MDL, which was all Judge Pallmeyer was ruling upon in the "Order on ***Request for Master Complaint***" cited by Plaintiffs in their position statement below. All Abbott is asking for here is the ability to address common deficiencies across substantially identical complaints and to do so in an efficient and orderly fashion at one time.

---

Plaintiffs' co-lead counsels filed a new case (Case #25).) Even counting the newly-filed case, only four new personal injury cases have been filed in the past 2.5 months.

6

For all these reasons, Abbott believes an omnibus motion to dismiss process is appropriate to address the 25 pending personal injury cases.

Plaintiffs' Position:  Plaintiffs disagree with Abbott's proposal regarding a single omnibus motion to dismiss personal injury claims. Plaintiffs propose that Rule 12 motion practice take place in the context of bellwether cases as the Court proposed. Doing so will advance the efficient adjudication of personal injury claims.

At the outset, there exists no Rule or procedure that confers on Abbott the right to have its motions to dismiss heard in an "Omnibus" format. This is especially true given that there are no "consolidated" injury complaints in this MDL, only individual complaints involving different plaintiffs and circumstances. Though MDL proceedings may be used to streamline consolidated litigation, cases within an MDL "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015); *see also Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 489 (7th Cir. 2020) ("[t]he default rule is that separate actions transferred for those pretrial proceedings retain their separate identities"). Abbott's proposal sacrifices the "separate identities" of individual cases by constraining Plaintiffs with individual complaints to respond in "Omnibus" fashion.

A party's rights in one case cannot "be impinged to create efficiencies in the MDL generally." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020). Abbott's proposal prioritizes supposed "efficiencies" above the rights of current and future plaintiffs to respond to Motions to Dismiss as if the cases were filed individually—which they were.  Further, as each Plaintiff is the master of their complaint, Abbott must file a motion to dismiss in *each* docket so that the plaintiff may determine whether (and how) to amend their complaint or whether (and how) to respond to Abbott's motion. It is not as easy as Abbott suggests, where the PSC can oppose the "Omnibus" motion to dismiss in a single filing despite individualized facts set forth in

7

separately filed complaints. The PSC, after all, is not responsive for the "filings . . . related to an individual plaintiff's case or claim." CMO No 2, ECF No. 23. While most complaints on file are plaintiffs represented by PSC members, that does not require a uniformity of response to the individual motions to dismiss, or even reflect that all PSC members agree as to which claims ought to be pursued. *C.f. Stephens v. Abbott Laboratories, Inc.*, 22-cv-04163, ECF. No. 1 (Complaint alleging 11 causes of action including fraud, violation of the Texas Consumer Protection Act, gross negligence and unjust enrichment) vs. *Sanders v. Abbott Laboratories, Inc.,* 22-cv-04352, ECF. No. 1 (Complaint alleging 7 causes of action which does not include fraud, violation of the Texas Consumer Protection Act, gross negligence, and unjust enrichment). Abbott's proposal, then, is as impracticable as it is unsupported by the Rules. Abbott states it is "not asking Plaintiffs to file a Master Complaint." Yet, this is a distinction without a difference given that Abbott's proposal constrains the method and mode of Plaintiffs' responses to its Rule 12 motions. In so doing, Abbott's proposal situates Plaintiffs as if a Master Complaint had been filed.

Abbott also claims that opinions on representative cases would "will only spur debate and likely briefing as to the effect of the Court's orders on the non-yet-addressed cases." Yet, whether the Court adopts Abbott's proposal or not, the parties will still have to evaluate whether and how the Court's ruling applies to future filed cases. Plaintiff's proposal is grounded in the well-tested bellwether concept foundational to multidistrict litigation in which the parties litigate **representative** cases in an effort to advance the prospects of resolution. Abbott's proposal is a rejection of the "representative" concept as it applies to complaint allegations.

For these reasons, Plaintiffs proposed Rule 12 motion practice occur in the context of a negotiated bellwether process. The recent entry of CMO No. 3 regarding submission of the Plaintiffs' Fact Sheet and authorizations enables the parties to engage in timely, informed

discussions regarding a bellwether protocol that can easily incorporate a briefing framework and schedule for Abbott's Rule 12 motions. Abbott offers no compelling reason for a different approach in this matter.

This exact issue was addressed by the parties in MDL 3027: *In re: Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation*, MDL 3026, 1:22-cv-00071 (N.D. Il. 2022) ("NEC"). In NEC—a case involving Abbott as the principal defendant—Abbott urged the Court to require the PSC to file a Master Complaint on behalf of all plaintiffs. Like here, the PSC opposed the request, contending there was no mechanism within the Rules of Civil Procedure that allowed a court to *compel* plaintiffs to file a Master Complaint. Ultimately, Judge Pallmeyer adopted the PSC's approach that Rule 12 motions practice occur in the context of the Bellwether selections noting,

> Plaintiffs may be correct that the bellwether process will be effective in addressing these concerns. Thus, they assert that if Defendants succeed on an affirmative defense or pleadings challenge in one bellwether case, that will "provide guidance" for all other Plaintiffs. (*See* Pls.' Mem. at 2.) Indeed, if "multiple motions present substantially similar issues," the court may "decid[e] one motion and order the remaining parties to show cause why that ruling should not apply to them as well." Bolch Judicial Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, at 5.3 That means for truly omnibus matters, the court may require all Plaintiffs in this MDL to show cause why a particular bellwether decision does not apply to them. *See* Best Practice 1(B)(iii), *Guidelines and Best Practices* ("The transferee judge should give priority to deciding issues broadly applicable to multiple claimants in the MDL.").

*In re: Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation*, MDL 3026, 1:22-cv-00071 (N.D. Il. August 26, 2022), Order on Request for Master Complaint.

In support of their proposal, Abbott cites to the TRT litigation suggesting the Court utilized their omnibus approach. While the Court did first consider a consolidated motion to dismiss pleading, that procedure was put in place while the litigation was an *intra-district consolidation* (IOP13(e)) proceeding in which each case was directly filed in this District. *In re Testosterone*

9

*Replacement Therapy Products Liability Litigation*, Case No. 14-1748, Pretrial Order No. 2, April 4, 2014.[5] After creation of the MDL, Plaintiffs *voluntarily* filed a Master Complaint that became the operative complaint within the MDL. Rule 12 motions were then directed toward the Master Complaint. *In re Testosterone Replacement Therapy Products Liability Litigation*, Case No. 14-1748, Minute Entry, March 20, 2015, ECF. No. 709. In short, Abbott's argument misses the point—namely, where a party *voluntarily* agrees to file a Master Complaint, that complaint may become the operative document. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 489 (7th Cir. 2020). But, where, as here, Plaintiffs elect not to voluntarily file a Master Complaint, a Court cannot compel all cases to be subsumed within one operative complaint because the individual complaints retain their individual identities as separate actions.

Using a bellwether framework for the resolution of Rule 12 motions would not create substantial delay. Abbott proposes a schedule where motions will be filed in December with briefing concluding in March. Under CMO No. 3, PFS in this MDL are due in November. Plaintiffs believe bellwether cases could be selected as early as January. This timeline is consistent with Abbott's agreed approach in the NEC MDL, where the parties used a four-page PPF form to select bellwethers two months after the PPF's submission. *In re: Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation*, MDL 3026, 1:22-cv-00071 (N.D. Il. 2022), Case Management Order No. 7. Under the same timeline, bellwether cases in this matter could be selected in January and Rule 12 motions could be filed shortly thereafter. Under this approach, no

---

[5] The opinion as to the Rule 12 motions in the early filed TRT cases involved 39 cases filed in the Northern District of Illinois, which is distinguishable from the cases in this MDL that have been transferred from various federal districts and involve a more complex choice of law analysis. Further, recognizing the potential state law issues in various arguments, the Court chose not to address the defendants' state law arguments in that manner. *In re Testosterone Replacement Therapy Products Liability Litigation*, Case No. 14-1748, December 23, 2104, ECF. No. 526, pg. 7.

time or effort is lost in advancing the bellwether and discovery process. Further, the Court and parties are no longer burdened with resolving motions on every case presently within the MDL.

Finally, Abbott suggests early resolution of their omnibus motion for all cases will reduce discovery or facilitate mediation or settlement. It is unclear how an opinion on 25 cases instead of opinions on representative cases will achieve any difference in the outcome on these fronts. Even if Abbott were to prevail on certain claims, it is unlikely Abbott can prevail on complete dismissal of all claims. Plaintiffs fail to see how that reduces discovery in any meaningful way.

### III. TIME AND EXPENSE REPORTING.

To ensure fair and efficient administration of time and expenses by various counsel for Plaintiffs in the litigation, Plaintiffs intend to submit for entry by the Court a proposed case management order regarding Common Benefit Time and Expense Submissions.

Dated:  October 7, 2022

/s/ *Stacy K. Hauer, Esq.*
Stacy K. Hauer, Esq.
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
Tel: 612-436-1806
shauer@johnsonbecker.com

*Co-Lead Counsel for Plaintiffs*

/s/ *E. Samuel Geisler*
E. Samuel Geisler
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel: 850-202-1010
sgeisler@awkolaw.com

*Co-Lead Counsel for Plaintiffs*

Respectfully submitted,

/s/ *James F. Hurst, P.C.*
James F. Hurst, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200
james.hurst@kirkland.com

Michael A. Glick
Erin E. Cady
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington D.C. 20004
Tel: 202-389-5000
Fax: 202-389-5200
michael.glick@kirkland.com
erin.cady@kirkland.com

*Counsel for Abbott Laboratories Inc.*

Privileged & Confidential
Attorney Work Product

## CERTIFICATE OF SERVICE

I certify that on October 7, 2022, a copy of the foregoing JOINT STATUS REPORT FOR OCTOBER 14, 2022 STATUS CONFERENCE was served electronically through the Court's electronic filing system upon all parties appearing on the Court's ECF service list.

Dated: October 7, 2022

*/s/ James F. Hurst, P.C.*
James F. Hurst, P.C.
*Counsel for Abbott Laboratories Inc.*