**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: RECALLED ABBOTT INFANT** | ) | **Case No. 22 C 4148** |
| **FORMULA LIABILITY LITIGATION** | ) | **MDL 3037** |
| | ) | |
| **This Document Relates to All Cases** | ) | **Hon. Judge Matthew F. Kennelly** |

**CASE MANAGEMENT ORDER NO. 6**
**(Stipulated Order Regarding The Protocol For Producing**
**Documents And Electronically Stored Information ("ESI"))**

To expedite the production of discovery material and to facilitate the consistency in the format of the documents to be produced by the Parties in this case, Plaintiffs and Defendants (collectively "Parties"), by and through their respective counsel hereby stipulate and agree to the terms of this Stipulated Order Regarding the Protocol for Producing Documents and Electronically Stored Information ("ESI"):

IT IS HEREBY STIPULATED, subject to the approval of the MDL Court that:

1.      This Stipulated Protocol for Producing Documents and Electronically Stored Information (The "ESI Protocol") shall govern the production of documents and ESI by the Parties in the above captioned litigation ("this Action").

2.      The Parties shall preserve documents and ESI relevant to the claims and defenses in the matter, and proportional to the needs of this Action.

3.      A Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Order and a copy of the Protective Order with such subpoena and state that the Parties in the litigation have requested that non-Parties produce documents in accordance with the specifications set forth herein, including, specifically as to such non-Party productions:

      a.      The Issuing Party shall produce a copy to all other parties of any documents and ESI (including any metadata) obtained under subpoena to a non-Party.

      b.      If the non-Party production is not Bates-stamped by the Non-Party

Producer, prior to any Party reproducing the Non-Party Documents, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates prefix and numbering scheme.

4.     The production of Documents and ESI also shall be subject to the provisions of orders concerning confidentiality and privilege as agreed to among the Parties and/or entered by the MDL Court [Dkt. __].

5.     Nothing in this Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of Documents or ESI. The Parties reserve all objections under the Federal Rules of Civil Procedure and applicable decisional authority other than concerning matters that are addressed in this Order.

6.     The production specifications in this Order apply to paper records and ESI that are produced after the date of entry of this Order. To the extent any documents, ESI, or other materials produced in a related action or proceeding, prior to the entering of this Order, are re-produced in this litigation, the Defendants are not under any obligation to produce those materials in a manner different from how they were originally produced.  This paragraph does not, however, bar reasonable requests from Plaintiffs for data fields identified in this Order that are missing from any ESI materials produced in related actions (to the extent they exist), or to the extent that a document is illegible and needs to be reproduced to be readable.  The producing party shall not unreasonably refuse such requests.

7.     To the extent additional obligations or rights not addressed in this Protocol arise under Federal Rules of Civil Procedure 26, 33, and 34, local rules, or applicable state and federal statutes, those rules and/or statutes shall control.

### A. Definitions

1. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 26 and 34.

2. "Electronically stored information" or "ESI," as used herein has the same meaning as in the Federal Rules of Civil Procedure 26 and 34.

3. "Family" means email and all related attachments which shall include data contained within Calendars and files sent via OneDrive, ShareFile, or a similar hyperlink that are in the parties' possession, control, or custody.

4. "Paper Records" or "Hard Copy Documents" means Documents existing in paper form at the time of collection.

5. "Native Format" means and refers to an electronic document's associated file structure defined by the original creating application. For example, the native format of an Excel workbook is a .xls or .xslx file.

6. "Metadata" means information describing characteristics of a file, generated by the application that created or modified it or generated automatically by a computer or network operating system on which the file is located.

7. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

8. "Extracted Full Text" means the full text that is extracted electronically from native electronic files, and includes all header, footer, and document body information.

9. "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

10. "Confidentiality Designation" means the legend affixed to "Confidential"

Discovery Material as defined by, and subject to, the terms of the Stipulated Protective Order entered in this Action. [Dkt. ___].

11. "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**B. Paper Records**

1. Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

   a. TIFFs. All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ X 11-inch page size, except for documents requiring higher resolution or different page size.

   b. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

   c. Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

   d. Objective Coding Fields. The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; (6) custodian; and (7) RecordType (which is

used to indicate that the original document is a paper record).

e. OCR Text Files. Document level OCR should be provided as a separate text file. The file name of each text file should correspond to the file name of the first image file of the document with which it is associated. The text files will not contain the redacted portions of the documents.

f. For Hard-Copy Documents, the Parties need only populate the following metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN "CONFIDENTIAL," "BOX NUMBER" "REDACTION," fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable. Any bates numbers previously assigned to a document as a result of a legal, regulatory, or governmental production shall be included. The beginning and end Bates numbers from the production in another matter shall be added as distinct metadata fields for these documents and be included in the production file.

g. Black-and-white ("B&W") hard-copy documents shall be produced as single-page, B&W group IV TIFFs imaged at 300 dpi. To the extent that a static image has been created of any hard copy document containing color and/or grayscale, such static image containing color and/or grayscale shall be produced, except for documents requiring higher resolution or different page size. If not previously imaged in color or grayscale, the parties will use reasonable efforts to produce hard copy documents containing color and/or grayscale as static images with grayscale and color, respectively. A receiving party may request that documents be re-produced with the coloration of the original document by providing a list of the Bates numbers

of documents it requests to be produced in color format.  In the event the producing party objects to re-producing the documents, the parties shall meet and confer within three (3) business days, or longer for good cause shown.

h. If, in the ordinary course of business, responsive documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege.

i. Nothing herein shall preclude a party from, at its discretion, producing for inspection hard copy documents for which there are no electronic images or other tangible things in hard copy or tangible form.  However, to the extent that a party elects to produce for inspection hard copy documents in tangible form, the producing party shall also make available to the requesting party any existing indices, inventories, lists, catalogs, or other data or documents that exist in the normal course of business that identify or describe the documents produced.  Nothing in this paragraph, however, prevents a party from asserting undue burden in response to a request for such documents, and nothing in this paragraph waives or dilutes such an objection.

j. Upon notice from the requesting party that a document or portion thereof is illegible, the producing party shall, if possible, produce a legible copy in the form of either a new TIFF, static image, or hard copy, or, if not possible, explain why a more legible copy of the document cannot be produced.  The document's original orientation should be maintained (i.e., portrait to portrait, landscape to landscape).  No producing party shall be required to

alter or re-create any document for which no grayscale or color version is in the party's possession or control or for which the original hard copy document is illegible.

k.     If any original hard copy document has any note or attachment affixed to it, the producing party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents to the extent the note or attachment is required to understand the content of the document.  If any such note or attachment obscures any information on the original hard copy document, the producing party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible.

## C. Electronically Stored Information

1.     The Parties will produce responsive, complete families of electronically stored information ("ESI") in TIFF format according to the following specifications:

a.     All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11-inch page size, except for documents requiring different resolution or page size.

b.     An image load file, in standard Opticon format, showing the Bates number endorsed onto the lower right corner of each page but not obscuring the content on any page and the appropriate unitization of the documents, will accompany all document images. All Bates numbers will consist of an Alpha Prefix, followed by a numeric page index. If a member of a document family that has otherwise been determined to be responsive cannot be

technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Receiving Party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed,"; the associated metadata for the file with the technical problem shall be produced if possible. A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

c.   Each imaged version of an electronic document will be created directly from the original electronic document.

d.   TIFFS shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out above, unless agreed with the opposing party or ordered by a court. Additionally, the Producing Party shall make a reasonable attempt using automated processes to identify marketing materials and advertisements and produce those in color. The Producing Party shall also produce PowerPoint files in color (to the extent they are not produced natively). Upon written request that identifies a reasonable number of individual documents at issue by Bates number, a party shall produce color images for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher. To the extent there is metadata that identifies a document as containing comments, tracked changes, or other hidden text, or to the extent that Plaintiff identifies by Bates number such a document, and that document is not produced in native format pursuant to

this Protocol, such document should be produced in color with all comments, tracked changes, speaker's notes, or other hidden text, and any other hidden content made visible in the first instance.

e.  All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows. If a producing party identifies document types where it cannot provide such information as part of the extracted text file, it shall inform the requesting party. In the case of files with redacted text, OCR'd text of the non-redacted portion of the documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

f.  Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES00000l.TXT).

g.  In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

h.      Hard-copy documents and ESI that contains languages other than English, in whole or in part, shall be produced in the original language(s), along with all existing translations of the searchable text.  However, no party shall be obligated to create a translation of any document.

2.      The following metadata fields associated with each electronic document will be produced, to the extent they are available. This list of metadata fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document, unless it is from a field name related to a social media platform.

| Field Name | Field Description | Required For E-mail | Required For Non-E-mail ESI |
|---|---|---|---|
| Custodians | Name of custodian(s) of email(s) or file(s) produced and any de-duped file(s) not produced | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X |
| Attachnames | Names of each individual Attachment, separated by semi-colons | X | |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email document | | X |
| To | To or Recipient extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |

| Field Name | Field Description | Required For E-mail | Required For Non-E-mail ESI |
|---|---|---|---|
| Subject | Subject line extracted from an email message | X | |
| Filename | File name - Original name of file as appeared in original location | | X |
| Filepath | File/path of the location where the item was located at the time of collection. | X | X |
| Duplicate_FilePath | File path of the location where the item was located at the time of collection from custodians that were identified as duplicates. | X | X |
| SentOnDate | Sent date of an email message (mm/dd/yyyy hh:mm:ss a format) (a given email will have either a Date Sent or Date Recvd, but not both) | X | |
| ReceivedDate | Received date of an email message (mm/dd/yyyy hh:mm:ss a format) (a given email will have either a DateSent or Date Recvd, but not both) | X | |
| CreationDate | Date that a non-email file was created (mm/dd/yyyy hh:mm:ss a format) | | X |
| ModifiedDate | The application recorded time on which the document was last modified (mm/dd/yyyy hh:mm:ss a format) | | X |
| Filesize | Size or volume of individual file | X | X |
| Pgcount | Number of pages of document produced | X | X |
| NativeLink | Relative path to any files produced in native format | X | X |
| Text Path | Relative path to any OCR/extracted text files in the production set | X | X |
| Parentmsgid | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED | X | |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| Confidentiality Designation | Confidentiality Designation for produced documents | X | X |
| Redaction | Identifies if a document has been redacted | X | X |

| Field Name | Field Description | Required For E-mail | Required For Non-E-mail ESI |
|---|---|---|---|
| HasRevisions | Y if a Word document with revisions, otherwise N or empty | | X |
| HasComments | Y if a Word or Excel document with comments, otherwise N or empty | | X |
| HasHiddenText | Y if a Word document with hidden text, otherwise N or empty | | X |
| HasHidden Slides | Y if a Power Point document with hidden slides, otherwise N or empty | | X |
| HasHiddenRows | Y if an Excel document with hidden rows, otherwise N or empty | | X |
| HasHiddenColumns | Y if an Excel document with hidden columns, otherwise N or empty | | X |
| HasHidden Worksheets | Y if an Excel document with very hidden worksheets, otherwise Nor empty | | X |
| File extension | The suffix at the end of a filename that indicates what type of file it is (e.g., .ppt, .doc, .pdf) | X | X |
| Box Number | The box number associated with archived documents. | | X |
| Other Legal Matter[1] BegBates | Beginning Bates number (including Prefix) used when produced in the other legal matter | X | X |
| Other Legal Matter EndBates | Ending Bates number (including Prefix) used when produced in the other legal matter | X | X |
| Other Legal Matter BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) used when produced in the other legal matter | X | X |
| Other Legal Matter EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) used when produced in the other legal matter | X | X |
| RecordType | Distinguishes paper from non-paper productions. | X | X |
| Email Importance | Importance field in email headings. | X | |

---

[1] "Other Legal Matter" metadata shall only be provided for litigation or investigations specifically agreed to, subject to a discovery request.

**D. Native Format Production of Documents**

1. The Parties will produce the following ESI types in native file format:

  a. Excel spreadsheets

  b. Audio/video files

  c. Animations

  d. PowerPoint presentations

2. A Receiving Party may request that documents (identified by Bates number) be produced in native format. The producing party shall accommodate reasonable requests.

3. Any document produced in native format, will be produced according to the following specifications:

  a. A unique Bates number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be: "[Party]_MDL_00000l_Confidential.xls"

  b. The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (1) the name of the custodian from whose files the electronic file is produced; (2) an appropriately calculated "MD-5 Hash Value"; (3) the original name of the file; and (4) a Bates number.

  c. Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number and Confidential designation of the corresponding file.

### E. Redacted Files

1.      The Parties reserve the right to redact any information covered by the attorney-client privilege, attorney-work product doctrine, or any other applicable privilege, prior to producing documents in this Action.

2.      For Native Files requiring redactions:

    a.      Native Excel files will be redacted by blacking out the data contained in a particular cell, row, column or tab. These documents will be identified as redacted within the "REDACTED" field in the .DAT.  If the producing party deems it necessary to produce redacted Excel (or other spreadsheet formats) in any format other than Native, the parties should meet and confer before such a production is made.

    b.      Native PowerPoint presentations that require redactions shall be produced as TIFF images, which shall include speaker notes and "hidden" slides as extracted by the software used to process the documents. Color PowerPoint presentations requiring redactions shall be converted to color images as set forth in Section D.1.iv., and black and white PowerPoint presentations requiring redactions shall be converted to black and white TIFF images, provided that proper grayscale printing is enabled to ensure that any dark colored text is not hidden by dark objects/drawings around the text.  If the PowerPoint or slide program contains video or audio components, the video or audio will be produced as native files with the appropriate attachment relationships.

3.      Extracted text that has been redacted on the produced TIFF will not be provided. Documents that do not render in a readable format to TIFF, such as Excel spreadsheets, may be

redacted in native form as long as the producing party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the receiving party in the production cover letter or by way of a native redaction field.

### F. Data Load Files/Cross-Reference Files

Fielded data should be exchanged via a document-level-database load file in one of two delimited formats. Either standard Concordance (DAT) or comma delimited (CSV). All image data should be delivered with a corresponding image load file in one of three formats; standard IPro (LFP), Opticon (OPT) or Summation (DII). The total number of image files referenced in the image load file should match the total number of images in the production delivery. This section is subject to the Parties' vendors being able to process the data; if not, the Parties will meet and confer.

### G. Deduping Documents and De-NISTing Documents

1.    Each Party will dedupe ESI globally for exact duplicate documents (based on MD5 or SHA-1 hash values at the parent document level). This will result in the Producing Party producing only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Duplicate Custodians" (or similar name) field. De-duplication shall not break apart families.

2.    Common system and program files as defined by the NIST library need not be processed, reviewed or produced.

3.    Email thread analysis2 may be used to reduce the volume of emails reviewed and produced, provided that the produced emails include all responsive information from a thread,

---

2 Where multiple email messages are part of a single email chain or "thread", a party is only required to produce the most inclusive messages ("Last in Time Email") and need not produce earlier, or less inclusive email messages or "thread messages" that are fully contained, including attachments and including identical senders and recipients, including the Last In Time Email.   Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

including attachments (regardless of their placement in the email thread). Nothing in this paragraph shall permit a Party to separate or break email threads in favor of reducing volume. The Producing Party will provide that all other custodians of the email thread are listed in the "Duplicate Custodians" (or similar name) field and all additional metadata is maintained and provided in the load file in "Duplicate [insert metadata]". In the event that any one of the Duplicate Custodians is a deponent, the Receiving Party may request the Producing Party to produce a copy of a reasonable number of specific unthreaded emails from that custodian/deponent's files within a reasonable time before the deposition. The Producing Party shall promptly produce the unthreaded email from that custodian/deponent's files in advance of the deposition. Emails should be imaged and produced in such a way that indicates not only that a file was attached to a specific email within an email thread, but also so that the file name of the attachment is visible in the email heading for the specific email within the thread in which a file was sent as an attachment.

4.    If documents contain embedded objects, the Producing Party shall extract the embedded objects as separate documents and treat them like attachments to the document to the extent reasonably possible and consistent with how the data is processed. To the extent reasonably possible, images embedded in emails shall not be extracted and produced separately.

**H. Proprietary or Third-Party Software**

To the extent that information produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary or third-party software, the Parties shall meet and confer to discuss the production formats that are available within the software or directly from the software's database. During the meet and confers, the Producing Party shall have available a person who will be able to answer questions regarding the capabilities and formats that production can be made in. If production is not feasible, the Producing Party shall provide the Receiving Party written notice of the reason why the production is not feasible. The Parties shall meet and confer within seven

(7) days of the date of the written notice.

### I. Production Media

The Parties shall produce documents electronically via a secure File Transfer Protocol ("FTP") rather than through physical media (e.g. CD, DVD, or hard drive), unless such electronic transmission is impracticable, or the Parties agree on a different method of transmission. The produced documents shall be password protected and/or encrypted. Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production Volume Number") corresponding to the sequence of the material in that production and shall include (a) the name of the litigation and the case number; (b) the identity of the Producing Party; (c) the Bates Number range of the materials contained on such Production Media item; and (d) the Production Volume Number of the Production Media. However, the Parties expressly recognize that this section may be superseded by the anticipated agreement to create a document production repository.

### J. Defendants' Identification and Classification of Documents

1. Within fourteen (14) calendar after the Defendant has served its responses and/or objections to a party's Requests for Production of Documents served in accordance with Federal Rule of Civil Procedure 34 ("RFPs") in which it agrees to produce documents, the Parties agree to meet and confer to discuss Defendants' ESI, including (i) custodians, including the names, titles and departments of custodians;  (ii) identification of the custodial and noncustodial data sources and repositories containing documents and ESI responsive to the request; (iii) additional parameters for scoping the review and production efforts (e.g., application of date ranges, etc.); (iv) potential use and identification of search terms, tools, or techniques; and (v) the identification and production of Documents and ESI from custodial and non-custodial sources that do not require the use of search terms, tools, or techniques.

17

2.      Defendants have a continuing obligation to identify any other custodial and non-custodial data sources that may contain information relevant to this litigation and preserve them. Plaintiffs reserve the right to request, at any time prior to the close of discovery, inclusion of additional custodians or non-custodial data sources whose relevance was discovered after the initial designations, or for other good cause shown. If the Defendants object to the inclusion of such non-custodial or custodial sources, the Parties will meet and confer to resolve the matter; if the Parties cannot reach resolution, the MDL Court or its designee will determine the matter. To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer on a production format.

3.      Before a Producing Party uses search terms, the Producing Party shall describe the search protocol they intend to use and shall include: (a) the criteria to be used to identify the universe of documents to which search terms will be applied (e.g., custodians and date ranges), and (b) proposed search terms to be applied to that universe of documents, subject to revision based on, for example, meet and confer of the Parties. A Requesting Party may also suggest search terms to be applied. If there is a dispute between the Parties regarding the search term protocol described by the Producing Party, the Parties will meet and confer to resolve the matter; if the Parties cannot reach resolution, the MDL Court or its designee will determine the matter.

4.      Before a Producing Party uses technology assisted review ("TAR"), to identify relevant and responsive documents for production, the Parties agree to meet and confer regarding a protocol for doing so and submit any unresolved disputes to the MDL Court for resolution.

5.      The Parties intend to proceed with depositions as expeditiously as possible. The Parties agree to work together in good faith in accordance with the Joint Coordination Order and the Deposition Protocol to prioritize and sequence productions that may pertain to the deponents and that are relevant, responsive and proportional to the case. The Parties agree to take any

unresolved disputes on same promptly to the MDL Court.

6.      Nothing in this Order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

7.      To the extent the producing party knows of documents and data in its custody or control that are discoverable or responsive to a request for production that is from a source or custodian that has been agreed to for production, then the fact that negotiated search terms did not identify those documents and data shall not relieve it of its obligation to produce that information.

### K.  Foreign Language Documents

Hard-copy documents and ESI that contains languages other than English, in whole or in part, shall be produced in the original language(s), along with all identified translations of the searchable text.  No party shall be obligated to create a translation of any document, however.

### L.  Social Media

The Parties recognize that there is no tool that can capture all potentially related social media ESI, therefore the parties may satisfy discovery obligations in different manners which will include but not be limited exporting using the platforms' export tools or meet and confer as to other methods of collection.  The Producing Party shall provide document level OCR text files to accompany any TIFF or other image format production. The minimum data that must be provided for information produced from a social media platform will be BEGBATES, ENDBATES, CUSTODIAN(S), SOCIAL MEDIA PLATFORM, SOCIAL MEDIA USERNAME, and TEXT, indicating the beginning and ending Bates numbers, the custodian information, and the OCR or Optical Character Recognition text.

### M. Other Documents and Data

1.      The Parties shall meet and confer to address the collection and production format

of any responsive documents and data contained on any mobile or handheld device.

2.      The parties agree to meet and confer to discuss whether and how to produce in-office communicator platforms as well as collaboration programs such as Microsoft Teams and Slack.

### N. Inability to Produce Metadata

1.      At this time, the parties do not represent that any or all metadata described in this Order exists.  During the course of collection, review, and production of documents and ESI, the parties shall determine what metadata exists.  If metadata does not exist for any production document, the required production field will be blank

2.      If data is encrypted when it is produced, the Producing Party shall transmit the credentials necessary to decrypt the data subsequent to the production.

3.      If the Producing Party becomes aware of responsive data that is encrypted and are unable to unencrypt it, the Producing Party shall let the Receiving Party know and will explain the steps taken to attempt to unencrypt the data.

### O. Production of Deposition Transcripts from Related Actions

The Parties acknowledge that depositions may be taken in other matters that could be relevant in this Action. If those transcripts are to be produced by a Party in this action, they are to be produced with their exhibits. Should a need arise for a centralized repository, the parties shall meet and confer within (7) days of the request for creating a centralized repository to discuss the organization of any such repository.

### P. Archive File Types

Archive file types (e.g., .zip, .rar) shall be uncompressed for processing. Each file contained within an archive file shall be produced, and the reference to the parent archive file will be provided in the child file name.  If the archive file is itself an attachment, that parent/child relationship shall

also be preserved.

**Q. Plaintiff Production**

This Order presumptively governs all discovery from Plaintiffs. Nevertheless, the parties agree to meet and confer in good faith to determine an appropriate method and/or format of production of Plaintiff ESI according to the ESI in Plaintiffs' possession.  In the event Defendant agrees to accept production of materials for one or more Plaintiffs in a manner that does not strictly comply with the requirements of this Order, Defendant reserves the right to make reasonable request for those Plaintiffs to provide additional metadata or information.

**R. General Provisions**

1.      Any practice or procedure set forth herein may be varied by agreement of the Parties or Court order.

2.      Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute at least fourteen days before seeking Court intervention.

**SO ORDERED:**

Dated:   Oct. 14, 2022

Hon. Matthew F. Kennelly
U.S. District Court for the Northern District of Illinois.