**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: RECALLED ABBOTT INFANT FORMULA PRODUCTS LIABILITY LITIGATION | MDL No. 3037<br>Master Docket No. 22 C 4148<br>Honorable Matthew F. Kennelly |
| This Document applies to:<br>All cases | |

**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**JURY DEMAND**

**Table of Contents**

NATURE OF THIS CONSOLIDATED COMPLAINT .................................................................. 1

NATURE OF THE ACTION ........................................................................................................... 2

JURISDICTION AND VENUE ...................................................................................................... 3

PARTIES ........................................................................................................................................ 4

  Plaintiffs ...................................................................................................................................... 4

    Arizona ...................................................................................................................................... 4

    Arkansas .................................................................................................................................... 5

    California .................................................................................................................................... 6

    Connecticut ................................................................................................................................ 9

    Delaware .................................................................................................................................. 10

    Florida ..................................................................................................................................... 11

    Georgia .................................................................................................................................... 14

    Illinois ..................................................................................................................................... 16

    Indiana ..................................................................................................................................... 17

    Iowa ......................................................................................................................................... 19

    Kansas ...................................................................................................................................... 20

    Kentucky .................................................................................................................................. 21

    Louisiana ................................................................................................................................. 23

    Maryland .................................................................................................................................. 25

Michigan .......................................................................................................... 28

Minnesota ........................................................................................................ 30

Missouri ........................................................................................................... 31

Nevada ............................................................................................................. 32

New York ......................................................................................................... 33

North Carolina ................................................................................................. 35

Ohio .................................................................................................................. 36

Oregon .............................................................................................................. 37

Pennsylvania .................................................................................................... 38

Puerto Rico ...................................................................................................... 40

South Carolina ................................................................................................. 42

Tennessee ........................................................................................................ 44

Texas ................................................................................................................ 45

Virginia ............................................................................................................ 47

West Virginia ................................................................................................... 48

Wisconsin ......................................................................................................... 50

Defendant ............................................................................................................... 51

FACTS COMMON TO ALL CLAIMS ..................................................................... 51

Abbott's Nutrition Products and Powdered Infant Formulas ................................. 51

Specialty Infant Formulas ...................................................................................... 53

EleCare Powdered Infant Formula ................................................................... 53

Similac PM 60/40 Powdered Infant Formula .................................................. 55

Similac Alimentum Powdered Infant Formula ................................................ 56

Sturgis Facility and FDA Investigation ................................................................. 56

Harm to Plaintiffs and other Consumers ............................................................... 66

CLASS ALLEGATIONS ........................................................................................... 68

National Class ......................................................................................................... 68

Illinois Class ........................................................................................................... 68

Arizona Class .......................................................................................................... 68

Arkansas Class ....................................................................................................... 68

California Class ....................................................................................................... 68

Connecticut Class ................................................................................................... 69

Delaware Class ....................................................................................................... 69

Florida Class ........................................................................................................................... 69

Georgia Class .......................................................................................................................... 69

Indiana Class ........................................................................................................................... 69

Iowa Class ............................................................................................................................... 69

Kansas Class ............................................................................................................................ 69

Kentucky Class ........................................................................................................................ 69

Louisiana Class ....................................................................................................................... 69

Maryland Class ........................................................................................................................ 70

Michigan Class ........................................................................................................................ 70

Minnesota Class ...................................................................................................................... 70

Missouri Class ......................................................................................................................... 70

Nevada Class ........................................................................................................................... 70

New York Class ....................................................................................................................... 70

North Carolina Class ............................................................................................................... 70

Oregon Class ........................................................................................................................... 70

Ohio Class ............................................................................................................................... 70

Pennsylvania Class .................................................................................................................. 71

Puerto Rico Class .................................................................................................................... 71

South Carolina Class ............................................................................................................... 71

Tennessee Class ...................................................................................................................... 71

Texas Class .............................................................................................................................. 71

Virginia Class .......................................................................................................................... 71

West Virginia Class ................................................................................................................. 71

Wisconsin Class ...................................................................................................................... 71

FIRST CLAIM FOR RELIEF ................................................................................................ 75

    Violation of Illinois's Consumer Fraud and Deceptive Business Practices Act ..................... 75

SECOND CLAIM FOR RELIEF ........................................................................................... 79

    Violation of Arizona's Consumer Fraud Act .......................................................................... 79

THIRD CLAIM FOR RELIEF ............................................................................................... 82

    Violation of Arkansas Deceptive Trade Practices Act ........................................................... 82

FOURTH CLAIM FOR RELIEF ........................................................................................... 85

    False and Misleading Advertising in Violation of California Law ......................................... 85

FIFTH CLAIM FOR RELIEF ................................................................................................ 87

Unfair Businesses Practices in Violation of California Law .................................................... 87

SIXTH CLAIM FOR RELIEF ............................................................................................ 89

Violation of the California Consumers Legal Remedies Act .................................................. 89

SEVENTH CLAIM FOR RELIEF ...................................................................................... 92

Violation of Connecticut Deceptive and Unfair Trade Practices Act ..................................... 92

EIGHTH CLAIM FOR RELIEF ........................................................................................ 95

Violation of Delaware's Consumer Fraud Act ...................................................................... 95

NINTH CLAIM FOR RELIEF ............................................................................................ 98

Violation of Florida's Deceptive and Unfair Trade Practices Act ........................................... 98

TENTH CLAIM FOR RELIEF .......................................................................................... 102

Violation of Violation of Georgia's Uniform Deceptive Trade Practices Act ....................... 102

ELEVENTH CLAIM FOR RELIEF .................................................................................. 103

Violation of Indiana's Deceptive Consumer Sales Law ......................................................... 103

TWELFTH CLAIM FOR RELIEF .................................................................................... 105

Violation of Kansas's Consumer Protection Act .................................................................. 105

THIRTEENTH CLAIM FOR RELIEF .............................................................................. 108

Violation of Kentucky's Consumer Protection Act ............................................................... 108

FOURTEENTH CLAIM FOR RELIEF ............................................................................ 111

Violation of Maryland's Consumer Protection Act ............................................................... 111

FIFTEENTH CLAIM FOR RELIEF ................................................................................. 113

Violation of Michigan's Consumer Protection Act ............................................................... 114

SIXTEENTH CLAIM FOR RELIEF ................................................................................ 116

Violation of the Minnesota Prevention of Consumer Fraud Act ........................................... 116

SEVENTEENTH CLAIM FOR RELIEF .......................................................................... 118

Violation of the Missouri Merchandising Practices Act ........................................................ 118

EIGHTEENTH CLAIM FOR RELIEF ............................................................................. 120

Violation of the Nevada Deceptive Trade Practices Act ....................................................... 120

NINETEENTH CLAIM FOR RELIEF ............................................................................. 122

Violation of New York Consumer Protection from Deceptive Acts and Practices Act ......... 122

TWENTIETH CLAIM FOR RELIEF ............................................................................... 124

Violation of North Carolina's Monopolies, Trusts and Consumer Protection Law .............. 124

TWENTY-FIRST CLAIM FOR RELIEF ......................................................................... 126

Violation of Ohio's Consumer Sales Practices Act .............................................................. 126

TWENTY-SECOND CLAIM FOR RELIEF ........................................................ 128

    Violation of Oregon's Unlawful Trade Practices Act ......................................... 128

TWENTY-THIRD CLAIM FOR RELIEF ........................................................... 130

    Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ............ 130

TWENTY-FOURTH CLAIM FOR RELIEF ......................................................... 133

    Violation of Tennessee Consumer Protection Act ............................................. 133

TWENTY-FIFTH CLAIM FOR RELIEF ............................................................ 135

    Violation of Texas's Consumer Protection Act ................................................ 136

TWENTY-SIXTH CLAIM FOR RELIEF ............................................................ 137

    Violation of Virginia's Consumer Protection Act ............................................. 138

TWENTY-SEVENTH CLAIM FOR RELIEF ....................................................... 140

    Violation of West Virginia's Consumer Credit and Protection Act ......................... 140

TWENTY-EIGHTH CLAIM FOR RELIEF .......................................................... 142

    Unjust Enrichment ................................................................................ 142

TWENTY-NINTH CLAIM FOR RELIEF ........................................................... 144

    Breach of Implied Warranty of Merchantability .............................................. 144

THIRTIETH CLAIM FOR RELIEF .................................................................. 146

    Negligent Misrepresentation ..................................................................... 146

        State and Territory Specific Actions .......................................................... 148

            Count 1:  Illinois ................................................................................ 148

            Count 2: Arizona ................................................................................ 150

            Count 3: California .............................................................................. 151

            Count 4: Connecticut ........................................................................... 153

            Count 5: Delaware .............................................................................. 154

            Count 6: Florida ................................................................................ 156

            Count 7: Georgia ................................................................................ 157

            Count 8: Indiana ................................................................................ 159

            Count 9: Iowa ................................................................................... 160

            Count 10: Kansas ............................................................................... 162

            Count 11: Kentucky ............................................................................ 163

            Count 12: Louisiana ............................................................................ 165

            Count 13: Maryland ............................................................................ 166

            Count 14: Michigan ............................................................................ 168

Count 15: Minnesota ................................................................................ 169

Count 16: Missouri ................................................................................. 171

Count 17: Nevada .................................................................................. 172

Count 18: New York ............................................................................... 174

Count 19: North Carolina ........................................................................ 176

Count 20: Ohio ..................................................................................... 177

Count 21: Oregon .................................................................................. 179

Count 22: Pennsylvania ........................................................................... 180

Count 23: Puerto Rico ............................................................................. 182

Count 24: South Carolina ......................................................................... 183

Count 25: Tennessee ............................................................................... 185

Count 26: Texas .................................................................................... 186

Count 27: Wisconsin ............................................................................... 188

PRAYER FOR RELIEF ............................................................................ 189

DEMAND FOR JURY TRIAL .................................................................... 190

Plaintiffs, by and through their counsel, for their Consolidated Class Action Complaint ("Consolidated Complaint") against Defendant Abbott Laboratories, Inc. D/B/A Abbott Nutrition. ("Abbott" or "Defendant"), on behalf of themselves and all others similarly situated, allege on personal knowledge as to themselves, and on information and belief as to all other matters, as follows:

## NATURE OF THIS CONSOLIDATED COMPLAINT

1. This Consolidated Class Action Complaint ("Consolidated Complaint") sets forth questions of fact and law common to the class claims subsumed within the context of this multidistrict proceeding for injuries resulting from the purchase contaminated Similac®, Similac PM 60/40®, Alimentum® and EleCare® Infant formula manufactured, sold and distributed by Abbott, based on false and misleading claims that the products were unadulterated, safe and effective.

2. This Consolidated Complaint constitutes an administrative summary of the class claims brought by all Plaintiffs with complaints filed and transferred to this multidistrict proceeding and is not intended as the operative pleading for purposes of judgment and appeal.

3. This Consolidated Complaint does not constitute a waiver or dismissal of any actions or claims asserted in those individual actions, nor does any Plaintiff relinquish the right to move to amend their individual complaints to seek any additional claims as discovery proceeds. As more particularly set forth herein, each Plaintiff maintains that the purchased products are defective, dangerous to human health, unfit and were unsuitable to be advertised, marketed and sold in the United States, and lacked proper warnings of the dangers associated with their use. ("Contaminated Products")

/ / /

1

## NATURE OF THE ACTION

4. These cases are class actions brought by Plaintiffs on behalf of similarly situated consumers who purchased Abbott's powdered infant formula products, including Similac®, Similac PM 60/40 ®, Alimentum® and EleCare® products, which were manufactured at the Abbott Nutrition facility in Sturgis, Michigan ("Sturgis Facility"). The United States Food and Drug Administration ("FDA"), in conjunction with the Center for Disease Control ("CDC"), announced on February 17, 2022, that it was investigating Defendant's Similac®, Alimentum®, and EleCare® products following several consumers' complaints of Cronobacter sakazakii and Salmonella Newport contamination. The FDA's advisory notice alerted consumers to avoid purchasing or using Defendant's Similac®, Alimentum® and EleCare® products.

5. Abbott later announced that it found evidence of Cronobacter sakazakii at the Sturgis Facility. Abbott learned of the death of an infant who tested positive for Cronobacter sakazakii and . . . consumed Similac PM 60/40.

6. As discussed further herein, Abbott knew about the ongoing risk of contamination and related noncompliance issues at its Sturgis Facility, and Abbott should have initiated preventative measures in September of 2021.

7. The consequences were dire. Abbott's failures harmed consumers, sickened infants, and ultimately led to the death of at least two children and may have led to the deaths of as many as nine children.[1] Abbott is now telling consumers it is not safe for their infants to consume these products, but many consumers rely on them to feed their children, Abbott leaves many consumers with no safe option but to pay full price for a newer or alternative version. Furthermore, as the

---

[1] *See e.g.,* https://www.washingtonpost.com/business/2022/06/10/baby-formula-deaths-abbott/ (last visited September 30, 2022).

leading supplier of milk formula in the United States Abbott has driven a well-documented nationwide infant formula shortage making finding a suitable alternative even more challenging.[2]

8.      Each of the Plaintiffs in these actions purchased one or more Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective and would not have purchased the Contaminated Products had they known there was a risk the Contaminated Products may contain harmful microbes.

9.      Under the circumstances that existed, no sales of the products should have taken place.

10.     As a result of Abbott's unfair, deceptive, and/or fraudulent business practices, consumers of these products, Plaintiffs and those similarly situated who they seek to represent have suffered ascertainable losses, injury-in-fact, and otherwise have been harmed by Abbott's conduct.

11.     Plaintiffs, on behalf of themselves and all others similarly situated, see seek declaratory and injunctive relief, including restitution, damages, penalties, interest, and attorneys' fees and costs to the full extent permitted by applicable law.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction under 28 U.S.C. § 1332(a)(1), because the amount in controversy in this action exceeds $75,000, exclusive of interests and costs, and because the parties are residents of different states.

13.     Venue is proper under 28 U.S.C. §1391, because Defendant maintains its principal place of business in this Judicial District, transacts business in this Judicial District, and a substantial part of the acts and/or omissions giving rise to the claims occurred in this District.

---

[2] https://www.reuters.com/business/healthcare-pharmaceuticals/abbott-could-restart-infant-formula-production-michigan-plant-2022-05-11/ (last visited September 30, 2022).

14. Additionally, these cases were transferred to this Judicial District by Order of the Panel On Multidistrict Litigation dated August 18, 2022 (Case No. 2:22-cv-02001-GW-KS, Dkt. No. 31).

## PARTIES

### Plaintiffs

Arizona

15. Plaintiff Arquesha Dates ("Dates") is a citizen and resident of Tempe, Arizona and at all times relevant hereto, has been a resident of Maricopa County. Dates purchased Similac infant formula products from Fry's Food Store located in Phoenix, Arizona. Dates purchased Defendant's powdered infant formula products from September 2019 to September 2020, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Dates was unaware that the Contaminated Products may be adulterated with harmful microbes. Dates purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Dates would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Dates suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Dates further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Dates also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by

4

concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Dates would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Dates also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Arkansas

16.     Plaintiff Victoria J. Deffebaugh ("Deffebaugh") is a citizen and resident of Blytheville, Arkansas, and at all times relevant hereto, has been a resident of Mississippi County. Deffebaugh began purchasing Defendant's powdered infant formula products in April 2021 in Blytheville, Arkansas, including the Contaminated Products. The first two digits of the product are 34 and the code on the container contains "Z2," and the use-by date is November 1, 2024. At that time, based on the false and misleading claims by Defendant, Deffebaugh was unaware that the Contaminated Products may be adulterated with harmful microbes. Deffebaugh purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Deffebaugh would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Deffebaugh suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Deffebaugh further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could

not be used (consumed) or resold. Deffebaugh also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Deffebaugh would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Deffebaugh also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

<u>California</u>

17.    Plaintiff Arturo Andaluz ("Andaluz") is a citizen and resident of Granada Hills, California, and at all times relevant hereto, has been a resident of Los Angeles County. In or around January 2022, Andaluz began purchasing Defendant's Similac, Alimentum, and EleCare products at Target and Costco retail stores located in Granada Hills, California, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Andaluz was unaware that the Contaminated Products may be adulterated with harmful microbes. Andaluz purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Andaluz would not have purchased the Contaminated Products had he known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Andaluz suffered injury in fact when he spent money to purchase the Contaminated Products, which he would not otherwise have purchased absent

6

Defendant's misconduct, as alleged herein. Andaluz further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Andaluz also experienced hardship from the resulting nationwide infant formula shortage, as, he was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than he would have otherwise paid for infant formula if the contamination, and his inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Andaluz would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Andaluz also anticipates purchasing Defendant's products to provide his growing child with essential vitamins and minerals, and a continuity of nutritional support.

18.     Plaintiff Jennifer Duqe ("Duqe") is a citizen and resident of Salinas, California, and at all times relevant hereto, has been a resident of Monterey County. Duqe purchased Defendant's powdered infant formula products at Costco in California located at 1339 N Davis Rd Salinas, California 93907. Duqe purchased the Contaminated Products on February 8, 2022. At that time, based on the false and misleading claims by Defendant, Duqe was unaware that the Contaminated Products may be adulterated with harmful microbes. Duqe purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Duqe would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Duqe suffered injury in fact when she spent money to purchase the Contaminated Products, which she

would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Duqe further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Duqe also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Duqe would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Duqe also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

19.     Plaintiff Claresa Lyons ("Lyons") is a citizen and resident of North Highlands, California and at all times relevant hereto, has been a resident of Sacramento County. Lyons began purchasing Defendant's powdered infant formula products in March 2021 and in or around February 2022 purchased the Contaminated Products. The first two digits of the product are 35 and the code on the container contains "SH," and the use-by date is December 1, 2023. At the time, based on the false and misleading claims by Defendant, Lyons was unaware that the Contaminated Products may be adulterated with harmful microbes. Lyons purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Lyons would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a

8

result, Lyons suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Lyons further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Lyons also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Lyons would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Lyons also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Connecticut

20.     Plaintiff Andrea Scully ("Scully") is a citizen and resident of Bridgeport, Connecticut. At all times relevant hereto, has been a citizen and resident of Fairfield County. Scully purchased Defendant's powdered infant formula products at Stop & Shop and at Walmart in Bridgeport, Connecticut. Scully purchased Defendant's powdered infant formula products from October 2021 to February 2022, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Scully was unaware that the Contaminated Products may be adulterated with harmful microbes. Scully purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Scully would not have purchased the Contaminated Products had she known

9

there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Scully suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Scully further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Scully also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Scully would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Scully also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Delaware

21.     Plaintiff Michelle Mason ("Mason") is a citizen of the State of Delaware and resident of New Castle County, Delaware. In or around February 2022, Mason purchased the Contaminated Products in Delaware. At the time, based on the false and misleading claims by Defendant, Mason was unaware that the Contaminated Products may be adulterated with harmful microbes. Mason purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Mason would not have purchased the Contaminated Products had she known there was a risk the products may contain

10

harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Mason suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Mason further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Mason also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Mason would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Mason also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Florida

22.     Plaintiff Demarco Dodson ("Dodson") is a citizen and resident of Miami, Florida and at all times relevant hereto, has been a resident of Dade County. Dodson regularly purchased Defendant's powdered infant formula products in Florida and in 2022 purchased the Contaminated Products. At that time, based on the false and misleading claims by Defendant, Dodson was unaware that the Contaminated Products may be adulterated with harmful microbes. Dodson purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Dodson would not have

11

purchased the Contaminated Products had he known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Dodson suffered injury in fact when he spent money to purchase the Contaminated Products, which he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Dodson further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Dodson also experienced hardship from the resulting nationwide infant formula shortage, as, he was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than he would have otherwise paid for infant formula if the contamination, and his inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Dodson would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Dodson also anticipates purchasing Defendant's products to provide his growing child with essential vitamins and minerals, and a continuity of nutritional support.

23. Plaintiff Jasmyn Menendez ("Menendez") is a citizen and resident of Lakeville, Florida and at all times relevant hereto, has been a resident of Polk County. Menendez began purchasing Defendant's powdered infant formula products in May 2021 and in or around February 2022 purchased the Contaminated Products. The first two digits of the product are 30 and the code on the container contains "Z2," and the use-by date is July 1, 2024. At the time, based on the false and misleading claims by Defendant, Menendez was unaware that the Contaminated Products may be adulterated with harmful microbes. Menendez purchased the Contaminated Products on the

assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Menendez would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Menendez suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Menendez further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Menendez also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Menendez would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Menendez also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

24. Plaintiff Melissa Quailes ("Quailes") is a citizen and resident of Pensacola, Florida, and at all times relevant hereto, has been a resident of Escambia County. Quailes purchased Defendant's powdered infant formula products at Greer's located at 4051 Barrancas Avenue, Pensacola Florida 32507; Walmart located at 501 N Navy Blvd, Pensacola, Florida 32507; and Publix located at 5998 Mobile Hwy, Pensacola, Florida 32526. Quailes purchased Defendant's

powdered infant formula products from October 2021 until November 2021, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Quailes was unaware that the Contaminated Products may be adulterated with harmful microbes. Quailes purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Quailes would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Quailes suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Quailes further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Quailes also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Quailes would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Quailes also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Georgia

25.     Plaintiff Rebecca Carroll ("Carroll") is a citizen and resident of Sandersville, Georgia,

14

and at all times relevant hereto, has been a resident of Washington County. Carroll has purchased infant formula at Walmart located at 260 Bobby Jones Expressway Augusta, Georgia 30907 and a Walmart located at 1308 South Harris St. Sandersville, Georgia 31082. Carroll purchased Defendant's powdered infant formula products, including the Contaminated Products, from December 2021 to April 2022. During that time, based on the false and misleading claims by Defendant, Carroll was unaware that the Contaminated Products may be adulterated with harmful microbes. Carroll purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Carroll would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Carroll suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Carroll further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Carroll also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Carroll would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Carroll also anticipates purchasing Defendant's products to provide her growing child with essential vitamins

15

and minerals, and a continuity of nutritional support.

Illinois

26.     Plaintiff Elise Ray ("Ray") is a citizen and resident of Chicago, Illinois, and at all times relevant hereto, has been a resident of Cook County. Ray purchased Defendant's powdered infant formula products from April 2021 to May 2021, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Ray was unaware that the Contaminated Products may be adulterated with harmful microbes. Ray purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Ray would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Ray suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Ray further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Ray also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Ray would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Ray also anticipates purchasing Defendant's products to provide her

16

growing child with essential vitamins and minerals, and a continuity of nutritional support.

Indiana

27.    Plaintiff Catrice Grigsby ("Grigsby") is a citizen of the State of Indiana and a resident of Lake County. In or around February 2022, Grigsby purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Grigsby was unaware that the Contaminated Products may be adulterated with harmful microbes. Grigsby purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Grigsby would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Grigsby suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Grigsby further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Grigsby also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Grigsby would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Grigsby also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a

17

continuity of nutritional support.

28. Plaintiff Latonya Mack ("Mack") is a citizen and resident of Indianapolis, Indiana, and at all times relevant hereto, has been a resident of Marion County. Mack purchased Defendant's powdered infant formula products from Meijer and from Walmart, Indianapolis, Indiana, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Mack was unaware that the Contaminated Products may be adulterated with harmful microbes. Mack purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Mack would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Mack suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Mack further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Mack also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States Mack would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Mack also anticipates purchasing Defendant's products to provide her growing child with essential vitamins

18

and minerals, and a continuity of nutritional support.

Iowa

29.     Plaintiff Jordan Boysen ("Boysen") is a citizen and resident of Council Bluffs, Iowa and at all times relevant hereto, has been a resident of Pottawattamie County. Boysen began purchasing Defendant's powdered infant formula products in December 2021 and in or around February 2022 purchased the Contaminated Products. The first two digits of the product are 37 and the code on the container contains "SH," and the use-by date is August 2023. At the time, based on the false and misleading claims by Defendant, Boysen was unaware that the Contaminated Products may be adulterated with harmful microbes. Boysen purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Boysen would not have purchased the Contaminated Products had he known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.   As a result, Boysen suffered injury in fact when he spent money to purchase the Contaminated Products, which he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Boysen further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Boysen also experienced hardship from the resulting nationwide infant formula shortage, as, he was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than he would have otherwise paid for infant formula if the contamination, and his inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States.   Boysen would purchase the infant formula products again in the

future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Boysen also anticipates purchasing Defendant's products to provide his growing child with essential vitamins and minerals, and a continuity of nutritional support.

Kansas

30.     Plaintiff Artie Leonard ("Leonard") is a citizen and resident of Fort Riley, Kansas and at all times relevant hereto, has been a resident of Fort Riley, Kansas. Leonard purchased Defendant's powdered infant formula products at Commissary located at 2310 Trooper Dr. Fort Riley, Kansas 66442. Leonard purchased Defendant's powdered infant formula products from June 2021 to February 2022, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Leonard was unaware that the Contaminated Products may be adulterated with harmful microbes. Leonard purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Leonard would not have purchased the Contaminated Products had he known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Leonard suffered injury in fact when he spent money to purchase the Contaminated Products, which he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Leonard further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Leonard also experienced hardship from the resulting nationwide infant formula shortage, as, he was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than he would have

otherwise paid for infant formula if the contamination, and his inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Leonard would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Leonard also anticipates purchasing Defendant's products to provide his growing child with essential vitamins and minerals, and a continuity of nutritional support.

Kentucky

31.    Plaintiff Randell Huff ("Huff") is a citizen and resident of Glasgow, Kentucky and at all times relevant hereto, has been a resident of Barren County. Huff purchased Defendant's powdered infant formula products at Walmart in Glasgow, Kentucky, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Huff was unaware that the Contaminated Products may be adulterated with harmful microbes. Huff purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Huff would not have purchased the Contaminated Products had he known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Huff suffered injury in fact when he spent money to purchase the Contaminated Products, which he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Huff further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Huff also experienced hardship from the resulting nationwide infant formula shortage, as, he was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was

21

forced to pay more than he would have otherwise paid for infant formula if the contamination, and his inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Huff would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Huff also anticipates purchasing Defendant's products to provide his growing child with essential vitamins and minerals, and a continuity of nutritional support.

32.     Plaintiff Kelsey McCord ("McCord") is a citizen and resident of Louisville, Kentucky and at all times relevant hereto, has been a resident of Jefferson County. McCord purchased the Contaminated Products at a Walmart store in Louisville, Kentucky. At the time, based on the false and misleading claims by Defendant, McCord was unaware that the Contaminated Products may be adulterated with harmful microbes McCord purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective McCord would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, McCord suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. McCord further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. McCord also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have

22

otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. McCord would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. McCord also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Louisiana

33.     Plaintiff Cherrell R. Raymond ("Raymond") is a citizen of the State of Louisiana and resident of Layfette Parish, Louisiana. In or around February 2022, Raymond purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Raymond was unaware that the Contaminated Products may be adulterated with harmful microbes. Raymond purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Raymond would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Raymond suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Raymond further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Raymond also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid

for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Raymond would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Raymond also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

34.     Plaintiff Britney Walls is a citizen and resident of West Monroe, Louisiana and at all times relevant hereto, has been a resident of the Parish of Ouachita. Walls regularly purchased Defendant's powdered infant formula products and in or around February 2022 purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Walls was unaware that the Contaminated Products may be adulterated with harmful microbes. Walls purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Walls would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Walls suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Walls further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Walls also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant

24

formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Walls would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Walls also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Maryland

35.   Plaintiff Brittany Abendschoen ("Abendschoen") is a citizen and resident of Salisbury, Maryland, and at all times relevant hereto, has been a resident of Wicomico County. Abendschoen purchased Defendant's powdered infant formula products from January 2022 until February 2022, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Abendschoen was unaware that the Contaminated Products may be adulterated with harmful microbes. Abendschoen purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Abendschoen would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Abendschoen suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Abendschoen further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Abendschoen also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced

purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination, and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Abendschoen would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Abendschoen also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

36. Plaintiff Amanda Corvelli ("Corvelli") is a citizen and resident of Bowie, Maryland and at all times relevant hereto, has been a resident of Prince George's County. Corvelli began purchasing Defendant's powdered infant formula products in September 2021 and in or around February 2022 purchased the Contaminated Products. The first two digits of the product are 37 and the code on the container contains "K8," and the use-by date is August 1, 2023. At the time, based on the false and misleading claims by Defendant, Corvelli was unaware that the Contaminated Products may be adulterated with harmful microbes. Corvelli purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Corvelli would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Corvelli suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Corvelli further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because

26

they could not be used (consumed) or resold. Corvelli also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Corvelli would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Corvelli also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

37.     Plaintiff Carl Whitmore ("Whitmore") is a citizen and resident of Bowie, Maryland and at all times relevant hereto, has been a resident of Prince George's County. Whitmore began purchasing Defendant's powdered infant formula products in September 2021 and in or around February 2022 purchased the Contaminated Products. The first two digits of the product are 37 and the code on the container contains "K8," and the use-by date is August 1, 2023. At the time, based on the false and misleading claims by Defendant, Whitmore was unaware that the Contaminated Products may be adulterated with harmful microbes. Whitmore purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Whitmore would not have purchased the Contaminated Products had he known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Whitmore suffered injury in fact when he spent money to purchase the Contaminated Products, which he would not otherwise have purchased absent Defendant's

27

misconduct, as alleged herein. Whitmore further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Whitmore also experienced hardship from the resulting nationwide infant formula shortage, as, he was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than he would have otherwise paid for infant formula if the contamination, and his inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Whitmore would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Whitmore also anticipates purchasing Defendant's products to provide his growing child with essential vitamins and minerals, and a continuity of nutritional support.

<u>Michigan</u>

38.     Plaintiff Russell Hall ("Hall") is a citizen and resident of Saint Helen, Michigan, and at all times relevant hereto, has been a resident of Roscommon County. Hall purchased Defendant's powdered infant formula products from various Walmart locations, including those located in Houghton Lake, Michigan and Highland, Michigan. Hall purchased Defendant's powdered infant formula products from September 2021 until April 2022, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Hall was unaware that the Contaminated Products may be adulterated with harmful microbes. Hall purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Hall would not have purchased the Contaminated Products had he known there was a risk the products may contain harmful

microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Hall suffered injury in fact when he spent money to purchase the Contaminated Products, which he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Hall further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Hall also experienced hardship from the resulting nationwide infant formula shortage, as, he was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than he would have otherwise paid for infant formula if the contamination, and his inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Hall would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Hall also anticipates purchasing Defendant's products to provide his growing child with essential vitamins and minerals, and a continuity of nutritional support.

39.     Plaintiff Keyonna William ("William") is a citizen and resident of Wayne, Michigan and at all times relevant hereto, has been a resident of Wayne County. William began purchasing Defendant's powdered infant formula products in November 2021 and purchased the Contaminated Products. The first two digits of the product are 28 and the code on the container contains "SH," and the use-by date is November 1, 2022. At the time, based on the false and misleading claims by Defendant, William was unaware that the Contaminated Products may be adulterated with harmful microbes. William purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated,

29

safe, and effective. William would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, William suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. William further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. William also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. William would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. William also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Minnesota

40.    Plaintiff Raelonda Ghost ("Ghost") is a citizen and resident of Minneapolis, Minnesota, and at all times relevant hereto, has been a resident of Hennepin County. Ghost purchased Defendant's powdered infant formula products at multiple stores such as Target and Walmart in Minnesota. Ghost purchased Defendant's powdered infant formula products from February 2020 until June 2020, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Ghost was unaware that the Contaminated Products may be

adulterated with harmful microbes. Ghost purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Ghost would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Ghost suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Ghost further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Ghost also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Ghost would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Ghost also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Missouri

41.     Plaintiff Seirra Morris ("Morris") is a citizen and resident of Birch Tree, Missouri and at all times relevant hereto, has been a resident of Shannon County. Morris purchased Defendant's powdered infant formula products at Walmart located at 1310 Preacher Roe Blvd, West Plains, Missouri 65775. Morris purchased Defendant's powdered infant formula products from November

31

2021 until January 2022, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Morris was unaware that the Contaminated Products may be adulterated with harmful microbes. Morris purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Morris would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Morris suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Morris further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Morris also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Morris would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Morris also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Nevada

42. Plaintiff Samantha Lansdale ("Lansdale") is a citizen and resident of Las Vegas, Nevada and at all times relevant hereto, has been a resident of Clark County. Lansdale purchased

Defendant's powdered infant formula products at a Walmart in Nevada from January 2021 until May 2021, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Lansdale was unaware that the Contaminated Products may be adulterated with harmful microbes Lansdale purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Lansdale would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Lansdale suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Lansdale further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Lansdale also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Lansdale would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Lansdale also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

New York

43.     Plaintiff Cindy Lopez Bazemore ("Lopez-Bazemore") is a citizen and resident of New

33

York, New York and at all times relevant hereto, has been a resident of the County of Queens. Lopez-Bazemore began purchasing Defendant's powdered infant formula products in New York in July 2021 and in or around January and February 2022 purchased the Contaminated Products. The first two digits of the product are 22 through 37 and the code on the container contains "K8," "SH," or "Z2," and the use-by date is April 1, 2022 or later. At the time, based on the false and misleading claims by Defendant, Lopez-Bazemore was unaware that the Contaminated Products may be adulterated with harmful microbes. Lopez-Bazemore purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Lopez-Bazemore would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Lopez-Bazemore suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Lopez-Bazemore further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Lopez-Bazemore also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Lopez-Bazemore would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality,

34

and safety. Lopez-Bazemore also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

North Carolina

44.     Plaintiff Kelsey Purciful ("Purciful") is a citizen and resident of Dallas, North Carolina, and at all times relevant hereto, has been a resident of Gaston County. Purciful purchased Defendant's powdered infant formula products in North Carolina including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Purciful was unaware that the Contaminated Products may be adulterated with harmful microbes. Purciful purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Purciful would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Purciful suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Purciful further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Purciful also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Purciful would purchase the infant formula products again in the future if assured that the products are not contaminated and conform

35

to the representations on the product labels regarding benefit, quality, and safety. Purciful also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Ohio

45.    Plaintiff Shanee Wilkerson ("Wilkerson") is a citizen and resident of Columbus, Ohio and at all times relevant hereto, has been a resident of Franklin County. Wilkerson purchased Defendant's powdered infant formula products at a Walmart located at 3579 S. High Street, Columbus Ohio, 43207. Wilkerson purchased Defendant's powdered infant formula products from November 2021 until January 2022, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Wilkerson was unaware that the Contaminated Products may be adulterated with harmful microbes. Wilkerson purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Wilkerson would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Wilkerson suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Wilkerson further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Wilkerson also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and

her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Wilkerson would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Wilkerson also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Oregon

46.     Plaintiff Emerald Mae Jackson ("Jackson") is a citizen and resident of Portland, Oregon and at all times relevant hereto, has been a resident of Multnomah County. Jackson purchased Defendant's powdered infant formula products at Walmart located at 1123 Hayden Meadows Dr. Portland, Oregon 97217 and Fred Meyer located at 7404 N Interstate Ave, Portland Oregon 97217. Jackson purchased Defendant's powdered infant formula products from February 2019 to May 2021, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Jackson was unaware that the Contaminated Products may be adulterated with harmful microbes. Jackson purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Jackson would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Jackson suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Jackson further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Jackson also

experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Jackson would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Jackson also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Pennsylvania

47.     Plaintiff Natalie Colombo ("Colombo") is a citizen of the State of Pennsylvania and resident of Philadelphia County, Pennsylvania. In or around February 2022, Colombo purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Colombo was unaware that the Contaminated Products may be adulterated with harmful microbes. Colombo purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Colombo would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Colombo suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Colombo further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Colombo also

experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Colombo would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Colombo also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

48.    Plaintiff Brittany Johnson ("Johnson") is a citizen and resident of Beaver Falls, Pennsylvania and at all times relevant hereto, has been a resident of Beaver County. Beginning in December 2021, Johnson purchased Defendant's powdered infant formula products in Pennsylvania. Johnson began purchasing Defendant's powdered infant formula products in December 2021 and in or around February 2022 purchased the Contaminated Products. The first two digits of the product are 35 and the code on the container contains "K8," and the use-by date is December 2024. At the time, based on the false and misleading claims by Defendant, Johnson was unaware that the Contaminated Products may be adulterated with harmful microbes. Johnson purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Johnson would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Johnson suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent

Defendant's misconduct, as alleged herein. Johnson further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Johnson also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Johnson would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Johnson also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

<u>Puerto Rico</u>

49.     Plaintiff Karla Nicole Toledo ("Toledo") is a citizen and resident of the Commonwealth and United States territory of Puerto Rico. Toledo routinely purchased Defendant's powdered infant formula products and in or around February 2022 purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Toledo was unaware that the Contaminated Products may be adulterated with harmful microbes. Toledo purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Toledo would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Toledo suffered injury in fact when she spent money to purchase

the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Toledo further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Toledo also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Toledo would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Toledo also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

50. Plaintiff Carlos Toledo Delgado ("Delgado") is a citizen and resident of the Commonwealth and United States territory of Puerto Rico. Delgado routinely purchased Defendant's powdered infant formula products and in or around February 2022 purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Delgado was unaware that the Contaminated Products may be adulterated with harmful microbes. Delgado purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Delgado would not have purchased the Contaminated Products had he known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Delgado suffered injury in fact when he spent

41

money to purchase the Contaminated Products, which he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Delgado further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Delgado also experienced hardship from the resulting nationwide infant formula shortage, as, he was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than he would have otherwise paid for infant formula if the contamination and his inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Delgado would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Delgado also anticipates purchasing Defendant's products to provide his growing grandchild with essential vitamins and minerals, and a continuity of nutritional support.

<u>South Carolina</u>

51. Plaintiff Samandria Harkless ("Harkless") is a citizen and resident of Timmonsville, South Carolina and at all times relevant hereto, has been a resident of Florence County. Harkless routinely purchased Defendant's powdered infant formula products and in or around February 2022 purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Harkless was unaware that the Contaminated Products may be adulterated with harmful microbes. Harkless purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Harkless would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the

42

Contaminated Products should have taken place. As a result, Harkless suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Harkless further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Harkless also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Harkless would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Harkless also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

52. Plaintiff Katie Steele ("Steele") is a citizen and resident of Ridgeville, South Carolina and at all times relevant hereto, has been a resident Dorchester County. In or around January or February 2022 Steele purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Steele was unaware that the Contaminated Products may be adulterated with harmful microbes. Steele purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Steele would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Steele suffered injury in fact

43

when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Steele further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Steele also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Steele would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Steele also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Tennessee

53.     Plaintiff Jacklyn Driver ("Driver") is a citizen and resident of McMinnville, Tennessee, and at all times relevant hereto, has been a resident of Warren County. Driver purchased Defendant's powdered infant formula products at Walmart located at 915 N Chancery St, MicMinnville, Tennessee 37110. Driver purchased Defendant's powdered infant formula products from December 2021 until June 2022, including the Contaminated Products. During that time, based on the false and misleading claims by Defendant, Driver was unaware that the Contaminated Products may be adulterated with harmful microbes. Driver purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Driver would not have purchased the Contaminated Products

44

had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Driver suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Driver further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Driver also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Driver would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Driver also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Texas

54. Plaintiff Danielle Benoit ("Benoit") is a citizen and resident of Garland, Texas, and at all times relevant hereto, has been a resident of Dallas County. Benoit purchased Defendant's powdered infant formula products, including the Contaminated Products, at a Walmart in Garland, Texas from April 2021 until April 2022. During that time, based on the false and misleading claims by Defendant, Benoit was unaware that the Contaminated Products may be adulterated with harmful microbes. Benoit purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective.

45

Benoit would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Benoit suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Benoit further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Benoit also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination, and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Benoit would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Benoit also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

55.     Plaintiff Adriana Garza ("Garza") is a citizen and resident of Grand Prairie, Texas and at all times relevant hereto, has been a resident of Dallas County. Garza began purchasing Defendant's powdered infant formula products in September 2021 and in or around January and February 2022 purchased the Contaminated Products. The first two digits of the product are 22 through 37 and the code on the container contains "K8," "SH," or "Z2," and the use-by date is April 1, 2022 or later. At the time, based on the false and misleading claims by Defendant, Garza was unaware that the Contaminated Products may be adulterated with harmful microbes. Garza

purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Garza would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Garza suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Garza further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Garza also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Garza would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Garza also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Virginia

56.     Plaintiff Samantha Shorts ("Shorts") is a citizen and resident of Manassas, Virginia and at all times relevant hereto, has been a resident of Prince William County. Shorts purchased Defendant's powdered infant formula products at the Walmart on Liberia Avenue in Manassas, Virginia, including the Contaminated Products. During that time, based on the false and misleading

claims by Defendant, Shorts was unaware that the Contaminated Products may be adulterated with harmful microbes. Shorts purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Shorts would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Shorts suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Shorts further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Shorts also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Shorts would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Shorts also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

West Virginia

57.     Plaintiff Amber Hamrick ("Hamrick") is a citizen and resident of Morgantown, West Virginia. At all times relevant hereto, has was a citizen and resident of the Monongalia County. Hamrick purchased Defendant's powdered infant formula products from October 2021 until

February 2022, including the Contaminated Products, at Walmart located at 5606 University Towncenter Dr. Morgantown, West Virginia 26501 and Kroger located at 350 Patterson Dr. Morgantown, West Virginia 26505. During that time, based on the false and misleading claims by Defendant, Hamrick was unaware that the Contaminated Products may be adulterated with harmful microbes. Hamrick purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Hamrick would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place. As a result, Hamrick suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Hamrick further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Hamrick also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Hamrick would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Hamrick also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of nutritional support.

Wisconsin

58.     Plaintiff Suzanne Rudd is a citizen and resident of Tomah, Wisconsin and at all times relevant hereto, has been a resident of Monroe County. Rudd regularly purchased Defendant's powdered infant formula products and in or around February 2022 purchased the Contaminated Products. At the time, based on the false and misleading claims by Defendant, Rudd was unaware that the Contaminated Products may be adulterated with harmful microbes. Rudd purchased the Contaminated Products on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective. Rudd would not have purchased the Contaminated Products had she known there was a risk the products may contain harmful microbes. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.  As a result, Rudd suffered injury in fact when she spent money to purchase the Contaminated Products, which she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Rudd further suffered injury in fact as such the Contaminated Products had diminished value due to the presence of alleged bacterial contamination and because they could not be used (consumed) or resold. Rudd also experienced hardship from the resulting nationwide infant formula shortage, as, she was required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and was forced to pay more than she would have otherwise paid for infant formula if the contamination and her inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States. Rudd would purchase the infant formula products again in the future if assured that the products are not contaminated and conform to the representations on the product labels regarding benefit, quality, and safety. Rudd also anticipates purchasing Defendant's products to provide her growing child with essential vitamins and minerals, and a continuity of

nutritional support.

## Defendant

59.     Defendant Abbott Laboratories, Inc. dba Abbott Nutrition, is a corporation organized and existing under the laws of the State of Illinois and maintains its principal place of business at 100 Abbott Park Road, North Chicago, Lake County, Illinois 60064.

60.     Abbott is the leading supplier of milk formula in the United States. [3] Abbott manufactures, markets, advertises, labels, distributes and sells several infant formulas, including the Contaminated Products, under the brand names Similac®, Alimentum® and EleCare®.

## FACTS COMMON TO ALL CLAIMS

### Abbott's Nutrition Products and Powdered Infant Formulas

61.     Abbott Laboratories is an American multinational medical devices and health care company with its headquarters in Abbott Park, Illinois, United States. Abbott was founded 130 years ago, and its products are currently distributed and sold in over 160 countries. [4] In 2021, Abbott Laboratories' gross sales were $43.1 billion USD. [5]

62.     Abbott's nutrition division (Abbott Nutrition) was created in 1903, and, since that time, Abbott has earned consumer's trust as the number one seller of pediatric nutrition products. [6]

63.     According to the Global Infant Formula Market Report 2021-2025, Abbott is considered one of the most dominant players in the baby formula market, which is expected to be

---

[3] https://www.reuters.com/business/healthcare-pharmaceuticals/abbott-could-restart-infant-formula-production-michigan-plant-2022-05-11/ (last visited Sept. 28, 2022).

[4] https://dam.abbott.com/en-us/abbottcorpnews/pdf/Corporate-Fact-Sheet.pdf (last visited October 2, 2022).

[5] *Id.*

[6] See, https://dam.abbott.com/global/documents/pdfs/newsroom/Abbott_FactSheet_Nutrition_2015.pdf (last visited October 2, 2022).

valued at $93 billion by the year 2025.[7]

64.     Abbott, through Abbott Nutrition, was and is engaged in the manufacture, distribution, marketing, and sale of several powdered infant formula brands, including the Contaminated Product brands Similac®, Similac PM 60/40 ®, Alimentum® and EleCare®.

65.     Abbott's products are marketed, distributed, and sold in a uniform manner throughout the United States, and are available for purchase at thousands of retail locations and online through Abbott's website and other major retailers such as Walmart, Target, and Amazon.

66.     Consumer trust is a valuable asset to Abbott, which holds itself out as a safe and responsible company that is committed to scientific research and to "nourishing every stage of life":

> Every day, our team of passionate scientists and experts works hard to discover and develop nutrition products that better life for people of all ages.

> As a leader in nutrition science, research and development, our goal is to deliver nutrition products and education that meet the changing needs of families across the world.[8]

67.     Abbott, on its website and elsewhere, emphasizes its commitment to developing and manufacturing nutrition products that are safe for infants to consume:

> We make products to help babies and children grow, that work to keep bodies strong, and that support the unique nutritional and therapeutic needs of adults.

> Nutrition is the foundation to healthy living and here at Abbott Nutrition, we provide resources to help people live their best life[9]

68.     Despite these and other representations about the safety of its products, and with

---

[7] https://www.businesswire.com/news/home/20210309005489/en/Global-Infant-Formula-Market-Report-2021-2025-Featuring-Nestle-S.A.-Danone-S.A.-Abbott-Laboratories-Royal-FrieslandCampina-N.V-Reckitt-Benckiser-and-Kraft-Heinz---ResearchAndMarkets.com (last visited October 2, 2022).

[8] https://nutrition.abbott/in/about-us (last visited October 2, 2022).

[9] *Id*.

knowledge or reckless disregard, Abbott marketed, distributed, and sold contaminated infant formulas throughout the United States, including in the states of Arizona, Arkansas, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, New York, Nevada, North Carolina, Ohio, Oregon, Pennsylvania, Puerto Rico, South Carolina, Tennessee, Texas, Virginia, West Virginia and Wisconsin.

## Specialty Infant Formulas

69.     In addition to the Similac product line, Abbott manufactures, markets, distributes, and sells several different types of specialty infant formula products.

70.     Abbott advertises that its specialty infant formulas are a safe alternative for infants who suffer from pre-existing health conditions or severe food allergies, and, in doing so, targets an especially at-risk subset of an already vulnerable class of consumers.

EleCare Powdered Infant Formula

71.     Abbott's website and the product's front label advertise that EleCare is "#1 Recommended by Pediatric Gastroenterologists" and safe for "Severe Food Allergies and GI Disorders." Abbott also states that the products is "clinically shown to support the growth of exclusively formula-fed infants . . . EleCare helps manage symptoms of severe food allergies and various gastrointestinal (GI) conditions."[10]

72.     EleCare is advertised as "Hypoallergenic" and safe for infants with gastrointestinal conditions, and severe food allergies. Abbott, through its website and marketing materials states:

---

[10] https://elecare.com/product-information/elecare (Last visited October 2, 022).

Help your child—help yourself—feel better. Talk to your doctor about EleCare or EleCare Jr. They are amino acid-based, hypoallergenic formulas for infants and children with severe food allergies and various GI disorders.[11]



If your child has severe food allergies or a gastrointestinal (GI) disorder, mealtime isn't always a comforting occasion.

Help your child — and yourself — feel better. Talk to your doctor about EleCare or EleCare Jr. They are amino acid-based, hypoallergenic formulas for infants and children with severe food allergies and various GI disorders

*Figure 1 EleCare and EleCare Jr. Products*[12]

73.     Defendant also advertises and promotes EleCare as safe and effective for "dietary management" of the following:

For cows [*sic*] milk protein allergy and other severe food allergies

Eosinophilic Gastrointestinal Disorders (EGIDs) . . . chronic digestive system disorders in which certain food proteins trigger an overproduction of eosinophils (white blood cells that help fight certain infections) in different areas of the digestive tract.

Short Bowel Syndrome (SBS) . . . a group of problems affecting individuals who have lost the use of a major part of their small intestine."

Food Protein-Induced Enterocolitis Syndrome (FPIES) . . . an immune reaction in the gastrointestinal system to one or more specific foods. It's commonly characterized by profuse vomiting and diarrhea.

Malabsorption, and Other Conditions[13]

---

[11] https://elecare.com/conditions (last visited October 2, 2022).

[12] *Id*. (Defendant using Figure 1 for advertising and marketing purposes).

[13] https://elecare.com/conditions (last visited October 2, 2022).

74. EleCare costs $46.99 per 14.1 oz. canister. (Sales tax and shipping costs excluded).[14]

Similac PM 60/40 Powdered Infant Formula

75. Abbott's website and Similac PM 60/40's packaging advertise that the product is designed "[f]or infants who would benefit from lowered mineral intake, including those with impaired renal function. Calcium-to-phosphorus ratio and content designed to manage serum calcium disorders - both hypercalcemia and hypocalcemia due to hyperphosphatemia."[15]



*Figure 2: Similac PM 60/40*[16]

76. Similac PM 60/40 is sold by the case, which includes six 14.1-ounce cans, and costs $93.00 (sales tax and shipping costs excluded).[17]

---

[14] https://abbottstore.com/infant-and-child/elecare/elecare/elecare-powder/elecare-14-1-oz-can-55251e.html (last visited October 2, 2022).

[15] https://abbottstore.com/infant-and-child/similac/similac-pm-60/similac-pm-60-40-infant-formula-powder-14-1-oz-can-case-of-6-00850.html (last visited October 2, 2022).

[16] *Id.* (Defendant using Figure 2 for advertising and marketing purposes).

[17] *Id.*

Similac Alimentum Powdered Infant Formula

77.     Similac Alimentum is advertised and promoted as "suitable for lactose sensitivity and has broken-down protein that is easy to digest for babies with food allergies or colic due to protein sensitivity;" containing "an immune-nourishing ingredient" and as reducing "excessive crying and colic symptoms due to protein sensitivity within 24 hours."[18]



*Figure 3: Similac Alimentum[19]*

78.     Similac Alimentum was sold in 12.1-ounce cans and costs $29.49 per can (sales tax and shipping costs excluded).[20]

**Sturgis Facility and FDA Investigation**

79.     Over the years, the FDA conducted several inspections of Abbott's Sturgis facility, which have uncovered numerous, egregious violations of statutes and regulations set forth herein

---

[18] https://abbottstore.com/infant-and-child/similac/similac-alimentum/similac-alimentum-infant-formula-powder/similac-alimentum-infant-formula-powder-12-1-oz-can-64715e.html (last visited October 2, 2022).

[19] *Id.* (Defendant using Figure 3 for advertising and marketing purposes).

[20] *Id.*

in Defendant's manufacture, processing, packing, and holding of Similac®, Similac PM 60/40 ®, Alimentum® and EleCare® powdered infant formulas.

80. As documented in the FDA Form 483 issued on September 24, 2019, Defendants failed to test a representative sample of an infant formula production aggregate of powered infant formula at the final product stage and before distribution to ensure that the production aggregate met the required microbiological quality standards.[21]

81. Additionally, Abbott's own records indicate that, in June 2020, it destroyed products because of a previous Cronobacter sakazakii contamination.

82. Subsequent inspections establish a pattern of Defendant's disregard of reasonable, responsible industry practices, as well as applicable statutes and regulations, with respect to manufacture, processing, packing, and holding of Similac, Alimentum and EleCare powdered infant formulas. As documented in the FDA Form 483 issued on September 24, 2021:

> a. Defendant failed to maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition; and
>
> b. Defendant's personnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated.[22]

83. At approximately the same time, the FDA issued an Establishment Inspection Report in September 2021 based on its inspections of Abbott's Sturgis, Michigan factory.[23] This report

---

[21] https://www.fda.gov/media/157319/download (last visited October 2, 2022).

[22] https://www.fda.gov/media/157317/download (last visited October 2, 2022).

[23] *New York Times*, https://int.nyt.com/data/documenttools/abbott-nutritions-fei-1815692-9-2021-eir/c47a8151d05b513a/full.pdf (last visited October 11, 2022).

set forth that Abbott received at least 17 complaints over its powdered infant formula products between September 1, 2019 and September 20, 2021, of which at least 15 related to infants having contracted Salmonella and another for Cronobacter.  The same report also described finding Cronobacter in at least two batches of Abbott's finished powdered infant product on September 25, 2019 as well as in 5 different environmental samples.

84.     The Minnesota Department of Health investigated a case of an infant who was sickened by Cronobacter sakazakii in September 2021.[24]

85.     Minnesota state health officials "knew that the infant had consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Michigan, and shared this information with the FDA and CDC in September.[25]

86.     The FDA received reports of the first illness on September 21, 2021, and the agency notified Abbott Laboratories the following day on September 22, 2022.[26]

87.     Two more reports of Cronobacter sakazakii happened sometime between September and December, according to FDA.[27]

88.     On January 31, 2022, the FDA found "several positive Cronobacter results" from environmental samples during an inspection of the Sturgis facility, and an FDA review of Abbott's internal documents indicated that Abbott Laboratories previously destroyed infant formulas in connection with the contamination issue.[28]

---

[24] https://www.politico.com/news/2022/02/18/fda-infant-formula-illness-four-months-before-recall-00010226 (last visited October 2, 2022).

[25] *Id.*

[26] https://www.politico.com/news/2022/02/26/senators-demand-answers-from-abbott-on-infant-formula-recall-00012073?cid=apn (last visited October 2, 2022).

[27] *Id*.

[28] *Id*.

89.     The FDA also received one complaint of an infant with Salmonella infection who consumed formula from the Sturgis facility. However, they later concluded there is not enough information available to definitively link the illness with the recalled infant formula.[29]

90.     On February 17, 2022, the FDA, in conjunction with the CDC, announced a warning to consumers to not purchase or use the Contaminated Products.[30]

91.     As part of the warning, the FDA Deputy Commissioner for Food Policy and Response stated:

> As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections. We want to reassure the public that we're working diligently with our partners to investigate complaints related to these products, which we recognize include infant formula produced at this facility, while we work to resolve this safety concern as quickly as possible.[31]

92.     Abbott's took no action for nearly five months after it learned about the first reported illness, potential contamination issues at the Sturgis Facility, and the FDA inspection which indicated that there were serious noncompliance issues at the Sturgis Facility.[32] Only then did Abbott announce that it had found evidence of Cronobacter sakazakii in the non-product contact areas of the Sturgis Facility.

93.     Abbott has not explained why it waited nearly five months to make this announcement or warn consumers about the inherent risk of products manufactured at the Sturgis Facility.

94.     Cronobacter bacteria can cause severe, life-threatening infections (sepsis) or meningitis

---

[29] https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited October 2, 2022).

[30] *Id.*

[31] https://thehill.com/policy/healthcare/public-global-health/594856-three-kinds-of-baby-formula-recalled-by-abbott/ (last visited April 28, 2022).

[32] *See* https://www.cdc.gov/cronobacter/outbreaks/infant-formula.html (last visited October 2, 2022).

(an inflammation of the membranes that protect the brain and spine).[33]

95.    Cronobacter bacteria can get into formula powder if contaminated raw materials are used to make the formula or if the formula powder touches a contaminated surface in the manufacturing environment.

96.    Cronobacter bacteria can cause severe, life-threatening infections, meningitis, and symptoms include: poor feeding, irritability, temperature changes, jaundice, grunting, and abnormal body movements.  As set forth by the Centers for Disease Control and Prevention:

> Infants (<12 months old): In infants, Cronobacter usually causes sepsis or severe meningitis. Some infants may experience seizures. Those with meningitis may develop brain abscesses or infarcts, hydrocephalus, or other serious complications that can cause long-term neurological problems. The mortality rate for Cronobacter meningitis may be as high as 40%.[34]

Other sources have described the mortality rate reaching as high as 80%.[35]

97.    As reported in medical and scientific literature:

> Among C. sakazakii infant case consultations conducted by CDC during 1998–2005, 92% of infants for whom information on feeding practices were available had received a PIF product.[36]

98.    Specifically, the FDA announced that it is investigating consumer complaints of Cronobacter sakazakii and Salmonella Newport infections connected to powdered infant formula products produced by Abbott.

99.    Symptoms of sepsis and meningitis may include poor feeding, irritability, temperature

---

[33] https://www.cdc.gov/cronobacter/outbreaks/infant-formula.html (last visited October 2, 2022).

[34] CDC.gov, https://www.cdc.gov/cronobacter/technical.html (last accessed on March 25, 2022).

[35] Norberg S, Stanton C, Ross RP, Hill C, Fitzgerald GF, Cotter PD. Cronobacter spp. in powdered infant formula. J Food Prot. 2012 Mar;75(3):607-20. doi: 10.4315/0362-028X.JFP-11-285. PMID: 22410240.

[36] Kalyantanda G, Shumyak L and Archibald LK, (2015) Cronobacter species contamination of powdered infant formula and the implications for neonatal health. *Front. Pediatr.* 3:56. doi:10.3389/fped.2015.00056.

changes, jaundice (yellow skin and whites of the eyes), grunting breaths, abnormal movements, and even death.[37]

100.     Cronobacter infection may also cause bowel damage and may spread through the blood to other parts of the body.[38]

101.     Salmonella are a group of bacteria that can cause gastrointestinal illness and fever called salmonellosis. Most people with salmonellosis develop diarrhea, fever and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases, may become fatal.[39]

102.     Around the time of a second infant death, on February 25, 2022, Senator Patty Murray of Washington and Senator Bob Casey of Pennsylvania demanded Abbott Nutrition hand over information and documents related to the company's Contaminated Infant Formulas.[40]

103.     As documented in the FDA Form 483 issued on March 18, 2022:

   a.     Defendant failed to set in place and/or maintain a system of process controls that cover all stages of infant formula processing to ensure the product does not become adulterated due to the presence of microorganisms (such as cronobacter) in the formula or in the processing environment;

   b.     Defendant further failed to ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated with microorganisms, (such as cronobacter);

---

[37] https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited October 2, 2022).

[38] *Id.*

[39] *Id.*

[40] https://www.politico.com/news/2022/02/26/senators-demand-answers-from-abbott-on-infant-formula-recall-00012073 (last visited October 2, 2022).

c.  Defendant failed to document any determination as to whether a hazard to health exists due to contamination with microorganisms (such as cronobacter);

d.  Defendant's personnel that worked directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces failed to wear necessary protective apparel.[41]

104.  While initially the FDA reported that two children had died and two others were sickened after consuming formula from the Sturgis plant that contained Cronobacter sakazakii, Agency documents received via public records requests indicate the Agency had investigated seven additional deaths of children following their ingestion of Abbott formula produced at the Sturgis plant since 2021.[42]  The FDA investigated 128 consumer complaints collected by the FDA between December 2021 and March 2022, including 25 described as "life-threatening illness/injury."[43]  These additional complaints include reports of multiple forms of infection, inclusive of Cronobacter sakazakii, Proteus mirabilis, COVID-19, Salmonella, CDIFF (Clostridioides difficile), Shigella, astrovirus, and "shigelloides."  Two of the deaths reported mentioned Salmonella.

105.  Further, a whistleblower report dated October 19, 2021, noted that violations taking place at the Sturgis Facility were "neither inadvertent nor minor in nature." Attached as **Exhibit A** to this Complaint. Further findings from that report include:

---

[41] https://www.fda.gov/media/157708/download https://www.similacrecall.com/us/en/home.html (last visited October 2, 2022).

[42] Phyllis Entis, "Nine baby deaths reported to FDA during Abbott Nutrition investigation," efoodalert.com (June 8, 2022),  https://efoodalert.com/2022/06/08/nine-baby-deaths-reported-to-fda-during-abbott-nutrition-investigation.  See also the FDA spreadsheet of Abbott Complaints received by the article's author pursuant to a Freedom of Information Act Request. Id. (available at https://efoodalert.files.wordpress.com/2022/06/abbott-complaints-spreadsheet-redacted.pdf)(last accessed on June 21, 2022).

[43] *Id.*

> On multiple occasions, and in various ways, records have been knowingly falsified… This included testing seals on empty cans…

> The Sturgis site performed a time code removal after the discovery of microorganisms ("micros") in a batch of infant formula. The remaining portion of the batch outside the time code removal was released without additional testing. On another occasion product was not re-called from the market even after management became aware of a nonconformity ("NC").

> Aside from the mandate of FDA regulations, Abbott's inaction is directly at odds with the mandate of Sarbanes-Oxley mandating adequate internal controls and the Department of Justice's policy mandating effective compliance programs.

106. The whistleblower report sets forth Abbott's failures with regard to maintaining sanitary conditions, testing outgoing product, as well as falsifying records and concealing information from regulators.[44] The whistleblower's account corroborates many of the deficient food safety practices described in the FDA's 2019, 2021, and 2022 Form 483 reports as set forth herein.

107. Abbott was alerted to the whistleblower's complaint about its Sturgis-based factory as far back as February 2021. Despite this, Abbott delayed action for another year.

108. Defendant's conduct therefore represents a repeated, conscious disregard for the safety and lives of among the most vulnerable individuals—infants—that rises to the level of recklessness, wantonness, and malice.

109. On May 16, 2022, the U.S. Department of Justice ("DOJ") announced its filing of a Complaint and proposed consent decree applicable to Abbott's Sturgis plant.[45] As the DOJ

---

[44] The whistleblower report was posted on Marler Blog. *See* Bill Marler, "Mr. Abbott, you are going to jail for manufacturing tainted infant formula," Marler Blog (April 28, 2022) available at https://www.marlerblog.com/lawyer-oped/mr-abbott-you-are-going-to-jail-for-manufacturing-tainted-infant-formula/ (last accessed on May 16, 2022) (hereafter referred to as "Whistleblower Report").

[45] DOJ, "Justice Department Files Complaint and Proposed Consent Decree to Ensure Safety of Abbott Laboratories' Infant Formula" (May 16, 2022) available at https://www.justice.gov/opa/pr/justice-

explains in the Complaint:

> Ongoing inadequacies in manufacturing conditions and practices at Defendants'
> facilities demonstrate that Defendants have been unwilling or unable to implement
> sustainable corrective actions to ensure the safety and quality of food manufactured
> for infants, a consumer group particularly vulnerable to foodborne pathogens.
> Defendants' violations of the Act and the likelihood that violations will recur in the
> absence of court action demonstrate that injunctive relief is necessary.[46]

110.    Abbott eventually joined the DOJ's consent decree that incorporates numerous

violations of statutes and regulations by Abbott in relation to its management of the Sturgis plant,

such as:

> The Complaint alleges that Defendants violate 21 U.S.C. § 331(a) by introducing
> or causing to be introduced, or delivering or causing to be delivered for
> introduction, into interstate commerce articles of food that are adulterated within
> the meaning of 21 U.S.C.§ 342(a)(4).

> The Complaint alleges that Defendants violate 21 U.S.C. § 331(a) by introducing
> or causing to be introduced, or delivering or causing to be delivered for
> introduction, into interstate commerce articles of food, namely infant formula as
> defined in 21 U.S.C. § 321(z), that are adulterated within the meaning of 21 U.S.C.
> § 350a(a)(3), 21 U.S.C. § 350a(b)(2), and 21 C.F.R. Part 106.

> The Complaint alleges that Defendants violate 21 U.S.C. § 331(k) by causing
> articles of food that are held for sale after shipment of one or more of their
> components in interstate commerce to become adulterated within the meaning of
> 21 U.S.C. § 342(a)(4).

> The Complaint alleges that Defendants violate 21 U.S.C. § 331(k) by causing
> articles of food, namely infant formula as defined in 21 U.S.C. § 321(z), that are
> held for sale after shipment of one or more of their components in interstate
> commerce to become adulterated within the meaning of 21 U.S.C. § 350a(a)(3).[47]

111.    During a hearing before two subcommittees of the United States House of

---

department-files-complaint-and-proposed-consent-decree-ensure-safety-abbott (last accessed on May 16,
2022).

[46] Complaint for Permanent Injunction at 4, ECF 1, 1:22-cv-00441 (W.D. Mich. May 16, 2022), available
at https://www.justice.gov/opa/press-release/file/1506081/download (last accessed on May 16, 2022).

[47] Proposed Consent Decree at 1-2, ECF 2-1, 1:22-cv-00441 (W.D. Mich. May 16, 2022), available at
file://serverdata/UserProfiles$/sgeisler/Desktop/abbott_proposed_consent_decree_0.pdf (last accessed on
May 16, 2022); *U.S. v. Abbott Lab.*, et al., 1:22-cv-00441 (W.D. Mich. May 16, 2022) (J. Hala Jarbou)

Representatives that related to Abbott's production of infant formula FDA Commissioner Robert

Califf, M.D., described the conditions at the Sturgis, Michigan plant:

> Let's say you had a next-door neighbor who had leaks in the roof, they didn't wash
> their hands, they have bacteria growing all over the kitchen. You walked in, and
> there was standing water on the counters and the floor, and the kids were walking
> through with mud on their shoes and no one cleaning it up. You probably wouldn't
> want your infant eating in that kitchen. And that's in essence what the inspection
> showed."[48]

112. Dr. Califf further described "shocking" and "egregiously unsanitary" structural and

equipment issues.[49]

113. During a joint media conference, Dr. Califf joined Director of FDA's Center for

Food Safety and Applied Nutrition, Dr. Susan Mayne, and FDA's Deputy Commissioner for Food

Policy, Frank Yiannas. Dr. Mayne disputed Abbott's claims that the FDA's findings represented

a rejection of any link between Abbott's Sturgis Factory and the sickened infants, stating:

> We had multiple strains of Cronobacter that were isolated from the environment in
> the Sturgis plant. So there certainly is the possibility that other strains that we didn't
> detect at the time we were in the plant for the inspection certainly could have been
> in there.[50]

114. Deputy Commissioner Frank Yiannas cautioned the public "not to read too much

into the fact that there's been negative test results of finished product or that there hasn't been a

genetic link established."[51] As he further explained, "It's important to remember that an over

reliance on end product testing is not really the best way to assure food safety. It's really about

---

[48] NPR.org, https://www.npr.org/2022/05/25/1101307685/2-house-subcommittees-are-trying-to-get-answers-about-the-baby-formula-shortage (last accessed on Oct. 11, 2022).

[49] Delauro.house.gov, https://delauro.house.gov/media-center/press-releases/delauro-statement-abbott-facility-reopening (last access on October 11, 2022).

[50] YouTube.com, https://www.youtube.com/watch?app=desktop&v=uFg9mpDDuzk (last access October 11, 2022).

[51] Id.

process control."[52]

115.     The evidence set forth herein demonstrates a pattern of Defendant not only failing to take adequate, reasonable measures to protect the health and lives of infants consuming its powdered infant formula products, but also failing to take even the common-sense measures, such as washing hands, upon learning of the risk of contamination of its products with microorganisms. Abbott, therefore:

      a.  Had knowledge that its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant had been contaminated with microorganisms, (such as Cronobacter sakazakii);

      b.  Failed to adequately test for Cronobacter sakazakii and other contaminants in its powdered infant formula;

      c.  Failed to ensure numerous controls were in place to prevent contamination of its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant.

**Harm to Plaintiffs and other Consumers**

116.     As descried herein, Abbott, through its acts and omissions, violated state statutes, equity and common law.

117.     Each of the Plaintiffs in this action purchased Defendant's powdered infant formula products, including the Contaminated Products, on the assumption that the labeling was accurate and that the Contaminated Products were unadulterated, safe, and effective and would not have purchased the Contaminated Products if they had known that the products were contaminated

---

[52] *Id.*

66

with—or at substantial risk of being contaminated with—Cronobacter sakazakii, Salmonella, and/or other harmful bacteria at the time of purchase.

118.  Abbott continued distributing and selling the Contaminated Products for nearly five months after it had learned about the first infant illness before the first recall and FDA inspections indicated that the Sturgis Facility was unfit for the safe manufacture of infant formulas.

119.  Under the circumstances that existed, no sales of the Contaminated Products should have taken place. Furthermore, Abbott should have alerted or otherwise warned consumers that harmful bacteria was discovered at the Sturgis Facility in September 2021, but it concealed this fact for nearly five months. Throughout this time period, Abbott fraudulently misrepresented that the Contaminated Products were safe for consumption.

120.  Each of the Plaintiff's paid full retail value price for the Contaminated Products, based on the false and misleading claims by Defendant.  Under the circumstances that existed, no sales of the Contaminated Products should have taken place, and thus a full refund is applicable.

121.  Assuming the Products had any value, that value had diminished due to the possibility, likelihood or presence of alleged bacterial contamination and because they could not reasonably be used (consumed) or resold.

122.  The Plaintiffs also experienced hardship from the resulting nationwide infant formula shortage, as they were required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and were forced to pay more than they would have otherwise paid for infant formula if an inability to use the Contaminated Products, had not driven the infant and toddler formula shortage in the United States.[53]

---

[53] See https://www.reuters.com/business/healthcare-pharmaceuticals/abbott-could-restart-infant-formula-production-michigan-plant-2022-05-11/ (last visited October 2, 2022).

123.     Each of the Plaintiffs in these actions seeks a full refund, or alternatively a partial refund equal to the diminished value of the Contaminated Products, including any and all other damages and available relief for the injuries they have sustained as a result of Abbott's false and misleading claims with respect to the defective and Contaminated Products. Under the circumstances that existed, no sales of the products should have taken place.

## CLASS ALLEGATIONS

124.     Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals (the "Class" or "Classes") pursuant to Rule 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Classes against Defendant for violations of state laws:

### National Class

All consumers who purchased a Contaminated Product in the United States of America and its territories from April 1, 2021 to the present for personal use or consumption.

### Illinois Class

All consumers who purchased a Contaminated Product in the State of Illinois from April 1, 2021 to the present for personal use or consumption.

### Arizona Class

All consumers who purchased a Contaminated Product in the State of Arizona from April 1, 2021 to the present for personal use or consumption.

### Arkansas Class

All consumers who purchased a Contaminated Product in the State of Arkansas from April 1, 2021 to the present for personal use or consumption.

### California Class

All consumers who purchased a Contaminated Product in the State of California from April 1, 2021 to the present for personal use or consumption.

## Connecticut Class

All consumers who purchased a Contaminated Product in the State of Connecticut from April 1, 2021 to the present for personal use or consumption.

## Delaware Class

All consumers who purchased a Contaminated Product in the State of Delaware from April 1, 2021 to the present for personal use or consumption.

## Florida Class

All consumers who purchased a Contaminated Product in the State of Florida from April 1, 2021 to the present for personal use or consumption.

## Georgia Class

All consumers who purchased a Contaminated Product in the State of Georgia from April 1, 2021 to the present for personal use or consumption.

## Indiana Class

All consumers who purchased a Contaminated Product in the State of Indiana from April 1, 2021 to the present for personal use or consumption.

## Iowa Class

All consumers who purchased a Contaminated Product in the State of Iowa from April 1, 2021 to the present for personal use or consumption.

## Kansas Class

All consumers who purchased a Contaminated Product in the State of Kansas from April 1, 2021 to the present for personal use or consumption.

## Kentucky Class

All consumers who purchased a Contaminated Product in the State of Kentucky from April 1, 2021 to the present for personal use or consumption.

## Louisiana Class

All consumers who purchased a Contaminated Product in the State of Louisiana from April 1, 2021 to the present for personal use or consumption.

### Maryland Class

All consumers who purchased a Contaminated Product in the State of Maryland from April 1, 2021 to the present for personal use or consumption.

### Michigan Class

All consumers who purchased a Contaminated Product in the State of Michigan from April 1, 2021 to the present for personal use or consumption.

### Minnesota Class

All consumers who purchased a Contaminated Product in the State of Minnesota from April 1, 2021 to the present for personal use or consumption.

### Missouri Class

All consumers who purchased a Contaminated Product in the State of Missouri from April 1, 2021 to the present for personal use or consumption.

### Nevada Class

All consumers who purchased a Contaminated Product in the State of Nevada from April 1, 2021 to the present for personal use or consumption.

### New York Class

All consumers who purchased a Contaminated Product in the State of New York from April 1, 2021 to the present for personal use or consumption.

### North Carolina Class

All consumers who purchased a Contaminated Product in the State of North Carolina from April 1, 2021 to the present for personal use or consumption.

### Oregon Class

All consumers who purchased a Contaminated Product in the State of Oregon from April 1, 2021 to the present for personal use or consumption.

### Ohio Class

All consumers who purchased a Contaminated Product in the State of Ohio from April 1, 2021 to the present for personal use or consumption.

### Pennsylvania Class

All consumers who purchased a Contaminated Product in the State of Pennsylvania from April 1, 2021 to the present for personal use or consumption.

### Puerto Rico Class

All consumers who purchased a Contaminated Product in the United States territory of Puerto Rico from April 1, 2021 to the present for personal use or consumption.

### South Carolina Class

All consumers who purchased a Contaminated Product in the State of South Carolina from April 1, 2021 to the present for personal use or consumption.

### Tennessee Class

All consumers who purchased a Contaminated Product in the State of Tennessee from April 1, 2021 to the present for personal use or consumption.

### Texas Class

All consumers who purchased a Contaminated Product in the State of Texas from April 1, 2021 to the present for personal use or consumption.

### Virginia Class

All consumers who purchased a Contaminated Product in the State of Virginia from April 1, 2021 to the present for personal use or consumption.

### West Virginia Class

All consumers who purchased a Contaminated Product in the State of West Virginia from April 1, 2021 to the present for personal use or consumption.

### Wisconsin Class

All consumers who purchased a Contaminated Product in the State of Wisconsin from April 1, 2021 to the present for personal use or consumption.

125.    Excluded from each of the classes above are consumers who allege personal bodily injury resulting from the use of a Contaminated Product. Also excluded are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-

conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

126.    The class definitions identify unnamed class members by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendant. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class through notice published online through internet positing and/or publication.

127.    *Numerosity – Federal Rule of Civil Procedure 23(a)(1).* The members of each of the proposed class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiffs, and can only be determined through appropriate discovery, Plaintiffs are informed and believe that each of the proposed classes contain thousands of purchasers of the Contaminated Products who have been damaged by Defendant's conduct as alleged herein.

128.    *Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).* Plaintiffs' claims raise questions of law and fact common to all members of the proposed classes, and they predominate over any questions affecting only individual class members. The claims of Plaintiffs and all prospective class members involve the same alleged defect. These common legal and factual questions include the following:

      a.    Whether Defendant was unjustly enriched by the sale of Contaminated Products;

      b.    Whether Defendant was negligent in selling the Contaminated Products;

      c.    Whether the Contaminated Products fail under the implied warranty of usability;

      d.    Whether Defendant failed to reasonably warn consumers regarding the risks of the Contaminated Products;

e. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Contaminated Products are deceptive;

f. Whether Defendant's actions violate the state consumer protection statutes invoked below;

g. Whether Defendant's alleged conduct violates public policy;

h. The appropriate nature of class-wide equitable relief; and

i. The proper method or methods to determine and measure Plaintiffs' and the class' damages.

129.    *Typicality – Federal Rule of Civil Procedure 23(a)(3).* Plaintiffs' claims are typical to those of the other members of the classes because all class members are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied each and every Contaminated Product. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the classes. Further, there are no defenses available to Defendant that are unique to Plaintiffs or to any particular class members.

130.    *Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).* Plaintiffs will fairly and adequately protect the interests of the proposed classes. Plaintiffs have retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of each representative Plaintiff and the classes they seek to represent that would make class certification inappropriate. Additionally, Plaintiffs' Counsel are competent to advance the interests of the Class having been designated as Lead Counsel in dozens, if not hundreds, of class cases. Plaintiffs and their Counsel intend to prosecute this action vigorously.

131.     *Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).* Absent a representative class action, members of the classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

132.     *Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).* The classes also may be certified because Defendant has acted or refused to act on grounds applicable to the classes, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the classes as a whole. Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entirety of each of the classes, on grounds generally applicable to the classes, to enjoin and prevent Defendant from engaging in the acts described above and requiring Defendant to provide a full refund of the purchase price of the Contaminated Products to Plaintiffs and members of the classes.

133.     *Superiority – Federal Rule of Civil Procedure 23(b)(3).* A class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for the Plaintiffs and the class members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of the Class could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to

individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In particular, for every count pleaded below, calculations of damages are susceptible to well-established class wide damage modeling methods.

134. In contrast, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party (or parties) opposing the class and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiffs and the class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

**FIRST CLAIM FOR RELIEF**

**Violation of Illinois's Consumer Fraud and Deceptive Business Practices Act**

**85 Ill. Comp. Stat. 505/1—505/12**

**(On Behalf of Plaintiff Ray, the Nationwide Class, and the Illinois Class)**

135. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

136. Plaintiff Ray brings this Count individually, on behalf of the Nationwide Class and on behalf of the Illinois Class.

137. Ray and the Nationwide and Illinois classes have standing to pursue a cause of action for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, because Ray and the members of the Nationwide and Illinois classes have

75

suffered an injury in fact and lost money as a result of Defendant's actions as set forth herein.

138.     The ICFA prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose. 815 ILCS 505/11a.

139.     The IFCA provides:

> § 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

140.     Illinois has expressly adopted the federal food labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food, drug and cosmetic labeling laws is an independent violation of Illinois law and actionable as such.

141.     Pursuant to 410 ILCS 620/11, "[a] food is misbranded – (a) If its labeling is false or misleading in any particular."  Specifically, sections 620/10 (Adulterated Food) and 620/11 were designed to prohibit food manufacturers and sellers from selling foods to consumers that may be injurious to their health, and from failing to reveal to consumers the consequences of consuming adulterated foods.

142.     Defendant's conduct, as described herein, violates ICFA because it violates public policy; is so oppressive that the consumer has little choice but to submit; and causes consumers substantial injury.

143.     Defendant's conduct, including its representations that the Contaminated Products

76

were safe for infants to consume, constitutes a violation of the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in a course of conduct of trade or commerce.

144.    Defendant intended that Plaintiff Ray and each of the members of the National Class and the Illinois Class would rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

145.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that the Contaminated Products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

146.    Defendant omitted or concealed material facts about the safety and useable nature of its Contaminated Products.

147.    Defendant further knew or should have known that its representations of fact and omissions of fact concerning the Contaminated Products are material and likely to mislead consumers. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.

148.    Defendant advertised its products nationally, and Plaintiff Ray and each of the members of the National Class and the Illinois Class were deceived by Defendant's claims that, *inter alia,* the Contaminated Products "keep [infants] fed, happy, and healthy."

149.    Like Plaintiff Ray, the members of the National Class and the Illinois Class would not have purchased the Contaminated Products had they known that the Contaminated Products were not safe for infants to consume due to contamination risks identified at the Sturgis facility.

150. Because of Defendant's unfair and deceptive acts, Plaintiff Ray, and the members of the National Class and the Illinois Class were unable to use the Contaminated Products, and Defendant's the Contaminated Products had diminished or non-existent actual or resale value because they were contaminated and unsafe for consumption. Under the circumstances that existed, no sales of the products should have taken place.

151. Plaintiff Ray, and the members of the National Class and the Illinois Class have suffered ascertainable loss and actual damages.

152. Plaintiff Ray, and the members of the National Class and the Illinois Class did not receive the benefit of the bargain, and are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, *et seq*.

153. Through its deceptive practices, Defendant has improperly obtained and continues to improperly obtain and retain money from Plaintiff Ray and the members of the National Class and the Illinois Class.

154. The injury caused by Defendant's conduct could not reasonably have been avoided by consumers because they did not know and could not have known that the infant formula Products were adulterated with harmful microbes, particularly given that microorganisms such as Cronobacter sakazakii and Salmonella Newport are not listed on the infant formula Products' label.

155. Moreover, Defendant's deceptive practices involving the Contaminated Products were designed, established, and initiated from Defendant's marketing and sales agents located at Defendant's corporate headquarters in Illinois and were designed to be uniformly relied upon by consumers nationwide when they purchased the Contaminated Products thereby implicating the legitimate interest of the State of Illinois in ensuring that entities within its jurisdiction operate in accordance with Illinois law.

156.     Therefore, Illinois has a legitimate interest in applying its law to adjudicate this dispute and to ensure that its residents comply with its consumer protection laws while serving Illinois and out-of-state consumers. Accordingly, Illinois law has significant contacts to the claims asserted by the National Class so that application of its consumer fraud laws to all class claimants is not arbitrary, capricious, or unfair and is not a violation of due process.

157.     Plaintiff Ray on behalf of himself, the members of the National Class and the members of the Illinois Class seek relief under 815 ILCS § 505/10a, including, but not limited to injunctive relief, damages, restitution, punitive damages and attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF

### <u>Violation of Arizona's Consumer Fraud Act</u>

### Ariz. Rev. Stat. § 44-1521, *et seq.*

### (On Behalf of Plaintiff Dates and the Arizona Class)

158.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

159.     Plaintiff Dates brings this Count on behalf of herself and on behalf of the Arizona Class.

160.     The Arizona Consumer Fraud Act prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged." A.R.S. § 44-1522.

161.     Defendant engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the Arizona Consumer Fraud Act.

162.     The Arizona Supreme Court has declared that consumers have a private cause of action against a person who violates the Arizona Consumer Fraud Act. *See, Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 575-76 (1974).

163.     "The elements of a private cause of action under the act are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.,* 136 Ariz. 338, 342 (Ct. App. 1983).

164.     Defendant participated in unfair or deceptive trade practices that violated the Arizona Consumer Fraud Act as described herein and alleged throughout this Consolidated Complaint.  By concealing the true risks of the Contaminated Products, Defendant knowingly and intentionally misrepresented and omitted material facts in connection with the sale the Contaminated Products. Defendant systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Contaminated Products in the course of their business.

165.     Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Contaminated Products.

166.     For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

167.     Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated

80

Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

168.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

169.    Plaintiff Dates and the members of the Arizona Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

170.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

171.    Defendant knew that the risks inherent in the Contaminated Products made them not suitable for their intended use. Under the circumstances that existed, no sales of the Contaminated Products should have taken place.

172.    Had Plaintiff Dates and the members of the Arizona Class known the truth about the Contaminated Products, they would not have purchased the Contaminated Products. Plaintiff and the members of the Arizona Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

173.    Defendant owed Plaintiff Dates and the members of the Arizona Class a duty to disclose the truth about the Contaminated Products because Defendant: (a) possessed exclusive, specific and superior knowledge of the true risks of the Contaminated Products; (b) intentionally concealed the foregoing from Plaintiff dates and the members of the Arizona Class; and/or (c)

made incomplete representations regarding the Contaminated Products, while purposefully withholding material facts from Plaintiff Dates and the members of the Arizona Class that contradicted these representations.

174.    Plaintiff Dates and the members of the Arizona Class suffered monetary damages as a result of Defendants' conduct.

175.    Defendant's violations present a continuing risk to Plaintiff Dates and the members of the Arizona Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest, including public health.

176.    Plaintiff Dates, on behalf of himself and the members of the Arizona Class, seeks actual damages, punitive damages, attorneys' fees, costs and any other just and proper relief available under the Arizona Consumer Fraud Act and Arizona Law.

**THIRD CLAIM FOR RELIEF**

**<u>Violation of Arkansas Deceptive Trade Practices Act</u>**

**Ark. Code Ann. §§ 4-88-101, *et seq.***

**(On Behalf of Plaintiff Deffebaugh and the Arkansas Class)**

177.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

178.    The Arkansas Deceptive Trade Practices Act makes it unlawful to engage in "any deception, fraud, or false pretense" or "[t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission" "[w]hen utilized in connection with the sale or advertisement of any goods." Ark. Code Ann. § 4-88-108.

179.    Defendant engaged in unlawful deceptive and unconscionable trade practices, deception, fraud, or false pretense, and the concealment, suppression, or omission of any material

82

fact with intent that others rely upon that concealment, suppression, or omission, with respect to the sale and advertisement of the Contaminated Products purchased by Plaintiff Deffebaugh and the members of the Arkansas Class, in violation of Ark. Code Ann. §§ 4-88-101, *et seq.*, including by misrepresenting the true quality of the Contaminated Products, and concealing the true risks of the Contaminated Products.

180. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

181. Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

182. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

183. Abbott's conduct of manufacturing, producing, and selling Contaminated Products as alleged herein is a violation of the Arkansas Deceptive Trade Practices Act including but not limited to:

> (1) knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;

83

…

(3) advertising the goods or services with the intent not to sell them as advertised;

…

(10) engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade;

Ark. Code § 4-88-107(a).

184.    The deceptive and unconscionable trade practices listed in Ark. Code § 4-88-107(a) are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of the State of Arkansas. Ark. Code § 4-88-107(b).

185.    Plaintiff Deffebaugh and the members of the Arkansas Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

186.    The above unlawful acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

187.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Deffebaugh and the members of the Arkansas Class.

188.    Defendant's actions were material to Plaintiff Deffebaugh and the members of the Arkansas Class, who relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for the Contaminated Products had they known that the Contaminated Products were defective.

189.    As a direct and proximate result of Defendant's unlawful deceptive and unconscionable acts or practices, Plaintiff Deffebaugh and the members of the Arkansas Class suffered an ascertainable loss of money, as described above, including the past, present and future costs associated with replacement of the Contaminated Products.

84

190. Plaintiff Deffebaugh and the members of the Arkansas Class seek relief under Ark. Code Ann. § 4-88-113(f)(1)(A), including, but not limited to injunctive relief, restitution, statutory damages, compensatory damages, punitive damages, and attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**

**False and Misleading Advertising in Violation of California Law**

**Business & Professions Code §17500, *Et Seq*.**

**(By Plaintiffs Andaluz, Duqe, Lyons, and California Class)**

191. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

192. Plaintiffs Andaluz, Duqe, and Lyons bring this Count individually on behalf of themselves and on behalf of the California Class.

193. The California False Advertising Law prohibits the dissemination of any advertisement which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to by untrue or misleading. Cal. Bus. & Prof. Code §17500.

194. At all material times, Defendant engaged in a scheme of offering the Contaminated Products to Plaintiffs Andaluz, Duqe, and Lyons and other members of the California Class by way of commercial marketing, advertising, internet content, and other promotional materials.

195. These materials, advertisements, and other inducements misrepresented and/or omitted the true nature of the Contaminated Products as alleged herein. Specifically, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

196.     As set forth above, Defendant labels its products as healthy for babies when, in fact, the Contaminated Products are contaminated and injurious to babies.

197.     Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its advertisements and other inducements regarding its Contaminated Products were false, misleading, and/or deceptive.

198.     Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

199.     The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including to Plaintiffs Andaluz, Duqe, and Lyons and the other members of the California Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in the Contaminated Products, and thus were violations of Cal. Bus. Prof. Code §§ 17500, *et seq*

200.     Through its deceptive and/or misleading acts and practices, Defendant improperly obtained money from Plaintiffs Andaluz, Duqe, and Lyons and the other members of the California Class.

201.     Pursuant to Business & Professions Code §§17203 and 17535, Plaintiffs Andaluz, Duqe, and Lyons seek, on behalf of themselves and the other members of the California Class, an order of this Court awarding Plaintiffs Andaluz, Duqe, and Lyons and the other members of the California Class restitution of the money wrongfully acquired by Defendant and enjoining Defendant from continuing to violate California's False Advertising Law. Plaintiffs Andaluz,

86

Duqe, and Lyons further seek prejudgment interest on the money wrongfully acquired and withheld by Defendant pursuant to California Civil Code §3287(a) and attorneys' fees and costs pursuant to California Code Civil Procedure §1021.5.

**FIFTH CLAIM FOR RELIEF**

**Unfair Businesses Practices in Violation of California Law**

**Business & Professions Code §17200,** *et seq*.

**(By Plaintiffs Andaluz, Duqe, Lyons, and California Class)**

202.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

203.    Plaintiffs Andaluz, Duqe, and Lyons bring this Count individually on behalf of themselves and on behalf of the California Class.

204.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

205.    The acts and practices of Defendant as alleged herein constitute "unfair" business acts and practices under the California Unfair Competition Law in that Defendant's conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous. Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

206.    Defendant has been committing, and continues to commit, acts of unfair competition by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Consolidated Complaint, including, but not limited to:

a.    making false and misleading statements and material omissions including, as set forth above, representing that the Contaminated Products "give babies a strong start

by helping to keep them fed, happy, and healthy" when, in fact, they are contaminated and injurious to babies;

b. Concealing and failing to disclose the true risks of the Contaminated Products, despite engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula, as demonstrated in the FDA Forms 483 discussed herein;

c. Engaging in conduct, as alleged herein, where the utility of such conduct is outweighed by the gravity of the consequences to Plaintiffs Andaluz, Duqe, Lyons and other members of the California Class;

d. Engaging in conduct, as alleged herein, that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs Andaluz, Duqe, Lyons and other members of the California Class; and

e. Engaging in conduct, as alleged herein, that undermines or violates state consumer protection laws.

207. Plaintiffs Andaluz, Duqe, and Lyons reserve the right to identify additional unfair, fraudulent, and unlawful practices by Defendant as further investigation and discovery warrants.

208. As a result of its unlawful, unfair, and/or fraudulent business acts and practices, Defendant has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs Andaluz, Duqe, Lyons and other members of the California Class. Defendant's unlawful, unfair, and/or fraudulent conduct has also enabled Defendant to gain an unfair competitive advantage over its law-abiding competitors.

209. Plaintiffs Andaluz, Duqe, and Lyons and other members of the California Class have suffered injury in fact and have lost money as a result of Defendant's unfair, fraudulent and

88

unlawful business acts or practices.

210.    The above-described unfair business acts or practices present a threat and likelihood of harm and deception to Plaintiffs Andaluz, Duqe, and Lyons and other members of the California Class in that Defendant has systematically perpetrated the unfair, fraudulent and unlawful conduct upon members of the public by engaging in the conduct described herein.

211.    Business and Professions Code §17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of the unlawful, unfair, and/or fraudulent business acts or practices.

212.    Plaintiffs Andaluz, Duqe, and Lyons seek, on behalf of themselves and the other members of the California Class, an order of this Court awarding Plaintiffs Andaluz, Duqe, and Lyons and the other members of the California Class restitution of the money wrongfully acquired by Defendant and enjoining Defendant from the unlawful, unfair, and/or fraudulent activity alleged herein. Plaintiffs Andaluz, Duqe, and Lyons further seek prejudgment interest on the money wrongfully acquired and withheld by Defendant pursuant to California Civil Code §3287(a) and attorneys' fees and costs pursuant to California Code Civil Procedure §1021.5.

### SIXTH CLAIM FOR RELIEF

### Violation of the California Consumers Legal Remedies Act

### California Civil Code §1750, *et seq*.

### (By Plaintiffs Andaluz, Duqe, Lyons, and California Class)

213.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

214.    Plaintiffs Andaluz, Duqe, and Lyons bring this Count individually on behalf of themselves and on behalf of the California Class.

215.    The California Consumers Legal Remedies Act was enacted to protect consumers against unfair and deceptive business practices. The California Consumers Legal Remedies Act declares unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods to any consumer as unlawful. Cal. Civ. Code § 1770(a).

216.    Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class are "consumers" within the meaning of section 1761(d) of the California Civil Code, and engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the Contaminated Products.

217.    The Contaminated Products purchased by Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class constitute "goods" under Civil Code §1761(a).

218.    Defendant's conduct of manufacturing, producing, and selling the Contaminated Products as alleged herein violates the California Consumers Legal Remedies Act including, but not limited to:

> (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; …
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; …
>
> (6) Representing that goods are original or new if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand; …
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> (9) Advertising goods or services with intent not to sell them as advertised; and
>
> (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

Cal. Civ. Code § 1770.

219.     Defendant fraudulently deceived Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class by representing that the Contaminated Products have certain characteristics, benefits, uses and qualities which they do not have.  In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class, including but not limited to that the Contaminated Products promote health and are fit for consumption. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class and depriving them of their legal rights and money. Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class reasonably relied upon misrepresentations, misleading statements, deceptive practices, omissions, and false promises by Defendant, which resulted in injury to them.

220.     Defendant knew that the Contaminated Products were contaminated and not safe for consumption.  As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

221.     Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

222.     Defendant's violations of Civil Code § 1770 as described above present a continuing threat to the members of the California Class and members of the public in that Defendant continues to engage in these practices, and will not cease until an injunction is issued by the Court.

223.     Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class have suffered ascertainable losses of money because of defendant's unlawful conduct. The actual out-of-pocket losses of Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class were proximately caused by Defendant's violations of the California Consumers Legal Remedies Act.

224.     Pursuant to California Civil Code §1780(a) of the California Consumers Legal Remedies Act, Plaintiffs Andaluz, Duqe, and Lyons seek injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations. Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class shall be irreparably harmed if such an order is not granted.

225.     Plaintiffs Andaluz, Duqe, and Lyons have complied with the requirements of California Civil Code §1782(a) and therefore also seek, on behalf of themselves and the members of the California Class, damages under the California Consumers Legal Remedies Act and attorneys' fees and costs pursuant to California Civil Code §1780(d).

## SEVENTH CLAIM FOR RELIEF

### Violation of Connecticut Deceptive and Unfair Trade Practices Act

### Conn. Gen. Stat. § 42-110b, et seq.

### (On Behalf of Plaintiff Scully and the Connecticut Class)

226.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

227.     Plaintiff Scully brings this cause of action individually and on behalf of the members of the Connecticut Class.

228. The Connecticut Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110(b)(a).

229. Connecticut General Statutes, Section 42-110b, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

230. Connecticut General Statutes, Section 42-110g, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

231. Connecticut General Statutes, Section 42-110g(d), provides that the prevailing party in litigation arising from a cause of action under section 42-110g may be entitled to recover attorney's fees within the limitations set forth therein from the non-prevailing party.

232. Connecticut General Statutes, section 42-110g(a), states that a person has violated the CUTPA if she "engage[s] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-110g(c) further states that the Commissioner of Consumer Protection "may … establish by regulation acts, practices or methods which may be deemed to be unfair or deceptive in violation of subsection (a) of this section."

233. Defendant participated in unfair or deceptive trade practices that violated the Connecticut Unfair Trade Practices Act as described below and alleged throughout the Complaint. By concealing the true risks of the Contaminated Products, Defendant knowingly and intentionally misrepresented and omitted material facts in connection with the sale the Contaminated Products. Defendant systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Contaminated Products in the course of their business.

234. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

93

connection with the sale of the Contaminated Products.

235.     For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

236.     Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

237.     Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

238.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

239.     Defendant knew that the risks inherent in the Contaminated Products made them not suitable for their intended use.

240.     Defendant knew or should have known that its conduct violated the Connecticut Unfair Trade Practices Act.

241.     Defendant owed Plaintiff Scully and the members of the Connecticut Class a duty to disclose the truth about the Contaminated Products because Defendant: (a) possessed exclusive,

specific and superior knowledge of the true risks of the Contaminated Products; (b) intentionally concealed the foregoing from Plaintiff Scully and the members of the Connecticut Class; and/or (c) made incomplete representations regarding the Contaminated Products, while purposefully withholding material facts from Plaintiff Scully and the members of the Connecticut Class that contradicted these representations.

242.    Plaintiff Scully and the members of the Connecticut Class suffered monetary damages as a result of Defendant's conduct.

243.    Defendant's violations present a continuing risk to Plaintiff Scully and the members of the Connecticut Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest. Plaintiff Scully and the members of the Connecticut Class seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

244.    Defendant is liable to Plaintiff Scully and the members of the Connecticut Class for actual damages, punitive damages, equitable relief, attorneys' fees and costs.  Conn. Gen. Stat. § 42-110g(a), (d).

## EIGHTH CLAIM FOR RELIEF

### Violation of Delaware's Consumer Fraud Act

### Del. Code Ann. tit. 6, §§ 2511 through 2527, 2580 through 2584

### (On Behalf of Plaintiff Mason and the Delaware Class)

245.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

246.    Plaintiff Mason brings this cause of action individually and on behalf of the members of the Delaware Class.

247.    The Delaware Consumer Fraud Act prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise."  Del. Code Ann. § 2513.

248.    Defendant participated in unfair or deceptive trade practices that violated the Delaware Consumer Fraud Act as described below and alleged throughout this Consolidated Complaint.  By concealing the true risks of the Contaminated Products, Defendant knowingly and intentionally misrepresented and omitted material facts in connection with the sale the Contaminated Products. Defendant systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Contaminated Products in the course of its business.

249.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Contaminated Products.

250.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

251.    Defendant knew that the risks inherent in the Contaminated Products made them not suitable for their intended use.

252.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified

96

as an ingredient on the Contaminated Products' label.

253.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

254.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

255.    Plaintiff Mason and the members of the Delaware Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

256.    Defendant knew or should have known that its conduct violated the Delaware Consumer Fraud Act.

257.    Had Plaintiff Mason and the members of the Delaware Class known the truth about the Contaminated Products, they would not have purchased the Contaminated Products. Plaintiff Mason and the members of the Delaware Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

258.    Defendant owed Plaintiff Mason and the members of the Delaware Class a duty to disclose the truth about the Contaminated Products because Defendants: (a) possessed exclusive, specific and superior knowledge of the true risks of the Contaminated Products; (b) intentionally concealed the foregoing from Plaintiff Mason and the members of the Delaware Class; and/or (c) made incomplete representations regarding the Contaminated Products, while purposefully

withholding material facts from Plaintiff Mason and the members of the Delaware Class that contradicted these representations.

259. Defendant's violations present a continuing risk to Plaintiff Mason and the members of the Delaware Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

260. Defendant is liable to Plaintiff Mason and the members of the Delaware Class for all damages sustained. Del. Code Ann. § 2525.

## NINTH CLAIM FOR RELIEF

### Violation of Florida's Deceptive and Unfair Trade Practices Act

### Fla. Stat. §§ 501.201-213

### (On Behalf of Plaintiff Menendez, Quailes, Dodson and the Florida Class)

261. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

262. Plaintiffs Menendez, Quailes, Dodson bring this cause of action individually on behalf of themselves and on behalf of the members of the Florida Class.

263. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

264. Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

265. Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the

98

conduct of any trade or commerce illegal.

266.    Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

267.    Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein form the non-prevailing party.

268.    Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

269.    Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

270.    Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce infant formula products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

271.    At all relevant times, Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class were "consumers" within the meaning of the FDUTPA. § 501.203(7), Fla. Stat.

272.    Defendant's conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA. § 501.203(8), Fla. Stat.

273.    Defendant's omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class, acting reasonably under the circumstances, to their detriment by failing to the true risks of the Contaminated Products, Defendant violated FDUTPA.

99

274. Defendant failed to reveal facts that were material to Plaintiffs Menendez's, Quailes's, Dodson's and the members of the Florida Class's decisions to purchase the Contaminated Products, and Defendant intended that Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class would rely upon the omissions.

275. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

276. Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

277. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

278. Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

279. Defendant's actions impact the public interest because Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class were injured in exactly the same way as thousands of others purchasing Contaminated Products as a result of and pursuant to Defendant's generalized

course of deception. This conduct includes representing in their labels that their infant formula Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the infant formula Products are adulterated with microorganisms, such as Cronobacter sakazakii and Salmonella Newport.

280.    Had Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class known the truth about the Contaminated Products, they would not have purchased the Contaminated Products.

281.    In accordance with FDUTPA, Plaintiffs Menendez, Quailes, and Dodson seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

282.    Plaintiffs Menendez, Quailes, and Dodson also seeks an order entitling them and the members of the Florida Class to recover all monies spent on the Contaminated Products, which were acquired through acts of fraudulent, unfair, or unlawful competition. In addition, the measure of restitution should be full refund of the purchase price insofar as the Contaminated Products and their associated labels are worthless. But for Defendant's misrepresentations and omissions, Plaintiff would have paid nothing for the Contaminated Products that have a risk of containing microorganisms such as Cronobacter sakazakii and Salmonella Newport. Indeed, there is no discernible "market" for an infant formula product that may be adulterated with harmful bacteria. As a result, the Contaminated Products are rendered valueless.

283.    As a result of Defendant's unfair and deceptive trade practices, Plaintiff Menendez, Quailes, and Dodson and the members of the Florida Class are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if they prevail.

**TENTH CLAIM FOR RELIEF**

**Violation of Violation of Georgia's Uniform Deceptive Trade Practices Act**

**Ga. Code Ann. § 10-1-370 – 10-1-375**

**(On Behalf of Plaintiff Carroll and the Georgia Class)**

284.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

285.     Plaintiff Carroll brings this Count individually and on behalf of the Georgia Class.

286.     Defendant engaged in trade practices prohibited by the Georgia Uniform Deceptive Trade Practices Act including:

   a.   Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

   b.   Advertising goods or services with intent not to sell them as advertised; and

   c.   Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding. *See* Georgia Code § 10-1-372 (7), (9), and (12).

287.     For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

288.     Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

289.     Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a

pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

290.    Plaintiff Carroll and the members of the Georgia Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

291.    By selling the Contaminated Products with exclusive knowledge of the defect, and by promoting, marketing, and advertising the infant formula Products while failing to disclose and concealing the infant formulas' defective nature Defendant engaged in deceptive practices that violate Georgia law.

292.    Defendant engaged in these deceptive practices with the intent that consumers, like Plaintiff Carroll and the members of the Georgia Class, would rely on the representations and omissions when deciding whether to purchase the infant formula Products.

293.    Plaintiff Carroll and members of the Georgia Class suffered ascertainable loss as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Carroll and the members of the Georgia Class known that the Contaminated Products contain harmful microbes, they would not have purchased them.

294.    Accordingly, Plaintiff Carroll and the members of the Georgia Class seek actual damages, reasonable attorneys' fees and costs, and all other relief permitted under the Georgia Uniform Deceptive Trade Practices Act.

## ELEVENTH CLAIM FOR RELIEF

### Violation of Indiana's Deceptive Consumer Sales Law

### Ind. Code Ann. §§24-5-0.5-0.1 – 24-5-0.5-12

**(On Behalf of Plaintiff Mack, Grigsby and the Indiana Class)**

295.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

296.    Plaintiffs Mack and Grigsby bring this Count individually on behalf of themselves and on behalf of the Indiana Class.

297.    Defendant engaged in trade practices prohibited by the Indiana Deceptive Consumer Sales Act by committing an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice violates this chapter regardless of whether it occurred before, during, or after the transaction. *See* Ind. Code Ann. § 24-5-0.5-3(a).

298.    By selling the Contaminated Products with exclusive knowledge of the defect, and by promoting, marketing, and advertising the Contaminated Products while failing to disclose and concealing the infant formulas' defective nature, Defendant engaged in deceptive practices that violate Indiana law.

299.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

300.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

301.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its

infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

302.    Plaintiffs Mack and Grigsby and the members of the Indiana Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

303.    Defendant engaged in these deceptive practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Contaminated Products.

304.    Plaintiffs Mack and Grigsby and the members of the Indiana Class suffered ascertainable loss as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiffs Mack and Grigsby and the members of the Indiana Class known that the Contaminated Products contain harmful microbes, they would not have purchased them.

305.    Accordingly, Plaintiffs Mack and Grigsby and the members of the Indiana Class seek actual damages suffered as a consumer as a result of the deceptive act or five hundred dollars ($500) whichever is greater, treble damages or one thousand dollars ($1000) whichever is greater, for Defendant's willful acts, punitive damages, reasonable attorneys' fees, costs, and all other relief permitted under the Indiana Deceptive Consumer Sales Act.

**TWELFTH CLAIM FOR RELIEF**

**Violation of Kansas's Consumer Protection Act**

**Kan. Stat. Ann. §§ 50-623 – 50-643**

**(On Behalf of Plaintiff Leonard and the Kansas Class)**

306.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if

fully set forth herein.

307. Plaintiff Leonard brings this Count individually and on behalf of the Kansas Class.

308. A key policy purpose of the Kansas Consumer Protection Act, which is to be "construed liberally," is "to protect consumers from suppliers who commit deceptive and unconscionable practices." Kan. Stat. Ann. § 50-623.

309. The Kansas Consumer Protection Act prohibits suppliers from engaging in deceptive acts and practices "in connection with a consumer transaction," which include, among other things, (1) representations made knowingly or with reason to know that "[p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have," (2) representations made knowingly or with reason to know that "property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation," (3) "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact," and (4) "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." Kan. Stat. Ann. § 50-626(b)(1-3).

310. The Contaminated Products purchased by Plaintiff Leonard and the members of the Kansas Class are "property" as defined by Kan. Stat. Ann. § 50-624(j).

311. Defendant is a "supplier" as defined by Kan. Stat. Ann. § 50-624(l).

312. Defendant engaged in deceptive acts or practices, with respect to the sale and advertisement of the Contaminated Products purchased by P Plaintiff Leonard and the members of the Kansas Class, in violation of Kan. Stat. Ann. §§ 50-623, *et seq.*, including by misrepresenting the true quality of the Contaminated Products, and concealing the true risks of the Contaminated Products.

313.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

314.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

315.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

316.    Plaintiff Leonard and the members of the Kansas Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

317.    The above deceptive acts or practices by Defendant were conducted in connection with "consumer transactions" as defined by Kan. Stat. Ann. § 50-624(c).

318.    The above unlawful deceptive acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

319.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Leonard and the members of the Kansas Class.

320.    Plaintiff Leonard and the members of the Kansas Class relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of

Contaminated Products had they known that the Contaminated Products would be defective.

321.    As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff Leonard and the members of the Kansas Class suffered an ascertainable loss of money or property, real or personal, as described above.

322.    Plaintiff Leonard and the members of the Kansas Class seek relief under by Kan. Stat. Ann. § 50-634, including, but not limited to injunctive relief, restitution, statutory damages, compensatory damages, civil penalties and attorneys' fees and costs.

**THIRTEENTH CLAIM FOR RELIEF**

**Violation of Kentucky's Consumer Protection Act**

**Ky. Rev. Stat. Ann. §§ 367.110 *et. seq.***

**(On Behalf of Plaintiffs Huff, McCord and the Kentucky Class)**

323.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

324.    Plaintiffs Huff and McCord bring this cause of action individually on behalf of themselves and on behalf of the members of the Kentucky Class.

325.    The Kentucky Consumer Protection Act was passed after its legislature found that "the public health, welfare and interest require a strong and effective consumer protection program to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services" and declared unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

326.    Defendant is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

327.    Defendant advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev.

Stat. 367.110(2).

328.    Defendant engaged in unfair, false, misleading, or deceptive acts or practices, with respect to the sale and advertisement of the Contaminated Products purchased by Plaintiffs Huff and McCord and the members of the Kentucky Class, in violation of Ky. Rev. Stat. Ann. § 367.170, including by concealing the true risks of the Contaminated Products.

329.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

330.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

331.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

332.    Plaintiff Plaintiffs Huff and McCord and the members of the Kentucky Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

333.    Defendant had exclusive knowledge of material facts concerning the defective nature of the Contaminated Products, including that they were likely to suffer from an unreasonable and

inherent risk of contamination as a result of being produced at the Sturgis Facility, and that the Products themselves had a propensity to cause infant illnesses posing a serious risk of infant death.

334.    Defendant's representations and omissions were material because they concern a serious health risk and were likely to deceive reasonable consumers.

335.    Defendant intended to mislead Plaintiffs Huff and McCord and the members of the Kentucky Class members and induce them to rely on its misrepresentations and omissions.

336.    Plaintiffs Huff and McCord and the members of the Kentucky Class purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property and sustained personal injuries as a result of Abbott's unlawful acts and practices.

337.    Defendant's unlawful acts and practices by were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs Huff and McCord and the members of the Kentucky Class that Plaintiffs Huff and McCord and the members of the Kentucky Class could not reasonably avoid, and this substantial injury outweighed any benefits to consumers or to competition.

338.    Defendant acted intentionally, knowingly, and maliciously to violate Kentucky's Consumer Protection Act, and recklessly disregarded the rights of Plaintiffs Huff and McCord and the members of the Kentucky Class.

339.    As a direct and proximate result of Defendant's unlawful acts and practices, Plaintiffs Huff and McCord and the members of the Kentucky Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Defendant as they would not have paid Defendant for goods and services or would have paid less for such goods and services but for Defendant's violations alleged herein.

340.    Plaintiffs Huff and McCord and the members of the Kentucky Class seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

### FOURTEENTH CLAIM FOR RELIEF

### Violation of Maryland's Consumer Protection Act

### Md. Code. Ann., Com. Law §§ 13-101-501

### (On Behalf of Plaintiffs Abendschoen, Corvelli, Whitmore and the Maryland Class)

341.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

342.    Plaintiffs Abendschoen, Corvelli, and Whitmore bring this Count individually on behalf of themselves and on behalf of the Maryland Class.

343.    Under the Maryland Consumer Protection Act, "[a] person may not engage in any unfair, abusive, or deceptive trade practice" in the sale of any consumer goods. Md. Code Ann., Com. Law § 13-303(1).

344.    Under the Maryland Consumer Protection Act, unfair, abusive, or deceptive trade practices include, among other things, representations that consumer goods "have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" or "are of a particular standard, quality, grade, style, or model which they are not"; "[f]ailure to state a material fact if the failure deceives or tends to deceive; or "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with…[t]he promotion or sale of any consumer goods." Md. Code Ann., Com. Law § 13-301.

345.    Defendant engaged in unfair, abusive, or deceptive trade practices with respect to the

sale and advertisement of the Contaminated Products purchased by Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class, in violation of Md. Code Ann., Com. Law §§ 13-101, *et seq*., including by knowingly making statements or representations that were false or misleading regarding the quality of the Contaminated Products and concealing the true risks of the Contaminated Products.

346.   For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

347.   Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

348.   Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

349.   Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

350.   The above unfair, abusive, or deceptive trade practices by Defendant were conducted in connection with the sale of "consumer goods," as defined by Md. Code Ann., Com. Law § 13-

101(d)(1).

351.    The above unfair, abusive, or deceptive trade practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

352.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class.

353.    Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class suffered ascertainable losses and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class would not have purchased the Contaminated Products had they known they were contaminated.

354.    Defendant's violations present a continuing risk of deception to Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class, as well as to the general public, in so far as the Contaminated Products are still being marketed and sold throughout Maryland and the rest of the United States. Thus, Defendant's unlawful acts and practices complained of herein affect the public interest, including public health.

355.    Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class seek relief under Md. Code Ann., Com. Law § 13-408, including, but not limited to compensatory damages, and attorneys' fees, costs, and any other just and proper relief available under the Maryland Consumer Protection Act.

**FIFTEENTH CLAIM FOR RELIEF**

**Violation of Michigan's Consumer Protection Act**

**Mich. Comp. Laws §§ 445.901-922**

**(On Behalf of Plaintiffs Hall, William and the Michigan Class)**

356.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

357.     Plaintiffs Hall and William brings this Count individually on behalf of themselves and on behalf of the Michigan Class.

358.     The Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.…" Mich. Comp. Laws § 445.903(1). GM engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have… characteristics… that they do not have.…;" "(e) Representing that goods or services are of a particular standard… if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

359.     Defendant engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the Contaminated Products purchased by Plaintiffs Hall and William and the members of the Michigan

114

Class, in violation of Mich. Comp. Laws § 445.903, including by misrepresenting the true quality of the Contaminated Products, and concealing the true risks of the Contaminated Products.

360. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

361. Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

362. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

363. Plaintiffs Hall and William and the members of the Michigan Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

364. The above unfair methods of competition and unfair or deceptive acts or practices by Defendants were conducted in "[t]rade or commerce," as defined by Mich. Comp. Laws § 445.902(1)(g).

365. The above unfair and deceptive practices and acts by Defendant were material misrepresentations of a presently existing or past fact.

366.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous.

367.    Plaintiffs Hall and William and the members of the Michigan Class relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Contaminated Products had they known that the Contaminated Products were defective.

368.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs Hall and William and the members of the Michigan Class suffered an ascertainable loss of money or property, as described above.

369.    Plaintiffs Hall and William and the members of the Michigan Class seek relief under Mich. Comp. Laws § 445.911, including, but not limited to injunctive relief, damages, attorneys' fees and costs

## SIXTEENTH CLAIM FOR RELIEF

### Violation of the Minnesota Prevention of Consumer Fraud Act

### Minn. Stat.§ 325F.69

### (On Behalf of Plaintiff Ghost and the Minnesota Class)

370.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

371.    Plaintiff Ghost brings this Count individually and on behalf of the Minnesota Class.

372.    The Minnesota Prevention of Consumer Fraud Act ("MPCFA") makes unlawful "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1). The MPCFA further provides

116

that "any person injured by a violation of [the MPCFA] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 8.31(3a).

373. Defendant engaged in unlawful, unfair, and deceptive acts and practices, with respect to the sale and advertisement of the Contaminated Products purchased by Plaintiff Ghost and the members of the Minnesota Class, in violation of Minn. Stat. §§ 325F.69; 325D.13; and 325D.44, including by misrepresenting the true quality of the Contaminated Products and concealing the true risks of the Contaminated Products.

374. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

375. Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

376. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

377. Plaintiff Ghost and the members of the Minnesota Class were deceived by Defendant's

117

claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy." 187.

Plaintiff Ghost and the members of the Minnesota Class had no way of discerning that Defendant's representations were false and misleading.

378.    Plaintiff Ghost and the members of the Minnesota Class would not have purchased the Contaminated Products had they known that the Contaminated Products contain harmful microbes.

379.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.

380.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Ghost and the members of the Minnesota Class.

381.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Ghost and the members of the Minnesota Class suffered an ascertainable loss of money or property, as described above.

382.     As a result of the foregoing willful, knowing, and wrongful conduct of Defendant, Plaintiff Ghost and the members of the Minnesota Class have been damaged in an amount to be proven at trial.

383.    Plaintiff Ghost and the members of the Minnesota Class seek relief under Minn. Stat. § 8.31, subd. 3a; and § 325D.45, including, but not limited to injunctive relief, damages, and attorneys' fees and costs.

### SEVENTEENTH CLAIM FOR RELIEF

### Violation of the Missouri Merchandising Practices Act

### Mo. Rev. Stat. §§ 407.010 - 407.130

### (On Behalf of Plaintiff Morris and the Missouri Class)

384.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if

fully set forth herein.

385.    Plaintiff Morris brings this Count individually and on behalf of the Missouri Cass.

386.    The Missouri Merchandising Practices Act was created to protect Missouri consumers from deceptive and unfair business practices.

387.    Defendant's conduct described herein constitutes the act, use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression and omission of material facts in connection with the sale and advertisement of merchandise, the Contaminated Products, in trade or commerce in Missouri, making it unlawful under Mo. Rev. Stat. § 407.020.

388.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

389.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

390.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

391.    Plaintiff Ghost and the members of the Missouri Class were deceived by Defendant's

claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

392.     Plaintiff Ghost and the members of the Missouri Class purchased the Contaminated Products for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by Mo. Rev. Stat. § 407.020.

393.     Plaintiff Ghost and the members of the Missouri Class acted as reasonable consumers would have acted under the circumstances and Defendant's conduct declared unlawful by Mo. Rev. Stat. § 407.020 would cause reasonable persons to enter into the transactions (purchasing the Contaminated Products) that resulted in the damages.

394.     Accordingly, pursuant to Mo. Rev. Stat. § 407.025, Plaintiff Ghost and the members of the Missouri Class are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Contaminated Products as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to replace the Contaminated Products, and (c) other miscellaneous incidental and consequential damages.

395.     In addition, given the nature of Defendant's conduct, the Court should exercise its discretion to award Plaintiff Ghost and the members of the Missouri Class punitive damages, attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Defendant's unlawful conduct.

## EIGHTEENTH CLAIM FOR RELIEF

### Violation of the Nevada Deceptive Trade Practices Act

### Nev. Rev. Stat. Ann. §§ 598.0915 - 598.0923

### (On Behalf of Plaintiff Lansdale and the Nevada Class)

396.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

397.     Plaintiff Lansdale brings this Count individually and on behalf of the Nevada Class.

398.     The Nevada Deceptive Trade Practices Act prohibits deceptive trade practices including:

    a.   knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;

    b.   representing that the goods for sale are a particular standard, quality, or grade, or that such goods are or a particular style or model, if he or she should know they are of another standard, quality, grade, style or model; or

    c.   knowingly making any other false representation in a transaction. *See* NCPA § 598.0915 (5), (7), (15).

399.     By selling the Contaminated Products with exclusive knowledge of the defect, and by promoting, marketing, and advertising the Contaminated Products while failing to disclose and concealing their defective nature, Defendant engaged in deceptive practices that violate Nevada law.

400.     For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

401.     Defendant repeatedly advertised, both on the Contaminated Product labels and on its

website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

402. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

403. Plaintiff Lansdale and the members of the Nevada Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

404. Defendant engaged in these deceptive practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Contaminated Products.

405. Plaintiff Lansdale and the members of the Nevada Class members suffered ascertainable losses as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Lansdale and the members of the Nevada Class known that the infant formula Products contain harmful microbes, they would not have purchased the Contaminated Products.

406. Accordingly, Plaintiff Lansdale and the members of the Nevada Class seek actual damages, reasonable attorneys' fees and costs, and all other relief permitted under the Nevada Deceptive Trade Practices Act.

## NINETEENTH CLAIM FOR RELIEF

### Violation of New York Consumer Protection from Deceptive Acts and Practices Act

### N.Y. Gen. Bus. Law § 349

**(On Behalf of Lopez-Bazemore and the New York Class)**

407.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

408.    Plaintiff Lopez-Bazemore brings this Count individually and on behalf of the New York Class.

409.    Section 349 of the New York Consumer Protection from Deceptive Acts and Practices Act declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a).

410.    Any person who has been injured by reason of any violation of Section 349 may bring an action to enjoin such unlawful act or practice. N.Y. Gen. Bus. Law § 349(h).

411.    Defendant used fraud, misrepresentations, misleading statements, deceptive practices, omissions, and false promises in manufacturing, producing, and selling Contaminated Products as alleged herein.

412.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

413.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

414.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its

infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

415.    Plaintiff Lopez-Bazemore and the members of the New York Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

416.    Plaintiff Lopez-Bazemore and the members of the New York Class reasonably relied upon misrepresentations, misleading statements, deceptive practices, omissions, and false promises by Defendant which resulted in injury to them.

417.    Plaintiff Lopez-Bazemore and the members of the New York Class have suffered ascertainable losses of money because of the use or employment by Defendant of a method, act or practice prohibited or declared to be unlawful by the provisions of N.Y. Gen. Bus. Law § 349(a).

418.    The actual out-of-pocket losses of Plaintiff Lopez-Bazemore and the members of the New York Class were proximately caused by Defendant's violation of N.Y. Gen. Bus. Law § 349(a).

419.    Accordingly, Plaintiff Lopez-Bazemore and the members of the New York Class seek actual damages, punitive damages reasonable attorneys' fees and costs, and all other relief permitted by the New York Consumer Protection from Deceptive Acts and Practices Act. N.Y. Gen. Bus. Law § 349(h).

## TWENTIETH CLAIM FOR RELIEF

## Violation of North Carolina's Monopolies, Trusts and Consumer Protection Law

### N.C. Gen. Stat. §§ 75-1.1 – 75-49

### (On Behalf of Plaintiff Purciful and the North Carolina Class)

420.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

421.    Plaintiff Purciful brings this Count individually and on behalf of the North Carolina Class.

422.    Defendant engaged in trade practices prohibited by the North Carolina Consumer Protection Law, including:

        a.  unfair methods of competition in or affecting commerce; and

        b.  unfair or deceptive acts or practices in or affecting commerce. *See* N.C. Gen. Stat. § 75-1.1.

423.    By selling the Contaminated Products with exclusive knowledge of the defect, and by promoting, marketing, and advertising the Contaminated Products while failing to disclose and concealing their defective nature Defendant engaged in deceptive practices that violate North Carolina law.

424.    Defendant engaged in these deceptive practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Contaminated Products.

425.    Plaintiff Purciful and the members of the North Carolina Class suffered ascertainable loss as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Purciful and the members of the North Carolina Class known that the Contaminated Products contain harmful microbes, they would not have purchased them.

426.    Accordingly, Plaintiff Purciful and the members of the North Carolina Class seek monetary damages, attorney fees, costs, and all other relief permitted under the North Carolina Consumer Protection Law.

**TWENTY-FIRST CLAIM FOR RELIEF**

**Violation of Ohio's Consumer Sales Practices Act**

**Ohio Rev. Code §§ 1345.01, *et. seq.***

**(On Behalf of Plaintiff Wilkerson and the Ohio Class)**

427.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

428.    Plaintiff Wilkerson brings this Count individually and on behalf of the Ohio Class.

429.    The Ohio Consumer Sales Practice Act makes it unlawful to "commit an unfair or deceptive act or practice in connection with a consumer transaction" Ohio Rev. Code Ann. § 1345.02. This includes (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. *Id.*

430.    Defendant engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the Contaminated Products purchased by Plaintiff Wilkerson and the members of the Ohio Class, in violation of Ohio Rev. Code Ann. §§ 1345.021 *et seq.*, including by misrepresenting the true quality of the Contaminated Products and concealing the true risks of the Contaminated Products.

431.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

432.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its

website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

433. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

434. Plaintiff Wilkerson and the members of the Ohio Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

435. The above unfair methods of competition and unfair or deceptive acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

436. Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Wilkerson and the members of the Ohio Class.

437. Plaintiff Wilkerson and the members of the Ohio Class relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Contaminated Products had they known that the Contaminated Products were defective.

438. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff Wilkerson and the members of the Ohio Class suffered an ascertainable loss of money or property, as described above.

439. Plaintiff Wilkerson and the members of the Ohio Class seek relief under Ohio Rev. Code § 1345.09, *et seq.*, including, but not limited to injunctive relief, damages, and attorneys' fees and costs.

## TWENTY-SECOND CLAIM FOR RELIEF

## Violation of Oregon's Unlawful Trade Practices Act

## Or. Rev. Stat. §§ 646.605-656

## (On Behalf of Plaintiff Jackson and the Oregon Class)

440.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

441.    Plaintiff Jackson brings this Count individually and on behalf of the Oregon Class.

442.    Defendant, Plaintiff Jackson, and the members of the Oregon Class are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

443.    Defendant is engaged in "trade" or "commerce" within the meaning of Or. Rev.Stat. §646.605(8).

444.    The Oregon Unfair Trade Practices Act prohibits "unfair or deceptive acts conduct in trade or commerce…." Or. Rev. Stat. § 646.608(1).

445.    In the course of its business, Defendant concealed and suppressed material facts concerning the Contaminated Products. Defendant (1) misrepresented that the Contaminated Products were safe and suitable as infant formula when in fact they were unsafe and unsuitable as infant formula because they contained the known harmful microbes; (2) misrepresented through their labeling that the Contaminated Products did not contain harmful microbes when in fact they do contain harmful microbes; (3) otherwise engaged in activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Contaminated Products.

128

446.    Defendant knew, or through the exercise of reasonable care should have known, about the Contaminated Products' adulterated nature at the time of sale but Defendant continues to conceal information relative to the adulteration.

447.    Defendant owed Plaintiff Jackson and the members of the Oregon Class a duty to disclose the true nature of the Contaminated Products because Defendant: (a) possessed exclusive knowledge about the defect; (b) intentionally concealed the foregoing from Plaintiff Jackson and the members of Oregon Class; and (c) made incomplete representations about the Contaminated Products' safety and ingredients, while purposefully withholding material facts from Plaintiff Jackson and the members of Oregon Class that contradicted these representations.

448.    Defendant thus violated the Oregon Unfair Trade Practices Act by, at a minimum: (1) representing that the Contaminated Products have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Contaminated Products are of a particular standard, quality, and grade when they are not; (3) advertising the Contaminated Products with the intent not to sell them as advertised; and (4) failing to disclose information concerning the Contaminated Products with the intent to induce consumers to purchase them.

449.    Defendant intentionally and knowingly misrepresented material facts regarding the Contaminated Products with the intent to mislead Plaintiff Jackson and the members of the Oregon Class.

450.    Defendant knew or should have known that its conduct violated the Oregon Unfair Trade Practices Act.

451.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Jackson and the members of the Oregon Class.

452.    Plaintiff Jackson and the members of the Oregon Class suffered ascertainable losses

and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff Jackson and the members of the Oregon Class who purchased the Contaminated Products would not have purchased them had they known the were adulterated with harmful microbes.

453.    Defendant had an ongoing duty to Plaintiff Jackson and the members of the Oregon Class to refrain from unfair and deceptive practices under the Oregon Unfair Trade Practices Act.

454.    Defendant's violations present a continuing risk to Plaintiff Jackson, the members of the Oregon Class, and the general public, including public health. Thus, Defendant's unlawful acts and practices complained of herein affect the public interest.

455.    Pursuant to Or. Rev. Stat. § 646.638, Plaintiff Jackson and the members of the Oregon Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, actual damages or $200, whichever is greater, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon Unfair Trade Practices Act.

## TWENTY-THIRD CLAIM FOR RELIEF

## Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law

## 73 Pa. Stat. § 201-2(4)

### (On Behalf of Plaintiff Johnson, Colombo, and the Pennsylvania Class)

456.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

457.    Plaintiffs Johnson and Colombo bring this cause of action individually on behalf of themselves and on behalf of the members of the Pennsylvania Class.

458.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including, "[e]ngaging in any

130

other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

459.    Defendant's conduct of manufacturing, producing, and selling Contaminated Products as alleged herein is a violation of the Pennsylvania CPL including but not limited to:

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

> (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

> (vi) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

> (ix) Advertising goods or services with intent not to sell them as advertised;

> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

> 73 Pa. Stat. § 201-2(4).

460.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

461.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

462.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a

131

pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

463.    Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

464.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

465.    Defendant knew that the risks inherent in the Contaminated Products made them not suitable for their intended use.

466.    Defendants knew or should have known that their conduct violated the Pennsylvania CPL.

467.    Had Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class known the truth about the Contaminated Products, they would not have purchased the Contaminated Products. Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

468.    Defendant owed Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class a duty to disclose the truth about the Contaminated Products because Defendant: (a) possessed exclusive, specific and superior knowledge of the true risks of the Contaminated Products; (b) intentionally concealed the foregoing from Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class; and/or (c) made incomplete representations regarding the

132

Contaminated Products, while purposefully withholding material facts from Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class that contradicted these representations.

469.    Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class suffered injury in fact to a legally protected interest. As a result of Defendant's conduct, Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class were harmed and suffered actual damages.

470.    Defendant's violations present a continuing risk to Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

471.    Defendant is liable to Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs under 73 P.S. § 201-9.2(a). Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class also seek reasonable attorneys' fees and costs pursuant to 73 Pa. Stat. § 201-9.2(a).

## TWENTY-FOURTH CLAIM FOR RELIEF

### Violation of Tennessee Consumer Protection Act

### Tenn. Code Ann. § 47-18-101, et seq.

### (On Behalf of Plaintiff Driver and the Tennessee Class)

472.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

473.    Plaintiff Driver brings this Count individually and on behalf of the Tennessee Class.

474. The Tennessee Consumer Protection Act was enacted to "protect consumers…from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within [Tennessee]." Tenn. Code Ann. § 47-18-102(2).

475. Defendant engaged in trade practices prohibited by the Tennessee Consumer Protection Act, including:

    a. § 47-18-104(5): representing that goods or services have characteristics that they do not have;

    b. § 47-18-104(7) representing that goods or services are of a particular standard, quality or grade, if they are of another;

    c. § 47-18-104(9): advertising goods or services with intent not to sell them as advertised; and

    d. § 47-18-104(21): using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, or usability of the goods, or which may otherwise misrepresent the goods in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods to other goods.

476. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

477. Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas

134

were safe for infants with pre-existing health conditions and severe food allergies.

478.     Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

479.     Plaintiff Driver and the members of the Tennessee Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

480.     By selling the Contaminated Products with exclusive knowledge of the defect, and by promoting, marketing and advertising the infant formula Products while failing to disclose and concealing the Contaminated Products' defective nature Defendant engaged in deceptive practices that violate Tennessee law.

481.     Defendant engaged in these deceptive practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Contaminated Products.

482.     Plaintiff Driver and the members of the Tennessee Class suffered ascertainable losses as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Driver and the members of the Tennessee Class known that the Contaminated Products contain harmful microbes, they would not have purchased the Contaminated Products.

483.     Plaintiff Driver and the members of the Tennessee Class seek relief under Tenn. Code § 47-18-108-109, including, but not limited to injunctive relief, compensatory damages, statutory damages, punitive damages, statutory damages, civil penalties and attorneys' fees and costs.

**TWENTY-FIFTH CLAIM FOR RELIEF**

135

**Violation of Texas's Consumer Protection Act**

**Tex. Bus. & Com. Code Ann. § 17.41 – 17.63**

**(On Behalf of Plaintiffs Benoit, Garza and the Texas Class)**

484.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

485.    Plaintiffs Benoit and Garza bring this Count individually and on behalf of the Texas Class.

486.    The Texas Consumer Protection Act prohibits unfair and unconscionable acts, including representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; advertising goods or services with intent not to sell them as advertised; and failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. *See* TCPA §§ 17.46 (7), (9), (24).

487.    Defendant engaged in unfair and unconscionable trade practices by misrepresenting the true quality of the Contaminated Products, and concealing the true risks of the Contaminated Products.

488.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

489.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated

Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

490. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

491. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Products is unfair and unconscionable because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

492. Defendant engaged in these unfair and unconscionable practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Contaminated Products.

493. Plaintiff Benoit and the members of the Texas Class suffered ascertainable loss as a direct and proximate result of Defendant's unfair and unconscionable acts or practices. Had Plaintiff Benoit and the members of the Texas Class known that the Contaminated Products contain harmful microbes, they would not have purchased them.

494. Accordingly, Plaintiff Benoit and the members of the Texas Class seek actual damages, punitive damages, reasonable attorneys' fees and costs, and all other relief permitted under the Texas Consumer Protection Act.

## TWENTY-SIXTH CLAIM FOR RELIEF

**Violation of Virginia's Consumer Protection Act**

**VA. Code Ann. § 59.1-196, et seq.**

**(On Behalf of Plaintiff Shorts and the Virginia Class)**

495.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

496.    Plaintiff Shorts brings this Count individually and on behalf of the Virginia Class.

497.    The Virginia Consumer Protection Act renders unlawful fraudulent acts or practices committed by a supplier in connection with a consumer transaction. VA. Code. Ann. § 59.1-200. Specifically, the Virginia Consumer Protection Act prohibits "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" or "are of a particular standard, quality, grade, style, or model[.]" VA. Code. Ann. § 59.1-200(5)-(7).

498.    Defendant committed the following acts declared unlawful and prohibited by Va. Code Ann. § 59.1-200: (a) misrepresenting the qualities, characteristics, ingredients, uses and benefits of the Contaminated Products by falsely representing they are unadulterated, safe and effective; (b) misrepresenting that the Contaminated Products were of a particular standard, quality or grade by falsely representing they are unadulterated, safe and effective; and (c) using other deception, false promise or misrepresentation in connection with the transactions that resulted in Plaintiff Shorts and the members of the Virginia Class ownership and use of the Contaminated Products.

499.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified as an ingredient on the Contaminated Products' label.

500.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its

website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

501. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

502. Plaintiff Shorts and the members of the Virginia Class were deceived by Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and healthy."

503. Code of Virginia, section 59.1-204(A), creates a private right of action for individuals who suffer a loss by a fraudulent act or practice by a supplier.

504. Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce infant formula products, among others, which makes Defendant a "supplier" involved in a "consumer traction" as defined by section 59.1-198, and is therefore subject to the Virginia Consumer Protection Act.

505. Plaintiff Shorts and the members of the Virginia Class have suffered injury in fact and lost money as a result of Defendant's conduct because they purchased the Contaminated Products from Defendant in reliance on Defendant's representation that the ingredients were safe and effective and were not contaminated with microorganisms, such as Cronobacter sakazakii and Salmonella Newport.

506. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Contaminated Products is unfair because Defendant's conduct was immoral, unethical,

139

unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

507. In accordance with the Virginia Consumer Protection Act, Plaintiff Shorts and the members of the Virginia Class seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

508. Because they suffered loss as a result of Defendant's violations of the Virginia Consumer Protection Act, Plaintiff Shorts and the members of the Virginia Class may each recover actual damages or $500, whichever is greater, pursuant to Va. Code Ann. § 59.1-204. Because Defendant's violations were willful, the jury may increase the damages to an amount not exceeding three times the actual damages or $1,000, whichever is greater. The actual damages are: (a) the difference between the values of the Contaminated Products as represented (their prices) and their actual values at the time of purchase ($0.00), or (b) the cost to replace the Contaminated Products, and (c) other miscellaneous incidental and consequential damages. In addition, Plaintiff Shorts and the members of the Virginia Class are entitled to recover reasonable attorneys' fees and court costs. The Court may award additional relief pursuant to Va. Code Ann. § 59.1-205.

### TWENTY-SEVENTH CLAIM FOR RELIEF

### Violation of West Virginia's Consumer Credit and Protection Act

### W. Va. Code Ann. § 46A-6-101 – 46A-6-110

### (On Behalf of Plaintiff Hamrick and the West Virginia Class)

509. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

510.    Plaintiff Hamrick brings this Count individually and on behalf of the West Virginia

Class.

511.    The West Virginia Consumer Credit and Protection Act broadly prohibits deceptive,

unfair and unconscionable acts. W. Va. Code §§ 46A-6-102(7), 46A-6-104.

512.    Defendant engaged in unlawful trade practices, and unfair or deceptive acts or practices

that violated the West Virginia Consumer Credit and Protection Act.

513.    For example, in the course of Defendant's business, Defendant concealed and

suppressed material facts, including that the Contaminated Products contained harmful microbes

such as Cronobacter sakazakii and Salmonella Newport. These microorganisms are not identified

as an ingredient on the Contaminated Products' label.

514.    Defendant repeatedly advertised, both on the Contaminated Product labels and on its

website, through a national advertising campaign, among other items, that the Contaminated

Products were safe for infants to consume, including representations that the specialty formulas

were safe for infants with pre-existing health conditions and severe food allergies.

515.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a

pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its

infant formula. Thus, Defendant knew or should have known that its products were manufactured,

processed, packed, and held in a manner which could foster bacterial growth and otherwise render

Defendant's products dangerous to consumers.

516.    Plaintiff Hamrick and the members of the West Virginia Class were deceived by

Defendant's claims that, *inter alia*, the Contaminated Products "keep [infants] fed, happy, and

healthy."

517.    By concealing the true risks of the Contaminated Products, Defendant knowingly and

141

intentionally misrepresented and omitted material facts in connection with the sale the Contaminated Products. Defendant systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Contaminated Products in the course of their business.

518. Defendant engaged in these deceptive practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Contaminated Products.

519. Plaintiff Hamrick and the members of the West Virginia Class suffered ascertainable losses as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Hamrick and the members of the West Virginia Class known that the Contaminated Products contain harmful microbes, they would not have purchased them.

520. Accordingly, Plaintiff Hamrick and the members of the West Virginia Class seek actual damages, reasonable attorneys' fees and costs, and all other relief permitted under the West Virginia Consumer Credit and Protection Act.

**TWENTY-EIGHTH CLAIM FOR RELIEF**

**<u>Unjust Enrichment</u>**

**(On Behalf of All State Classes)**

521. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

522. As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Classes when they purchased the Contaminated Products.

523. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Classes.

142

524. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Classes.

525. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

526. Plaintiffs and members of the Classes may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

527. Under the doctrine of unjust enrichment, it is inequitable for Defendant to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Contaminated Products to Plaintiffs and members of the Classes.

528. It is unjust and inequitable for Abbott to retain these sums of money because, among other facts, Defendant: (1) negligently failed to prevent the Cronobacter sakazakii and Salmonella contamination; (2) failed to discover the presence of these and other bacterial contaminants; (3) falsely and misleadingly represented that the Contaminated Products were safe for infants to consume; (4) concealed known contamination risks at the Sturgis Facility; (5) continued to sell the Contaminated Products for five months instead of initiating a recall in September 2021; and (6) under the circumstances that existed, no sales of the Contaminated Products should have taken place.

529. Defendant's misrepresentations have injured Plaintiffs and members of the Classes because Plaintiffs and members of the Classes would not have purchased (or paid a price premium) for the Contaminated Products had they known the true facts regarding the Contaminated Products' contamination risks.

530. The financial benefits derived by Defendant from obtaining and retain Plaintiffs' property rightfully belong to Plaintiffs and members of the Classes.

531.    Because it is unjust and inequitable for Defendant to retain non-gratuitous benefits conferred on it by Plaintiffs and members of the Classes, Defendant must make restitution to Plaintiffs and members of the Classes, as ordered by the Court.

### TWENTY-NINTH CLAIM FOR RELIEF

### **Breach of Implied Warranty of Merchantability**

### **(On Behalf of All State Classes)**

532.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

533.    By operation of law, Defendant, as manufacturers of the Contaminated Products, impliedly warranted to Plaintiffs and the members of the State Classes that the Contaminated Products were of merchantable quality and safe for their ordinary and intended use pursuant to:

a.    Ariz. Rev. Stat. Ann. §§ 47-2314, 47-2315;

b.    Ark. Code Ann. §§ 4-2-314, 4-2-315;

c.    Cal. Com. Code § 2314;

d.    Conn. Gen. Stat. Ann. §§ 42a-2-314, 42a-2-315;

e.    Del. Code Ann.  6 Del. C. § 2-314, 6 Del. C. § 2-315;

f.    Fla. Stat. Ann. § 672.314 and Fla. Stat. Ann. § 672.315;

g.    Ga. Code Ann. § 11-2-314, § 11-2-315;

h.    810 Ill. Comp. Stat. Ann. 5/2-314 and 810 Ill. Comp. Stat. Ann. 5/2-315;

i.    Ind. Code Ann. § 26-1-2-314 and Ind. Code Ann. § 26-1-2-315;

j.    Iowa Code Ann. § 554.2314 and Iowa Code Ann. § 554.2315;

k.    Kan. Stat. Ann. § 84-2,314, § 84-2,315;

l.    Ky. Rev. Stat. § 355.2-314;

m. La. Civ. Code Art. 2520, 2524;

n. Md. Code Com. Law § 2-314;

o. Mich. Comp. Laws § 440.2314;

p. Minn. Stat. § 336.2-314;

q. Mo. Stat. §§ 400.2-314

r. N.R.S. §§ 104.2314;

s. N.Y. U.C.C. Law §§ 2-314;

t. NC Gen Stat § 25-2-314;

u. Ohio Rev. Code Ann. §§ 1302.27;

v. ORS 72.3140;

w. Puerto Rico law;

x. 13. Pa. Cons. Stat. §§ 2314;

y. S.C. Code §§ 36-2-314;

z. Tenn. Code Ann. §§ 47-2-314;

aa. Tex. Bus. & Com. Code §§ 2.314;

bb. Va. Code §§ 8.2-314;

cc. W. Va. Code §§ 46-2-314; and

dd. Wis. Stat. §§ 402.314.

534.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Yet, Defendant repeatedly advertised, both on the

Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

535. Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Contaminated Products. At the point of sale, the Contaminated Products while appearing normal—contained defects as set forth herein rendering them unsuitable and unsafe for personal use.

536. Had Plaintiffs and the members of the State Classes known the Contaminated Products were unsafe for use, they would not have purchased them.

537. Defendant did not provide appropriate warranty relief notwithstanding the risks of using the Contaminated Products. Plaintiffs and the members of the State Classes reasonably expected, at the time of purchase, that the Contaminated Products were safe for their ordinary and intended use.

538. As a direct and proximate result of Abbott's breach of the implied warranty of merchantability, Plaintiffs and the members of the State Classes have sustained damages in an amount to be determined at trial.

## THIRTIETH CLAIM FOR RELIEF

### Negligent Misrepresentation

**(On Behalf of the Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri,**

**New York, Nevada, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Wisconsin Classes)**

539. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

540. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

541. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

542. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

543. Defendant failed to fulfill its duty and obligations when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

544.    Plaintiffs and the members of the Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, New York, Nevada, North Carolina, Ohio, Oregon, Pennsylvania, Puerto Rico, South Carolina, Tennessee, Texas, Virginia, West Virginia, Wisconsin Classes did not, and could not, know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs and these Class members reasonably relied upon the misrepresentations made by Defendant to them.

545.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs and the members of the Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, New York, Nevada, North Carolina, Ohio, Oregon, Pennsylvania, Puerto Rico, South Carolina, Tennessee, Texas, Virginia, West Virginia, Wisconsin Classes were induced to purchase the Contaminated Products that the FDA recommends be discarded.

546.    Plaintiffs and the members of the Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, New York, Nevada, North Carolina,  Ohio, Oregon, Pennsylvania, Puerto Rico, South Carolina, Tennessee, Texas, Virginia, West Virginia, Wisconsin Classes suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

State and Territory Specific Actions

*Count 1:  Illinois*

547.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

548.    This count is brought by Plaintiff Ray individually and on behalf of the Illinois Class.

549.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

550.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

551.    Yet, Defendant repeatedly and carelessly and/or negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

552.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

553.    Plaintiff Ray and the members of the Illinois Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Ray and the members of the Illinois Class reasonably relied upon the

misrepresentations made by Defendant to them.

554. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Ray and the members of the Illinois Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

555. Plaintiff Ray and the members of the Illinois Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 2: Arizona*

556. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

557. This count is brought by Plaintiff Dates individually and on behalf of the Arizona Class.

558. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

559. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

560. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items,

that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

561.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

562.    Plaintiff Dates and the members of the Arizona Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Dates and the members of the Arizona Class reasonably relied upon the misrepresentations made by Defendant to them.

563.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Dates and the members of the Arizona Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

564.    Plaintiff Dates and the members of the Arizona Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 3: California*

565.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

566.    Plaintiffs Andaluz, Duqe, and Lyons bring this Count individually on behalf of themselves and on behalf of the California Class.

567.    Defendant has a duty to provide accurate information to consumers concerning the

nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

568.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

569.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

570.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

571.    Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class reasonably relied upon the misrepresentations made by Defendant to them.

572.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs

Andaluz, Duqe, and Lyons and the members of the California Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

573.    Plaintiffs Andaluz, Duqe, and Lyons and the members of the California Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 4: Connecticut*

574.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

575.    This count is brought by Plaintiff Scully individually and on behalf of the members of the Connecticut Class.

576.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

577.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

578.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items,

that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

579.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

580.    Plaintiff Scully and the members of the Connecticut Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Scully and the members of the Connecticut Class reasonably relied upon the misrepresentations made by Defendant to them.

581.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Scully and the members of the Connecticut Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

582.    Plaintiff Scully and the members of the Connecticut Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 5: Delaware*

583.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

584.    This count is brought by Plaintiff Mason on behalf of individually and on behalf of the Delaware Class.

585.    Defendant has a duty to provide accurate information to consumers concerning the

nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

586.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

587.    Yet, in the course of Defendant's business, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

588.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

589.    Plaintiff Mason and the members of the Delaware Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Mason and the members of the Delaware Class reasonably relied upon the misrepresentations made by Defendant to them.

155

590.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Mason and the members of the Delaware Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

591.    Plaintiff Mason and the members of the Delaware Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 6: Florida*

592.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

593.    This count is brought by Plaintiffs Menendez, Quailes, Dodson individually on behalf of themselves and on behalf of the Florida Class.

594.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

595.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

596.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items,

that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

597.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

598.    Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class reasonably relied upon the misrepresentations made by Defendant to them.

599.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

600.    Plaintiffs Menendez, Quailes, Dodson and the members of the Florida Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 7: Georgia*

601.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

602.    This count is brought by Plaintiff Carroll individually and on behalf of the Georgia Class.

603. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

604. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

605. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

606. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility. Defendant made the above described false representations with the intent to induce Plaintiff Carroll and the members of the Georgia Class to purchase the Contaminated Products.

607. Plaintiff Carroll and the members of the Georgia Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be

true. Plaintiff Carroll and the members of the Georgia Class reasonably relied upon the misrepresentations made by Defendant to them.

608.     In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Carroll and the members of the Georgia Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

609.     Plaintiff Carroll and the members of the Georgia Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 8: Indiana*

610.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

611.     This count is brought by Plaintiffs Mack and Grigsby individually, on behalf of themselves and on behalf of the Indiana Class.

612.     Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

613.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

159

614.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

615.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

616.    Plaintiffs Mack and Grigsby and the members of the Indiana Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Mack and Grigsby and the members of the Indiana Class reasonably relied upon the misrepresentations made by Defendant to them.

617.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Mack and Grigsby and the members of the Indiana Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

618.    Plaintiffs Mack and Grigsby and the members of the Indiana Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 9: Iowa*

619.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

620.    This count is brought by Plaintiff Boysen individually and on behalf of the Iowa Class.

160

621. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

622. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

623. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

624. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

625. Plaintiff Boyson and the members of the Iowa Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Boyson and the members of the Iowa Class reasonably relied upon the misrepresentations made by Defendant to them.

161

626.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Boyson and the members of the Iowa Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

627.    Plaintiff Boyson and the members of the Iowa Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 10: Kansas*

628.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

629.    This count is brought by Plaintiff Leonard individually and on behalf of the Kansas Class.

630.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

631.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

632.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items,

that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

633.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

634.    Plaintiff Leonard and the members of the Kansas Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Leonard and the members of the Kansas Class reasonably relied upon the misrepresentations made by Defendant to them.

635.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Leonard and the members of the Kansas Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

636.    Plaintiff Leonard and the members of the Kansas Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 11: Kentucky*

637.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

638.    This count is brought by Plaintiffs Huff and McCord on behalf of themselves and on behalf of the Kentucky Class.

639.    Defendant has a duty to provide accurate information to consumers concerning the

163

nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

640.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

641.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

642.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

643.    Plaintiffs Huff and McCord and the members of the Kentucky Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Huff and McCord and the members of the Kentucky Class reasonably relied upon the misrepresentations made by Defendant to them.

644.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Huff

164

and McCord and the members of the Kentucky Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

645. Plaintiffs Huff and McCord and the members of the Kentucky Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 12: Louisiana*

646. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

647. This count is brought by Plaintiffs Raymond and Walls on behalf of themselves and on behalf of the Louisiana Class.

648. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

649. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

650. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that

the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

651.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

652.    Plaintiffs Raymond and Walls and the members of the Louisiana Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Raymond and Walls and the members of the Louisiana Class reasonably relied upon the misrepresentations made by Defendant to them.

653.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Raymond and Walls and the members of the Louisiana Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

654.    Plaintiffs Raymond and Walls and the members of the Louisiana Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 13: Maryland*

655.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

656.    This count is brought by Plaintiffs Abendschoen, Corvelli, and Whitmore on behalf of themselves and on behalf of the Maryland Class.

657.    Defendant has a duty to provide accurate information to consumers concerning the

166

nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

658.  As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

659.  Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant intended that it statement would be acted on by Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class.

660.  Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

661.  Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

662.  Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Abendschoen, Corvelli, and Whitmore and the

members of the Maryland Class reasonably relied upon the misrepresentations made by Defendant to them.

663. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

664. As a result, Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

<em>Count 14: Michigan</em>

665. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

666. This count is brought by Plaintiffs Hall and William on behalf of themselves and on behalf of the Michigan Class.

667. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

668. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster

bacterial growth and otherwise render Defendant's products dangerous to consumers.

669.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

670.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

671.    Plaintiffs Hall and William and the members of the Michigan Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Hall and William and the members of the Michigan Class reasonably relied upon the misrepresentations made by Defendant to them.

672.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Hall and William and the members of the Michigan Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

673.    Plaintiffs Hall and William and the members of the Michigan Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 15: Minnesota*

674.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

169

675.   This count is brought by Plaintiff Ghost individually and on behalf of the Minnesota Class.

676.   Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

677.   As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

678.   Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

679.   Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and failed to exercise reasonable care in communicating information regarding the safety of the infant formula products manufactured at its Sturgis facility.

680.   Plaintiff Ghost and the members of the Minnesota Class did not know that Defendant's

representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Ghost and the members of the Minnesota Class reasonably relied upon the misrepresentations made by Defendant to them.

681.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Ghost and the members of the Minnesota Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

682.    Plaintiff Ghost and the members of the Minnesota Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 16: Missouri*

683.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

684.    This count is brought by Plaintiff Morris individually and on behalf of the Missouri Class.

685.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

686.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster

bacterial growth and otherwise render Defendant's products dangerous to consumers.

687.    Yet, in the course of Defendant's business, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

688.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

689.    Plaintiff Morris and the members of the Missouri Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Morris and the members of the Missouri Class reasonably relied upon the misrepresentations made by Defendant to them.

690.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Morris and the members of the Missouri Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

691.    Plaintiff Morris and the members of the Missouri Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 17: Nevada*

692.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if

fully set forth herein.

693.    This count is brought by Plaintiff Lansdale individually and on behalf of the Nevada Class.

694.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

695.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

696.    Yet, in the course of Defendant's business, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

697.    Defendant failed to fulfill its duty or to exercise reasonable care when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its

Sturgis facility.

698.    Plaintiff Lansdale and the members of the Nevada Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Lansdale and the members of the Nevada Class reasonably relied upon the misrepresentations made by Defendant to them.

699.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Lansdale and the members of the Nevada Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

700.    Plaintiff Lansdale and the members of the Nevada Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 18: New York*

701.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

702.    This count is brought by Plaintiff Lopez-Bazemore individually and on behalf of the New York Class.

703.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

704.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render

174

Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

705.   Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

706.   Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

707.   Plaintiff Lopez-Bazemore and the members of the New York Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Lopez-Bazemore and the members of the New York Class reasonably relied upon the misrepresentations made by Defendant to them.

708.   In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Lopez-Bazemore and the members of the New York Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

709.   Plaintiff Lopez-Bazemore and the members of the New York Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 19: North Carolina*

710.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

711.     This Count is brought by Plaintiff Purciful individually and on behalf of the North Carolina Class.

712.     Defendant has a duty to exercise reasonable care, to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

713.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

714.     Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

715.     Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in

176

representing the safety of the infant formula products manufactured at its Sturgis facility.

716.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

717.    Plaintiff Purciful and the members of the North Carolina Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Purciful and the members of the North Carolina Class reasonably relied upon the misrepresentations made by Defendant to them.

718.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Purciful and the members of the North Carolina Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

719.    Plaintiff Purciful and the members of the North Carolina Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 20: Ohio*

720.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

721.    This count is brought by Plaintiff Wilkerson individually and on behalf of the Ohio Class.

722.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

723.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a

177

pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

724. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

725. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

726. Plaintiff Wilkerson and the members of the Ohio Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Wilkerson and the members of the Ohio Class reasonably relied upon the misrepresentations made by Defendant to them.

727. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Wilkerson and the members of the Ohio Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

728. Plaintiff Wilkerson and the members of the Ohio Class suffered economic harm, in an

amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 21: Oregon*

729. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

730. This count is brought by Plaintiff Jackson individually and on behalf of the Oregon Class.

731. Defendant has a duty to exercise reasonable care, to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

732. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

733. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

734.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

735.    Plaintiff Jackson and the members of the Oregon Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Jackson and the members of the Oregon Class reasonably relied upon the misrepresentations made by Defendant to them.

736.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Jackson and the members of the Oregon Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

737.    Plaintiff Jackson and the members of the Oregon Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 22: Pennsylvania*

738.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

739.    This count is brought by Plaintiffs Johnson and Colombo on behalf of themselves and on behalf of the Pennsylvania Class.

740.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

741.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its

infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

742. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant failed to make a reasonable investigation as to whether the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

743. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

744. Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class reasonably relied upon the misrepresentations made by Defendant to them.

745. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

746. Plaintiffs Johnson and Colombo and the members of the Pennsylvania Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated

Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 23: Puerto Rico*

747.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

748.    This count is brought by Plaintiffs Toledo and Delgado on behalf of themselves and on behalf of the Oregon Class.

749.    Defendant has a duty to exercise reasonable care, to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

750.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

751.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

752.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

753.    Plaintiffs Toledo and Delgado and the members of the Puerto Rico Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Toledo and Delgado and the members of the Puerto Rico Class reasonably relied upon the misrepresentations made by Defendant to them.

754.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Toledo and Delgado and the members of the Puerto Rico Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

755.    Plaintiffs Toledo and Delgado and the members of the Puerto Rico Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 24: South Carolina*

756.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

757.    This count is brought by Plaintiffs Harkless and Steele on behalf of themselves and on behalf of the South Carolina Class.

758.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

759.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a

pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

760. Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

761. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

762. Plaintiffs Harkless and Steele and the members of the South Carolina Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Harkless and Steele and the members of the South Carolina Class reasonably relied upon the misrepresentations made by Defendant to them.

763. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Harkless and Steele and the members of the South Carolina Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

764. Plaintiffs Harkless and Steele and the members of the South Carolina Class suffered

economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 25: Tennessee*

765.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

766.    This count is brought by Plaintiff Driver individually and on behalf of the Tennessee Class.

767.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

768.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

769.    Yet, in the course of Defendant's business, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the

185

Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

770.    Defendant failed to fulfill its duty and failed to exercise reasonable care when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

771.    Plaintiff Driver and the members of the Tennessee Class did not know that Defendant's representations about the safety of its infant formula products Plaintiff Driver and the members of the Tennessee Class. Plaintiff Driver and the members of the Tennessee Class reasonably relied upon the misrepresentations made by Defendant to them.

772.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Driver and the members of the Tennessee Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

773.    Plaintiff Driver and the members of the Tennessee Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 26: Texas*

774.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

775.    This count is brought by Plaintiffs Benoit and Garza on behalf of themselves and on behalf of the Texas Class.

776.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products

and not to make false representations.

777. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

778. Yet, in the course of Defendant's business, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items, that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

779. Defendant failed to fulfill its duty and failed to exercise reasonable care when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

780. Plaintiffs Benoit and Garza and the members of the Texas Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Benoit and Garza and the members of the Texas Class reasonably relied upon the misrepresentations made by Defendant to them.

781.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Benoit and Garza and the members of the Texas Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

782.    Plaintiffs Benoit and Garza and the members of the Texas Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 27: Wisconsin*

783.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

784.    This count is brought by Plaintiff Rudd individually and on behalf of the Wisconsin Class.

785.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Contaminated Products and not to make false representations.

786.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

787.    Yet, Defendant repeatedly and negligently advertised, both on the Contaminated Product labels and on its website, through a national advertising campaign, among other items,

that the Contaminated Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Contaminated Products contained harmful microbes such as Cronobacter sakazakii and Salmonella Newport.

788.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Contaminated Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

789.    Plaintiff Rudd and the members of the Wisconsin Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Rudd and the members of the Wisconsin Class reasonably relied upon the misrepresentations made by Defendant to them.

790.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Rudd and the members of the Wisconsin Class were induced to purchase the Contaminated Products that the FDA recommends be discarded.

791.    Plaintiff Rudd and the members of the Wisconsin Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Contaminated Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request, individually and on behalf of all others similarly situated, that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of the

National Class and the State Classes defined above, and designate Plaintiffs as the class representatives and Plaintiffs' counsel as counsel for the National Class and State Classes;

        B.    award declaratory, equitable and injunctive relief, including but not limited to, requiring Defendants to institute a corrective advertising campaign, restitution, and disgorgement of profits;

        C.    award all actual, general, special, incidental, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

        D.    award pre-judgment and post-judgment interest on such monetary relief;

        E.    award reasonable attorneys' fees and costs; and

        F.    grant such further and other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all claims so triable.

Dated: October 14, 2022         Respectfully, submitted,

                        */s/ Jason J. Thompson*
                        Jason J. Thompson (MI Bar No. P47184)
                        David R. Parker (MI Bar No. P39024)
                        Kevin Stoops (MI Bar No. P64371)
                        Kathryn Milz (Ill bar No. 6297213)
                        SOMMERS SCHWARTZ, P.C.
                        One Towne Square, 17th Floor
                        Southfield, Michigan 48076
                        Tel. (248) 355-0300
                        jthompson@sommerspc.com
                        dparker@sommerspc.com
                        kstoops@sommerspc.com
                        kmilz@sommerspc.com

                        Kiley L. Grombacher, Esq. (CA Bar No. 245960)
                        BRADLEY/GROMBACHER, LLP
                        31365 Oak Crest Dr., Suite 240
                        Westlake Village, California 91361
                        Telephone: (805) 270-7100 / Facsimile: (805) 270-7589
                        Email: kgrombacher@bradleygrombacher.com

Sin-Ting Mary Liu (FL Bar No. 84438, CA Bar No. 282884)
E. Samuel Geisler (FL Bar No. 83817, Ill Bar No. 6305996)
Caitlyn Prichard Miller (FL Bar No. 126097)
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449
mliu@awkolaw.com
sgeisler@awkolaw.com
cmiller@awkolaw.com

Timothy J. Becker (MN Bar #0256663)
Stacy Hauer (MN Bar#0317093)
Jacob R. Rusch (MN Bar #0391892)
Zackary S. Kaylor (MN Bar #0400854)
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
tbecker@johnsonbecker.com
shauer@johnsonbecker.com
jrusch@johnsonbecker.com
zkaylor@johnsonbecker.com

191