**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: RECALLED ABBOTT INFANT FORMULA PRODUCTS LIABILITY LITIGATION | MDL No. 3037<br>Master Docket No. 22 C 4148<br>Honorable Matthew F. Kennelly |
| This Document applies to:<br>All cases | |

**PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**JURY DEMAND**

**Table of Contents**

**NATURE OF THIS CONSOLIDATED COMPLAINT** .......................................................... 1

**NATURE OF THE ACTION** ........................................................................................... 2

**JURISDICTION AND VENUE** ....................................................................................... 4

**PARTIES** .................................................................................................................. 4

  Plaintiffs .................................................................................................................. 4

    Arizona ................................................................................................................. 5

    Arkansas ............................................................................................................... 5

    California ............................................................................................................... 5

    Connecticut ........................................................................................................... 6

    Florida .................................................................................................................. 6

    Georgia ................................................................................................................. 7

    Illinois .................................................................................................................. 7

    Iowa ..................................................................................................................... 7

    Kansas .................................................................................................................. 8

    Louisiana .............................................................................................................. 8

    Maryland .............................................................................................................. 8

    Michigan ............................................................................................................... 9

    Minnesota ............................................................................................................. 9

    Missouri ............................................................................................................... 10

Ohio .......................................................................................................................... 10

Pennsylvania ........................................................................................................... 10

South Carolina ........................................................................................................ 11

Tennessee ................................................................................................................ 11

Texas ....................................................................................................................... 11

West Virginia .......................................................................................................... 12

Defendant ...................................................................................................................... 12

**FACTS COMMON TO ALL CLAIMS** ................................................................... **13**

Abbott's Nutrition Products and Powdered Infant Formulas ...................................... 13

Specialty Infant Formulas ............................................................................................ 14

EleCare Powdered Infant Formula .......................................................................... 15

Similac PM 60/40 Powdered Infant Formula ......................................................... 16

Similac Alimentum Powdered Infant Formula ....................................................... 17

Sturgis Facility and FDA Investigation ....................................................................... 18

Harm to Plaintiffs and other Consumers ..................................................................... 31

**CLASS ALLEGATIONS** ........................................................................................... **32**

National Class ............................................................................................................... 33

Illinois Class ................................................................................................................. 33

Arizona Class ............................................................................................................... 33

Arkansas Class ............................................................................................................. 33

California Class ............................................................................................................ 33

Connecticut Class ......................................................................................................... 33

Florida Class ................................................................................................................ 33

Georgia Class ............................................................................................................... 33

Iowa Class .................................................................................................................... 33

Kansas Class ................................................................................................................. 34

Louisiana Class ............................................................................................................ 34

Maryland Class ............................................................................................................ 34

Michigan Class ............................................................................................................. 34

Minnesota Class ........................................................................................................... 34

Missouri Class .............................................................................................................. 34

Ohio Class .................................................................................................................... 34

Pennsylvania Class ....................................................................................................... 34

South Carolina Class ................................................................................................... 34

Tennessee Class ......................................................................................................... 35

Texas Class ................................................................................................................ 35

West Virginia Class .................................................................................................... 35

**FIRST CLAIM FOR RELIEF** .......................................................................................... **38**

Violation of Illinois's Consumer Fraud and Deceptive Business Practices Act ...................... 38

**SECOND CLAIM FOR RELIEF** ....................................................................................... **42**

Violation of Arizona's Consumer Fraud Act ................................................................. 42

**THIRD CLAIM FOR RELIEF** .......................................................................................... **46**

Violation of Arkansas Deceptive Trade Practices Act ..................................................... 46

**FOURTH CLAIM FOR RELIEF** ...................................................................................... **49**

False and Misleading Advertising in Violation of California Law ......................................... 49

**FIFTH CLAIM FOR RELIEF** .......................................................................................... **51**

Unfair Businesses Practices in Violation of California Law ................................................. 51

**SIXTH CLAIM FOR RELIEF** .......................................................................................... **53**

Violation of the California Consumers Legal Remedies Act .............................................. 53

**SEVENTH CLAIM FOR RELIEF** .................................................................................... **56**

Violation of Connecticut Deceptive and Unfair Trade Practices Act .................................... 56

**EIGHTH CLAIM FOR RELIEF** ....................................................................................... **59**

Violation of Florida's Deceptive and Unfair Trade Practices Act ......................................... 59

**NINTH CLAIM FOR RELIEF** ......................................................................................... **63**

Violation of Violation of Georgia's Uniform Deceptive Trade Practices Act ......................... 63

**TENTH CLAIM FOR RELIEF** ......................................................................................... **65**

Violation of Kansas's Consumer Protection Act ............................................................. 65

**ELEVENTH CLAIM FOR RELIEF** .................................................................................. **68**

Violation of Maryland's Consumer Protection Act ......................................................... 68

**TWELVETH CLAIM FOR RELIEF** ................................................................................. **71**

Violation of Michigan's Consumer Protection Act ......................................................... 71

**THIRTEENTH CLAIM FOR RELIEF** .............................................................................. **73**

Violation of the Minnesota Prevention of Consumer Fraud Act ...................................... 73

**FOURTEENTH CLAIM FOR RELIEF** ............................................................................. **76**

Violation of the Missouri Merchandising Practices Act .................................................. 76

**FIFTEENTH CLAIM FOR RELIEF** ................................................................................. **78**

Violation of Ohio's Consumer Sales Practices Act ................................................................ 78

**SIXTEENTH CLAIM FOR RELIEF** ....................................................................... **80**

Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law .............. 80

**SEVENTEENTH CLAIM FOR RELIEF** ................................................................. **84**

Violation of Tennessee Consumer Protection Act ................................................................. 84

**EIGHTEENTH CLAIM FOR RELIEF** .................................................................... **86**

Violation of Texas's Consumer Protection Act ..................................................................... 86

**NINTEENTH CLAIM FOR RELIEF** ...................................................................... **88**

Violation of West Virginia's Consumer Credit and Protection Act ....................................... 88

**TWENTIETH CLAIM FOR RELIEF** ...................................................................... **91**

Unjust Enrichment ............................................................................................................... 91

**TWENTY-FIRST CLAIM FOR RELIEF** ................................................................ **93**

Breach of Implied Warranty of Merchantability ................................................................... 93

**TWENTY-SECOND CLAIM FOR RELIEF** ........................................................... **97**

Negligent Misrepresentation ................................................................................................ 97

State and Territory Specific Actions .............................................................................. 98

Count 1: Illinois .................................................................................................... 98

Count 2: Arizona ................................................................................................. 100

Count 3: California .............................................................................................. 102

Count 4: Connecticut .......................................................................................... 103

Count 5: Florida .................................................................................................. 105

Count 6: Georgia ................................................................................................. 106

Count 7: Iowa ..................................................................................................... 108

Count 8: Kansas .................................................................................................. 109

Count 9: Louisiana .............................................................................................. 111

Count 10: Maryland ............................................................................................ 112

Count 11: Michigan ............................................................................................ 114

Count 12: Minnesota ........................................................................................... 115

Count 13: Missouri ............................................................................................. 117

Count 15: Ohio ................................................................................................... 118

Count 16: Pennsylvania ...................................................................................... 120

Count 17: South Carolina .................................................................................... 121

Count 18: Tennessee ........................................................................................... 123

Count 19: Texas .................................................................................................. 124

**PRAYER FOR RELIEF**................................................................................ **126**

**DEMAND FOR JURY TRIAL**.................................................................. **127**

**CERTIFICATE OF SERVICE** .................................................................. **129**

Plaintiffs, by and through their counsel, for their Amended Consolidated Class Action Complaint ("Consolidated Complaint") against Defendant Abbott Laboratories, Inc. D/B/A Abbott Nutrition. ("Abbott" or "Defendant"), on behalf of themselves and all others similarly situated, allege on personal knowledge as to themselves, and on information and belief as to all other matters, as follows:

## NATURE OF THIS CONSOLIDATED COMPLAINT

1. This Consolidated Class Action Complaint ("Consolidated Complaint") sets forth questions of fact and law common to the class claims subsumed within the context of this multidistrict proceeding for economic harm resulting from the purchase Similac®, Similac PM 60/40®, Alimentum® and EleCare® Infant formula manufactured, sold and distributed by Abbott, based on false and misleading claims that the products were unadulterated, safe and effective, when in fact there was a risk the products were contaminated with *Cronobacter* and salmonella bacteria. As such, the prices paid for the products was improperly inflated and the amounts paid by class members amounted to an overcharge.

2. This Consolidated Complaint constitutes an administrative summary of the class claims brought by all Plaintiffs with complaints filed and transferred to this multidistrict proceeding by class members who allege to have suffered economic harm by purchasing the products as more fully described herein, and is not intended as the operative pleading for purposes of judgment and appeal.

3. This Consolidated Complaint does not constitute a waiver or dismissal of any actions or claims asserted in those individual actions, nor does any Plaintiff relinquish the right to move to amend their individual complaints to seek any additional claims as discovery proceeds.

1

## NATURE OF THE ACTION

4.      Plaintiffs purchased Abbott's powdered infant formula ("PIF") products, including Similac®, Similac PM 60/40 ®, Alimentum® and EleCare® products, which were manufactured at the Abbott Nutrition facility in Sturgis, Michigan ("Sturgis Facility")("Class Products"). The United States Food and Drug Administration ("FDA"), in conjunction with the Center for Disease Control ("CDC"), announced on February 17, 2022, that it was investigating Defendant's Similac®, Alimentum®, and EleCare® products following several consumers' complaints of *Cronobacter sakazakii* and *Salmonella Newport* contamination. The FDA's advisory notice alerted consumers to avoid purchasing or using Defendant's Similac®, Alimentum® and EleCare® products.

5.      Abbott later announced that it found evidence of *Cronobacter sakazakii* at the Sturgis Facility. Abbott learned of the death of an infant who tested positive for *Cronobacter sakazakii* and . . . consumed Similac PM 60/40.

6.      As discussed further herein, Abbott knew about the ongoing risk of contamination of the Class Products and related noncompliance issues at its Sturgis Facility, and Abbott should have initiated preventative measures in September of 2021.

7.      The consequences were dire. Abbott's failures harmed consumers, sickened infants, and ultimately led to the death of at least two children and may have led to the deaths of as many as nine children.[1] Abbott told consumers it is not safe for their infants to consume the Class Products, but many consumers rely on them to feed their children. Abbott left many consumers with no safe option but to pay full price for a newer or alternative version of infant formula.

---

[1] *See e.g.,* https://www.washingtonpost.com/business/2022/06/10/baby-formula-deaths-abbott/ (last visited September 30, 2022).

Furthermore, as the leading supplier of milk formula in the United States, Abbott has driven a well-documented nationwide infant formula shortage making finding a suitable alternative even more challenging.[2]

8. Each of the Plaintiffs in these actions purchased one or more Class Products on the assumption that the labeling was accurate and that the Class Products were unadulterated, safe, and effective and would not have paid the purchase price had they known there was a risk they might contain bacteria. Each of the Plaintiffs in these actions paid a premium price for Defendant's brand name Products, as compared with the lower price point of generic infant formulas. "Store brand infant formulas typically cost up to 50% less than nationally advertised brands," like Defendant's premium-priced Class Products.[3]

9. Under the circumstances that existed, no sales of the products should have taken place.

10. As a result of Abbott's unfair, deceptive, and/or fraudulent business practices, consumers of the Class Products, Plaintiffs and those similarly situated who they seek to represent have suffered ascertainable losses, injury-in-fact, and otherwise have been harmed by Abbott's conduct.

11. Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution, damages, penalties, interest, and attorneys' fees and costs to the full extent permitted by applicable law.

---

[2] https://www.reuters.com/business/healthcare-pharmaceuticals/abbott-could-restart-infant-formula-production-michigan-plant-2022-05-11/ (last visited September 30, 2022).

[3] "Calculations based on March 2020 IRi Market Advantage annual retail sales data of national brand infant formula powder compared to store brand infant formula powder cost per pound based on an average weekly usage of 1.5 pounds of powder." https://www.perrigopediatrics.com/faqs/, n. 2 (last visited February 9, 2023).

## JURISDICTION AND VENUE

12.     The Court has jurisdiction under 28 U.S.C. § 1332(a)(1), because the amount in controversy in this action exceeds $75,000, exclusive of interests and costs, and because the parties are residents of different states.

13.     Venue is proper under 28 U.S.C. §1391, because Defendant maintains its principal place of business in this Judicial District, transacts business in this Judicial District, and a substantial part of the acts and/or omissions giving rise to the claims occurred in this District.

14.     Additionally, these cases were transferred to this Judicial District by Order of the Panel On Multidistrict Litigation dated August 18, 2022 (Case No. 2:22-cv-02001-GW-KS, Dkt. No. 31).

## PARTIES

### Plaintiffs

Allegations of All Plaintiffs

15.     Based on the false and misleading claims by Defendant, Plaintiffs were unaware that the products they purchased may have been adulterated with bacteria. Plaintiffs purchased the products on the assumption that the labeling was accurate and that the products were unadulterated, safe, and effective. Plaintiffs would not have paid the purchase price for the products had they known the products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. Under the circumstances that existed, no sales of the Class Products should have taken place. As a result, Plaintiffs suffered injury in fact when they spent money to purchase the Class Products, which they would not otherwise have spent absent Defendant's misconduct, as alleged herein. Plaintiffs further suffered injury in fact as the Class Products had diminished value due to the risk of the alleged bacterial

contamination. Plaintiffs also experienced hardship from the resulting nationwide infant formula shortage, as, they were required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and were forced to pay more than they would have otherwise paid for infant formula if the risk of contamination had not driven the infant and toddler formula shortage in the United States.

Arizona

16.     Plaintiff Arquesha Dates ("Dates") is a citizen and current resident of Nevada. Plaintiff was a citizen and resident of Tempe, Arizona at all times relevant hereto, and was a resident of Maricopa County. Dates purchased Similac infant formula products from Fry's Food Store located in Phoenix, Arizona. Dates purchased Defendant's powdered infant formula products from September 2019 to September 2020, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Arkansas

17.     Plaintiff Victoria J. Deffebaugh ("Deffebaugh") is a citizen and resident of Blytheville, Arkansas, and at all times relevant hereto, has been a resident of Mississippi County. Deffebaugh began purchasing Defendant's powdered infant formula products in April 2021 in Blytheville, Arkansas, including the Class Products. The first two digits of the product are 34 and the code on the container contains "Z2," and the use-by date is November 1, 2024. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

California

18.     Plaintiff Arturo Andaluz ("Andaluz") is a citizen and resident of Granada Hills, California, and at all times relevant hereto, has been a resident of Los Angeles County. In or around January 2022, Andaluz began purchasing Defendant's Similac, Alimentum, and EleCare products

5

at Target and Costco retail stores located in Granada Hills, California, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

19. Plaintiff Claresa Lyons ("Lyons") is a citizen and resident of North Highlands, California and at all times relevant hereto, has been a resident of Sacramento County. Lyons began purchasing Defendant's powdered infant formula products in March 2021 and in or around February 2022 purchased the Class Products. The first two digits of the product are 35 and the code on the container contains "SH," and the use-by date is December 1, 2023. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Connecticut

20. Plaintiff Andrea Scully ("Scully") is a citizen and resident of Bridgeport, Connecticut. At all times relevant hereto, has been a citizen and resident of Fairfield County. Scully purchased Defendant's powdered infant formula products at Stop & Shop and at Walmart in Bridgeport, Connecticut. Scully purchased Defendant's powdered infant formula products from October 2021 to February 2022, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Florida

21. Plaintiff Jasmyn Menendez ("Menendez") is a citizen and resident of Lakeville, Florida and at all times relevant hereto, has been a resident of Polk County. Menendez began purchasing Defendant's powdered infant formula products in May 2021 and in or around February 2022 purchased the Class Products. The first two digits of the product are 30 and the code on the container contains "Z2," and the use-by date is July 1, 2024. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

22. Plaintiff Melissa Quailes ("Quailes") is a citizen and resident of Pensacola, Florida,

and at all times relevant hereto, has been a resident of Escambia County. Quailes purchased Defendant's powdered infant formula products at Greer's located at 4051 Barrancas Avenue, Pensacola Florida 32507; Walmart located at 501 N Navy Blvd, Pensacola, Florida 32507; and Publix located at 5998 Mobile Hwy, Pensacola, Florida 32526. Quailes purchased Defendant's powdered infant formula products from October 2021 until November 2021, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Georgia

23.     Plaintiff Rebecca Carroll ("Carroll") is a citizen and resident of Sandersville, Georgia, and at all times relevant hereto, has been a resident of Washington County. Carroll has purchased infant formula at Walmart located at 260 Bobby Jones Expressway Augusta, Georgia 30907 and a Walmart located at 1308 South Harris St. Sandersville, Georgia 31082. Carroll purchased Defendant's powdered infant formula products, including the Class Products, from December 2021 to April 2022. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Illinois

24.     Plaintiff Monique Reyes ("Reyes") is a citizen and resident of Algonquin, Illinois, and at all times relevant hereto, has been a resident of McHenry County. Reyes purchased Defendant's powdered infant formula products from April 2021 to February 2022, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Iowa

25.     Plaintiff Jordan Boysen ("Boysen") is a citizen and resident of Council Bluffs, Iowa and at all times relevant hereto, has been a resident of Pottawattamie County. Boysen began

7

purchasing Defendant's powdered infant formula products in December 2021 and in or around February 2022 purchased the Class Products. The first two digits of the product are 37 and the code on the container contains "SH," and the use-by date is August 2023. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Kansas

26.     Plaintiff Artie Leonard ("Leonard") is a citizen and resident of Fort Riley, Kansas and at all times relevant hereto, has been a resident of Fort Riley, Kansas. Leonard purchased Defendant's powdered infant formula products at Commissary located at 2310 Trooper Dr. Fort Riley, Kansas 66442. Leonard purchased Defendant's powdered infant formula products from June 2021 to February 2022, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Louisiana

27.     Plaintiff Cherrell R. Raymond ("Raymond") is a citizen of the State of Louisiana and resident of Layfette Parish, Louisiana. In or around February 2022, Raymond purchased the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Maryland

28.     Plaintiff Brittany Abendschoen ("Abendschoen") is a citizen and resident of Salisbury, Maryland, and at all times relevant hereto, has been a resident of Wicomico County. Abendschoen purchased Defendant's powdered infant formula products from January 2022 until February 2022, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

29.     Plaintiff Amanda Corvelli ("Corvelli") is a citizen and resident of Bowie, Maryland

8

and at all times relevant hereto, has been a resident of Prince George's County. Corvelli began purchasing Defendant's powdered infant formula products in September 2021 and in or around February 2022 purchased the Class Products. The first two digits of the product are 37 and the code on the container contains "K8," and the use-by date is August 1, 2023. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

30.    Plaintiff Carl Whitmore ("Whitmore") is a citizen and resident of Bowie, Maryland and at all times relevant hereto, has been a resident of Prince George's County. Whitmore began purchasing Defendant's powdered infant formula products in September 2021 and in or around February 2022 purchased the Class Products. The first two digits of the product are 37 and the code on the container contains "K8," and the use-by date is August 1, 2023. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Michigan

31.    Plaintiff Keyonna William ("William") is a citizen and resident of Wayne, Michigan and at all times relevant hereto, has been a resident of Wayne County. William began purchasing Defendant's powdered infant formula products in November 2021 and purchased the Class Products. The first two digits of the product are 28 and the code on the container contains "SH," and the use-by date is November 1, 2022. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Minnesota

32.    Plaintiff Raelonda Ghost ("Ghost") is a citizen and resident of Minneapolis, Minnesota, and at all times relevant hereto, has been a resident of Hennepin County. Ghost purchased Defendant's powdered infant formula products at multiple stores such as Target and Walmart in Minnesota. Ghost purchased Defendant's powdered infant formula products from

February 2020 until June 2020, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Missouri

33.    Plaintiff Seirra Morris ("Morris") is a citizen and resident of Birch Tree, Missouri and at all times relevant hereto, has been a resident of Shannon County. Morris purchased Defendant's powdered infant formula products at Walmart located at 1310 Preacher Roe Blvd, West Plains, Missouri 65775. Morris purchased Defendant's powdered infant formula products from November 2021 until January 2022, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Ohio

34.    Plaintiff Shanee Wilkerson ("Wilkerson") is a citizen and resident of Columbus, Ohio and at all times relevant hereto, has been a resident of Franklin County. Wilkerson purchased Defendant's powdered infant formula products at a Walmart located at 3579 S. High Street, Columbus Ohio, 43207. Wilkerson purchased Defendant's powdered infant formula products from November 2021 until January 2022, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Pennsylvania

35.    Plaintiff Zaiema Rouland ("Rouland") is a citizen and resident of Allentown, Pennsylvania and at all times relevant hereto, has been a resident of Lehigh County. Beginning in June December 2021, Rouland purchased Defendant's powdered infant formula products in Pennsylvania. Rouland began purchasing Defendant's powdered infant formula products in June 2021 and in or around February 2022 purchased the Class Products. The first two digits of the product are 33 and the code on the container contains "K8," and the use-by date is October 2024.

Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

South Carolina

36.     Plaintiff Samandria Harkless ("Harkless") is a citizen and resident of Timmonsville, South Carolina and at all times relevant hereto, has been a resident of Florence County. Harkless routinely purchased Defendant's powdered infant formula products and in or around February 2022 purchased the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

37.     Plaintiff Katie Steele ("Steele") is a citizen and resident of Ridgeville, South Carolina and at all times relevant hereto, has been a resident Dorchester County. In or around January or February 2022 Steele purchased the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Tennessee

38.     Plaintiff Jacklyn Driver ("Driver") is a citizen and resident of McMinnville, Tennessee, and at all times relevant hereto, has been a resident of Warren County. Driver purchased Defendant's powdered infant formula products at Walmart located at 915 N Chancery St, MicMinnville, Tennessee 37110. Driver purchased Defendant's powdered infant formula products from December 2021 until June 2022, including the Class Products. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

Texas

39.     Plaintiff Danielle Benoit ("Benoit") is a citizen and resident of Garland, Texas, and at all times relevant hereto, has been a resident of Dallas County. Benoit purchased Defendant's powdered infant formula products, including the Class Products, at a Walmart in Garland, Texas from April 2021 until April 2022. Plaintiff re-alleges and incorporates by reference Paragraph 15

as if fully set forth herein.

40. Plaintiff Adriana Garza ("Garza") is a citizen and resident of Grand Prairie, Texas and at all times relevant hereto, has been a resident of Dallas County. Garza began purchasing Defendant's powdered infant formula products in September 2021 and in or around January and February 2022 purchased the Class Products. The first two digits of the product are 22 through 37 and the code on the container contains "K8," "SH," or "Z2," and the use-by date is April 1, 2022 or later. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

West Virginia

41. Plaintiff Amber Hamrick ("Hamrick") is a citizen and resident of Morgantown, West Virginia. At all times relevant hereto, has was a citizen and resident of the Monongalia County. Hamrick purchased Defendant's powdered infant formula products from October 2021 until February 2022, including the Class Products, at Walmart located at 5606 University Towncenter Dr. Morgantown, West Virginia 26501 and Kroger located at 350 Patterson Dr. Morgantown, West Virginia 26505. Plaintiff re-alleges and incorporates by reference Paragraph 15 as if fully set forth herein.

**Defendant**

42. Defendant Abbott Laboratories, Inc. dba Abbott Nutrition, is a corporation organized and existing under the laws of the State of Illinois and maintains its principal place of business at 100 Abbott Park Road, North Chicago, Lake County, Illinois 60064.

43. Abbott is the leading supplier of milk formula in the United States.[4] Abbott manufactures, markets, advertises, labels, distributes and sells several infant formulas, including

---

[4] https://www.reuters.com/business/healthcare-pharmaceuticals/abbott-could-restart-infant-formula-production-michigan-plant-2022-05-11/ (last visited Sept. 28, 2022).

the Class Products, under the brand names Similac®, Alimentum® and EleCare®.

## FACTS COMMON TO ALL CLAIMS

### Abbott's Nutrition Products and Powdered Infant Formulas

44.     Abbott Laboratories is an American multinational medical devices and health care company with its headquarters in Abbott Park, Illinois, United States. Abbott was founded 130 years ago, and its products are currently distributed and sold in over 160 countries.[5] In 2021, Abbott Laboratories' gross sales were $43.1 billion USD.[6]

45.     Abbott's nutrition division (Abbott Nutrition) was created in 1903, and, since that time, Abbott has earned consumer's trust as the number one seller of pediatric nutrition products.[7]

46.     According to the Global Infant Formula Market Report 2021-2025, Abbott is considered one of the most dominant players in the baby formula market, which is expected to be valued at $93 billion by the year 2025.[8]

47.     Abbott, through Abbott Nutrition, was and is engaged in the manufacture, distribution, marketing, and sale of several powdered infant formula brands, including the Class Product brands Similac®, Similac PM 60/40 ®, Alimentum® and EleCare®.

48.     Abbott's products are marketed, distributed, and sold in a uniform manner throughout the United States, and are available for purchase at thousands of retail locations and online through Abbott's website and other major retailers such as Walmart, Target, and Amazon.

49.     Consumer trust is a valuable asset to Abbott, which holds itself out as a safe and

---

https://dam.abbott.com/en-us/abbottcorpnews/pdf/Corporate-Fact-Sheet.pdf (last visited October 2, 2022).

[6] *Id*.

[7]See, https://dam.abbott.com/global/documents/pdfs/newsroom/Abbott_FactSheet_Nutrition_2015.pdf (last visited October 2, 2022).

[8] https://www.businesswire.com/news/home/20210309005489/en/Global-Infant-Formula-Market-Report-2021-2025-Featuring-Nestle-S.A.-Danone-S.A.-Abbott-Laboratories-Royal-FrieslandCampina-N.V-Reckitt-Benckiser-and-Kraft-Heinz---ResearchAndMarkets.com (last visited October 2, 2022).

responsible company that is committed to scientific research and to "nourishing every stage of life":

> Every day, our team of passionate scientists and experts works hard to discover and develop nutrition products that better life for people of all ages.
>
> As a leader in nutrition science, research and development, our goal is to deliver nutrition products and education that meet the changing needs of families across the world.[9]

50.     Abbott, on its website and elsewhere, emphasizes its commitment to developing and manufacturing nutrition products that are safe for infants to consume:

> We make products to help babies and children grow, that work to keep bodies strong, and that support the unique nutritional and therapeutic needs of adults.
>
> Nutrition is the foundation to healthy living and here at Abbott Nutrition, we provide resources to help people live their best life[10]

51.     Despite these and other representations about the safety of its products, and with knowledge or reckless disregard, Abbott marketed, distributed, and sold contaminated infant formulas throughout the United States, including in the states of Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and West Virginia.

## Specialty Infant Formulas

52.     In addition to the Similac product line, Abbott manufactures, markets, distributes, and sells several different types of specialty infant formula products.

53.     Abbott advertises that its specialty infant formulas are a safe alternative for infants who suffer from pre-existing health conditions or severe food allergies, and, in doing so, targets an especially at-risk subset of an already vulnerable class of consumers.

---

[9] https://nutrition.abbott/in/about-us (last visited October 2, 2022).

[10] *Id*.

EleCare Powdered Infant Formula

54.     Abbott's website and the product's front label advertise that EleCare is "#1 Recommended by Pediatric Gastroenterologists" and safe for "Severe Food Allergies and GI Disorders." Abbott also states that the products is "clinically shown to support the growth of exclusively formula-fed infants . . . EleCare helps manage symptoms of severe food allergies and various gastrointestinal (GI) conditions."[11]

55.     EleCare is advertised as "Hypoallergenic" and safe for infants with gastrointestinal conditions, and severe food allergies. Abbott, through its website and marketing materials states:

> Help your child—help yourself—feel better. Talk to your doctor about EleCare or EleCare Jr. They are amino acid-based, hypoallergenic formulas for infants and children with severe food allergies and various GI disorders.[12]



*Figure 1 EleCare and EleCare Jr. Products*[13]

56.     Defendant also advertises and promotes EleCare as safe and effective for "dietary management" of the following:

> For cows [*sic*] milk protein allergy and other severe food allergies

---

[11] https://elecare.com/product-information/elecare (Last visited October 2, 2022).

[12] https://elecare.com/conditions (last visited October 2, 2022).

[13] *Id*. (Defendant using Figure 1 for advertising and marketing purposes).

Eosinophilic Gastrointestinal Disorders (EGIDs) . . . chronic digestive system disorders in which certain food proteins trigger an overproduction of eosinophils (white blood cells that help fight certain infections) in different areas of the digestive tract.

Short Bowel Syndrome (SBS) . . . a group of problems affecting individuals who have lost the use of a major part of their small intestine."

Food Protein-Induced Enterocolitis Syndrome (FPIES) . . . an immune reaction in the gastrointestinal system to one or more specific foods. It's commonly characterized by profuse vomiting and diarrhea.

Malabsorption, and Other Conditions[14]

57.    EleCare costs $46.99 per 14.1 oz. canister. (Sales tax and shipping costs excluded).[15]

Similac PM 60/40 Powdered Infant Formula

58.    Abbott's website and Similac PM 60/40's packaging advertise that the product is designed "[f]or infants who would benefit from lowered mineral intake, including those with impaired renal function. Calcium-to-phosphorus ratio and content designed to manage serum



_____

[14] https://elecare.com/conditions (last visited October 2, 2022).

[15] https://abbottstore.com/infant-and-child/elecare/elecare/elecare-powder/elecare-14-1-oz-can-55251e.html (last visited October 2, 2022).

calcium disorders - both hypercalcemia and hypocalcemia due to hyperphosphatemia."[16]

*Figure 2: Similac PM 60/40[17]*

59.     Similac PM 60/40 is sold by the case, which includes six 14.1-ounce cans, and costs $93.00 (sales tax and shipping costs excluded).[18]

<u>Similac Alimentum Powdered Infant Formula</u>

60.     Similac Alimentum is advertised and promoted as "suitable for lactose sensitivity and has broken-down protein that is easy to digest for babies with food allergies or colic due to protein sensitivity;" containing "an immune-nourishing ingredient" and as reducing "excessive crying and colic symptoms due to protein sensitivity within 24 hours."[19]



*Figure 3: Similac Alimentum[20]*

---

[16] https://abbottstore.com/infant-and-child/similac/similac-pm-60/similac-pm-60-40-infant-formula-powder-14-1-oz-can-case-of-6-00850.html (last visited October 2, 2022).

[17] *Id*. (Defendant using Figure 2 for advertising and marketing purposes).

[18] *Id.*

[19] https://abbottstore.com/infant-and-child/similac/similac-alimentum/similac-alimentum-infant-formula-powder/similac-alimentum-infant-formula-powder-12-1-oz-can-64715e.html (last visited October 2, 2022).

[20] *Id*. (Defendant using Figure 3 for advertising and marketing purposes).

61.     Similac Alimentum was sold in 12.1-ounce cans and costs $29.49 per can (sales tax and shipping costs excluded).[21]

**Sturgis Facility and FDA Investigation**

62.     Over the years, the FDA conducted several inspections of Abbott's Sturgis facility, which have uncovered numerous, egregious violations of statutes and regulations set forth herein in Defendant's manufacture, processing, packing, and holding of Similac®, Similac PM 60/40 ®, Alimentum® and EleCare® powdered infant formulas.

63.     On October 22, 2010, the FDA issued a Form 483, which included the following observations:

a.  Failure to manufacture foods under conditions and controls necessary to minimize contamination;

b.  Effective measures are not being taken to exclude pests from the processing areas; and

c.  There is no assurance that raw materials which are susceptible to contamination with extraneous materials comply with current FDA standards and defect actions levels.[22]

The Form 483 followed Abbott's announcement of its decision to recall approximately 5 million cans of Similac-brand powdered infant formula produced in its Sturgis, Michigan factory due to the possibility of beetles or larvae contaminating its powdered infant formula after it detected the presence of "insect parts" during formula production.[23] The FDA issued an Establishment

---

[21] *Id.*

[22] Ex. B, FDA, Form FDA 483 (issued on Oct. 22, 2010).

[23] ABCNew.Go.com, "Similac Recall: Bugs in Baby Formula Worry Parents," available at https://abcnews.go.com/Health/ParentingResourceCenter/similac-recall-bug-parts-baby-formula-worry-parents/story?id=11710959 (last visited January 31, 2023).

Inspection Report in March 2010 that referenced at least two consumer complaints of Salmonella following ingestion of Abbott's powdered infant formula.[24]

64.     Similarly, a September 2018 FDA Establishment Inspection Report referenced two observations during an earlier 2017 inspection related to the "lack of protection from ambient contamination of over/under filled containers in the Line filling room" and "review of the preventative controls plan and batch records showed that not all the preventative control points were shown as documented in the batch record."[25] The same report referenced "two confirmed *Cronobacter* spp results."

65.     As documented in the FDA Form 483 issued on September 24, 2019, Defendants failed to test a representative sample of an infant formula production aggregate of powered infant formula at the final product stage and before distribution to ensure that the production aggregate met the required microbiological quality standards.[26]

66.     Additionally, Abbott's own records indicate that, in June 2020, it destroyed products because of a previous *Cronobacter sakazakii* contamination.

67.     Subsequent inspections establish a pattern of Defendant's disregard of reasonable, responsible industry practices, as well as applicable statutes and regulations, with respect to manufacture, processing, packing, and holding of Similac, Alimentum and EleCare powdered infant formulas. As documented in the FDA Form 483 issued on September 24, 2021:

    a.  Defendant failed to maintain a building used in the manufacture, processing, packing, or holding of infant formula in a clean and sanitary condition; and

---

[24] See https://fda.report/media/79030/Abbott-Labs--Inc.--Sturgis--MI-EIR-signed-3-24-2010.pdf (last visited on Jan. 31, 2023).

[25] FDA, September 28, 2018 Establishment Inspection Report, available at https://www.fda.gov/media/159323/download (last visited January 31, 2023).

[26] https://www.fda.gov/media/157319/download (last visited October 2, 2022).

b. Defendant's personnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated.[27]

68.     At approximately the same time, the FDA issued an Establishment Inspection Report in September 2021 based on its inspections of Abbott's Sturgis, Michigan factory.[28] This report set forth that Abbott received at least 17 complaints over its powdered infant formula products between September 1, 2019 and September 20, 2021, of which at least 15 related to infants having contracted Salmonella and another for *Cronobacter*. The same report also described finding *Cronobacter* in at least two batches of Abbott's finished powdered infant product on September 25, 2019 as well as in five different environmental samples.

69.     The Minnesota Department of Health investigated a case of an infant who was sickened by *Cronobacter sakazakii* in September 2021.[29]

70.     Minnesota state health officials "knew that the infant had consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Michigan, and shared this information with the FDA and CDC in September.[30]

71.     The FDA received reports of the first illness on September 21, 2021, and the agency notified Abbott Laboratories the following day on September 22, 2022.[31]

---

[27] https://www.fda.gov/media/157317/download (last visited October 2, 2022).

[28] *New York Times*, https://int.nyt.com/data/documenttools/abbott-nutritions-fei-1815692-9-2021-eir/c47a8151d05b513a/full.pdf (last visited October 11, 2022).

[29] https://www.politico.com/news/2022/02/18/fda-infant-formula-illness-four-months-before-recall-00010226 (last visited October 2, 2022).

[30] *Id.*

[31] https://www.politico.com/news/2022/02/26/senators-demand-answers-from-abbott-on-infant-formula-recall-00012073?cid=apn (last visited October 2, 2022).

72.     Two more reports of *Cronobacter sakazakii* happened sometime between September and December, according to FDA.[32]

73.     On January 31, 2022, the FDA found "several positive *Cronobacter* results" from environmental samples during an inspection of the Sturgis facility, and an FDA review of Abbott's internal documents indicated that Abbott Laboratories previously destroyed infant formulas in connection with the contamination issue.[33]

74.     The FDA also received one complaint of an infant with Salmonella infection who consumed formula from the Sturgis facility. However, they later concluded there is not enough information available to definitively link the illness with the recalled infant formula.[34]

75.     On February 17, 2022, the FDA, in conjunction with the CDC, announced a warning to consumers to not purchase or use certain of Abbott's powdered infant formulas.[35]

76.     As part of the warning, the FDA Deputy Commissioner for Food Policy and Response stated:

> As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections. We want to reassure the public that we're working diligently with our partners to investigate complaints related to these products, which we recognize include infant formula produced at this facility, while we work to resolve this safety concern as quickly as possible.[36]

77.     Abbott's took no action for nearly five months after it learned about the first

---

[32] *Id*.

[33] *Id*.

[34] https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited October 2, 2022).

[35] *Id.*

[36] https://thehill.com/policy/healthcare/public-global-health/594856-three-kinds-of-baby-formula-recalled-by-abbott/ (last visited April 28, 2022).

reported illness, potential contamination issues at the Sturgis Facility, and the FDA inspection which indicated that there were serious noncompliance issues at the Sturgis Facility.[37] Only then did Abbott announce that it had found evidence of *Cronobacter sakazakii* in the non-product contact areas of the Sturgis Facility.

78.    Abbott has not explained why it waited nearly five months to make this announcement or warn consumers about the inherent risk of products manufactured at the Sturgis Facility.

79.    Medical and scientific literature has long associated Salmonella with powdered infant formula.[38] As one article provides:

> A review of the peer-reviewed literature revealed several large recent outbreaks of Salmonella infection among infants that were attributable to contaminated PIF, resulting in diarrhea and, in some infants, bacteremia and meningitis.[39]

While another article states:

> Based on the reports found, there were 407 cases of Salmonella infant infection from twelve unrelated outbreaks that could be attributed to contaminated PIF in the past 50 years.[40]

80.    More recently, "[s]ix outbreaks of Salmonella infection associated with [powdered infant formula] during the period 1985–2005, involving ~287 infants, clearly indicate that contamination of [powdered infant formula] with Salmonella species contributes to the burden of

---

[37] *See* https://www.cdc.gov/cronobacter/outbreaks/infant-formula.html (last visited October 2, 2022).

[38] "Salmonella and Cronobacter are the two most critical genera based on prevalence and health impact reported in the literature." Blackshaw, Katherine, et al., *Public Health Nutrition*, Volume 24 , Issue 7 , May 2021 , pp. 1725 – 1740, DOI: https://doi.org/10.1017/S1368980020000555.

[39] Cahill SM, et al., Powdered infant formula as a source of Salmonella infection in infants. *Clin Infect Dis*. 2008 Jan 15;46(2):268-73. doi: 10.1086/524737. PMID: 18171262. Cahill and her co-authors also state: "Outbreaks of salmonellosis among infants that are linked to PIF are likely to be underreported."

[40] Blackshaw, Katherine, et al., *Public Health Nutrition*, Volume 24 , Issue 7 , May 2021 , pp. 1725 – 1740, DOI: https://doi.org/10.1017/S1368980020000555.

salmonellosis among infants."[41] Katherine Blackshaw and her co-authors describe "detection of Salmonella" as "by far the most commonly identified reason for morbidity associated with contaminated [Powdered Infant Formula]."[42]

81.     The role of manufacturers in detecting pathogens such as Salmonella as well as mitigating against them cannot be understated:

> PIF can become contaminated with bacteria of importance to human health, some of which may be pathogenic (including Salmonella species among others; Mullane et al., 2007). It is a constant challenge for the PIF industry generally, to be able to detect Class A pathogens such as Salmonella species in this food matrix prior to distribution due to the low numbers that are present on occasion. Failure to do so, can lead to salmonellosis infection among infants, some of which may be life-threatening (Cahill et al., 2008). Similarly, failures in the food safety management of these associated food production facilities can result in the environment and final product becoming contaminated.[43]

82.     Like Salmonella, *Cronobacter* bacteria can cause severe, life-threatening infections (sepsis) or meningitis (an inflammation of the membranes that protect the brain and spine).[44]

83.     *Cronobacter* bacteria can get into formula powder if contaminated raw materials are used to make the formula or if the formula powder touches a contaminated surface in the manufacturing environment.

84.     *Cronobacter* bacteria can cause severe, life-threatening infections, meningitis, and symptoms include: poor feeding, irritability, temperature changes, jaundice, grunting, and abnormal body movements. As set forth by the Centers for Disease Control and Prevention:

---

[41] Cahill SM, et al., Powdered infant formula as a source of Salmonella infection in infants. *Clin Infect Dis*. 2008 Jan 15;46(2):268-73. doi: 10.1086/524737. PMID: 18171262.

[42] Blackshaw, Katherine, et al., *Public Health Nutrition*, Volume 24 , Issue 7 , May 2021 , pp. 1725 – 1740, DOI: https://doi.org/10.1017/S1368980020000555.

[43] Gunn L, et al., Molecular Characterization of Salmonella Serovars Anatum and Ealing Associated with Two Historical Outbreaks, Linked to Contaminated Powdered Infant Formula. *Front. Microbiol.* 2016 7:1664. doi: 10.3389/fmicb.2016.01664.

[44] https://www.cdc.gov/cronobacter/outbreaks/infant-formula.html (last visited October 2, 2022).

> Infants (<12 months old): In infants, *Cronobacter* usually causes sepsis or severe meningitis. Some infants may experience seizures. Those with meningitis may develop brain abscesses or infarcts, hydrocephalus, or other serious complications that can cause long-term neurological problems. The mortality rate for *Cronobacter* meningitis may be as high as 40%.[45]

Other sources have described the mortality rate reaching as high as 80%.[46]

85.     As reported in medical and scientific literature:

> Among *C. sakazakii* infant case consultations conducted by CDC during 1998–2005, 92% of infants for whom information on feeding practices were available had received a PIF product.[47]

86.     As another author stated, "[i]nvasive *Cronobacter* infection is extremely unusual in infants not fed [powdered infant formula] / [powdered human milk fortifier].[48]

87.     Specifically, the FDA announced that it is investigating consumer complaints of *Cronobacter sakazakii* and *Salmonella Newport* infections connected to powdered infant formula products produced by Abbott.

88.     Symptoms of sepsis and meningitis may include poor feeding, irritability, temperature changes, jaundice (yellow skin and whites of the eyes), grunting breaths, abnormal movements, and even death.[49]

89.     *Cronobacter* infection may also cause bowel damage and may spread through the

---

[45] CDC.gov, https://www.cdc.gov/cronobacter/technical.html (last accessed on March 25, 2022).

[46] Norberg S, Stanton C, Ross RP, Hill C, Fitzgerald GF, Cotter PD. Cronobacter spp. in powdered infant formula. J Food Prot. 2012 Mar;75(3):607-20. doi: 10.4315/0362-028X.JFP-11-285. PMID: 22410240.

[47] Kalyantanda G, Shumyak L and Archibald LK, (2015) Cronobacter species contamination of powdered infant formula and the implications for neonatal health. *Front. Pediatr.* 3:56. doi:10.3389/fped.2015.00056.

[48] Jason, J., Prevention of Invasive Cronobacter Infections in Young Infants Fed Powdered Infant Formulas, Pediatrics (2012) 130 (5): e1076–e1084, https://doi.org/10.1542/peds.2011-3855

[49] https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited October 2, 2022).

blood to other parts of the body.[50]

90.     Salmonella are a group of bacteria that can cause gastrointestinal illness and fever called salmonellosis. Most people with salmonellosis develop diarrhea, fever and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases, may become fatal.[51]

91.     Around the time of a second infant death, on February 25, 2022, Senator Patty Murray of Washington and Senator Bob Casey of Pennsylvania demanded Abbott Nutrition hand over information and documents related to the company's infant formulas.[52]

92.     As documented in the FDA Form 483 issued on March 18, 2022:

    a.  Defendant failed to set in place and/or maintain a system of process controls that cover all stages of infant formula processing to ensure the product does not become adulterated due to the presence of microorganisms (such as *Cronobacter*) in the formula or in the processing environment;

    b.  Defendant further failed to ensure that all surfaces that contacted infant formula were maintained to protect infant formula from being contaminated with microorganisms (such as *Cronobacter*);

    c.  Defendant failed to document any determination as to whether a hazard to health exists due to contamination with microorganisms (such as *Cronobacter*);

    d.  Defendant's personnel that worked directly with infant formula, its raw materials, packaging, equipment, or utensil contact surfaces failed to wear necessary

---

[50] *Id.*

[51] *Id.*

[52] https://www.politico.com/news/2022/02/26/senators-demand-answers-from-abbott-on-infant-formula-recall-00012073 (last visited October 2, 2022).

protective apparel.[53]

93.     While initially the FDA reported that two children had died and two others were sickened after consuming formula from the Sturgis plant that contained *Cronobacter sakazakii*, Agency documents received via public records requests indicate the Agency had investigated seven additional deaths of children following their ingestion of Abbott formula produced at the Sturgis plant since 2021.[54] The FDA investigated 128 consumer complaints collected by the FDA between December 2021 and March 2022, including 25 described as "life-threatening illness/injury."[55] These additional complaints include reports of multiple forms of infection, inclusive of *Cronobacter sakazakii*, Proteus mirabilis, COVID-19, Salmonella, CDIFF (*Clostridioides difficile*), Shigella, astrovirus, and "shigelloides." Two of the deaths reported mentioned Salmonella.

94.     Further, a whistleblower report dated October 19, 2021, noted that violations taking place at the Sturgis Facility were "neither inadvertent nor minor in nature." Attached as **Exhibit A** to this Complaint. Further findings from that report include:

On multiple occasions, and in various ways, records have been knowingly falsified… This included testing seals on empty cans…

The Sturgis site performed a time code removal after the discovery of microorganisms ("micros") in a batch of infant formula. The remaining portion of the batch outside the time code removal was released without additional testing. On

---

[53] https://www.fda.gov/media/157708/download https://www.similacrecall.com/us/en/home.html (last visited October 2, 2022).

[54] Phyllis Entis, "Nine baby deaths reported to FDA during Abbott Nutrition investigation," efoodalert.com (June 8, 2022), https://efoodalert.com/2022/06/08/nine-baby-deaths-reported-to-fda-during-abbott-nutrition-investigation. See also the FDA spreadsheet of Abbott Complaints received by the article's author pursuant to a Freedom of Information Act Request. Id. (available at https://efoodalert.files.wordpress.com/2022/06/abbott-complaints-spreadsheet-redacted.pdf)(last accessed on June 21, 2022).

[55] *Id.*

another occasion product was not re-called from the market even after management became aware of a nonconformity ("NC").

Aside from the mandate of FDA regulations, Abbott's inaction is directly at odds with the mandate of Sarbanes-Oxley mandating adequate internal controls and the Department of Justice's policy mandating effective compliance programs.

95.     The whistleblower report sets forth Abbott's failures with regard to maintaining sanitary conditions, testing outgoing product, as well as falsifying records and concealing information from regulators.[56] The whistleblower's account corroborates many of the deficient food safety practices described in the FDA's 2019, 2021, and 2022 Form 483 reports as set forth herein.

96.     Abbott was alerted to the whistleblower's complaint about its Sturgis-based factory as far back as February 2021. Despite this, Abbott delayed action for another year.

97.     Defendant's conduct therefore represents a repeated, conscious disregard for the safety and lives of among the most vulnerable individuals—infants—that rises to the level of recklessness, wantonness, and malice.

98.     On May 16, 2022, the U.S. Department of Justice ("DOJ") announced its filing of a Complaint and proposed consent decree applicable to Abbott's Sturgis plant.[57] As the DOJ explains in the Complaint:

> Ongoing inadequacies in manufacturing conditions and practices at Defendants' facilities demonstrate that Defendants have been unwilling or unable to implement sustainable corrective actions to ensure the safety and quality of food manufactured

---

[56] The whistleblower report was posted on Marler Blog. *See* Bill Marler, "Mr. Abbott, you are going to jail for manufacturing tainted infant formula," Marler Blog (April 28, 2022) available at https://www.marlerblog.com/lawyer-oped/mr-abbott-you-are-going-to-jail-for-manufacturing-tainted-infant-formula/ (last accessed on May 16, 2022) (hereafter referred to as "Whistleblower Report").

[57] DOJ, "Justice Department Files Complaint and Proposed Consent Decree to Ensure Safety of Abbott Laboratories' Infant Formula" (May 16, 2022) available at https://www.justice.gov/opa/pr/justice-department-files-complaint-and-proposed-consent-decree-ensure-safety-abbott (last accessed on May 16, 2022).

for infants, a consumer group particularly vulnerable to foodborne pathogens. Defendants' violations of the Act and the likelihood that violations will recur in the absence of court action demonstrate that injunctive relief is necessary.[58]

99.    Abbott eventually joined the DOJ's consent decree that incorporates numerous violations of statutes and regulations by Abbott in relation to its management of the Sturgis plant, such as:

The Complaint alleges that Defendants violate 21 U.S.C. § 331(a) by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce articles of food that are adulterated within the meaning of 21 U.S.C.§ 342(a)(4).

The Complaint alleges that Defendants violate 21 U.S.C. § 331(a) by introducing or causing to be introduced, or delivering or causing to be delivered for introduction, into interstate commerce articles of food, namely infant formula as defined in 21 U.S.C. § 321(z), that are adulterated within the meaning of 21 U.S.C. § 350a(a)(3), 21 U.S.C. § 350a(b)(2), and 21 C.F.R. Part 106.

The Complaint alleges that Defendants violate 21 U.S.C. § 331(k) by causing articles of food that are held for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(a)(4).

The Complaint alleges that Defendants violate 21 U.S.C. § 331(k) by causing articles of food, namely infant formula as defined in 21 U.S.C. § 321(z), that are held for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 350a(a)(3).[59]

100.    During a hearing before two subcommittees of the United States House of Representatives that related to Abbott's production of infant formula, FDA Commissioner Robert Califf, M.D., described the conditions at the Sturgis, Michigan plant:

Let's say you had a next-door neighbor who had leaks in the roof, they didn't wash their hands, they have bacteria growing all over the kitchen. You walked in, and there was standing water on the counters and the floor, and the kids were walking

---

[58] Complaint for Permanent Injunction at 4, ECF 1, 1:22-cv-00441 (W.D. Mich. May 16, 2022), available at https://www.justice.gov/opa/press-release/file/1506081/download (last accessed on May 16, 2022).

[59] Proposed Consent Decree at 1-2, ECF 2-1, 1:22-cv-00441 (W.D. Mich. May 16, 2022), available at file://serverdata/UserProfiles$/sgeisler/Desktop/abbott_proposed_consent_decree_0.pdf (last accessed on May 16, 2022); *U.S. v. Abbott Lab.*, et al., 1:22-cv-00441 (W.D. Mich. May 16, 2022) (J. Hala Jarbou)

through with mud on their shoes and no one cleaning it up. You probably wouldn't want your infant eating in that kitchen. And that's in essence what the inspection showed."[60]

101.    Dr. Califf further described "shocking" and "egregiously unsanitary" structural and equipment issues.[61]

102.    During a joint media conference, Dr. Califf joined Director of FDA's Center for Food Safety and Applied Nutrition, Dr. Susan Mayne, and FDA's Deputy Commissioner for Food Policy, Frank Yiannas. Dr. Mayne disputed Abbott's claims that the FDA's findings represented a rejection of any link between Abbott's Sturgis Factory and the sickened infants, stating:

> We had multiple strains of *Cronobacter* that were isolated from the environment in the Sturgis plant. So there certainly is the possibility that other strains that we didn't detect at the time we were in the plant for the inspection certainly could have been in there.[62]

103.    Deputy Commissioner Frank Yiannas cautioned the public "not to read too much into the fact that there's been negative test results of finished product or that there hasn't been a genetic link established."[63] As he further explained, "It's important to remember that an over reliance on end product testing is not really the best way to assure food safety. It's really about process control."[64]

104.    On January 20, 2023, *The Wall Street Journal* confirmed that the Consumer Protection branch of the United States Department of Justice ("DOJ") opened a <u>criminal</u>

---

[60] NPR.org, https://www.npr.org/2022/05/25/1101307685/2-house-subcommittees-are-trying-to-get-answers-about-the-baby-formula-shortage (last accessed on Oct. 11, 2022).

[61] Delauro.house.gov, https://delauro.house.gov/media-center/press-releases/delauro-statement-abbott-facility-reopening (last access on October 11, 2022).

[62] YouTube.com, https://www.youtube.com/watch?app=desktop&v=uFg9mpDDuzk (last access October 11, 2022).

[63] *Id*.

[64] *Id*.

investigation of Abbott over contamination at its Sturgis, Michigan factory that led to the facility's temporary closure and nationwide product shortage.[65] The DOJ criminal probe joins the FDA's ongoing probe.[66]

105.    On January 21, 2023, Congresswoman Rose DeLauro released the following statement:

> The numerous illnesses, reported deaths, and the shortage could have been prevented if Abbott did not drag its feet to investigate credible allegations of substandard food safety practices at the Sturgis plant. And yet, Abbott quickly went into litigation mode by diverting blame, and not taking accountability. This is a company that has had over 40 lawsuit dockets that include food safety allegations related to Abbott food products filed against Abbott Laboratories before the recall in February 2022. In my view, they have a documented history of shamefully putting production and profits over safety and people.[67]

Representative DeLauro also stated: "Since Abbott's February 2022 recall of contaminated infant formula, we have seen credible reports that the plant in Sturgis, MI, cut corners, falsified records, and instituted shoddy safety practices that generated an infant formula shortage"[68]

106.    The evidence set forth herein demonstrates a pattern of Defendant not only failing to take adequate, reasonable measures to protect the health and lives of infants consuming its infant formula products, but also failing to take even common-sense measures, such as washing hands, upon learning of the risk of contamination of its products with microorganisms. Abbott, therefore:

    a.    Had knowledge that its powdered infant formula manufactured, processed, and

---

[65] *WSJ.com*, "Abbott Under Federal Criminal Investigation Over Baby Formula." *The Wall Street Journal*, https://www.wsj.com/articles/abbott-under-criminal-investigation-over-baby-formula-11674255871 (last accessed on Jan. 31, 2023).

[66]    *ABCNEWS.Go.com*, "DOJ investigating conduct at Abbott infant formula plant," at https://abcnews.go.com/US/doj-investigating-conduct-abbott-infant-formula-plant/story?id=96583280 (last accessed on Jan. 31, 2023).

[67]    Delauro.house.gov, https://delauro.house.gov/media-center/press-releases/delauro-statement-department-justice-criminal-investigation-abbott (last access on Jan. 31, 2022).

[68] *Id*.

packaged at its Sturgis, Michigan plant had been contaminated with microorganisms (such as *Cronobacter sakazakii*);

b.  Failed to adequately test for *Cronobacter sakazakii* and other contaminants in its powdered infant formula;

c.  Failed to ensure numerous controls were in place to prevent contamination of its powdered infant formula manufactured, processed, and packaged at its Sturgis, Michigan plant.

### Harm to Plaintiffs and other Consumers

107.    As descried herein, Abbott, through its acts and omissions, violated state statutes, equity and common law.

108.    Each of the Plaintiffs in this action purchased one or more of Defendant's powdered infant formula products, including the Class Products, on the assumption that the labeling was accurate and that the products were unadulterated, safe, and effective and would not have paid the purchase price for them if they had known that the products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase.

109.    Abbott continued distributing and selling the Class Products for nearly five months after it had learned about the first infant illness before the first recall and FDA inspections indicated that the Sturgis Facility was unfit for the safe manufacture of infant formulas.

110.    Under the circumstances that existed, no sales of the Class Products should have taken place. Furthermore, Abbott should have alerted or otherwise warned consumers that harmful bacteria was discovered at the Sturgis Facility in September 2021, but it concealed this fact for nearly five months. Throughout this time period, Abbott misrepresented that the Class Products

31

were safe for consumption.

111.    Each of the Plaintiff's paid the full retail value price for the Class Products, based on the false and misleading claims by Defendant. Under the circumstances that existed, no sales of the Class Products should have taken place, and thus a full refund is applicable.

112.    Alternatively, assuming the Products had any value, that value had diminished due to the risk of the alleged bacterial contamination in any Class Product.

113.    The Plaintiffs also experienced hardship from the resulting nationwide infant formula shortage, as they were required to spend extra time searching for available infant formula; experienced purchasing limitations put in place by concerned retailers; and were forced to pay more than they would have otherwise paid for infant formula if the risk of contamination had not driven the infant and toddler formula shortage in the United States.[69]

114.    Each of the Plaintiffs in these actions seeks a full refund, or alternatively a partial refund equal to the diminished value of, or price premium paid for, the Class Products, including any and all other damages and available relief for the injuries they have sustained as a result of Abbott's false and misleading claims with respect to the defective and Class Products.

## CLASS ALLEGATIONS

115.    Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals (the "Class" or "Classes") pursuant to Rule 23(a), (b)(1), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Classes against Defendant for violations of state laws:

---

[69] See https://www.reuters.com/business/healthcare-pharmaceuticals/abbott-could-restart-infant-formula-production-michigan-plant-2022-05-11/ (last visited October 2, 2022).

### National Class

All consumers who purchased a Class Product in the United States of America and its territories from April 1, 2018 to the present for personal use or consumption.

### Illinois Class

All consumers who purchased a Class Product in the State of Illinois from April 1, 2018 to the present for personal use or consumption.

### Arizona Class

All consumers who purchased a Class Product in the State of Arizona from April 1, 2018 to the present for personal use or consumption.

### Arkansas Class

All consumers who purchased a Class Product in the State of Arkansas from April 1, 2018 to the present for personal use or consumption.

### California Class

All consumers who purchased a Class Product in the State of California from April 1, 2018 to the present for personal use or consumption.

### Connecticut Class

All consumers who purchased a Class Product in the State of Connecticut from April 1, 2018 to the present for personal use or consumption.

### Florida Class

All consumers who purchased a Class Product in the State of Florida from April 1, 2018 to the present for personal use or consumption.

### Georgia Class

All consumers who purchased a Class Product in the State of Georgia from April 1, 2018 to the present for personal use or consumption.

### Iowa Class

All consumers who purchased a Class Product in the State of Iowa from April 1, 2018 to the present for personal use or consumption.

### Kansas Class

All consumers who purchased a Class Product in the State of Kansas from April 1, 2018 to the present for personal use or consumption.

### Louisiana Class

All consumers who purchased a Class Product in the State of Louisiana from April 1, 2018 to the present for personal use or consumption.

### Maryland Class

All consumers who purchased a Class Product in the State of Maryland from April 1, 2018 to the present for personal use or consumption.

### Michigan Class

All consumers who purchased a Class Product in the State of Michigan from April 1, 2018 to the present for personal use or consumption.

### Minnesota Class

All consumers who purchased a Class Product in the State of Minnesota from April 1, 2018 to the present for personal use or consumption.

### Missouri Class

All consumers who purchased a Class Product in the State of Missouri from April 1, 2018 to the present for personal use or consumption.

### Ohio Class

All consumers who purchased a Class Product in the State of Ohio from April 1, 2018 to the present for personal use or consumption.

### Pennsylvania Class

All consumers who purchased a Class Product in the State of Pennsylvania from April 1, 2018 to the present for personal use or consumption.

### South Carolina Class

All consumers who purchased a Class Product in the State of South Carolina from April 1, 2018 to the present for personal use or consumption.

**Tennessee Class**

All consumers who purchased a Class Product in the State of Tennessee from April 1, 2018 to the present for personal use or consumption.

**Texas Class**

All consumers who purchased a Class Product in the State of Texas from April 1, 2018 to the present for personal use or consumption.

**West Virginia Class**

All consumers who purchased a Class Product in the State of West Virginia from April 1, 2018 to the present for personal use or consumption.

116.     Excluded from each of the classes above are consumers who allege personal bodily injury resulting from the use of a Class Product. Also excluded are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

117.     The class definitions identify unnamed class members by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendant. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class through notice published online through internet positing and/or publication.

118.     *Numerosity – Federal Rule of Civil Procedure 23(a)(1).* The members of each of the proposed class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiffs, and can only be determined through appropriate discovery, Plaintiffs are informed and believe that each of the proposed classes contain thousands of purchasers of the Class Products who have suffered economic injury by Defendant's conduct as alleged herein.

119. *Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).* Plaintiffs' claims raise questions of law and fact common to all members of the proposed classes, and they predominate over any questions affecting only individual class members. These common legal and factual questions include the following:

    a.  Whether Defendant was unjustly enriched by the sale of Class Products;

    b.  Whether Defendant made negligent misrepresentations in selling the Class Products;

    c.  Whether the Class Products fail under the implied warranty of merchantability;

    d.  Whether Defendant failed to reasonably warn consumers regarding the risks of the Class Products;

    e.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Class Products was deceptive;

    f.  Whether Defendant's actions violated the state consumer protection statutes invoked below;

    g.  Whether Defendant's alleged conduct violated public policy; and

    h.  Whether a premium was paid by Plaintiffs; if the method for determining the price premium applies to everyone in the class; and whether the price premium can be calculated with proof common to the class.

120. *Typicality – Federal Rule of Civil Procedure 23(a)(3).* Plaintiffs' claims are typical to those of the other members of the classes because all class members are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied each and every Class Product. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the classes. Further, there are no

defenses available to Defendant that are unique to Plaintiffs or to any particular class members.

121.     *Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)*. Plaintiffs will fairly and adequately protect the interests of the proposed classes. Plaintiffs have retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of each representative Plaintiff and the classes they seek to represent that would make class certification inappropriate. Additionally, Plaintiffs' Counsel are competent to advance the interests of the Class having been designated as Lead Counsel in dozens, if not hundreds, of class cases. Plaintiffs and their Counsel intend to prosecute this action vigorously.

122.     *Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1)*. Absent a representative class action, members of the classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

123.     *Superiority – Federal Rule of Civil Procedure 23(b)(3)*. A class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for the Plaintiffs and the class members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of the Class could afford individual litigation, it would be unduly burdensome

to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In particular, for every count pleaded below, calculations of damages are susceptible to well-established class wide damage modeling methods.

124.     In contrast, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party (or parties) opposing the class and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiffs and the class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

## FIRST CLAIM FOR RELIEF

### Violation of Illinois's Consumer Fraud and Deceptive Business Practices Act

**85 Ill. Comp. Stat. 505/1—505/12**

**(On Behalf of Plaintiff Reyes, the Nationwide Class, and the Illinois Class)**

125.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

126.     Plaintiff Reyes bring this Count individually, on behalf of the Nationwide Class and on behalf of the Illinois Class.

127.      Reyes and the Nationwide and Illinois classes have standing to pursue a cause of action for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the

"ICFA"), 815 ILCS 505/1, *et seq.*, because Reyes, and the members of the Nationwide and Illinois classes have suffered an injury in fact and lost money as a result of Defendant's actions as set forth herein.

128.    The ICFA prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose. 815 ILCS 505/11a.

129.    The IFCA provides:

§ 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

130.    Illinois has expressly adopted the federal food labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food, drug and cosmetic labeling laws is an independent violation of Illinois law and actionable as such.

131.    Pursuant to 410 ILCS 620/11, "[a] food is misbranded – (a) If its labeling is false or misleading in any particular." Specifically, sections 620/10 (Adulterated Food) and 620/11 were designed to prohibit food manufacturers and sellers from selling foods to consumers that may be injurious to their health, and from failing to reveal to consumers the consequences of consuming adulterated foods.

132.    Defendant's conduct, as described herein, violates ICFA because it violates public

policy; is so oppressive that the consumer has little choice but to submit; and causes consumers substantial injury.

133. Defendant's conduct, including its representations that the Class Products were safe for infants to consume, constitutes a violation of the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in a course of conduct of trade or commerce.

134. Defendant intended that Plaintiff Reyes and each of the members of the National Class and the Illinois Class would rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

135. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that the Class Products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

136. As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

137. Defendant omitted or concealed material facts about the safety and useable nature of its Class Products.

138. Defendant further knew or should have known that its representations of fact and omissions of fact concerning the Class Products are material and likely to mislead consumers.

40

Under the circumstances that existed, no sales of the Class Products should have taken place.

139. Defendant advertised its products nationally, and Plaintiff Reyes and each of the members of the National Class and the Illinois Class were deceived by Defendant's claims that, *inter alia,* the Class Products "keep [infants] fed, happy, and healthy."

140. Like Plaintiff Reyes, the members of the National Class and the Illinois Class would not have paid the purchase price for the Class Products had they known that the Class Products were not safe for infants to consume due to contamination risks identified at the Sturgis facility.

141. Because of Defendant's unfair and deceptive acts, Plaintiff Reyes, and the members of the National Class and the Illinois Class have suffered ascertainable loss and actual damages.

142. Plaintiff Reyes, and the members of the National Class and the Illinois Class did not receive the benefit of the bargain, and are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, *et seq*.

143. Through its deceptive practices, Defendant has improperly obtained and continues to improperly obtain and retain money from Plaintiff Reyes, and the members of the National Class and the Illinois Class.

144. The injury caused by Defendant's conduct could not reasonably have been avoided by consumers because they did not know and could not have known that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase, particularly given that microorganisms such as *Cronobacter sakazakii* and Salmonella are not listed on the infant formula Products' label.

145. Moreover, Defendant's deceptive practices involving the Class Products were designed, established, and initiated from Defendant's marketing and sales agents located at Defendant's corporate headquarters in Illinois and were designed to be uniformly relied upon by

41

consumers nationwide when they purchased the Class Products thereby implicating the legitimate interest of the State of Illinois in ensuring that entities within its jurisdiction operate in accordance with Illinois law.

146.     Therefore, Illinois has a legitimate interest in applying its law to adjudicate this dispute and to ensure that its residents comply with its consumer protection laws while serving Illinois and out-of-state consumers. Accordingly, Illinois law has significant contacts to the claims asserted by the National Class so that application of its consumer fraud laws to all class claimants is not arbitrary, capricious, or unfair and is not a violation of due process.

147.     Plaintiff Reyes, on behalf of herself, the members of the National Class and the members of the Illinois Class seek relief under 815 ILCS § 505/10a, including, but not limited to injunctive relief, damages, restitution, punitive damages and attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**

**<u>Violation of Arizona's Consumer Fraud Act</u>**

**Ariz. Rev. Stat. § 44-1521, *et seq.***

**(On Behalf of Plaintiff Dates and the Arizona Class)**

148.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

149.     Plaintiff Dates brings this Count on behalf of herself and on behalf of the Arizona Class.

150.     The Arizona Consumer Fraud Act prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or

42

advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged." A.R.S. § 44-1522.

151. Defendant engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the Arizona Consumer Fraud Act.

152. The Arizona Supreme Court has declared that consumers have a private cause of action against a person who violates the Arizona Consumer Fraud Act. *See, Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 575-76 (1974).

153. "The elements of a private cause of action under the act are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.,* 136 Ariz. 338, 342 (Ct. App. 1983).

154. Defendant participated in unfair or deceptive trade practices that violated the Arizona Consumer Fraud Act as described herein and alleged throughout this Consolidated Complaint. By concealing the true risks of the Class Products, Defendant knowingly and intentionally misrepresented and omitted material facts in connection with the sale the Class Products. Defendant systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Products in the course of their business.

155. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Products.

156. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being

43

contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

157. Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

158. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

159. As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

160. Plaintiff Dates and the members of the Arizona Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

161. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

162. Defendant knew that the risks inherent in the Class Products made them not suitable for their intended use. Under the circumstances that existed, no sales of the Class Products should

44

have taken place.

163.    Had Plaintiff Dates and the members of the Arizona Class known the truth about the Class Products, they would not have paid the purchase price for the Class Products. Plaintiff and the members of the Arizona Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

164.    Defendant owed Plaintiff Dates and the members of the Arizona Class a duty to disclose the truth about the Class Products because Defendant: (a) possessed exclusive, specific and superior knowledge of the true risks of the Class Products; (b) intentionally concealed the foregoing from Plaintiff dates and the members of the Arizona Class; and/or (c) made incomplete representations regarding the Class Products, while purposefully withholding material facts from Plaintiff Dates and the members of the Arizona Class that contradicted these representations.

165.    Plaintiff Dates and the members of the Arizona Class suffered monetary damages as a result of Defendants' conduct.

166.    Defendant's violations present a continuing risk to Plaintiff Dates and the members of the Arizona Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest, including public health.

167.    Plaintiff Dates, on behalf of himself and the members of the Arizona Class, seeks actual damages, punitive damages, attorneys' fees, costs and any other just and proper relief available under the Arizona Consumer Fraud Act and Arizona Law.

## THIRD CLAIM FOR RELIEF

### Violation of Arkansas Deceptive Trade Practices Act

**Ark. Code Ann. §§ 4-88-101, *et seq.***

**(On Behalf of Plaintiff Deffebaugh and the Arkansas Class)**

168.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

169.    The Arkansas Deceptive Trade Practices Act makes it unlawful to engage in "any deception, fraud, or false pretense" or "[t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission" "[w]hen utilized in connection with the sale or advertisement of any goods." Ark. Code Ann. § 4-88-108.

170.    Defendant engaged in unlawful deceptive and unconscionable trade practices, deception, fraud, or false pretense, and the concealment, suppression, or omission of any material fact with intent that others rely upon that concealment, suppression, or omission, with respect to the sale and advertisement of the Class Products purchased by Plaintiff Deffebaugh and the members of the Arkansas Class, in violation of Ark. Code Ann. §§ 4-88-101, *et seq.*, including by misrepresenting the true quality of the Class Products, and concealing the true risks of the Class Products.

171.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

172.    Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were

safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

173.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

174.    As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

175.    Abbott's conduct of manufacturing, producing, and selling Class Products as alleged herein is a violation of the Arkansas Deceptive Trade Practices Act including but not limited to:

> (1) knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;
>
> …
>
> (3) advertising the goods or services with the intent not to sell them as advertised;
>
> …
>
> (10) engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade;

Ark. Code § 4-88-107(a).

176.    The deceptive and unconscionable trade practices listed in Ark. Code § 4-88-107(a)

are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of the State of Arkansas. Ark. Code § 4-88-107(b).

177. Plaintiff Deffebaugh and the members of the Arkansas Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

178. The above unlawful acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

179. Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Deffebaugh and the members of the Arkansas Class.

180. Defendant's actions were material to Plaintiff Deffebaugh and the members of the Arkansas Class, who relied on Defendant's representations in that they would not have paid the purchase price, chosen, and/or paid for the Class Products had they known that the Class Products potentially defective and not safe for infants to consume due to contamination risks identified at the Sturgis facility.

181. As a direct and proximate result of Defendant's unlawful deceptive and unconscionable acts or practices, Plaintiff Deffebaugh and the members of the Arkansas Class suffered an ascertainable loss of money, as described above, including the past, present and future costs associated with replacement of the Class Products.

182. Plaintiff Deffebaugh and the members of the Arkansas Class seek relief under Ark. Code Ann. § 4-88-113(f)(1)(A), including, but not limited to injunctive relief, restitution, statutory damages, compensatory damages, punitive damages, and attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

### False and Misleading Advertising in Violation of California Law

### Business & Professions Code §17500, *Et Seq.*

### (On Behalf of Plaintiffs Andaluz, Lyons and California Class)

183.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

184.    Plaintiffs Andaluz and Lyons bring this Count individually on behalf of themselves and on behalf of the California Class.

185.    The California False Advertising Law prohibits the dissemination of any advertisement which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to by untrue or misleading. Cal. Bus. & Prof. Code §17500.

186.    At all material times, Defendant engaged in a scheme of offering the Class Products to Plaintiffs Andaluz, Lyons and other members of the California Class by way of commercial marketing, advertising, internet content, and other promotional materials.

187.    These materials, advertisements, and other inducements misrepresented and/or omitted the true nature of the Class Products as alleged herein. Specifically, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

188.    Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its advertisements and other inducements regarding its Class Products were false, misleading, and/or deceptive.

189.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

190.    As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

191.    The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including to Plaintiffs Andaluz, , and Lyons and the other members of the California Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in the Class Products, and thus were violations of Cal. Bus. Prof. Code §§ 17500, *et seq*

192.    Through its deceptive and/or misleading acts and practices, Defendant improperly obtained money from Plaintiffs Andaluz, Lyons and the other members of the California Class.

193.    Pursuant to Business & Professions Code §§17203 and 17535, Plaintiffs Andaluz and Lyons seek, on behalf of themselves and the other members of the California Class, an order of this Court awarding Plaintiffs Andaluz, Lyons and the other members of the California Class restitution of the money wrongfully acquired by Defendant and enjoining Defendant from continuing to violate California's False Advertising Law. Plaintiffs Andaluz and Lyons further seek prejudgment interest on the money wrongfully acquired and withheld by Defendant pursuant

to California Civil Code §3287(a) and attorneys' fees and costs pursuant to California Code Civil Procedure §1021.5.

## FIFTH CLAIM FOR RELIEF

### Unfair Businesses Practices in Violation of California Law

### Business & Professions Code §17200, *et seq.*

### (On Behalf of Plaintiffs Andaluz, Lyons and California Class)

194.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

195.    Plaintiffs Andaluz and Lyons bring this Count individually on behalf of themselves and on behalf of the California Class.

196.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

197.    The acts and practices of Defendant as alleged herein constitute "unfair" business acts and practices under the California Unfair Competition Law in that Defendant's conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous. Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

198.    Defendant has been committing, and continues to commit, acts of unfair competition by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Consolidated Complaint, including, but not limited to:

  a. making false and misleading statements and material omissions including, as set forth above, representing that the Class Products "give babies a strong start by helping to keep them fed, happy, and healthy" when, in fact, they are at risk of

contamination;

b.  Concealing and failing to disclose the true risks of the Class Products, despite engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula, as demonstrated in the FDA Forms 483 discussed herein;

c.  Engaging in conduct, as alleged herein, where the utility of such conduct is outweighed by the gravity of the consequences to Plaintiffs Andaluz, Lyons and other members of the California Class;

d.  Engaging in conduct, as alleged herein, that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs Andaluz, Lyons and other members of the California Class; and

e.  Engaging in conduct, as alleged herein, that undermines or violates state consumer protection laws.

199.    Plaintiffs Andaluz and Lyons reserve the right to identify additional unfair, fraudulent, and unlawful practices by Defendant as further investigation and discovery warrants.

200.    As a result of its unlawful, unfair, and/or fraudulent business acts and practices, Defendant has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs Andaluz, Lyons, and other members of the California Class. Defendant's unlawful, unfair, and/or fraudulent conduct has also enabled Defendant to gain an unfair competitive advantage over its law-abiding competitors.

201.    Plaintiffs Andaluz, Lyons, and other members of the California Class have suffered injury in fact and have lost money as a result of Defendant's unfair, fraudulent and unlawful business acts or practices.

202.    The above-described unfair business acts or practices present a threat and likelihood of harm and deception to Plaintiffs Andaluz, Lyons and other members of the California Class in that Defendant has systematically perpetrated the unfair, fraudulent and unlawful conduct upon members of the public by engaging in the conduct described herein.

203.    Business and Professions Code §17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of the unlawful, unfair, and/or fraudulent business acts or practices.

204.    Plaintiffs Andaluz and Lyons seek, on behalf of themselves and the other members of the California Class, an order of this Court awarding Plaintiffs Andaluz, Lyons and the other members of the California Class restitution of the money wrongfully acquired by Defendant and enjoining Defendant from the unlawful, unfair, and/or fraudulent activity alleged herein. Plaintiffs Andaluz and Lyons further seek prejudgment interest on the money wrongfully acquired and withheld by Defendant pursuant to California Civil Code §3287(a) and attorneys' fees and costs pursuant to California Code Civil Procedure §1021.5.

### SIXTH CLAIM FOR RELIEF

### <u>Violation of the California Consumers Legal Remedies Act</u>

### California Civil Code §1750, *et seq*.

### (On Behalf of Plaintiffs Andaluz, Lyons and California Class)

205.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

206.    Plaintiffs Andaluz and Lyons bring this Count individually on behalf of themselves and on behalf of the California Class.

207.    The California Consumers Legal Remedies Act was enacted to protect consumers

against unfair and deceptive business practices. The California Consumers Legal Remedies Act declares unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods to any consumer as unlawful. Cal. Civ. Code § 1770(a).

208.     Plaintiffs Andaluz, Lyons and the members of the California Class are "consumers" within the meaning of section 1761(d) of the California Civil Code, and engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the Class Products.

209.     The Class Products purchased by Plaintiffs Andaluz, Lyons, and the members of the California Class constitute "goods" under Civil Code §1761(a).

210.     Defendant's conduct of manufacturing, producing, and selling the Class Products as alleged herein violates the California Consumers Legal Remedies Act including, but not limited to:

> (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; …
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; …
>
> (6) Representing that goods are original or new if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand; …
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> (9) Advertising goods or services with intent not to sell them as advertised; and
>
> (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

Cal. Civ. Code § 1770.

211.     Defendant fraudulently deceived Plaintiffs Andaluz, Lyons, and the members of

the California Class by representing that the Class Products have certain characteristics, benefits, uses and qualities which they do not have. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs Andaluz, Lyons, and the members of the California Class, including but not limited to that the Class Products promote health and are fit for consumption. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs Andaluz, Lyons, and the members of the California Class and depriving them of their legal rights and money. Plaintiffs Andaluz, Lyons, and the members of the California Class reasonably relied upon misrepresentations, misleading statements, deceptive practices, omissions, and false promises by Defendant, which resulted in injury to them.

212.    Defendant knew that the Class Products may be contaminated and not safe for consumption. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

213.    Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

214.    Plaintiffs Andaluz, Lyons, and the members of the California Class have suffered ascertainable losses of money because of defendant's unlawful conduct. The actual out-of-pocket losses of Plaintiffs Andaluz, Lyons, and the members of the California Class were proximately caused by Defendant's violations of the California Consumers Legal Remedies Act.

215. Plaintiffs Andaluz and Lyons have complied with the requirements of California Civil Code §1782(a) and therefore also seek, on behalf of themselves and the members of the California Class, damages under the California Consumers Legal Remedies Act and attorneys' fees and costs pursuant to California Civil Code §1780(d).

## SEVENTH CLAIM FOR RELIEF

### Violation of Connecticut Deceptive and Unfair Trade Practices Act

### Conn. Gen. Stat. § 42-110b, et seq.

### (On Behalf of Plaintiff Scully and the Connecticut Class)

216. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

217. Plaintiff Scully brings this cause of action individually and on behalf of the members of the Connecticut Class.

218. The Connecticut Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110(b)(a).

219. Connecticut General Statutes, Section 42-110b, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

220. Connecticut General Statutes, Section 42-110g, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

221. Connecticut General Statutes, Section 42-110g(d), provides that the prevailing party in litigation arising from a cause of action under section 42-110g may be entitled to recover attorney's fees within the limitations set forth therein from the non-prevailing party.

222. Connecticut General Statutes, section 42-110g(a), states that a person has violated the CUTPA if she "engage[s] in unfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce." Section 42-110g(c) further states that the Commissioner of Consumer Protection "may … establish by regulation acts, practices or methods which may be deemed to be unfair or deceptive in violation of subsection (a) of this section."

223.    Defendant participated in unfair or deceptive trade practices that violated the Connecticut Unfair Trade Practices Act as described below and alleged throughout the Complaint. By concealing the true risks of the Class Products, Defendant knowingly and intentionally misrepresented and omitted material facts in connection with the sale the Class Products. Defendant systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Products in the course of their business.

224.    Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Products.

225.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

226.    Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

227.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of

its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

228.     As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

229.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

230.     Defendant knew that the risks inherent in the Class Products made them not suitable for their intended use.

231.     Defendant knew or should have known that its conduct violated the Connecticut Unfair Trade Practices Act.

232.     Defendant owed Plaintiff Scully and the members of the Connecticut Class a duty to disclose the truth about the Class Products because Defendant: (a) possessed exclusive, specific and superior knowledge of the true risks of the Class Products; (b) intentionally concealed the foregoing from Plaintiff Scully and the members of the Connecticut Class; and/or (c) made incomplete representations regarding the Class Products, while purposefully withholding material facts from Plaintiff Scully and the members of the Connecticut Class that contradicted these representations.

233.     Plaintiff Scully and the members of the Connecticut Class suffered monetary

damages as a result of Defendant's conduct.

234.    Defendant is liable to Plaintiff Scully and the members of the Connecticut Class for actual damages, punitive damages, and attorneys' fees and costs. Conn. Gen. Stat. § 42-110g(a), (d).

## EIGHTH CLAIM FOR RELIEF

### Violation of Florida's Deceptive and Unfair Trade Practices Act

### Fla. Stat. §§ 501.201-213

### (On Behalf of Plaintiffs Menendez, Quailes and the Florida Class)

235.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

236.    Plaintiffs Menendez and Quailes bring this cause of action individually on behalf of themselves and on behalf of the members of the Florida Class.

237.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

238.    Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

239.    Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

240.    Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

241.    Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein from the non-prevailing party.

242.    Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

243.    Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

244.    Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce infant formula products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

245.    At all relevant times, Plaintiffs Menendez, Quailes, and the members of the Florida Class were "consumers" within the meaning of the FDUTPA. § 501.203(7), Fla. Stat.

246.    Defendant's conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA. § 501.203(8), Fla. Stat.

247.    Defendant's omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including Plaintiffs Menendez, Quailes, and the members of the Florida Class, acting reasonably under the circumstances, to their detriment by failing to the true risks of the Class Products, Defendant violated FDUTPA.

248.    Defendant failed to reveal facts that were material to Plaintiffs Menendez's, Quailes's, and the members of the Florida Class's decisions to purchase the Class Products, and

60

Defendant intended that Plaintiffs Menendez, Quailes, and the members of the Florida Class would rely upon the omissions.

249.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

250.    Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

251.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

252.    As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

253.    Plaintiffs Menendez, Quailes and the members of the Florida Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

254.    Defendant's actions impact the public interest because Plaintiffs Menendez,

Quailes, and the members of the Florida Class were injured in exactly the same way as thousands of others purchasing Class Products as a result of and pursuant to Defendant's generalized course of deception. This conduct includes representing in their labels that their infant formula Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the infant formula Products are at risk of being adulterated with microorganisms, such as *Cronobacter sakazakii* and Salmonella.

255.     Had Plaintiffs Menendez, Quailes, and the members of the Florida Class known the truth about the Class Products, they would not have paid the purchase price for the Class Products.

256.     Plaintiffs Menendez and Quailes also seek an order entitling them and the members of the Florida Class to recover all monies spent on the Class Products, which were acquired through acts of fraudulent, unfair, or unlawful competition. In addition, the measure of restitution should be full refund of the purchase price insofar as the Class Products and their associated labels are worthless. But for Defendant's misrepresentations and omissions, Plaintiff would have paid nothing for the Class Products that have a risk of containing microorganisms such as *Cronobacter sakazakii* and *Salmonella Newport*. Indeed, there is no discernible "market" for an infant formula product that may be adulterated with harmful bacteria. As a result, the Class Products are rendered valueless.

257.     As a result of Defendant's unfair and deceptive trade practices, Plaintiffs Menendez, Quailes, and the members of the Florida Class are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if they prevail.

## NINTH CLAIM FOR RELIEF

### Violation of Violation of Georgia's Uniform Deceptive Trade Practices Act

### Ga. Code Ann. § 10-1-370 – 10-1-375

### (On Behalf of Plaintiff Carroll and the Georgia Class)

258.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

259.    Plaintiff Carroll brings this Count individually and on behalf of the Georgia Class.

260.    Defendant engaged in trade practices prohibited by the Georgia Uniform Deceptive Trade Practices Act including:

    a.    Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

    b.    Advertising goods or services with intent not to sell them as advertised; and

    c.    Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding. *See* Georgia Code § 10-1-372 (7), (9), and (12).

261.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

262.    Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

263.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged

in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

264. As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula .

265. Plaintiff Carroll and the members of the Georgia Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

266. By selling the Class Products with exclusive knowledge of the defect, and by promoting, marketing, and advertising the infant formula Products while failing to disclose and concealing the infant formulas' defective nature Defendant engaged in deceptive practices that violate Georgia law.

267. Defendant engaged in these deceptive practices with the intent that consumers, like Plaintiff Carroll and the members of the Georgia Class, would rely on the representations and omissions when deciding whether to purchase the infant formula Products.

268. Plaintiff Carroll and members of the Georgia Class suffered ascertainable loss as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Carroll and the members of the Georgia Class known that the Class Products were not safe for infants to consume due to contamination risks identified at the Sturgis facility, they would not have paid the purchase price for them.

269.     Accordingly, Plaintiff Carroll and the members of the Georgia Class seek actual damages, reasonable attorneys' fees and costs, and all other relief permitted under the Georgia Uniform Deceptive Trade Practices Act.

### TENTH CLAIM FOR RELIEF

### Violation of Kansas's Consumer Protection Act

### Kan. Stat. Ann. §§ 50-623 – 50-643

### (On Behalf of Plaintiff Leonard and the Kansas Class)

270.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

271.     Plaintiff Leonard brings this Count individually and on behalf of the Kansas Class.

272.     A key policy purpose of the Kansas Consumer Protection Act, which is to be "construed liberally," is "to protect consumers from suppliers who commit deceptive and unconscionable practices." Kan. Stat. Ann. § 50-623.

273.     The Kansas Consumer Protection Act prohibits suppliers from engaging in deceptive acts and practices "in connection with a consumer transaction," which include, among other things, (1) representations made knowingly or with reason to know that "[p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have," (2) representations made knowingly or with reason to know that "property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation," (3) "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact," and (4) "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." Kan. Stat. Ann. § 50-626(b)(1-3).

274. The Class Products purchased by Plaintiff Leonard and the members of the Kansas Class are "property" as defined by Kan. Stat. Ann. § 50-624(j).

275. Defendant is a "supplier" as defined by Kan. Stat. Ann. § 50-624(l).

276. Defendant engaged in deceptive acts or practices, with respect to the sale and advertisement of the Class Products purchased by Plaintiff Leonard and the members of the Kansas Class, in violation of Kan. Stat. Ann. §§ 50-623, *et seq.*, including by misrepresenting the true quality of the Class Products, and concealing the true risks of the Class Products.

277. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

278. Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

279. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

280. As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the

infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

281.   Plaintiff Leonard and the members of the Kansas Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

282.   The above deceptive acts or practices by Defendant were conducted in connection with "consumer transactions" as defined by Kan. Stat. Ann. § 50-624(c).

283.   The above unlawful deceptive acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

284.   Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Leonard and the members of the Kansas Class.

285.   Plaintiff Leonard and the members of the Kansas Class relied on Defendant's representations in that they would not have paid the purchase price, chosen, and/or paid for all or part of Class Products had they known that the Class Products would be potentially defective and not safe for infants to consume due to contamination risks identified at the Sturgis facility.

286.   As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff Leonard and the members of the Kansas Class suffered an ascertainable loss of money or property, real or personal, as described above.

287.   Plaintiff Leonard and the members of the Kansas Class seek relief under by Kan. Stat. Ann. § 50-634, including, but not limited to restitution, statutory damages, compensatory damages, civil penalties and attorneys' fees and costs.

## ELEVENTH CLAIM FOR RELIEF

### Violation of Maryland's Consumer Protection Act

### Md. Code. Ann., Com. Law §§ 13-101-501

### (On Behalf of Plaintiffs Abendschoen, Corvelli, Whitmore and the Maryland Class)

288.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

289.    Plaintiffs Abendschoen, Corvelli, and Whitmore bring this Count individually on behalf of themselves and on behalf of the Maryland Class.

290.    Under the Maryland Consumer Protection Act, "[a] person may not engage in any unfair, abusive, or deceptive trade practice" in the sale of any consumer goods. Md. Code Ann., Com. Law § 13-303(1).

291.    Under the Maryland Consumer Protection Act, unfair, abusive, or deceptive trade practices include, among other things, representations that consumer goods "have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" or "are of a particular standard, quality, grade, style, or model which they are not"; "[f]ailure to state a material fact if the failure deceives or tends to deceive; or "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with…[t]he promotion or sale of any consumer goods." Md. Code Ann., Com. Law § 13-301.

292.    Defendant engaged in unfair, abusive, or deceptive trade practices with respect to the sale and advertisement of the Class Products purchased by Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class, in violation of Md. Code Ann., Com. Law §§ 13-101, *et seq.*, including by knowingly making statements or representations that were false

or misleading regarding the quality of the Class Products and concealing the true risks of the Class Products.

293.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

294.    Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

295.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

296.    As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula .

297.    Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

298.    The above unfair, abusive, or deceptive trade practices by Defendant were conducted in connection with the sale of "consumer goods," as defined by Md. Code Ann., Com. Law § 13-101(d)(1).

299.    The above unfair, abusive, or deceptive trade practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

300.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class.

301.    Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class suffered ascertainable losses and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class would not have paid the purchase price for the Class Products had they known they were not safe for infants to consume due to contamination risks identified at the Sturgis facility.

302.    Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class seek relief under Md. Code Ann., Com. Law § 13-408, including, but not limited to compensatory damages, and attorneys' fees, costs, and any other just and proper relief available under the Maryland Consumer Protection Act.

## TWELVETH CLAIM FOR RELIEF

### Violation of Michigan's Consumer Protection Act

### Mich. Comp. Laws §§ 445.901-922

### (On Behalf of Plaintiff William and the Michigan Class)

303.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

304.    Plaintiff William brings this Count individually and on behalf of the Michigan Class.

305.    The Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.…" Mich. Comp. Laws § 445.903(1). GM engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have… characteristics… that they do not have.…;" "(e) Representing that goods or services are of a particular standard… if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

306.    Defendant engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the

Class Products purchased by Plaintiff William and the members of the Michigan Class, in violation of Mich. Comp. Laws § 445.903, including by misrepresenting the true quality of the Class Products, and concealing the true risks of the Class Products.

307. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

308. Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

309. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

310. As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula .

311. Plaintiff William and the members of the Michigan Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

312.    The above unfair methods of competition and unfair or deceptive acts or practices by Defendants were conducted in "[t]rade or commerce," as defined by Mich. Comp. Laws § 445.902(1)(g).

313.    The above unfair and deceptive practices and acts by Defendant were material misrepresentations of a presently existing or past fact.

314.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous.

315.    Plaintiff William and the members of the Michigan Class relied on Defendant's representations in that they would not have paid the purchase price for the Class Products had they known that the Class Products were potentially defective and not safe for infants to consume due to contamination risks identified at the Sturgis facility.

316.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff William and the members of the Michigan Class suffered an ascertainable loss of money or property, as described above.

317.    Plaintiff William and the members of the Michigan Class seek relief under Mich. Comp. Laws § 445.911, including, but not limited to damages, attorneys' fees and costs

### THIRTEENTH CLAIM FOR RELIEF

### Violation of the Minnesota Prevention of Consumer Fraud Act

### Minn. Stat.§ 325F.69

### (On Behalf of Plaintiff Ghost and the Minnesota Class)

318.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

319.    Plaintiff Ghost brings this Count individually and on behalf of the Minnesota Class.

320. The Minnesota Prevention of Consumer Fraud Act ("MPCFA") makes unlawful "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1). The MPCFA further provides that "any person injured by a violation of [the MPCFA] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 8.31(3a).

321. Defendant engaged in unlawful, unfair, and deceptive acts and practices, with respect to the sale and advertisement of the Class Products purchased by Plaintiff Ghost and the members of the Minnesota Class, in violation of Minn. Stat. §§ 325F.69; 325D.13; and 325D.44, including by misrepresenting the true quality of the Class Products and concealing the true risks of the Class Products.

322. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

323. Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

324. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged

in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

325.    As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

326.    Plaintiff Ghost and the members of the Minnesota Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy." Plaintiff Ghost and the members of the Minnesota Class had no way of discerning that Defendant's representations were false and misleading.

327.    Plaintiff Ghost and the members of the Minnesota Class would not have paid the purchase price for the Class Products had they known that the Class Products were not safe for infants to consume due to contamination risks identified at the Sturgis facility.

328.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.

329.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Ghost and the members of the Minnesota Class.

330.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Ghost and the members of the Minnesota Class suffered an ascertainable loss of money or property, as described above.

331.     As a result of the foregoing willful, knowing, and wrongful conduct of Defendant, Plaintiff Ghost and the members of the Minnesota Class have been damaged in an amount to be proven at trial.

332.     Plaintiff Ghost and the members of the Minnesota Class seek relief under Minn. Stat. § 8.31, subd. 3a; and § 325D.45, including, but not limited to damages, and attorneys' fees and costs.

**FOURTEENTH CLAIM FOR RELIEF**

**<u>Violation of the Missouri Merchandising Practices Act</u>**

**Mo. Rev. Stat. §§ 407.010 - 407.130**

**(On Behalf of Plaintiff Morris and the Missouri Class)**

333.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

334.     Plaintiff Morris brings this Count individually and on behalf of the Missouri Cass.

335.     The Missouri Merchandising Practices Act was created to protect Missouri consumers from deceptive and unfair business practices.

336.     Defendant's conduct described herein constitutes the act, use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression and omission of material facts in connection with the sale and advertisement of merchandise, the Class Products, in trade or commerce in Missouri, making it unlawful under Mo. Rev. Stat. § 407.020.

337.     For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

338. Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

339. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

340. As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula .

341. Plaintiff Ghost and the members of the Missouri Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

342. Plaintiff Ghost and the members of the Missouri Class purchased the Class Products for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by Mo. Rev. Stat. § 407.020.

343. Plaintiff Ghost and the members of the Missouri Class acted as reasonable consumers would have acted under the circumstances and Defendant's conduct declared unlawful by Mo. Rev. Stat. § 407.020 would cause reasonable persons to enter into the transactions (purchasing the Class Products) that resulted in the damages.

77

344.     Accordingly, pursuant to Mo. Rev. Stat. § 407.025, Plaintiff Ghost and the members of the Missouri Class are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Class Products as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to replace the Class Products, and (c) other miscellaneous incidental and consequential damages.

345.     In addition, given the nature of Defendant's conduct, the Court should exercise its discretion to award Plaintiff Ghost and the members of the Missouri Class punitive damages, attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Defendant's unlawful conduct.

## FIFTEENTH CLAIM FOR RELIEF

### Violation of Ohio's Consumer Sales Practices Act

### Ohio Rev. Code §§ 1345.01, *et. seq.*

### (On Behalf of Plaintiff Wilkerson and the Ohio Class)

346.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

347.     Plaintiff Wilkerson brings this Count individually and on behalf of the Ohio Class.

348.     The Ohio Consumer Sales Practice Act makes it unlawful to "commit an unfair or deceptive act or practice in connection with a consumer transaction" Ohio Rev. Code Ann. § 1345.02. This includes (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied

in accordance with a previous representation, if it has not. *Id.*

349. Defendant engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the Class Products purchased by Plaintiff Wilkerson and the members of the Ohio Class, in violation of Ohio Rev. Code Ann. §§ 1345.021 *et seq*., including by misrepresenting the true quality of the Class Products and concealing the true risks of the Class Products.

350. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

351. Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

352. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

353. As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its

unsafe and unsanitary practices previously resulted in contaminated infant formula .

354.    Plaintiff Wilkerson and the members of the Ohio Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

355.    The above unfair methods of competition and unfair or deceptive acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

356.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Wilkerson and the members of the Ohio Class.

357.    Plaintiff Wilkerson and the members of the Ohio Class relied on Defendant's representations in that they would not have paid the purchase price for the Class Products had they known that the Class Products were potentially defective and were not safe for infants to consume due to contamination risks identified at the Sturgis facility.

358.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff Wilkerson and the members of the Ohio Class suffered an ascertainable loss of money or property, as described above.

359.    Plaintiff Wilkerson and the members of the Ohio Class seek relief under Ohio Rev. Code § 1345.09, *et seq*., including, but not limited to damages, and attorneys' fees and costs.

## SIXTEENTH CLAIM FOR RELIEF

### Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law

### 73 Pa. Stat. § 201-2(4)

### (On Behalf of Plaintiff Rouland and the Pennsylvania Class)

360.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

361.    Plaintiff Rouland brings this cause of action individually and on behalf of the

members of the Pennsylvania Class.

362. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including, "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

363. Defendant's conduct of manufacturing, producing, and selling Class Products as alleged herein is a violation of the Pennsylvania CPL including but not limited to:

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

(vi) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(ix) Advertising goods or services with intent not to sell them as advertised;

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Stat. § 201-2(4).

364. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

365. Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were

safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

366.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

367.    As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

368.    Plaintiff Rouland and the members of the Pennsylvania Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

369.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

370.    Defendant knew that the risks inherent in the Class Products made them not suitable for their intended use.

371.    Defendant knew or should have known that its conduct violated the Pennsylvania CPL.

372.    Had Plaintiff Rouland and the members of the Pennsylvania Class known the truth about the Class Products, they would not have paid the purchase price for the Class Products.

Plaintiff Rouland and the members of the Pennsylvania Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

373.    Defendant owed Plaintiff Rouland and the members of the Pennsylvania Class a duty to disclose the truth about the Class Products because Defendant: (a) possessed exclusive, specific and superior knowledge of the true risks of the Class Products; (b) intentionally concealed the foregoing from Plaintiff Rouland and the members of the Pennsylvania Class; and/or (c) made incomplete representations regarding the Class Products, while purposefully withholding material facts from Plaintiff Rouland and the members of the Pennsylvania Class that contradicted these representations.

374.    Plaintiff Rouland and the members of the Pennsylvania Class suffered injury in fact to a legally protected interest. As a result of Defendant's conduct, Plaintiff Rouland aand the members of the Pennsylvania Class were harmed and suffered actual damages.

375.    Defendant is liable to Plaintiff Rouland and the members of the Pennsylvania Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs under 73 P.S. § 201-9.2(a). Plaintiff Rouland and the members of the Pennsylvania Class are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. Plaintiff Rouland and the members of the Pennsylvania Class also seek reasonable attorneys' fees and costs pursuant to 73 Pa. Stat. § 201-9.2(a).

## SEVENTEENTH CLAIM FOR RELIEF

## Violation of Tennessee Consumer Protection Act

## Tenn. Code Ann. § 47-18-101, et seq.

## (On Behalf of Plaintiff Driver and the Tennessee Class)

376.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

377.    Plaintiff Driver brings this Count individually and on behalf of the Tennessee Class.

378.    The Tennessee Consumer Protection Act was enacted to "protect consumers…from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within [Tennessee]." Tenn. Code Ann. § 47-18-102(2).

379.    Defendant engaged in trade practices prohibited by the Tennessee Consumer Protection Act, including:

a.    § 47-18-104(5): representing that goods or services have characteristics that they do not have;

b.    § 47-18-104(7) representing that goods or services are of a particular standard, quality or grade, if they are of another;

c.    § 47-18-104(9): advertising goods or services with intent not to sell them as advertised; and

d.    § 47-18-104(21): using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, or usability of the goods, or which may otherwise misrepresent the goods in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods to other goods.

380. For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

381. Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

382. Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

383. As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

384. Plaintiff Driver and the members of the Tennessee Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

385. By selling the Class Products with exclusive knowledge of the defect, and by promoting, marketing and advertising the infant formula Products while failing to disclose and concealing the Class Products' potentially defective nature Defendant engaged in deceptive

practices that violate Tennessee law.

386.    Defendant engaged in these deceptive practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Class Products.

387.    Plaintiff Driver and the members of the Tennessee Class suffered ascertainable losses as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Driver and the members of the Tennessee Class known that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase, they would not have paid the purchase price for the Class Products.

388.    Plaintiff Driver and the members of the Tennessee Class seek relief under Tenn. Code § 47-18-108-109, including, but not limited to compensatory damages, statutory damages, punitive damages, civil penalties, and attorneys' fees and costs.

## EIGHTEENTH CLAIM FOR RELIEF

### Violation of Texas's Consumer Protection Act

### Tex. Bus. & Com. Code Ann. § 17.41 – 17.63

### (On Behalf of Plaintiffs Benoit, Garza and the Texas Class)

389.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

390.    Plaintiffs Benoit and Garza bring this Count individually and on behalf of the Texas Class.

391.    The Texas Consumer Protection Act prohibits unfair and unconscionable acts, including representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; advertising goods or services with

intent not to sell them as advertised; and failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. *See* TCPA §§ 17.46 (7), (9), (24).

392.    Defendant engaged in unfair and unconscionable trade practices by misrepresenting the true quality of the Class Products, and concealing the true risks of the Class Products.

393.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

394.    Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

395.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

396.    As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its

unsafe and unsanitary practices previously resulted in contaminated infant formula.

397.    Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Class Products is unfair and unconscionable because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

398.    Defendant engaged in these unfair and unconscionable practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Class Products.

399.    Plaintiff Benoit and the members of the Texas Class suffered ascertainable loss as a direct and proximate result of Defendant's unfair and unconscionable acts or practices. Had Plaintiff Benoit and the members of the Texas Class known that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase, they would not have paid the purchase price for them.

400.    Accordingly, Plaintiff Benoit and the members of the Texas Class seek actual damages, punitive damages, reasonable attorneys' fees and costs, and all other relief permitted under the Texas Consumer Protection Act.

## NINTEENTH CLAIM FOR RELIEF

### Violation of West Virginia's Consumer Credit and Protection Act

### W. Va. Code Ann. § 46A-6-101 – 46A-6-110

### (On Behalf of Plaintiff Hamrick and the West Virginia Class)

401.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

402.    Plaintiff Hamrick brings this Count individually and on behalf of the West Virginia

Class.

403.    The West Virginia Consumer Credit and Protection Act broadly prohibits deceptive, unfair and unconscionable acts. W. Va. Code §§ 46A-6-102(7), 46A-6-104.

404.    Defendant engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the West Virginia Consumer Credit and Protection Act.

405.    For example, in the course of Defendant's business, Defendant concealed and suppressed material facts, including that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase. These microorganisms are not identified as an ingredient on the Class Products' label.

406.    Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

407.    Yet, as demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

408.    As alleged in the Facts Common to All Claims above, Defendant's pattern of unsafe and unsanitary manufacturing, processing, packaging, and holding practices related to its infant formula existed long before the Recall was issued. Therefore, at the time Plaintiff purchased the infant formula, Defendant was on notice of bacteria-related problems at its facilities because its unsafe and unsanitary practices previously resulted in contaminated infant formula.

409. Plaintiff Hamrick and the members of the West Virginia Class were deceived by Defendant's claims that, *inter alia*, the Class Products "keep [infants] fed, happy, and healthy."

410. By concealing the true risks of the Class Products, Defendant knowingly and intentionally misrepresented and omitted material facts in connection with the sale the Class Products. Defendant systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Products in the course of their business.

411. Defendant engaged in these deceptive practices with the intent that consumers would rely on the representations and omissions when deciding whether to purchase the Class Products.

412. Plaintiff Hamrick and the members of the West Virginia Class suffered ascertainable losses as a direct and proximate result of Defendant's deceptive acts or practices. Had Plaintiff Hamrick and the members of the West Virginia Class known that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase, they would not have paid the purchase price for them.

413. Accordingly, Plaintiff Hamrick and the members of the West Virginia Class seek actual damages, reasonable attorneys' fees and costs, and all other relief permitted under the West Virginia Consumer Credit and Protection Act.

## TWENTIETH CLAIM FOR RELIEF

### Unjust Enrichment

**(On Behalf of the Arizona, Arkansas, California, Connecticut , Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and West Virginia Classes)**

414.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

415.    As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and West Virginia Classes when they purchased the Class Products.

416.    In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Classes.

417.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and West Virginia Classes.

418.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

419.    Plaintiffs and members of the Arizona, Arkansas, California, Connecticut, Florida,

91

Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and West Virginia Classes may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

420.    Under the doctrine of unjust enrichment, it is inequitable for Defendant to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Class Products to Plaintiffs and members of the Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and West Virginia Classes.

421.    It is unjust and inequitable for Abbott to retain these sums of money because, among other facts, Defendant: (1) negligently failed to prevent the *Cronobacter sakazakii* and Salmonella contamination; (2) failed to discover the presence of these and other bacterial contaminants; (3) falsely and misleadingly represented that the Class Products were safe for infants to consume; (4) concealed known contamination risks at the Sturgis Facility; (5) continued to sell the Class Products for five months instead of initiating a recall in September 2021; and (6) under the circumstances that existed, no sales of the Class Products should have taken place.

422.    Defendant's misrepresentations and omissions have injured Plaintiffs and members of the Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and West Virginia Classes because they would not have paid the purchase price for the Class Products had they known the true facts regarding the Class Products' contamination risks.

423.    The financial benefits derived by Defendant from obtaining and retain Plaintiffs' property rightfully belong to Plaintiffs and members of the Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland,

Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and West Virginia Classes.

424.     Because it is unjust and inequitable for Defendant to retain non-gratuitous benefits conferred on it by Plaintiffs and members of the Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and West Virginia Classes, Defendant must make restitution to Plaintiffs and members of the Classes, as ordered by the Court.

**TWENTY-FIRST CLAIM FOR RELIEF**

**<u>Breach of Implied Warranty of Merchantability</u>**

**(On Behalf of the Arkansas, California, Connecticut, Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and West Virginia Classes)**

425.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

426.     By operation of law, Defendant, as manufacturer of the Class Products, impliedly warranted to Plaintiffs and the members of the State Classes that the Class Products were of merchantable quality and safe for their ordinary and intended use pursuant to:

      a.   Ark. Code Ann. §§ 4-2-314, 4-2-315;

      b.   Cal. Com. Code § 2314;

      c.   Conn. Gen. Stat. Ann. §§ 42a-2-314, 42a-2-315;

      d.   Fla. Stat. Ann. § 672.314 and Fla. Stat. Ann. § 672.315;

      e.   Ga. Code Ann. § 11-2-314, § 11-2-315;

      f.   810 Ill. Comp. Stat. Ann. 5/2-314 and 810 Ill. Comp. Stat. Ann. 5/2-315;

93

    g.  Iowa Code Ann. § 554.2314 and Iowa Code Ann. § 554.2315;

    h.  Kan. Stat. Ann. § 84-2,314, § 84-2,315;

    i.  La. Civ. Code Art. 2520, 2524;

    j.  Md. Code Com. Law § 2-314;

    k.  Mich. Comp. Laws § 440.2314;

    l.  Minn. Stat. § 336.2-314;

    m.  Mo. Stat. §§ 400.2-314

    n.  Ohio Rev. Code Ann. §§ 1302.27;

    o.  13. Pa. Cons. Stat. §§ 2314;

    p.  S.C. Code §§ 36-2-314;

    q.  Tenn. Code Ann. §§ 47-2-314;

    r.  Tex. Bus. & Com. Code §§ 2.314;

    s.  W. Va. Code §§ 46-2-314; and

427.    The FDA monitors formula manufacturers like Abbott to ensure quality control and safety of infant formula products. ¶ 79.

428.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Yet, Defendant repeatedly advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food

94

allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

429. Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Class Products. At the point of sale, the Class Products contained labeling showing the Class Products were intended for safe consumption by infants. These Class Products were labeled and advertised to benefit infants with severe food allergies and GI issues. Such labeling included; Elecare Powdered advertised as "hypoallergenic" and "help your child – and yourself – feel better" and Elecare's label included "#1 brand recommended by Pediatric Gastroenterologists" ¶ 72, *Figure 1*; Similac PM label contains "for infants who would benefit from lowered mineral intake, including those with impaired renal function" ¶ 75, *Figure 2*; and Similac Alimentum Powdered Infant formula contained labeling "for food allergies and colic due to protein sensitivity…Hypoallergenic" and "#1 Infant Formula Brand." ¶ 77, *Figure 3.*

430. These Class Products were specially manufactured to meet the needs of infants who required a specific infant formula to meet their dietary needs and Defendant labeled and advertised their Class Products to directly appeal to and benefit consumers with infants requiring such.

431. Plaintiffs relied on the misrepresentations and material omissions made by Defendant on its product labeling that Class Products were safe for infants to consume.

432. Defendant knew that reasonable consumers such as Plaintiffs and the proposed Class members would be the end purchasers of the Class Products and the targets of Defendant's advertising, marketing, packaging, statements, and omissions.

433. Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Class Products, including Plaintiffs and the proposed Class members.

434. Defendant directly marketed to Plaintiffs and the proposed Classes through its packaging.

435. Plaintiff and the proposed Class Members are the intended beneficiaries of the implied warranties.

436. The Class Products are foodstuffs, and therefore an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract.

437. Had Plaintiffs and the members of the State Classes known the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase, they would not have paid the purchase price for them.

438. Defendant did not provide appropriate warranty relief notwithstanding the risks of using the Class Products. Plaintiffs and the members of the State Classes reasonably expected, at the time of purchase, that the Class Products were safe for their ordinary and intended use.

439. Defendant, not the retailers who sold the Class Products, were responsible for recalling the product and thus had a direct obligation to consumers like Plaintiffs.

440. Defendant had actual knowledge of a breach of the implied warranty of merchantability because Defendant knew, as alleged herein, that the Class Products were not safe for their ordinary and intended use.

441. Plaintiffs provided written notice to Defendant via U.S. Mail and email of the breach alleged herein.

442. As a direct and proximate result of Abbott's breach of the implied warranty of merchantability, Plaintiffs and the members of the State Classes have sustained damages in an amount to be determined at trial.

## TWENTY-SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation

**(On Behalf of the Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and Texas Classes)**

443. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

444. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

445. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

446. Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

447. Defendant failed to fulfill its duty and obligations when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

448. Plaintiffs and the members of the Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and Texas Classes did not, and could not, know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs and these Class members reasonably relied upon the misrepresentations made by Defendant to them.

449. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs and the members of the Arizona, California, Connecticut Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and Texas Classes were induced to purchase the Class Products that the FDA recommends be discarded.

450. Plaintiffs and the members of the Arizona, California, Connecticut, Florida, Georgia, Illinois, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and Texas Classes suffered economic harm, in an amount to be proven at trial, in that they purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

State and Territory Specific Actions

*Count 1: Illinois*

451. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs

as if fully set forth herein.

452.     This count is brought by Plaintiff Reyes individually and on behalf of the Illinois Class.

453.     Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

454.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

455.     Yet, Defendant repeatedly and carelessly and/or negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

456.     Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

457.    Plaintiff Reyes and the members of the Illinois Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Reyes and the members of the Illinois Class reasonably relied upon the misrepresentations made by Defendant to them.

458.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Reyes and the members of the Illinois Class were induced to purchase the Class Products that the FDA recommends be discarded.

459.    Plaintiff Reyes and the members of the Illinois Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 2: Arizona*

460.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

461.    This count is brought by Plaintiff Dates individually and on behalf of the Arizona Class.

462.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

463.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that

its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

464. Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

465. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

466. Plaintiff Dates and the members of the Arizona Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Dates and the members of the Arizona Class reasonably relied upon the misrepresentations made by Defendant to them.

467. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Dates and the members of the Arizona Class were induced to purchase the Class Products that the FDA recommends be discarded.

468. Plaintiff Dates and the members of the Arizona Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 3: California*

469.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

470.     Plaintiffs Andaluz and Lyons bring this Count individually on behalf of themselves and on behalf of the California Class.

471.     Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

472.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

473.     Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

474.     Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the

safety of the infant formula products manufactured at its Sturgis facility.

475.     Plaintiffs Andaluz and Lyons and the members of the California Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Andaluz and Lyons and the members of the California Class reasonably relied upon the misrepresentations made by Defendant to them.

476.     In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Andaluz, and Lyons and the members of the California Class were induced to purchase the Class Products that the FDA recommends be discarded.

477.     Plaintiffs Andaluz, and Lyons and the members of the California Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 4: Connecticut*

478.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

479.     This count is brought by Plaintiff Scully individually and on behalf of the members of the Connecticut Class.

480.     Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

481.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render

Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

482. Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

483. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

484. Plaintiff Scully and the members of the Connecticut Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Scully and the members of the Connecticut Class reasonably relied upon the misrepresentations made by Defendant to them.

485. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Scully and the members of the Connecticut Class were induced to purchase the Class Products that the FDA recommends be discarded.

486. Plaintiff Scully and the members of the Connecticut Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 5: Florida*

487.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

488.    This count is brought by Plaintiffs Menendez and Quailes, individually on behalf of themselves and on behalf of the Florida Class.

489.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

490.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

491.    Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

492.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the

safety of the infant formula products manufactured at its Sturgis facility.

493. Plaintiffs Menendez, Quailes, and the members of the Florida Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Menendez, Quailes, and the members of the Florida Class reasonably relied upon the misrepresentations made by Defendant to them.

494. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Menendez, Quailes, and the members of the Florida Class were induced to purchase the Class Products that the FDA recommends be discarded.

495. Plaintiffs Menendez, Quailes, and the members of the Florida Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 6: Georgia*

496. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

497. This count is brought by Plaintiff Carroll individually and on behalf of the Georgia Class.

498. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

499. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render

Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

500. Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

501. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility. Defendant made the above described false representations with the intent to induce Plaintiff Carroll and the members of the Georgia Class to purchase the Class Products.

502. Plaintiff Carroll and the members of the Georgia Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Carroll and the members of the Georgia Class reasonably relied upon the misrepresentations made by Defendant to them.

503. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Carroll and the members of the Georgia Class were induced to purchase the Class Products that the FDA recommends be discarded.

504. Plaintiff Carroll and the members of the Georgia Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon

the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 7: Iowa*

505.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

506.     This count is brought by Plaintiff Boysen individually and on behalf of the Iowa Class.

507.     Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

508.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

509.     Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

510.     Defendant failed to fulfill its duty when it made false representations regarding the

quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

511.    Plaintiff Boyson and the members of the Iowa Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Boyson and the members of the Iowa Class reasonably relied upon the misrepresentations made by Defendant to them.

512.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Boyson and the members of the Iowa Class were induced to purchase the Class Products that the FDA recommends be discarded.

513.    Plaintiff Boyson and the members of the Iowa Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 8: Kansas*

514.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

515.    This count is brought by Plaintiff Leonard individually and on behalf of the Kansas Class.

516.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

517.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed,

packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

518. Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

519. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

520. Plaintiff Leonard and the members of the Kansas Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Leonard and the members of the Kansas Class reasonably relied upon the misrepresentations made by Defendant to them.

521. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Leonard and the members of the Kansas Class were induced to purchase the Class Products that the FDA recommends be discarded.

522. Plaintiff Leonard and the members of the Kansas Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 9: Louisiana*

523.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

524.     This count is brought by Plaintiff Raymond on behalf of themself and on behalf of the Louisiana Class.

525.     Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

526.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

527.     Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

528.     Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the

safety of the infant formula products manufactured at its Sturgis facility.

529.    Plaintiff Raymond and the members of the Louisiana Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Raymond and the members of the Louisiana Class reasonably relied upon the misrepresentations made by Defendant to them.

530.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Raymond and the members of the Louisiana Class were induced to purchase the Class Products that the FDA recommends be discarded.

531.    Plaintiff Raymond and the members of the Louisiana Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 10: Maryland*

532.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

533.    This count is brought by Plaintiffs Abendschoen, Corvelli, and Whitmore on behalf of themselves and on behalf of the Maryland Class.

534.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

535.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render

Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

536.    Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant intended that its statement would be acted on by Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class.

537.    Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

538.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

539.    Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class reasonably relied upon the misrepresentations made by Defendant to them.

540.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class were induced to purchase the Class Products that the FDA recommends be discarded.

541.    As a result, Plaintiffs Abendschoen, Corvelli, and Whitmore and the members of the Maryland Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

### Count 11: Michigan

542.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

543.    This count is brought by Plaintiff William on behalf of themself and on behalf of the Michigan Class.

544.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

545.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

546.    Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

547. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

548. Plaintiff William and the members of the Michigan Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff William and the members of the Michigan Class reasonably relied upon the misrepresentations made by Defendant to them.

549. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff William and the members of the Michigan Class were induced to purchase the Class Products that the FDA recommends be discarded.

550. Plaintiff William and the members of the Michigan Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 12: Minnesota*

551. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

552. This count is brought by Plaintiff Ghost individually and on behalf of the Minnesota Class.

553. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

554. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

555. Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase.

556. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and failed to exercise reasonable care in communicating information regarding the safety of the infant formula products manufactured at its Sturgis facility.

557. Plaintiff Ghost and the members of the Minnesota Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Ghost and the members of the Minnesota Class reasonably relied upon the misrepresentations made by Defendant to them.

558. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Ghost and the members of the Minnesota Class were induced to purchase the Class Products that

the FDA recommends be discarded.

559.    Plaintiff Ghost and the members of the Minnesota Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 13: Missouri*

560.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

561.    This count is brought by Plaintiff Morris individually and on behalf of the Missouri Class.

562.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

563.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

564.    Yet, in the course of Defendant's business, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions

117

and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

565.    Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

566.    Plaintiff Morris and the members of the Missouri Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Morris and the members of the Missouri Class reasonably relied upon the misrepresentations made by Defendant to them.

567.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Morris and the members of the Missouri Class were induced to purchase the Class Products that the FDA recommends be discarded.

568.    Plaintiff Morris and the members of the Missouri Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 15: Ohio*

569.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

570.    This count is brought by Plaintiff Wilkerson individually and on behalf of the Ohio Class.

571.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not

118

to make false representations.

572. As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

573. Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

574. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

575. Plaintiff Wilkerson and the members of the Ohio Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Wilkerson and the members of the Ohio Class reasonably relied upon the misrepresentations made by Defendant to them.

576. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Wilkerson and the members of the Ohio Class were induced to purchase the Class Products that

the FDA recommends be discarded.

577.     Plaintiff Wilkerson and the members of the Ohio Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 16: Pennsylvania*

578.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

579.     This count is brought by Plaintiff Rouland on behalf of themself and on behalf of the Pennsylvania Class.

580.     Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

581.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

582.     Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies.

Defendant failed to make a reasonable investigation as to whether the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase.

583. Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

584. Plaintiff Rouland and the members of the Pennsylvania Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff Rouland and the members of the Pennsylvania Class reasonably relied upon the misrepresentations made by Defendant to them.

585. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Rouland and the members of the Pennsylvania Class were induced to purchase the Class Products that the FDA recommends be discarded.

586. Plaintiff Rouland and the members of the Pennsylvania Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 17: South Carolina*

587. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

588. This count is brought by Plaintiffs Harkless and Steele on behalf of themselves and on behalf of the South Carolina Class.

589. Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not

to make false representations.

590.     As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

591.     Yet, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

592.     Defendant failed to fulfill its duty when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

593.     Plaintiffs Harkless and Steele and the members of the South Carolina Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Harkless and Steele and the members of the South Carolina Class reasonably relied upon the misrepresentations made by Defendant to them.

594.     In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Harkless and Steele and the members of the South Carolina Class were induced to purchase the

Class Products that the FDA recommends be discarded.

595.    Plaintiffs Harkless and Steele and the members of the South Carolina Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 18: Tennessee*

596.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

597.    This count is brought by Plaintiff Driver individually and on behalf of the Tennessee Class.

598.    Defendant has a duty to provide accurate information to consumers concerning the nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

599.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

600.    Yet, in the course of Defendant's business, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions

and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

601.    Defendant failed to fulfill its duty and failed to exercise reasonable care when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

602.    Plaintiff Driver and the members of the Tennessee Class did not know that Defendant's representations about the safety of its infant formula products Plaintiff Driver and the members of the Tennessee Class. Plaintiff Driver and the members of the Tennessee Class reasonably relied upon the misrepresentations made by Defendant to them.

603.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiff Driver and the members of the Tennessee Class were induced to purchase the Class Products that the FDA recommends be discarded.

604.    Plaintiff Driver and the members of the Tennessee Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

*Count 19: Texas*

605.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

606.    This count is brought by Plaintiffs Benoit and Garza on behalf of themselves and on behalf of the Texas Class.

607.    Defendant has a duty to provide accurate information to consumers concerning the

nutrition and safety of its powdered infant formula products, including the Class Products and not to make false representations.

608.    As demonstrated in the FDA Forms 483 discussed herein, Defendant engaged in a pattern of unsafe and unsanitary manufacturing, processing, packing, and holding practices of its infant formula and knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers. Thus, Defendant knew or should have known that its products were manufactured, processed, packed, and held in a manner which could foster bacterial growth and otherwise render Defendant's products dangerous to consumers.

609.    Yet, in the course of Defendant's business, Defendant repeatedly and negligently advertised, both on the Class Product labels and on its website, through a national advertising campaign, among other items, that the Class Products were safe for infants to consume, including representations that the specialty formulas were safe for infants with pre-existing health conditions and severe food allergies. Defendant did not disclose that the Class Products were at substantial risk of being contaminated with *Cronobacter sakazakii,* Salmonella, and/or other harmful bacteria at the time of purchase.

610.    Defendant failed to fulfill its duty and failed to exercise reasonable care when it made false representations regarding the quality and safety of the Class Products as detailed above and was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

611.    Plaintiffs Benoit and Garza and the members of the Texas Class did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiffs Benoit and Garza and the members of the Texas Class reasonably relied

upon the misrepresentations made by Defendant to them.

612.    In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs Benoit and Garza and the members of the Texas Class were induced to purchase the Class Products that the FDA recommends be discarded.

613.    Plaintiffs Benoit and Garza and the members of the Texas Class suffered economic harm, in an amount to be proven at trial, in that they have purchased the Class Products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request, individually and on behalf of all others similarly situated, that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(1), and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of the National Class and the State Classes defined above, and designate Plaintiffs as the class representatives and Plaintiffs' counsel as counsel for the National Class and State Classes;

B.    award all actual, general, special, incidental, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

C.    award pre-judgment and post-judgment interest on such monetary relief;

D.    award reasonable attorneys' fees and costs; and

E.    grant such further and other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all claims so triable.

Respectfully, submitted,

Dated: February 13, 2023

*/s/ Jason J. Thompson*
Jason J. Thompson (MI Bar No. P47184)
David R. Parker (MI Bar No. P39024)
Kevin Stoops (MI Bar No. P64371)
Kathryn Milz (Ill bar No. 6297213)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Tel. (248) 355-0300
jthompson@sommerspc.com
dparker@sommerspc.com
kstoops@sommerspc.com
kmilz@sommerspc.com

Kiley L. Grombacher, Esq. (CA Bar No. 245960)
BRADLEY/GROMBACHER, LLP
31365 Oak Crest Dr., Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100 / Facsimile: (805) 270-7589
Email: kgrombacher@bradleygrombacher.com

Sin-Ting Mary Liu (FL Bar No. 84438, CA Bar No. 282884)
E. Samuel Geisler (FL Bar No. 83817, Ill Bar No. 6305996)
Caitlyn Prichard Miller (FL Bar No. 126097)
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449
mliu@awkolaw.com
sgeisler@awkolaw.com
cmiller@awkolaw.com

Timothy J. Becker (MN Bar #0256663)
Stacy Hauer (MN Bar#0317093)
Jacob R. Rusch (MN Bar #0391892)
Zackary S. Kaylor (MN Bar #0400854)
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
tbecker@johnsonbecker.com
shauer@johnsonbecker.com
jrusch@johnsonbecker.com
zkaylor@johnsonbecker.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 13th day of February 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to all attorneys of record.


*/s/ Stacy K. Hauer*
Stacy K. Hauer
