**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: RECALLED ABBOTT** | ) | |
| **INFANT FORMULA PRODUCTS** | ) | **Case No. 22 C 4148** |
| **LIABILITY LITIGATION** | ) | **MDL No. 3037** |
| ------------------------------------------------------- | ) | |
| **This document relates to:** | ) | |
| **All cases** | ) | |

**CASE MANAGEMENT ORDER NO. 10
(Memorandum Opinion and Order on
Motions to Dismiss Personal Injury Complaints)**

MATTHEW F. KENNELLY, District Judge:

A number of plaintiffs have sued Abbott Labs, a healthcare product

manufacturer, on claims related to the alleged contamination—and subsequent recall—

of Abbott's infant formula. All cases alleging wrongdoing in connection with Abbott's

recalled infant formula were centralized before this Court by the Judicial Panel on

Multidistrict Litigation. This multi-district litigation (MDL) includes two types of lawsuits:

(1) individual claims seeking recovery for personal injuries allegedly caused by Abbott's

formula; and (2) putative class claims premised on economic losses allegedly caused

by Abbott's conduct. This opinion addresses Abbott's motion to dismiss twenty-eight[1]

complaints in the MDL that assert personal injury claims. On May 1, 2023, the Court

held a hearing on Abbott's motion to dismiss the personal injury complaints as well as

---

[1] These complaints include: "18 cases alleging a *Salmonella* diagnosis; 4 cases alleging a *Cronobacter* diagnosis, 3 cases alleging a diagnosis of bacterial meningitis; and cases that do not allege a specific bacterial infection, but instead merely describe common gastrointestinal symptoms." Def.'s Mot. to Dismiss Pers. Inj. Compls. at 6. More personal injury suits have been joined in the MDL since Abbott filed its motion.

its separate motions to dismiss the economic loss class action complaints and a separate lawsuit filed in this district including allegations about heavy metal contamination of Abbott's infant formula, the *Willoughby* case, No. 22 C 1322 (N.D. Ill.). For the reasons set forth below, the Court grants Abbott's motion to dismiss in part. The Court dismisses plaintiff Sanders's negligent misrepresentation claim; Hernandez, Mendoza, Ornelas, Salinas, and Stephens's (Texas plaintiffs) fraudulent concealment claims; Suarez's claim for breach of warranty of fitness for a particular purpose; Toledo-Vega's implied warranty claim; Williamson and Kilpatrick's negligence *per se* claims; and Contreras, Hernandez, Holdridge, Mendoza, Ornelas, Salinas, Stephens, Toledo-Vega, and Williamson's unjust enrichment claims and requests for injunctive and/or declaratory relief. The Court otherwise denies the motion to dismiss.

## Background

Abbott Laboratories is a company headquartered in Abbott Park, Illinois that manufactures consumer products, including powdered infant formula under the Similac, Alimentum, and EleCare brands. Abbott produces these products at—among other manufacturing facilities—a facility in Sturgis, Michigan. Abbott sells a small amount of formula directly to consumers via its website but primarily distributes it to retailers that sell it to consumers.

According to a timeline of infant formula-related events created by the Food and Drug Administration,[2] the FDA began having concerns about the safety of infant formula

---

[2] The parties appear to agree that the Court may take judicial notice of this and other public agency-created notices that were referenced in the plaintiffs' complaints. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1084 (7th Cir. 1997) (court may take judicial notice from sources "whose accuracy cannot reasonably be questioned.") (citing Fed. R. Evid. 201(b)); *see also*, *Olson v. Champaign County*, 784 F.3d 1093,

being produced in Abbott's Sturgis facility in September 2021.  On September 20, 2021, the FDA received a consumer complaint report of *Cronobacter* illness in an infant who had consumed Abbott formula.  The FDA notified Abbott about the complaint.  From September 20 to September 24, 2021, the FDA conducted a routine surveillance inspection at the Sturgis facility and observed, among other sanitation issues, standing water and inadequate handwashing.

On October 21, 2021, the FDA received a whistleblower letter from a former Abbott employee detailing the company's "longstanding pattern, routine, habit, and practice of food-safety violations at the Sturgis Facility, unsafe and dangerous operation from a food safety standpoint at [] Abbott's Sturgis Facility, along with a culture of concealing and destroying evidence . . . ."  Salinas Compl. (Case No. 22 C 4420) ¶ 35. The FDA then began planning for an inspection of the facility.  It also interviewed the informant in late December 2021.

On November 17, 2021, the FDA received a consumer complaint report of a *Salmonella* illness potentially associated with Abbott's infant formula.  The FDA eventually determined that this case of *Salmonella* was unrelated to Abbott's formula and released an announcement consistent with that finding on March 9, 2022.  The Centers for Disease Control and Prevention (CDC) found that there was not enough information to definitively link the November *Salmonella* report to Abbott's infant formula and released an announcement stating as much on May 24, 2022.  The CDC also

---

1097 n.1 (7th Cir. 2015) (as "a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6).").

confirmed that the November *Salmonella* illness was not linked to an outbreak.

On December 1, 2021, the FDA received a second consumer complaint of a *Cronobacter* illness, this time resulting in death of the infant, potentially associated with Abbott's formula.

On January 11, 2022, the FDA received a third consumer complaint of *Cronobacter* illness potentially associated with Abbott's formula.

From January 31, 2022 to March 18, 2022, after several pandemic-related delays, the FDA proceeded with an inspection of the Sturgis facility. The FDA found "significant, fundamental sanitation, building, and equipment issues and t[ook] multiple environmental samples." *Timeline of infant formula related activities*, at 2, FDA (May 25, 2022), https://www.fda.gov/media/158737/download. On February 13, 2022, the FDA confirmed that some of the samples taken from the Sturgis facility had tested positive for *Cronobacter*.

On February 15, 2022, Abbott voluntarily ceased production of certain products. The FDA recommended that Abbott voluntarily recall its infant formula three times before Abbott finally did so on February 17, 2022.

On February 18, 2022, the FDA received a fourth consumer complaint of *Cronobacter* illness, also resulting in death, potentially related to Abbott's infant formula. On February 28, 2022, on the FDA's recommendation, Abbott voluntarily expanded its recall to cover additional products associated with this fourth complaint.

On March 18, 2022, the FDA published its findings from its inspection of the Sturgis facility. Due to "[o]bservations from [the] inspection and [the] FDA's lack of confidence in Abbott[]'s food safety culture," the FDA began negotiating with Abbott

toward a consent decree to address the safety of infant formula production at the Sturgis facility. *Id.*

On May 16, 2022, the FDA and Abbott signed a proposed consent decree, which was subsequently approved by a federal judge in the Western District of Michigan.

Shortly after Abbott issued the February 2022 recall notice, a number of plaintiffs brought suit against Abbott in various jurisdictions across the country for harms allegedly related to Abbott's infant formula and the recall.  In August 2022, the Judicial Panel on Multidistrict Litigation centralized these lawsuits before the undersigned judge. Some plaintiffs have since voluntarily dismissed their claims.  Abbott now moves to dismiss the twenty-eight[3] remaining personal injury complaints under Federal Rule of Civil Procedure Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

In response to Abbott's motion, the plaintiffs collectively agreed to dismiss certain claims.  *See* App'x to Pls.' Resp. to Def.'s Mot. to Dismiss Pers. Inj. Compls. (dkt. no. 87-1).  Abbott has submitted appendices with its materials supporting the motion that summarize the claims implicated by the motion, which sections of the motion correspond to which complaints, the illnesses alleged by the complaints, and which state's law applies to each complaint.  *See* App'x to Def.'s Mot. to Dismiss Pers. Inj. Compls. (dkt. no. 63-2).

### Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

---

[3] As indicated in an earlier footnote, more personal injury lawsuits were made a part of the MDL since Abbott filed its motion to dismiss.  Abbott's counsel estimated the total number at fifty during the hearing on the motions to dismiss.

complaint must state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must view the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). But the plaintiff must provide "some specific facts to support the legal claims asserted" and may not rely on conclusory allegations to make his claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

In its request for dismissal under Rule 12(b)(1), Abbott makes a "facial" challenge to the plaintiffs' allegations regarding standing, as opposed to a "factual" challenge. In considering a facial challenge to standing under Rule 12(b)(1), the Court takes as true the complaints' factual allegations relating to standing and draws reasonable inferences in the plaintiff's favor. *See, e.g.*, *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *see also, Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (question is whether standing exists "if the well-pleaded allegations in the complaint are taken as true"). The plaintiff must "plead sufficient facts to confer standing." *Lee v. City of Chicago*, 330 F.3d 456, 469 (7th Cir. 2003).

On the question of standing, "Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha*, 807 F.3d at 172-73 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992)). The first is that the plaintiff must have suffered an "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). The other requirements are that the

6

injury must be "fairly traceable to the challenged action of the defendant" and that it must be redressable through judicial action. *Id.*

## A.     Choice of law

The parties agree that federal law governs issues related to the adequacy of the plaintiffs' allegations, standing, and any other procedural questions. The parties also agree that the substantive issues raised in Abbott's motion regarding the plaintiffs' tort, consumer protection, and breach of warranty claims are governed by law of each plaintiff's domicile.

Abbott's motion raises a number of challenges to the plaintiffs' claims that are predicated on issues of state law. Some constitute challenges to whether a particular cause of action is recognized under the law of a particular state. Others involve challenges to the adequacy of the plaintiffs' complaints as measured against the elements required under the particular plaintiff's state's law. Resolution of those latter issues would require a detailed analysis of the allegations in each individual complaint and whether they are sufficient to state a claim under the law of each plaintiffs' home state. This category of challenges is not well-suited to resolution in an omnibus fashion, and the Court declines to resolve them at this stage of the case. The Court followed this same course in *In Re Testosterone Replacement Therapy Products Liability Litigation*, No. 14 C 1748, 2014 WL 7365872 (N.D. Ill. Dec. 23, 2014), and adopts its reasoning from that case:

> [Because] [a] transferee court is not required to make case-specific rulings in the place of the transferor court . . . the Court concludes that it makes sense to address differences in state law only to the extent that this would reduce the discovery burden in a material way. In other words, it does not appear that rulings favorable to the defendants concerning the particulars of other state law claims would reduce in a material way the overall

7

burden of discovery. Accordingly, . . . the Court defers deciding individual state law issues.

*Id*. at \*10 (citation omitted). Consistent with this approach, the Court will address state law issues only to the extent that resolution in Abbott's favor would entitle it to dismissal of the claim or would significantly reduce its discovery burden.

**B.    Claims based on *Salmonella* or lacking any diagnosis**

The Court begins with Abbott's facial challenges to the plaintiffs' standing to sue. Eighteen[4] of the twenty-eight personal injury plaintiffs assert claims based on a diagnosis of *Salmonella*, and three others[5] assert claims based on general gastrointestinal symptoms. Abbott moves to dismiss these twenty-one complaints on the ground that they do not state a plausible basis to conclude that Abbott's products caused the plaintiffs' *Salmonella* diagnoses or their GI issues. Specifically, Abbott contends that the plaintiffs lack standing because they have not alleged injuries that are "fairly traceable" to Abbott's conduct, *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017), nor have they adequately alleged that Abbott's conduct caused their injuries.

**1.    Plausibility of allegations that Abbott's formula was contaminated with Salmonella**

Abbott's contention that the plaintiffs have no plausible basis to allege that its formula was contaminated with *Salmonella* is based primarily on the fact that the sole *Salmonella* case that the FDA investigated as being possibly related to Abbott's formula

---

[4] In particular, plaintiffs Contreras, Davis, Ephraim, Gaeta, Green, Holdridge, Howard, Joy, Kilpatrick, Lincoln, Marceaux, Mendoza O'Brien, Ornelas, Patek, Swepston, Toledo-Vega, and Williamson.
[5] In particular, plaintiffs Diebert, Laciste, and Suarez.

was ultimately determined not to be related to Abbott. The plaintiffs contend, however, and the Court agrees, that the fact that a single infant's *Salmonella* illness was ruled out as being caused by Abbott's recalled formula is not a basis to conclude as a matter of fact or law that no other infant *Salmonella* infections plausibly may have been caused by Abbott's formula.[6] This is particularly true when considered alongside the plaintiffs' other allegations regarding evidence of contamination at the Sturgis facility, their allegations that their infants ingested formula produced in that unsanitary environment, and their allegations that their infants became ill after ingesting that formula.

The following factual allegations, among others, bear on the plaintiffs' causation allegations:

- the whistleblower letter from a former Abbott employee who worked at the Sturgis facility;

- the handful of *Cronobacter* illnesses that the FDA investigated as being related to formula produced at the Sturgis facility;

- the samples collected from the facility that tested positive for *Cronobacter*; and

- the results of the FDA's months-long inspection and investigation of the facility.

These factual allegations allow a plausible inference that the formula produced by Abbott was contaminated and made the plaintiffs' infants ill, whether with *Salmonella* or other illnesses, diagnosed or not. A plaintiff in an injury case is not required set out her

---

[6] The plaintiffs also contend that Abbott is improperly demanding direct evidence of *Salmonella* contamination even though courts have held that circumstantial evidence is sufficient. Pls.' Resp. to Def.'s Mot. to Dismiss Pers. Inj. Compls. at 10–13 (citing *Gray v. Abbott Labs., Inc.*, 2011 WL 3022274 (N.D. Ill. July 22, 2011); *Bland v. Abbott Labs., Inc.*, 2012 WL 524473 (W.D. Ky. Feb. 16, 2012); *Vavak v. Abbott Labs., Inc.*, 2011 WL 10550065 (C.D. Cal. June 17, 2011)). But in a footnote in its reply, Abbott clarified that it does not contend that the plaintiffs are required to cite direct evidence.

evidence in the complaint.  *See, e.g.*, *Abu-Sawish v. United States*, 898 F.3d 726, (7th Cir. 2018) ("Under Rule 8 evidence is not required at the pleading stage . . . .") (internal quotation marks omitted).  But here they have done so.  Under the circumstances, the FDA's and CDC's determinations that a particular individual's November 2022 *Salmonella* infection could not be linked to Abbott's recalled formula does not render implausible the plaintiffs' allegations regarding causation.  Measuring up the evidence may be a proper basis for summary judgment, but it is not a basis for dismissal at the pleading stage.

Abbott contends that the Court "should reject this novel and extreme theory of products-liability law," because "any time a consumer asserted plausible allegations of one product defect, other plaintiffs—alleging different injuries caused by different alleged defects with the same product—could piggyback on those allegations under a poor 'manufacturing conditions' theory."  Def.'s Reply at 6.  That's an overstatement, at least as it involves the present situation.  The plaintiffs have alleged unsanitary conditions at the Sturgis facility that led to the presence of *Cronobacter* in samples taken from the facility.  It is not an unwarranted leap—at least at the pleading stage—from there to a plausible allegation that there were other forms of bacterial contamination, including *Salmonella*.  According to the FDA and CDC notices cited by Abbott, both of these types of bacteria may be found as a result of unsanitary food processing operations, in powdered formula in particular.  For these reasons, the Court disagrees with Abbott's contention that the plaintiffs' claims are premised upon a "novel and extreme" theory that cannot clear the plausibility threshold.

### 2.     Standing

Standing under Article III requires a plaintiff to allege (1) an injury in fact that is (2) "fairly traceable to the defendant's allegedly unlawful conduct" and that is (3) "likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 738 (1984). Abbott contends that the plaintiffs have failed to allege facts that causally link their claimed injuries to Abbott's conduct. *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir. 2018) (plaintiffs must allege "a causal connection between [their] injury and the conduct of which [they] complain[].").

The Court disagrees.  This argument fails largely for the same reasons as Abbott's argument regarding the plausibility of *Salmonella* contamination.  "Plausibility for purposes of Rule 8 is not synonymous with probability; it is not, for instance, necessary (or appropriate) to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (internal quotation marks omitted).  The plaintiffs are not required to plead facts that establish that Abbott's formula—and specifically *Salmonella* in Abbott's formula—was the most likely cause of their infants' illnesses.  Rather, "[t]he plausibility requirement demands only that a plaintiff provide sufficient detail 'to present a story that holds together,'" and the plaintiffs have prevented such a story here. *Id.* (quoting *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010)).  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage . . . .").  *Abu-Sawish*, 898 F.3d at 738 ("Under Rule 8 evidence is not required at the pleading stage . . . .") (internal quotation marks omitted).

11

The plaintiffs have alleged that they purchased and fed contaminated Abbott formula to their infants and that their infants became ill after being fed Abbott formula. If the Court, as required under the Federal Rules, accepts these allegations as true and draws reasonable inferences in the plaintiffs' favor, it is clear that they have sufficiently alleged that a defect in Abbott's formula caused their injuries. The plaintiffs need not rule out alternative potential causes.

### 3. Undiagnosed plaintiffs

The Court also overrules Abbott's contention that the claims of the three "undiagnosed" plaintiffs should be dismissed, for the same reasons just stated. They have plausibly alleged that Abbott had significant problems regarding contamination and food safety at the Sturgis facility and that their infants consumed the allegedly contaminated formula. These plaintiffs' allegations that the contamination led to their infants' GI symptoms are plausible. In short, there is no basis to treat these plaintiffs' allegations differently from those of the plaintiffs who allege they were diagnosed with *Salmonella*.

## C. Fraud-based claims

The Court turns next to the plaintiffs' fraud-based claims. In assessing these claims, the Court must consider, in addition to Rule 8's requirements, the requirement under Federal Rule of Civil Procedure 9(b) to "state with particularity the circumstances constituting fraud . . . ." Rule 9(b) requires a plaintiff to provide "precision and some measure of substantiation to each fraud allegation." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (internal quotation marks omitted). A plaintiff satisfies

Rule 9(b) when he pleads "the who[7], what, when, where, and how of the alleged fraud." *Id*.

Twenty of the plaintiffs[8] assert fraud-related claims based largely on the allegation that Abbott deceived consumers by misrepresenting or omitting information about the safety of its powdered infant formula. These allegations trigger the requirements of Rule 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). Abbott contends that these fraud, fraudulent-concealment, and statutory consumer-protection claims should be dismissed because: (1) they fail for lack of particularity under Rule 9(b); (2) the plaintiffs do not plausibly allege that they relied on any representation made by Abbott when they purchased and consumed Abbott's formula; and (3) other deficiencies involving state-specific law. The plaintiffs disagree and contend that their complaints meet the requirements of Rule 9(b) and Rule 8.

Controlling Circuit precedent supports the plaintiffs' contention that the Court should not take an overly rigid view of Rule 9(b). *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co*., 631 F.3d 436, 441 (7th Cir. 2011) ("[B]ecause courts and litigants often *erroneously* take an overly rigid view of the formulation, we have also observed that the requisite information—what gets included in that first paragraph—may vary on the facts of a given case.") (emphasis added). This principle, as the plaintiffs contend, is particularly applicable in cases where plaintiffs lack access

---

[7] It is undisputed that the "who" in this case is Abbott.
[8] Specifically, plaintiffs Contreras, Davis, Diebert, Green, Holdridge, O'Brien, Williamson, Hernandez, Mendoza, Ornelas, Salinas, and Stephens. The Court will refer to Hernandez, Mendoza, Ornelas, Salinas, and Stephens as "the Texas plaintiffs."

to details regarding a defendant's misconduct. *Emery v. Am. Gen. Fin., Inc*., 134 F.3d 1321, 1323 (7th Cir. 1998) ("Rule 9(b) is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery.").  Here, the plaintiffs contend, "'much of the product-specific information about manufacturing needed to investigate such a claim fully is kept confidential by federal law.'"  Pls.' Resp. to Def's. Mot. to Dismiss Pers. Inj. Compls. at 21 (quoting *Bausch v. Stryker Corp*., 630 F.3d 546, 558 (7th Cir. 2010)).  Abbott disputes this and contends that it is the plaintiffs—not Abbott—who possess the knowledge and information about which representations or omissions they relied upon and how they were deceived.

On this particular point, the Court agrees with Abbott.  The information needed for the plaintiffs to satisfy Rule 9(b) is not *exclusively* in Abbott's possession. *Jepson, Inc. v. Makita Corp*., 34 F.3d 1321, 1328 (7th Cir. 1994) ("Specificity requirements may be relaxed, of course, when the details are within the defendant's *exclusive* knowledge.") (emphasis added).  But this is of no consequence, as the Court is persuaded that the plaintiffs have satisfied the requirements of Rule 9(b) either way.

## 1.    Particularity

### i.    The what

Abbott contends that the plaintiffs "allege next to nothing about the representations they supposedly relied on."  Def.'s Mot. to Dismiss Pers. Inj. Compls. at 18.  The Court disagrees.  The plaintiffs allege that Abbott made the following representations:

- Davis and Williamson allege that "Similac . . . tells consumers that '[t]he Promise of Similac . . . [is] to help keep your baby fed, happy, and healthy'

14

and that [sic] Similac brand is 'Nutrition you can trust.'" Davis Compl. ¶ 2;
Williamson Compl. ¶ 2.

- Diebert alleges that Abbott represented that Similac "will 'give babies a
  strong start by helping to keep them fed, happy, and Healthy.'" Diebert
  First Amended Compl. ¶ 11.

- Swepston alleges that Abbott represented that Similac "is 'the #1 infant
  formula brand fed for cow's milk protein allergy in the US.'" Swepston
  Compl. ¶ 11.

- Howard alleges that Abbott represented that Similac is a "ready to feed"
  formula. Howard Compl. ¶ 61.

- O'Brien and Kilpatrick allege that Abbott represented that Similac "starts
  reducing excessive crying and colic symptoms in most babies within
  hours, so your baby can start feeling better today." O'Brien Compl. ¶ 37;
  Kilpatrick Compl. ¶ 37.

Abbott relies heavily on *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 806
(N.D. Ill. 2013), in which Judge Thomas Durkin held that a plaintiff's "general
allegations" regarding the defendant's promotion of Botox as a safe treatment for a
particular illness were insufficient to meet the heightened pleading standard of Rule
9(b). *Id.* Abbott contends that the plaintiffs' allegations that it marketed its product as
safe are similarly insufficient. But Judge Durkin's conclusion in *Rosenstern* appears to
have rested on the fact that the plaintiff in that case had not "alleged with particularity
what promotional materials contained false statements, [or] the specific content of those
false statements . . . " *Id.* That is not the case here, as illustrated by the just-cited

portions of various plaintiffs' complaints.

Moreover, the plaintiffs have also alleged fraud by omission.[9] Their complaints plausibly allege that Abbott failed to inform them about important safety hazards regarding the infant formula, namely, the risk of contamination.

### ii. The when

Abbott contends that the plaintiffs fail to allege when they heard or saw the allegedly misleading statements. The plaintiffs contend that they have "adequately pleaded the relevant time period by stating when safety violations at Abbott's facilities occurred, when Abbott marketed its infant formulas, when Plaintiffs consumed these products, and when Plaintiffs suffered injuries." Pls.' Resp. to Def.'s Mot. to Dismiss Pers. Inj. Compls. at 23.[10] This, they contend, is sufficient, as Rule 9(b) does not require a plaintiff to "provide the precise date, time, and location that he saw the advertisement or every word that was included on it . . . ." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Abbott argues that in *Camasta*, the Seventh Circuit *also* held that although Rule 9(b) "do[es] not require . . . the precise date, time, and location," "something more than [the plaintiff's] assertion that merchandise was offered at sale prices is needed." *Id.* (internal quotation marks omitted). Abbott further argues that, in the preceding sentence, the court in *Camasta*

---

[9] *See* Contreras Compl. ¶¶ 69-70; Davis Compl. ¶ 50; Diebert First Amended Compl. ¶¶ 106-11; Green Compl. ¶ 114; Hernandez Compl. ¶¶ 80-82; Holdridge Compl. ¶¶ 66-68; Mendoza Compl. ¶¶ 120-29; O'Brien Compl. ¶ 85; Ornelas Compl. ¶¶ 80-82; Salinas Compl. ¶¶ 18-52; Stephens Compl. ¶¶ 16-40; Williamson Compl. ¶¶ 9-24.

[10] *See* Contreras Compl. ¶¶ 16-43; Davis Compl. ¶¶ 9-24; Diebert First Amended Compl. ¶¶ 11-50; Green Compl. ¶¶ 11-55; Hernandez Compl. ¶¶ 18-52; Holdridge Compl. ¶¶ 17-41; Mendoza Compl. ¶¶ 17-52; O'Brien Compl. ¶¶ 11-45; Ornelas Compl. ¶¶ 18-52; Salinas Compl. ¶¶ 18-52; Stephens Compl. ¶¶ 16-40; Williamson Compl. ¶¶ 9-24.

also concluded that Rule 9(b) "does require the plaintiff to state . . . the time, place, and content of the misrepresentation." *Id.*

In this regard, the present complaints are similar to the complaints the Court assessed on a Rule 9(b) challenge in *In re TRT*:

> Although they do not state the exact date they or their physicians heard or read a misrepresentation, they identify the date each drug was approved, the time period in which defendants promoted the drug, and the date each plaintiff suffered injury. Most of the complaints also state the date the drug was prescribed. Plaintiffs' allegations are sufficient to satisfy the temporal requirement of Rule 9(b). They do not need to state the precise date on which they saw or read an advertisement to adequately plead fraud.

*In re TRT*, 2014 WL 7365872, at *7 (N.D. Ill. Dec. 23, 2014) (citing *Camasta*, 761 F.3d at 737). The plaintiffs here have similarly identified the time period when food safety violations were occurring at Abbott's facilities, when Abbott was marketing its infant formulas, and when the plaintiffs' infants consumed the formula and suffered injuries as a result. That is sufficient to satisfy Rule 9(b).

### iii.    The where and how

Abbott contends that the plaintiffs have not alleged with the requisite particularity the place or method by which they were misled by Abbott's representations and omissions. In response, the plaintiffs argue that they have sufficiently alleged the "where and how" because they referenced misrepresentations "in the form of television advertisements, website content, and other marketing communications," that they relied on when purchasing Abbott's formula.[11]  *In re TRT*, 2014 WL 7365872, at *6.  Abbott

---

[11] *See* Contreras Compl. ¶¶ 16-43; Davis Compl. ¶¶ 9-24; Diebert First Amended Compl. ¶¶ 11-50; Green Compl. ¶¶ 11-55; Hernandez Compl. ¶¶ 18-52; Holdridge Compl. ¶¶ 17-41; Mendoza Compl. ¶¶ 17-52; O'Brien Compl. ¶¶ 11-45; Ornelas Compl. ¶¶ 18-52; Salinas Compl. ¶¶ 18-52; Stephens Compl. ¶¶ 16-40; Williamson Compl. ¶¶ 9-24.

contends, however, that none of the plaintiffs allege that they, personally, actually saw any of these advertisements, websites, or other marketing materials.

The Court agrees with the plaintiffs. It is unnecessary for pleading purposes in a case like this one for the plaintiffs to identify and name each advertisement, website, or marketing communication that they personally saw. Construing the plaintiffs' allegations in the light most favorable to them—as the Court is required to do—they have plausibly and sufficiently alleged that they saw the identified statements by Abbott in some form and, as discussed in the previous section, at a relevant time. Further details are more appropriately acquired via the discovery process. The Court also notes that in addition to alleging that Abbott misrepresented the safety of its infant formula in the just-cited formats, the plaintiffs allege how those statements were misleading given the recall, the FDA's findings regarding safety violations and the presence of *Cronobacter* in the Sturgis facility, and the whistleblower letter.

In sum, the Court finds that the plaintiffs have satisfied the requirements of Rule 9(b).

### 2.    Reliance

Abbott next contends that the plaintiffs have not "plausibly allege[d] that they relied on any Abbott representation—a necessary element for each fraud-based claim." Def.'s Mot. to Dismiss Pers. Inj. Compls. at 23; *see also*, *id.* at 23 n.27 (listing cases from each plaintiff's domicile holding that reliance is a required element of the plaintiffs' claims).[12] Abbott further contends that "[p]laintiffs provide only '[t]hreadbare recitals of'

---

[12] The plaintiffs do not appear to contest Abbott's assertion that reliance is a required element of their fraud-based claims.

this element 'supported by mere conclusory statements.'"  Def.'s Mot. to Dismiss Pers. Inj. Compls. at 24 (citing *Iqbal*, 556 U.S. at 678).

Again, this case is similar to *In re TRT* in this regard, so the Court adopts its conclusion from that case:

> Each plaintiff states that he relied on defendants' claims . . . and Rule 9(b) does not require plaintiffs plead reliance in greater detail.  A plaintiff need not demonstrate "reliance on the defendant's misrepresentations or omissions, and the reasonableness of that reliance" to satisfy Rule 9(b). *Midwest Commerce Banking Co. v. Elkhart City Ctr.,* 4 F.3d 521, 524 (7th Cir. 1993).

*In re TRT*, 2014 WL 7365872, at *8.  Similarly, all the plaintiffs in the present matter allege that they relied on Abbott's representations and omissions.[13]  *Midwest*, 4 F.3d at 524 ("All Rule 9(b) require[s], however, was that [the plaintiff] set forth the date and content of the statements or omissions that it claimed to be fraudulent.  [The plaintiff] was not required to go further and allege the facts necessary to show that the alleged fraud was actionable.").

Abbott also reiterates its contention regarding the insufficiency of the plaintiffs' "where and how" allegations to bolster its contention that the plaintiffs cannot possibly have relied on Abbott's statements because they have not alleged that they actually viewed them.  Because the Court has already concluded that the plaintiffs have adequately alleged not only the "where" and "how" elements of fraud but also the "what"

---

[13] *See* Bayer Compl. ¶ 55; Contreras Compl. ¶ 76; Davis Compl. ¶ 52; Diebert First Amended Compl. ¶¶ 57- 58; Gaeta Compl. ¶ 57; Green Compl. ¶¶ 62-63; Hernandez Compl. ¶¶ 87-88; Holdridge Compl. ¶ 74; Howard Compl. ¶ 57; Kilpatrick Compl. ¶ 55; Mendoza Compl. ¶¶ 122-24; O'Brien Compl. ¶ 52; Ornelas Compl. ¶¶ 88-89; Patek Compl. ¶ 54; Salinas Compl. ¶¶ 86-87; Sanders Compl. ¶ 57; Stephens Compl. ¶ 73; Swepston Compl. ¶ 55; Toledo-Vega Compl. ¶¶ 65-66; Vincken Compl. ¶¶ 55-56; Williamson Compl. ¶ 52.

and "when," this contention lacks merit.

The Court concludes that the plaintiffs have adequately alleged reliance.

### 3. Miscellaneous grounds for dismissal of fraud-based claims

Abbott contends that "[s]everal Plaintiffs' fraud-based claims fail because their alleged causes of action are not cognizable under relevant state law." Def.'s Mot. to Dismiss Pers. Inj. Compls. at 25.

### i. Certain plaintiffs' negligent misrepresentation claims

As a threshold matter, the plaintiffs agreed to dismiss plaintiffs Holdridge, Swepston, and Vincken's negligent misrepresentation claims, so the Court need not address Abbott's contentions regarding those claims.

Abbott contends that Sanders's negligent misrepresentation claim must be dismissed because personal injury damages, which Sanders seeks, are not recoverable for negligent misrepresentation under Minnesota law. *See Forslund v. Stryker Corp.*, No. 9–2134, 2010 WL 3905854, at *6 (D. Minn. Sept. 30, 2010) (explaining that the Minnesota Supreme Court has not recognized negligent misrepresentation claims involving allegations of physical harm and holding that "pecuniary loss in the form of . . . medical bills and follow-up care" would not be recoverable under that claim."). The plaintiffs contend that the Minnesota Supreme Court has actually left this question "open" and that the Court should not dismiss Sanders's claim on this basis. Pls.' Resp. to Def's Mot. to Dismiss Pers. Inj. Compls. at 29.

Abbott's reading of Minnesota law is correct. The Court is also persuaded by Abbott's contention that the Court "should reject Plaintiffs' invitation to create a novel tort under Minnesota law and dismiss this claim." Def.'s Reply at 15. The Court therefore

grants Abbott's motion to dismiss Sanders's negligent misrepresentation claim.

### ii. Texas plaintiffs' fraudulent concealment and Deceptive Trade Practices Act claims

Abbott contends that the Texas plaintiffs' fraudulent concealment claims fail because "[u]nder Texas law, fraudulent concealment is not an independent cause of action, but is rather a tolling provision to prevent the defendant from relying upon a statute of limitations period as an affirmative defense." *Sweezey v. C.R. Bard Inc.*, No. 19 C 2172, 2020 WL 1237394, at *1 (N.D. Tex. Mar. 12, 2020) (internal quotation marks omitted). The plaintiffs contend that fraud by omission is a valid cause of action in Texas if the plaintiff can establish that the defendant had a duty to disclosure information, which they contend is a fact-intensive inquiry. *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.-Houston (14th Dist.) 1997).

The Court agrees with Abbott. *See Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984) ("Under Texas law, fraudulent concealment is an affirmative defense to an assertion that the statute of limitations has run."); *see also*, *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 10 (Tex. App. 2004) ("Fraudulent concealment is a doctrine relating to a statute of limitations defense and is not an independent cause of action."). Abbott does not dispute that fraud by omission is a valid cause of action in Texas, but that is not the claim Abbott is challenging. Rather, it is challenging the Texas plaintiffs' separate claims for fraudulent concealment. The Court therefore dismisses these claims by the Texas plaintiffs.

Abbott contends that the Texas plaintiffs' Texas Deceptive Trade Practices Act (DTPA) claims should be dismissed because the plaintiffs failed to provide Abbott with pre-suit notice as required by the Act. *See Wellborn v. Sears, Roebuck & Co.*, 970 F.2d

1420, 1430 (5th Cir. 1992) ("The DTPA requires that a plaintiff serve the defendant with a demand letter as a prerequisite to filing suit.").  The plaintiffs do not seem to dispute the fact that they did not provide pre-suit notice of their DTPA claims; rather, they contend that "'the proper remedy for insufficient notice is abatement not dismissal,'" Pls.' Resp. to Def.'s Mot. to Dismiss Pers. Inj. Compls. at 29 (quoting *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996)), and that "by not seeking abatement, Abbott has 'waived notice under the DTPA.'"  *Id.* (quoting *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992)).  The Court concludes that plaintiffs have correctly stated the law in Texas on this point, and in any event, Abbott failed to address this contention in its reply.  *Bradley v. Village of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023) (failing to respond in a reply brief to a new argument raised in the response constitutes a waiver of that issue).

The Court therefore denies Abbott's motion to dismiss the Texas plaintiffs' DTPA claims for lack of notice.

### iii.    Holdridge and Stephens' failure to allege knowledge

Abbott contends that Holdridge and Stephens's fraud-based claims should be dismissed because "they do not plausibly allege that Abbott was aware of a bacteria-related problem at Sturgis when they purchased and used Abbott formula."  Def.'s Mot. to Dismiss Pers. Inj. Compls. at 26  The plaintiffs contend that Holdridge and Stephens plausibly allege that Abbott knew or should have known about the possibility of, or confirmed presence of, contaminants by virtue of FDA's investigation, the numerous consumer complaints that the FDA received and relayed to Abbott, and Abbott's destruction of potentially contaminated formula.

22

Both Holdridge and Stephens allege that "Abbott, through its advertisements, knowingly misrepresented to Plaintiffs and the public that its contaminated Similac, Alimentum, and EleCare powdered infant formula was safe to consume." Holdridge Compl. ¶ 69; Stephens Compl. ¶ 68. They also allege that "[d]espite *knowing* about the contaminated nature of its Similac, Alimentum, and EleCare powdered infant formula and its likelihood to increase the risk of becoming infected with *Cronobacter* or *Salmonella*, Defendant Abbott falsely marketed, advertised, labeled, and sold its contaminated Similac, Alimentum, and EleCare powdered infant formula as safe for public use and consumption." Holdridge Compl. ¶ 71; Stephens Compl. ¶ 70 (emphasis added). Holdridge and Stephens further allege that "[a]t all relevant times, Defendant Abbott actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiffs, and with the intent that consumers would purchase and use the infant formula." Holdridge Compl. ¶ 72; Stephens Compl. ¶ 71.

Abbott argues that these allegations are not only conclusory but also do not support a finding that it knew *in and around 2021*—the time when Holdridge and Stephens allege purchasing and using Abbott's formula—that its formula could be contaminated. But according to the FDA's timeline, on September 20, 2021, the FDA informed Abbott of the first *Cronobacter* consumer complaint, the illness onset date of which was September 6, 2021. This, in the Court's view, is sufficient to support Holdridge and Stephens's "in or around September 2021" allegation. The Court also agrees with the plaintiffs that there is no basis to assume that the FDA informing Abbott about the possibility of a *Cronobacter* contamination in September 2021 amounts to the

genesis of Abbott's knowledge of food safety issues at the Sturgis facility.  Given the allegations of systemic food safety failures at the Sturgis plant, plaintiffs plausibly contend that Abbott had knowledge prior to that date.

For these reasons, the Court declines to dismiss Holdridge and Stephens's fraud-based claims on this ground.

**D.    Breach of warranty claims**

Abbott contends that many of the plaintiffs' breach of warranty claims should be dismissed because:  (1) certain plaintiffs failed to provide pre-suit notice to Abbott as required by the law of their respective home states; (2) others failed to plead the required elements of their express warranty claims, such as the existence of a warranty, reliance on it, and privity between themselves and Abbott as required by the law of their respective home states; (3) some plaintiffs' home states do not recognize a cause of action for breach of implied warranty, and the claims of the plaintiffs whose states do recognize such a cause of action failed to allege certain required elements; and (4) because the plaintiffs' implied warranty claims fail, their Magnuson-Moss Warranty Act (MMWA) claims cannot survive.  The plaintiffs disagree on all fronts.

For the reasons stated at the outset of this opinion, the Court will not grapple at this point with issues of particular states' law except where Abbott contends that a cause of action is completely barred in a particular state.  Thus, in this section, the Court will address only Abbott's contentions regarding the unavailability of an implied warranty cause of action for certain plaintiffs in their home states.  The remaining issues regarding the plaintiffs' warranty claims involve the particularities of numerous state's laws and the adequacy of their pleadings under those laws, which a transferee court is

not required to decide—at least not at this early stage. *See In re Nuvaring Prod. Liab. Litig.*, No. 4:08MD1964, 2009 WL 4825170, at *2 (E.D. Mo. Dec. 11, 2009).

## 1. Implied warranty claims

Abbott contends that the implied warranty claims of plaintiffs Suarez and Toledo-Vega should be dismissed due to "failure to properly allege warranty of fitness for a particular purpose, or because the claims are unavailable and untimely under relevant territory law." Def.'s Mot. to Dismiss at 32. The plaintiffs disagree.

### i. Warranty of fitness for a particular purpose

Abbott contends that Suarez's claim for breach of warranty of fitness for a particular purpose must be dismissed because Florida law defines "particular purpose" to mean a purpose that is peculiar to the buyer, or different from how the item is normally used *Smith v. Forest River, Inc.*, No. 19-14174, 2019 WL 8226095, at *1 (S.D. Fla. Nov. 25, 2019). Because the only use that Suarez alleges is "human consumption," which is the typical use for infant formula, Abbott contends this claim fails. The plaintiffs contend that "for decades, the Florida Supreme Court had allowed fitness for particular purpose claims when a product was used for its usual purpose." Pls.' Resp. to Def.'s Mot. to Dismiss Pers. Inj. Compls. at 37 (citing cases).

The Court agrees with Abbott. "A 'particular purpose' differs from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his business." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983). Contrary to the plaintiffs' contention, Florida courts have held that the term particular purpose "denotes an unusual or atypical form of use." *Smith*, 2019 WL 8226095, at *1 (S.D. Fla. Nov. 25, 2019); see also *Armadillo Distribution*

25

*Enters., Inc. v. Hai Yun Musical Instruments Mfr. Co.*, 142 F. Supp. 3d 1245, 1255 (M.D. Fla. 2015) (denying motion for summary judgment because plaintiff did not allege that faulty drum kits were to be used for any particular purpose other than their ordinary use); *McGraw v. Fleetwood Enters., Inc.*, 07–cv–234–Orl–28DAB, 2007 WL 2225976, at *2 (M.D. Fla. Aug. 1, 2007) (granting motion to dismiss because plaintiff did not identify the particular purpose for which a motor home was not fit). Suarez has not identified any other purpose, aside from its standard purpose of human consumption, for which the formula was not fit.

The Court therefore dismisses Suarez's claim for breach of warranty of fitness for a particular purpose.

### ii.    Claims are unavailable or untimely

Abbott contends that "Toledo-Vega, a resident of Puerto Rico, cannot make out an implied warranty of merchantability claim, as there is no such U.C.C.-based cause of action in Puerto Rico." Def.'s Mot. to Dismiss Pers. Inj. Compls. at 34 (citing *In re Dupont-Benlate Litig.*, 877 F. Supp. 779, 784 (D.P.R. 1995)). Abbott further contends that Toledo-Vega's claim is untimely, as the statute of limitations for such claims is six months. P.R. Laws Ann. tit. 31, § 3847.

The plaintiffs do not address Abbott's limitations argument, so that point is conceded. They do contend, however, that Puerto Rico recognizes a cause of action for breach of implied warranty. *Castro v. Payco, Inc.*, 75 PRR 59 (1953); *see also Gonzalez Caban v. JR Seafood*, 199 P.R. Dec. 234, 2017 TSPR 187 (2017) (expounding on the history of Puerto Rican law related to defective food products).

As Abbott points out, the rule in *Castro* was derived from Puerto Rico's Food,

Drug and Cosmetic Act, Act No. 72 of April 16, 1940 (24 L.P.R.A. § 711). This, Abbott contends, means that what the plaintiffs refer to as an "implied warranty" cause of action is actually a strict liability cause of action that would be duplicative of Toledo-Vega's existing strict liability claim. This contention is supported by the discussion from *Gonzalez*. *Id*. ("[W]e decided that the rule that was most equitable and congruous with our public policy was the rule of strict liability of the manufacturer to the consumer."). Toledo-Vega's implied warranty claim is therefore duplicative of her strict products liability claim and is dismissed for that reason.

Even if Toledo-Vega's claim were not duplicative, the plaintiffs fail to contest the proposition that her claim is time-barred under P.R. Laws Ann. tit. 31, § 3847. This is an additional basis to dismiss Toledo-Vega's implied warranty claim.

### 2. Magnuson-Moss Warranty Act claims

Both parties agree that the survival or dismissal of the plaintiffs' implied warranty claims dictates the result of their MMWA claims. At this juncture, the Court is only dismissing Suarez and Toledo-Vega's state law implied warranty claims. But neither of these plaintiffs assert MMWA claims, so there is no accompanying MMWA claim for the Court to dismiss. The Court defers a decision on the other plaintiffs' MMWA claims until their underlying implied warranty claims are determined.

### E. Tort claims

Abbott contends that many of the plaintiffs' "hodgepodge of tort claims—including under theories of gross negligence, design defect, negligence, and strict liability— . . . fail at the threshold." Def.'s Mot. to Dismiss Pers. Inj. Compls. at 35. The plaintiffs disagree.

### 1. Gross negligence claims

Abbott first contends that plaintiffs Contreras, Holdridge, and Stephens's gross negligence claims should be dismissed for failure to state a claim. The home states for these plaintiffs are Arizona, Arkansas, and Texas, respectively. Abbott contends that a claim for "gross negligence requires a plaintiff to allege that the defendant knew or should have known that its conduct involved an extreme degree of risk," and that the plaintiffs failed to allege such a risk here or Abbott's knowledge thereof. *Id.* at 36 (citing Texas law only). The plaintiffs contend, and the Court agrees, that it would be quite difficult to dismiss these claims in an omnibus fashion. Thus, as in *In re TRT*, the Court defers consideration of these state-law specific issues. The Court notes in this regard that even were all of these claims to be dismissed, it is highly unlikely that it would reduce Abbott's discovery burden in any material way.

### 2. Design defect claims

The plaintiffs have agreed to dismiss all of their design defect claims, so the Court need not address Abbott's contentions regarding these claims.

### 3. Non-cognizable causes of action

Abbott contends that certain of plaintiffs' tort claims are non-cognizable under the laws of the relevant states. The plaintiffs largely disagree.

#### i. Negligence *per se*

Plaintiffs Kilpatrick (Arizona), Swepston (Virginia), and Williamson (California) all assert claims for negligence *per se*. Abbott contends that the laws of these plaintiffs' home states preclude such claims and that even if contrary is true, the plaintiffs have failed to sufficiently state a claim for negligence *per se*.

28

Regarding Williamson and Kilpatrick's negligence *per se* claims, the Court concludes that Abbott is correct that no such cause of action is available in either California or Arizona. *See Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018) ("[U]nder California law, negligence *per se* is a doctrine, not an independent cause of action."); *see also*, *Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549, 101 Cal. Rptr. 3d 726, 731 (2009) ("[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence."); *Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1054 (D. Ariz. 2018) ("Negligence per se is not a cause of action separate from common law negligence. It is a doctrine under which a plaintiff can establish the duty and breach elements of a negligence claim based on a violation of a statute that supplies the relevant duty of care.").

Regarding Virginia law, however, Abbott is incorrect, and Swepston may therefore maintain a separate cause of action for negligence *per se*. *Schlimmer v. Poverty Hunt Club,* 268 Va. 74, 78–79, 597 S.E.2d 43, 46 (2004) (an act that violates a statute that sets a standard of care is a *per se* violation); *see also*, *Steward ex rel. Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 287, 726 S.E.2d 251, 254 (2012) ("A cause of action based on such a statutory violation is designated a negligence *per se* cause of action.").

To state a claim for negligence *per se* in Virginia, a plaintiff must allege that: (1) the defendant violated a statute enacted for public safety; (2) the plaintiff belongs to the class of persons for whose benefit the statute was enacted and the harm that occurred was of the type against which the statute was designed to protect; and (3) the statutory

violation was the proximate cause of the plaintiff's injury. *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 496, 706 S.E.2d 864, 872 (2011). Swepston has alleged sufficient facts to state a claim for negligence *per se*. She alleged that Abbott violated several statutes and regulations meant to protect her child, the harm was of the sort that the statutes were designed to prevent, and the violations caused her child's injuries. Those allegations are sufficient to defeat Abbott's motion to dismiss.

In sum, the Court grants Abbott's motion to dismiss Williamson and Kilpatrick's negligence *per se* claims but denies Abbott's motion to dismiss Swepston's claim.

### ii. Damages on behalf of minor children

Thirteen plaintiffs[14] assert claims for damages incurred on behalf of their minor children. Abbott contends that these claims should be dismissed because they do not present an independent theory of liability but instead represent a theory of recovery on the plaintiffs' other claims.

The plaintiffs contend, and the Court agrees, that the parents of the infants in this case have a separate and distinct injury as it relates to the medical or other expenses incurred on behalf of their minor children. As the plaintiffs contend, "the Second Restatement of Torts provides that a tortfeasor who is liable to a minor child for bodily harm is subject to liability to 'the parent who is under a legal duty to furnish medical treatment for any expenses reasonably incurred or likely to be incurred for the treatment during the child's minority.'" Pls.' Resp. at 48 (quoting Restatement (Second) of Torts § 703 (1977)).

---

[14] Specifically, plaintiffs Bayer, Davis, Diebert, Gaeta, Green, Howard, Kilpatrick, O'Brien, Patek, Sanders, Swepston, Vincken, and Williamson.

The plaintiffs also contend that "in various states, the parents' claim models that of a loss of consortium and includes a claim for comfort, care and companionship of the child and also includes other expenses, including missed work, out of pocket expenses for mileage and gas for taking their children to and from the doctor's offices." *Id.* Abbott points out that the plaintiffs have not alleged facts in their complaints that support a finding that they have been injured in that manner. The plaintiffs' complaints all allege that the parent or parents "has [or have] a derivative claim for damages because her [or their] minor child . . . has sustained physical injuries due to the Defendant's conduct." *See generally* Bayer Compl. ¶ 83; Davis Compl. ¶ 158; Diebert Compl. ¶ 115; Gaeta Compl. ¶ 107; Green Compl. ¶ 129; Howard Compl. ¶ 107; Kilpatrick Compl. ¶ 83; O'Brien Compl. ¶ 99; Patek Compl. ¶ 83; Sanders Compl. ¶ 108; Swepston Compl. ¶ 105; Vincken Compl. ¶ 83; Williamson Compl. ¶ 160. In other words, Abbott says, all of the plaintiffs seek to recover damages on behalf of their child related to their child's injuries, not on behalf of themselves or for any expenses they incurred caring for the child.

Abbott reads too much into the plaintiffs' passing reference to the loss of consortium model. The Court's review of the cases cited by the plaintiffs on pages 48 and 49 of their response—from the ten states represented by the thirteen plaintiffs who bring this cause of action—indicates that all ten states recognize a separate cause of action for parents on behalf of their minor children, although several do not permit double recovery at the end of the day (Colorado, Arizona, California, and Missouri). Abbott failed to offer any authority to the contrary. The Court also finds persuasive the plaintiffs' argument that allowing separate claims for the minor's injuries and the parents'

31

injuries is important for evaluating the relevant statute of limitations, as some states will toll the limitations period for a minor's claim but not for a claim by a parent.  See Pls.' Resp. to Def.'s Mot. to Dismiss Pers. Inj. Compls. at 48 n. 151 (collecting cases).

The Court therefore denies Abbott's motion to dismiss the thirteen plaintiffs' claims for damages on behalf of minor children.

### iii.    Swepston's strict liability claims

The plaintiffs have agreed to dismiss Swepston's strict liability claims, so the Court need not address Abbott's contentions regarding these claims.

## F.    Equitable remedies

The plaintiffs have agreed to dismiss the following five plaintiffs' unjust enrichment claims and requests for declaratory and/or injunctive relief:  Abbott, Davis, Ephraim, Joy, and Laciste.  That leaves the Court with the following nine plaintiffs' unjust enrichment claims and/or requests for equitable relief to consider: Contreras, Hernandez, Holdridge, Mendoza, Ornelas, Salinas, Stephens, Toledo-Vega, and Williamson.  Abbott has moved to dismiss these unjust enrichment claims and strike the equitable relief requests.

### 1.    Adequate remedies at law

Abbott first contends that the remaining equitable claims are insufficient because plaintiffs have an adequate remedy at law in the form of damages.  "It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (internal quotation marks omitted).  Abbott argues that "not a single [p]laintiff asserting an unjust-enrichment claim or request for injunctive relief asserts that his or

her damages claim is an inadequate remedy." Def.'s Mot. to Dismiss Pers. Inj. Compls.at 43. The plaintiffs have not addressed this argument in their response, so the Court concludes they have forfeited the point. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). The Court dismisses the remaining equitable claims and strikes the remaining requests for equitable relief.

### 2. Future harm

In the alternative, the Court strikes the remaining requests for injunctive relief based on the plaintiffs' failure to allege a risk of future harm. *See Camasta*, 761 F.3d at 740-41 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief") (citing *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). The plaintiffs do not address Abbott's contention on this point in their response. The Court therefore considers this point conceded. *Alioto*, 651 F.3d at 721.

In sum, the Court dismisses all nine of the remaining unjust enrichment claims and strikes all remaining requests for declaratory/injunctive relief.

### Conclusion

For the foregoing reasons, the Court grants the defendant's motion to dismiss in part. The Court dismisses Sanders's negligent misrepresentation claim; Hernandez, Mendoza, Ornelas, Salinas, and Stephens's (Texas plaintiffs) fraudulent concealment claims; Suarez's claim for breach of warranty of fitness for a particular purpose; Toledo-Vega's implied warranty claim; Williamson and Kilpatrick's negligence *per se* claims; and Contreras, Hernandez, Holdridge, Mendoza, Ornelas, Salinas, Stephens, Toledo-Vega, and Williamson's unjust enrichment claims and requests for injunctive and/or declaratory relief. The Court otherwise denies the motion to dismiss [dkt. no. 63]. The

parties are directed to promptly confer in order to present to the Court a proposal for the

timing of defendants' answers to the complaints and claims the Court has not

dismissed; the application of the rulings in this decision to the later-filed complaints; and

the timing for determination of the state-law arguments for dismissal that the Court has

declined to address at this juncture.  The next case management conference is set for

June 23, 2023 at 9:00 a.m.  A joint status report addressing the above points and any

other issues for consideration at the conference, including an agenda for the

conference, is to be filed on June 16, 2023.

Date:  May 22, 2023

_____
MATTHEW F. KENNELLY
United States District Judge