**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: RECALLED ABBOTT ) | |
| INFANT FORMULA PRODUCTS ) | Case No. 22 C 4148 |
| LIABILITY LITIGATION ) | MDL No. 3037 |
| ------------------------------------------------------ ) | |
| **This document relates to:** ) | |
| **All cases** ) | |

**CASE MANAGEMENT ORDER NO. 11
(Memorandum Opinion and Order on
<u>Motions to Dismiss Economic Loss Complaints</u>)**

MATTHEW F. KENNELLY, District Judge:

      This multidistrict litigation proceeding (MDL) involves lawsuits by numerous plaintiffs who allege that they have suffered injuries caused by infant formula manufactured by Abbott Laboratories.  The Judicial Panel on Multidistrict Litigation consolidated the cases before this Court for pretrial proceedings.  The cases in the MDL involve two categories of claims:  (1) individual claims seeking recovery for personal injuries allegedly caused by Abbott's formula and (2) putative class claims premised on alleged economic losses from purchases of Abbott's formula.

      This opinion addresses Abbott's motion to dismiss the consolidated amended complaint filed by the plaintiffs solely alleging economic losses.  The plaintiffs allege that Abbott failed to disclose that its infant formula risked containing harmful bacteria.  In their consolidated amended complaint, they assert claims on behalf of a nationwide class and twenty state classes for violations of state consumer fraud acts, unjust enrichment, breach of the implied warranty of merchantability, and negligent misrepresentation.

Abbott has moved to dismiss all the claims under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim. On May 1, 2023, the Court held a hearing on Abbott's motion to dismiss. For the reasons stated below, the Court grants Abbott's Rule 12(b)(1) motion.

**Background**

Abbott is a leading supplier of infant formula in the United States. It sells its formula to consumers on its website and to major retailers who in turn sell it to consumers. The plaintiffs purchased Abbott's Similac, Alimentum, and EleCare brand powdered infant formula products between September 2019 and June 2022. The products the plaintiffs purchased were manufactured at Abbott's Sturgis, Michigan facility.

In their consolidated amended complaint, the plaintiffs outline a long history of quality control problems at the Sturgis facility. In September 2021, the FDA issued an Establishment Inspection Report, reporting that Abbott received at least sixteen complaints regarding *Salmonella* and *Cronobacter* in its powdered infant formula manufactured at Sturgis between September 2019 and September 2021. The report also identified *Cronobacter* in two batches of Abbott's infant formula and five environmental samples. After three reports of *Cronobacter* and one of *Salmonella* in infants since September 2021, on February 17, 2022, the FDA and CDC warned consumers not to use certain Abbott infant formulas. In February 2022, Abbott also issued a recall of those products manufactured at Sturgis labeled with specific lot codes, offering a refund to consumers who possessed the products. An FDA report issued on March 18, 2022 again documented several quality control failures. And on October 19,

2021, a whistleblower reported Abbott's failure to maintain sanitary conditions and perform adequate product testing and that Abbott had concealed its practices from regulators.

*Salmonella* and *Cronobacter* infections can be fatal. *Cronobacter* infections "can cause severe, life-threatening infections (sepsis) or meningitis (an inflammation of the membranes that protect the brain and spine)." Consol. Am. Compl. ¶ 82. Symptoms of *Cronobacter* infection include "poor feeding, irritability, temperature changes, jaundice, grunting, and abnormal body movements." *Id.* ¶ 84. Symptoms of *Salmonella* infection include "diarrhea, fever[,] and abdominal cramps" in most cases and "a high fever, aches, headaches, lethargy, a rash, [and] blood in the urine or stool," in more severe cases. *Id.* ¶ 90.

Abbott's product labels do not warn of the risk of *Salmonella* or *Cronobacter* contamination. The plaintiffs allege that this omission misled consumers about the safety of Abbott's products. The consolidated amended complaint also identifies several statements from Abbott's website and product labels that the plaintiffs allege misrepresent that the products were safe. The plaintiffs allege that they "would not have paid the purchase price for the products had they known the products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase." *Id.* ¶ 15.

**Discussion**

The plaintiffs assert claims for violations of state consumer fraud acts, unjust enrichment, breach of the implied warranty of merchantability, and negligent misrepresentation. All the claims are based on the same theory of harm: economic

3

loss from the products' risk of bacterial contamination. Abbott moves to dismiss the claims for lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Because Article III standing is a necessary component of federal jurisdiction, the Court addresses it first. *See Kithongo v. Garland*, 33 F.4th 451, 454 (7th Cir. 2022) ("The 'first and fundamental question' our court must answer 'is that of jurisdiction.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998))).

"Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 172–73 (7th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)). Only the first element is relevant here, which is that the plaintiff must have suffered an "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Silha*, 807 F.3d at 173.

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Id.* There are "two forms of standing challenges." *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 952 (7th Cir. 2022). "A facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true. A factual challenge, by contrast, asserts that there is *in fact* no standing." *Id.* (citation omitted).

Abbott purports to "advance[] both such challenges here." *See* Def.'s Opening

Mem. at 8.  However, rather than point to "external facts" that "call[] the court's jurisdiction into question," *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009), Abbott contends that the plaintiffs did not "adequately plead standing," Def.'s Reply Br. at 3.  This indicates a facial challenge, not a factual challenge.

"[I]n evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim:  'Courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'"  *Silha*, 807 F.3d at 173 (alterations accepted) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)."  *Id.* at 174; *see also Reinoehl v. Centers for Disease Control & Prevention*, No. 22-1401, 2022 WL 14461946, at *3 (7th Cir. Oct. 25, 2022) ("At the pleading stage, standing is evaluated under the same analysis used to review whether a complaint adequately states a claim.") (internal quotation marks omitted).

The plaintiffs contend that they have suffered an economic injury, alleging that they "would not have paid the purchase price for the products had they known the products were at substantial risk of being contaminated with *Cronobacter sakazakii*, Salmonella, and/or other harmful bacteria at the time of purchase." Consol. Am. Compl. ¶ 15.  Although the plaintiffs phrase this theory of harm in a few ways in their complaint, they have contended in their briefing and at the motion hearing that they suffered "economic loss emanating from a 'benefit of the bargain theory.'"  Pls.' Resp. Br. at 15

("Put another way, the difference between what the formula cost Plaintiffs, and what benefit it actually provided, represents a tangible loss sufficient to trigger standing.").

Abbott does not contest that a loss of the benefit of the bargain can be a cognizable injury. *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing."); *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28, 35 (1st Cir. 2022) ("This court has repeatedly recognized overpayment as a cognizable form of Article III injury."); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018) ("Under the benefit of the bargain theory, a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value.").

Rather, Abbott contends that the plaintiffs have not lost the benefit of the bargain in this case because the plaintiffs have not plausibly alleged that the products they purchased were defective. In *Aqua Dots* and *Evenflo*, the cases on which the plaintiffs primarily rely, the plaintiffs alleged a uniform defect in every product. Because every product was alleged to be defective, the plaintiffs did not also have to allege that the defect manifested in physical injury to have standing. *See Aqua Dots*, 654 F.3d at 751 (holding that, where a manufacturer sold a toy with adhesive that posed a hazard to children if ingested, the plaintiffs did not have to allege that their children were physically injured to have standing); *Evenflo*, 54 F.4th at 33–35 (holding that, where a manufacturer sold a car seat that was not designed or tested to function as advertised,

6

the plaintiffs did not have to allege that any plaintiffs suffered physical or emotional harm).[1] As the Fifth Circuit has explained, a uniform defect can cause financial injury because "each plaintiff suffered economic injury at the moment she purchased a [product] because each [product] was defective." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007).

In this case, however, the plaintiffs do not allege that every Abbott product of the type at issue was contaminated with harmful bacteria. Nor do they allege that the products they purchased were contaminated. *See, e.g.*, Consol. Am. Compl. ¶ 8 ("Plaintiffs . . . would not have paid the purchase price had they known there was a risk [the products] *might* contain bacteria.") (emphasis added), ¶ 15 ("Plaintiffs were unaware that the products they purchased *may* have been adulterated with bacteria.") (emphasis added). In these circumstances, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014), is instructive. Like the plaintiffs here, the plaintiffs in that case contended that they were "not required to allege the *specific products or packages*" that were defective. *Id.* The Eighth Circuit rejected that proposition, holding that "[w]ithout any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect, the consumers lack Article III standing to sue ConAgra." *Id.* Other circuits addressing allegations of non-uniform or speculative defects are in accord. *See Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1305 (10th Cir. 2022) ("[A]rguing that they purchased dog

---

[1] The plaintiffs additionally cite *Carder v. Graco Child.'s Prod., Inc.*, 558 F. Supp. 3d 1290, 1305–06 (N.D. Ga. 2021), which, as in *Evenflo*, involved car seats that the plaintiffs alleged were uniformly not designed or tested to function as advertised. *Carder* is therefore inapplicable for the same reasons as *Evenflo*.

7

food that was at risk of contamination—unlike arguing that they purchased dog food that was contaminated—is insufficient for standing because an alleged injury cannot be 'too speculative for Article III purposes.'") (quoting *Lujan*, 504 U.S. at 564 n.2); *Johnson & Johnson*, 903 F.3d at 289 ("Although Estrada contends that Baby Powder is 'unsafe,' her own allegations require us to conclude that the powder she received was, in fact, *safe as to her*.").

The plaintiffs contend that their allegations are analogous to those the Court found sufficient in *Barnes v. Unilever U.S. Inc.*, No. 21 C 6191, 2023 WL 2456385 (N.D. Ill. Mar. 11, 2023). The Court ruled in that case that "Barnes's theory of injury holds water even if based on the proposition that she would not have purchased the product had she known of the risk it contained benzene." *Id.* at *5 (quoting *Barnes v. Unilever U.S. Inc.*, No. 21 C 6191, 2022 WL 2915629, at *1 n.1 (N.D. Ill. July 24, 2022)). But in *Barnes*, the Court placed particular emphasis on the latent effects of the alleged contaminant. *Id.* ("This is particularly so in view of the fact that benzene is contended to be a carcinogen and a substance that lingers in the human body, affecting several organs and 'causing cells not to work correctly.'"). The plaintiffs in *Barnes* also provided factual support to substantiate the alleged risk of contamination, including that benzene was detected in a majority of over a hundred product batches tested. *Id.* at *1. With these allegations, it was plausible that the plaintiffs in *Barnes* had purchased products contaminated with benzene. *See Fishon v. Mars Petcare U.S., Inc.*, 501 F. Supp. 3d 555, 565 (M.D. Tenn. 2020) (holding that the plaintiffs alleged an injury in fact where they alleged that test results confirmed the presence of unwanted ingredients in the defendant's products, and "there [wa]s nothing in the [c]omplaint to suggest that only

8

*some* of" the products contained the unwanted ingredients, so a "fair reading" of the complaint was that *all* the products contained the unwanted ingredients, including the plaintiffs' purchased products); c*f. Agee v. Kroger Co.*, No. 22 C 4744, 2023 WL 3004628, at *5 (N.D. Ill. Apr. 19, 2023) ("[B]ased on the FDA report and peer-reviewed study referenced in Agee's complaint, it is plausible to infer, at least for purposes of a motion to dismiss under Rule 12(b)(6), that Kroger's lidocaine patches routinely fail to adhere to the body for the promised length of time.").

    The same thing cannot be said for the plaintiffs' allegations in this case. First, the plaintiffs have not alleged any facts regarding the percentage of products or lots sold by Abbott that were contaminated.[2] *See Wallace*, 747 F.3d at 1030–31 ("As we cannot discern from the complaint how many packages were tainted with non-kosher beef, it is unclear whether even a bare majority of Hebrew National packages were not kosher."). Thus, "it is pure speculation to say the particular [products] sold to the consumers were tainted by [bacteria], while it is quite plausible [Abbott] sold the consumers *exactly what was promised*." *Id.* at 1031. Moreover, the plaintiffs have not alleged that there are any latent effects from the sort of bacterial contamination they posit. This further differentiates this case from *Barnes*, in which the contaminant was a human carcinogen whose effects might not be noticed for years. Indeed, none of the plaintiffs have experienced any symptoms even though all but one stopped purchasing Abbott's

---

[2] The closest the plaintiffs get is their allegation that the FDA reported "finding *Cronobacter* in at least two batches of Abbott's finished powdered infant product." Consol. Am. Compl. ¶ 68. But without alleging how many batches were tested, there is no way to tell what proportion of Abbott's total production during the relevant period was implicated. *See Wallace*, 747 F.3d at 1030 n.2 (refusing to assume that most of the products were defective when that assumption had "no basis in the complaint").

formula over a year ago. On this backdrop, there is no plausible inference that the plaintiffs are at risk of latent effects from bacterial contamination.

In short, the plaintiffs received exactly what they say they bargained for: safe infant formula. If their standing contention were sufficient, any purchaser of a good that functioned precisely as expected without any risk of future harm could bring suit if they later discovered undisclosed information, even if it only affected others. This would stretch "[t]he general rule . . . that plaintiffs must allege their own injuries to establish standing" too far. *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 384 (7th Cir. 2020). Indeed, at the motion hearing, the plaintiffs struggled to articulate any limiting principle to their standing theory.

Because the plaintiffs received the benefit of their bargain, they lack standing based on this theory of harm. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) (declining to "push this theory beyond its current scope," which has "been adopted by courts only where the product itself was defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect"). The plaintiffs do not allege any other harm that could provide standing for their claims.[3]

Because the plaintiffs do not have standing, the Court declines to address the merits of their claims. *See Hinrichs v. Speaker of House of Reps. of Ind. Gen. Assembly*, 506 F.3d 584, 600 (7th Cir. 2007) ("[I]f a dispute is not a proper case or

---

[3] In their response brief, the plaintiffs specifically disavow any reliance on harm based on Abbott's recall. *See* Pls.' Resp. Br. at 23 ("[T]he purported origin of the "Recall Theory" states on three separate occasions that the 'injury in fact' is the inflated costs of contaminated formula.").

controversy, the courts have no business deciding it, or expounding the law in the course of doing so." (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006))); *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 821 (7th Cir. 2016) ("It is certainly true that a court may not decide the merits of a case without subject matter jurisdiction . . . .").

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss the plaintiffs' consolidated amended complaint for lack of standing [dkt. no. 94].

```
                                   _____
                                            MATTHEW F. KENNELLY
                                            United States District Judge
```

Date: May 22, 2023