**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: RECALLED ABBOTT INFANT FORMULA LIABILITY LITIGATION </br></br> This Document Relates to All Personal Injury Cases | ) </br> ) </br> )    Case No. 22 C 4148 </br> )    MDL 3037 </br> ) </br> )    Hon. Judge Matthew F. Kennelly </br> ) </br> ) |

**ABBOTT LABORATORIES' SUBMISSION
REGARDING MDL DISCOVERY ISSUES**

Since the outset of this MDL, Abbott has been actively committed to meeting its discovery obligations. For nearly a year now, Abbott has worked productively with the Plaintiffs' Steering Committee to:

- respond to the Plaintiffs' 111 Requests for Production, 19 Interrogatories, and 47 Requests for Admission;

- negotiate a protective order, ESI protocol, and Rule 502(d) orders;

- search the files of 30 custodians with search terms and parameters negotiated at length with the Plaintiffs through regular meet-and-confer teleconferences;

- collect and produce records from several non-custodial Abbott databases, including several requiring substantial manual processing and effort; and

- produce more than 125,000 documents (400,000 pages), with another substantial production expected in the next week and rolling productions expected to continue for the next several months.

In total, the search parameters (including custodians, date ranges, and terms) that Abbott has already committed to run at Plaintiffs' request will ensure that Abbott attorneys will review and produce several hundred thousand records (if not more). And that is before the parties negotiate Plaintiffs' requests for additional custodians and material not even at issue in the present dispute.

As the Court knows, these cases stem from a recall involving *some* infant formula products, manufactured at *one* Abbott facility (Sturgis, Michigan) *in or after* October 2020. Although the

FDA initially announced concerns about possible bacterial contamination involving *Cronobacter* and/or *Salmonella*, there have been no positive tests for such contamination in any of the sealed and distributed recalled products. Moreover, the FDA later announced there was no connection between the Sturgis products and the lone *Salmonella* case it was investigating. Nonetheless, numerous plaintiffs have filed suit for personal injuries allegedly connected to the recalled products, which led to the establishment of this MDL. As the JPML's Order centralizing cases in this MDL recognized: the "actions can be expected to share factual questions arising from alleged contamination of **certain** powdered infant formulas **manufactured at Abbott's manufacturing facility in Sturgis, Michigan**." ECF 1, JPML Order, at 1[1]

Notwithstanding the scope of this MDL and Abbott's substantial discovery commitments and productions to date, Plaintiffs ask this Court for still-more, including documents and information that are irrelevant to the (i) timeframe, (ii) facility, and (iii) medical conditions at issue in these cases. But discovery—even in the course of multi-district litigation—has limits, namely that it be relevant, not unduly burdensome, and proportional to the needs of the case. Each of the three issues that Plaintiffs submit to the Court today exceed those bounds.

<u>As to timeframe</u>: This MDL (as narrowed by the Court's motion to dismiss rulings) concerns personal injuries allegedly caused by powdered infant formula recalled by Abbott early last year and produced between October 2020 and February 2022. Consistent with that scope, virtually all of the cases in this proceeding allege medical symptoms in 2021 or later. Yet Plaintiffs ask this Court to presumptively start discovery at the outset of **2018**—nearly three years before the production of recalled formula and the onset of any symptoms allegedly caused by it.

---

[1] Unless otherwise indicated, all emphases are added.

As to facilities: Even though the recalled formula was produced at a single Abbott facility in Sturgis, Michigan—and the 62 personal-injury complaints exclusively advance allegations related to that facility—Plaintiffs seek irrelevant (and highly burdensome) discovery from a separate Abbott manufacturing plant in Casa Grande, Arizona.

And as to the medical condition: Notwithstanding that all of the claims in the MDL allege bacterial infections caused by insufficient manufacturing conditions related to powdered infant formula, Plaintiffs seek the re-production of millions of pages of documents produced in a different MDL concerning an alleged design defect primarily in liquid infant formula.

Each of Plaintiffs' requests amounts to little more than an unnecessary and burdensome fishing expedition and should be denied.

## I. ABBOTT'S PROPOSED PRESUMPTIVE START DATE FOR DISCOVERY (JANUARY 1, 2020) IS REASONABLE AND PROPORTIONAL

Discovery in this MDL should focus on the timeframe actually relevant to the recalled infant formula batches that this proceeding was created to address. Abbott's proposed start date for the presumptive collection and search of documents—January 1, 2020—would do just that, whereas Plaintiff's proposed date (two years earlier) would encompass substantially irrelevant material and unnecessarily burden Abbott.

### A. Abbott's Proposed Start Date Will Capture Relevant Evidence.

Initiating the collection and review of documents at the outset of 2020 would afford Plaintiffs ample discovery from before the manufacture of the recalled formula batches and illnesses at issue in this MDL. Abbott's February 2022 recall applied to batches of Similac, Alimentum, and Elecare that were manufactured in or after ***October 2020***.[2] This means that

---

[2] In its recall announcement, Abbott stated: "The products included in the recall have a multidigit number on the bottom of the container . . . starting with the first two digits 22 through 37." (Ex. 1 at 1, *see* Decl. of

Abbott's proposed start date would provide nine months of extra context surrounding the policies and practices in place before any recalled batch was manufactured. Indeed, as part of the Plaintiff Fact Sheet process implemented by the Court, *see* MDL Case Management Order No. 3 (ECF 32), ***no*** Plaintiff (of more than 55 who have served completed Plaintiff Fact Sheets at present) has identified a formula batch manufactured before such time—rather, the earliest-produced batch identified by any Plaintiff was manufactured in November 2020. Moreover, Abbott has already produced nearly all batch records associated with the batches identified by Plaintiffs to date—more than 30 batches in total—and has agreed to run broad search terms across the files of nearly 30 custodians from 11 months prior to the manufacture date of the earliest at-issue batch. These broad search parameters capture documents and communications regarding the conditions at Sturgis long before even the earliest at-issue batches were produced.

Moreover, consistent with the dates of formula production at issue, the injuries alleged by Plaintiffs are concentrated between 2021 and 2022—more than a year after Abbott has committed to search for and produce documents. Out of 62 cases filed to date, all but one (addressed in more detail below) alleges an injury in 2021 or later. Thus, to the extent that Plaintiffs seek documents pertaining to Abbott's investigation of any of those illnesses (or other activities around that timeframe), Abbott's agreed-upon search parameters would more than cover the relevant period.

In short, Abbott's agreement to presumptively search for documents going back to the start of 2020 is more than sufficient, if not favorable to Plaintiffs.

**B. Plaintiffs Lack Sufficient Basis for Extending The Date Range Back to 2018**

Against the indisputable timeframe for the manufacture of the relevant formula and onset of the illnesses at issue, Plaintiffs' request to go back nearly 3 years prior lacks a reasonable basis.

---

M. Glick, submitted herewith). Those digits refer to an internal Abbott numbering system indicating the month a batch was manufactured. Batches beginning with 22 were manufactured in October 2020.

4

At the outset of the parties' date-range negotiations last year, Plaintiffs requested a January 2018 start date for Abbott's searches that they attempted to justify by then-existing economic-class claims (which alleged putative classes dating back to April 2018). Following the Court's dismissal of those claims, Plaintiffs pivoted to new arguments, none of which pass muster.

*First*, Plaintiffs point to the Sturgis facility's regulatory history—but that history supports ***Abbott's*** presumptive date range, not Plaintiffs, as FDA did not issue any regulatory observations regarding conditions ***at Sturgis*** until September 2021.[3] As background, FDA routinely inspects formula production facilities like Sturgis; these "establishment inspection[s]" typically last several days and entail "a careful, critical, official examination of a facility to determine its compliance with the laws and regulations administered by FDA." (Ex. 2 at 5.1.2) If, at the conclusion of an inspection, investigators observe "any conditions that in their judgment *may* constitute violations of the Food Drugs and Cosmetics Act," they may issue a Form 483 report. (Ex. 3 at 1) A Form 483 "does not constitute a final Agency determination of whether any condition is in violation of the FD&C Act," *id.* at 2, and the FDA issues thousands of Form 483s each year. (Ex. 4)

In accordance with this charge, FDA inspected the Sturgis facility in both 2018 and 2019 (as well as for several years prior), in each instance reviewing thousands of pages of documents (including batch records, test records, SOPs, and various other quality-related materials), interviewing employees, collecting product samples, and observing plant conditions. As relevant to the present discovery dispute, at the conclusion of the 2018 inspection, FDA found no deficiencies, concluding: "The current inspection *found no objectionable conditions* and no FDA 483 was issued to the firm." (Ex. 5 at 2) After the 2019 inspection, FDA issued a single

---

[3] Plaintiffs' portion of the August 4, 2023 joint status report (ECF 169 at 5) pointed to an FDA Form 483 finding in 2010—12 years before the recall at issue—but that finding exclusively concerned a particular pest-related issue, which Plaintiffs do not and cannot allege has recurred and is irrelevant to this MDL.

observation—but such observation was not directed to a Sturgis specific condition; instead, FDA's lone observation related to Abbott's procedure for *Salmonella* sampling in powdered infant formula, which the FDA recommended be adjusted, and Abbott made those adjustments, which FDA inspectors verified at the next audit. (Ex. 6 at 37) What is more, Abbott produced its formal response to FDA about this observation, and Plaintiffs have not suggested it revealed any issues with the Sturgis facility, or that FDA challenged the response, issued a warning letter, or brought any enforcement action after receiving Abbott's response. And critically, no case in the MDL alleges injury from *Salmonella* earlier than 2021—long after Abbott addressed the issue in 2019—meaning that any formula batches at issue in this MDL alleging injury from *Salmonella* would have been produced using the updated sampling method.

In other words, for each of the two additional years (2018 and 2019) for which Plaintiffs seek to extend Abbott's search period, the FDA did not itself make *any* findings as to the conditions at Sturgis or product made there. And as to any of the other FDA findings or commentary that Plaintiffs referenced in their August 4 submission, those statements concerned FDA observations in late 2021 or early 2022—which are well within the discovery period to which Abbott agreed.[4]

*Second*, Plaintiffs wrongly suggest, based on allegations of a so-called "whistleblower," that Abbott prevented FDA from discovering "micros" in 2019, thus justifying discovery back to 2018. The FDA's Establishment Inspection Reports directly contradict this false assertion. As FDA itself reported, during the 2018 and 2019 inspections, FDA inspectors discussed instances in

---

[4] Plaintiffs point to isolated references—not findings—in FDA's 2018 Establishment Inspection Report regarding two instances of *Cronobacter* findings in the environment (not actual product) and two occasions on which Abbott was informed of *Cronobacter* infections in infants who allegedly consumed formula produced at Sturgis. ECF 169, at 5. These isolated events do not justify a sweeping extension of the presumptive discovery timeframe, especially when the FDA's own report conclusively establishes that FDA (i) reviewed the documentation associated with these events, and (ii) after its "careful, critical, official examination," it "found no objectionable conditions." *See* Ex. 2, Ex. 5.

which finished formula product or the environment had tested positive for microbes and reviewed the quality investigation records associated with those results. (Ex. 5, at 5; Ex. 7 at 12, 19-20). Not only does FDA's own recounting contradict the former employee's allegations, the reports underscore that, after inspecting Abbott's records and the facility itself, FDA did not issue a Form 483 related to the conditions at Sturgis.

*Third*, Plaintiffs have cited to a single case (*San Miguel*) out of 62 in the MDL alleging injury in late 2019 as a basis for expanding the presumptive discovery period by two years. *See* ECF 169 at 4-5. Based on that timing, the *San Miguel* complaint involves product that was not even part of the 2022 recall. Moreover, Plaintiffs offer no explanation for why discovery from 19 months prior to the injury alleged in that case would be proportional for even that one case, let alone proportional in light of the rest of the MDL. Even if some discovery were required to accommodate this single, anomalous case, the more reasonable path would be for Abbott to produce targeted files (including test results and complaint investigations) from 2019, rather than extending Abbott's collection and production obligations for two additional years. Indeed, as the Court's recent Case Management Order No. 13 contemplates, if the *San Miguel* case is chosen as one of the 10 cases to enter bellwether discovery, Plaintiffs will have the opportunity to serve appropriate case-specific discovery related to that case. *See* ECF 174 at ¶ 11. But there is no reason to extend Abbott's already-sweeping discovery obligations back to 2018 to accommodate this single case—which is not representative of other cases in this MDL, does not involve recalled product, and does not even identify a specific batch upon which to target discovery.

> **C.** **The Burden of Producing Discovery Back to 2018 Outweighs the Remote Likelihood of Identifying Relevant Documents**

Finally, Plaintiffs' proposed two additional years of searches would substantially burden Abbott. Under Abbott's current agreement to search back to January 1, 2020 using

7

already-agreed-to custodians and search terms, Abbott would be required to search approximately 300,000 email files alone, to say nothing of other record forms and databases that Abbott has agreed to search (including mobile and instant messages, custodians' hard drives, and internal Abbott databases). Extending the start date back to January 2018 would require Abbott to search *at least* an additional 80,000 email files alone using current custodians and search terms (and, notably, Plaintiffs are still asking for more custodians). Many of the databases that Abbott has agreed to search require files to be manually downloaded one-by-one—a project that will already occupy significant amounts of Abbott employees' time (and significantly more if the start date extends back to 2018). Plaintiffs have attempted to suggest that there is little burden to extending back to 2018 because "Abbott has indicated that it collected custodial documents going back to 2018 already," ECF 169 at 6-7, but that ignores that (i) *non*-custodial sources have not yet been collected for this additional time period (a manually-intensive effort), and (ii) *collecting* documents generally is not the burdensome part of e-discovery; it is the extended review and production. Such burden far outweighs the minimal potential relevance of these materials.

Finally, while Abbott maintains that a general start date of January 1, 2020 is appropriate and proportional to the needs of the case, Abbott has *already* produced select categories of documents pre-dating 2020, and is willing to accommodate targeted requests for additional pre-2020 materials. For instance, Abbott has already produced all documents provided to FDA during its 2019 audit of Sturgis, the FDA's report from that audit, and Abbott's responses to it. Abbott will entertain other requests for documents from 2019, including certain sanitation and pest control records, batch records identified by Plaintiffs for that period (to date, there are none), and test records associated with any identified batches at issue. But a wholesale requirement that

Abbott presumptively search all of its custodial and non-custodial sources going back to the beginning of 2018 is substantially overbroad and not proportional to the needs of this proceeding.

## II. DOCUMENTS EXCLUSIVELY RELATED TO ABBOTT'S CASA GRANDE FACILITY ARE NOT RELEVANT

Plaintiffs' request for documents that exclusively reference Abbott's separate formula manufacturing facility in Casa Grande, Arizona should be denied. The February 2022 recall upon which this MDL was formed was indisputably limited to Sturgis-produced formula: the JPML's Order last August specifically stated that "[a]ll actions can be expected to share factual questions arising from alleged contamination of certain powdered infant formulas *manufactured at Abbott's manufacturing facility in Sturgis, Michigan*." ECF 1, JPML Order, at 1. None of the batches identified by Plaintiffs in any of the MDL complaints were manufactured at Casa Grande (and, if there were, those claims that would not be appropriate for this MDL).

Notwithstanding Casa Grande's irrelevance to the MDL (and any single case within it), a byproduct of Abbott's agreement to run broad search terms across almost 30 custodians—some of whom oversee activities at facilities across the world—is that, inevitably, documents related to Casa Grande have found their way into Abbott's review queue. Notably, Abbott has agreed to produce such documents where those documents also contain responsive information about Sturgis. In other words, Abbott is **not** seeking to redact or withhold Sturgis-relevant documents (or parts of documents) that *also* mention or pertain to Casa Grande. Abbott has agreed to produce those kinds of documents. What Plaintiffs are insisting on, and what Abbott is objecting to, is the production of documents where a particular document *only* concerns Casa Grande (*i.e.*, is unrelated to Sturgis). Merely hitting on search terms, especially terms as broad as the ones Abbott is applying at Plaintiffs' urging here, is not a measure of relevance, and Abbott should not be compelled to produce Casa Grande-specific materials that are not responsive to issues in this MDL.

The only justification Plaintiffs have proffered to support their request for Casa Grande-only documents is that there is a *possibility* that these documents *could* reveal measures taken at Casa Grande that were not taken at Sturgis, which—*if true—could* be evidence that Sturgis personnel were negligent. But such "vague arguments provide no information upon which the Court can determine specifically to which claims or defenses any information obtained in the proposed inspection would be relevant." *Loughnane v. Zukowski*, *Rogers, Flood & McArdle*, 2019 WL 13073480, at *10 (N.D. Ill. Dec. 2, 2019). "The discovery rules are not a ticket . . . to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Gross v. Chapman*, 2020 WL 4336062, at *4 (N.D. Ill. July 28, 2020). Plaintiffs cannot point to any concrete (or even vague) policy, control, or safeguard that Abbott implemented at Casa Grande but not at Sturgis, and thus do not support this discovery request with anything more than pure speculation. One party's "speculation" that another party "must possess unspecified additional information is not sufficient grounds" for a discovery request. *Todd by Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991). Under Plaintiffs' approach, this would render an enormous amount of Casa Grande's documentation relevant just so they could compare and contrast it against events at Sturgis looking for *possible* inconsistencies. That is not consistent with the scope of this MDL or the discovery standards, and such a mandate would expand Abbott's production burden to an unreasonable level.

By contrast, Abbott's position—that documents exclusively relating to Casa Grande need not be produced, but documents that relate to Casa Grande *and* Sturgis should—charts a more reasonable path. But documents that exclusively relate to Casa Grande (or any other Abbott facility for that matter) bear no reasonable relation to the issues in this MDL and would only serve to burden Abbott and slow the discovery process. The Court should decline to order as much.

### III. PLAINTIFFS' REQUEST FOR DOCUMENTS PRODUCED IN THE PRETERM INFANT LITIGATION IS OVERBROAD AND UNNECESSARY

Plaintiffs' request that Abbott reproduce millions of pages of documents from a separate MDL involving distinct theories, witnesses, illnesses, and injuries should be denied. The Preterm Infant Litigation (including MDL No. 3026 (N.D. Ill. Case No. 22-cv-71) (Pallmeyer, J.) and associated state-court litigation) involves claims alleging that Abbott's preterm infant products feature a design defect that cause certain preterm infants to suffer a gastrointestinal disease known as necrotizing entercolitis.[5] The NEC litigation (i) does not involve powdered infant formula but instead relates primarily to ready-to-feed liquid formulas that are typically offered to preterm infants, as Plaintiffs acknowledge, ECF 169 at 12; and (ii) concerns only a design defect—and not an alleged manufacturing or quality-control defect like the one alleged in the present MDL. Given these differences, it is unsurprising that none of the document custodians in the Preterm Infant Litigation are Sturgis employees and few, if any, are even employed in Abbott's Quality Assurance department. Moreover, the Preterm Infant Litigation centers on a different time period: given the design-defect claims at issue in those cases, the discovery period in that litigation extends back to 2000, when some of the products at issue were developed.

Despite these substantial discrepancies, Plaintiffs propose that Abbott run broad search terms across Abbott's *entire* Preterm Infant Litigation production, without any limits by date or custodian. But based on the current Preterm Infant Litigation production, Abbott calculates that Plaintiffs' proposed terms would require Abbott to reproduce 74% of the pages produced in that separate litigation—over 327,567 documents (nearly **3.4 million** pages)—despite the lack of any

---

[5] The condition is often referred to as "NEC," and the associated litigation (and MDL) are sometimes referred to as the "NEC litigation" or "NEC MDL."

articulated substantive overlap between the cases. And that number will only continue to increase as Abbott continues to produce documents in the Preterm Infant Litigation.

To date, Plaintiffs have never identified specific documents or custodians (other than two custodians that already are agreed-upon custodians in this case) from the Preterm Infant Litigation for whom Plaintiffs believe discovery in this MDL would also be appropriate. As Abbott has expressed to Plaintiffs, it would be willing to consider targeted requests to re-produce relevant documents from the Preterm Infant Litigation on a case-by-case basis. But there is no need to run broad, untargeted terms with no date restrictions against a large volume of custodians who have zero (or, at most, minimal) relevance to powdered infant formula production and/or Sturgis. To the extent certain Plaintiffs' counsel are aware from their participation in the Preterm Infant Litigation of custodians whom they believe have relevant knowledge or documents, Plaintiffs can request that Abbott target them for a limited, articulatable basis or add them as custodians in this MDL—something they already have done with regularity. But such requests are best handled on a request-by-request or custodian-by-custodian basis rather than the blunderbuss approach advocated by Plaintiffs here, which would only result in the production of millions of pages of substantially irrelevant material that would only threaten to overwhelm the already-broad discovery that Abbott has agreed to provide in this MDL.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' requests as to (i) the presumptive search and production of documents as of January 1, 2018, (ii) documents that exclusively concern Abbott's Casa Grande, Arizona facility, and (iii) the broad, untargeted reproduction of millions of pages from the Preterm Infant Litigation.

Dated:  August 22, 2023                    Respectfully submitted,

*/s/ Michael A. Glick*

James F. Hurst, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200
james.hurst@kirkland.com

Michael A. Glick (*pro hac vice*)
Katherine R. Katz (*pro hac vice*)
Erin E. Cady (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington D.C. 20004
Tel: 202-389-5000
Fax: 202-389-5200
michael.glick@kirkland.com
katherine.katz@kirkland.com
erin.cady@kirkland.com

Brad Masters (*pro hac vice*)
KIRKLAND & ELLIS LLP
60 East South Temple
Salt Lake City, UT 84111
Tel: 801-877-8143
Fax: 801-877-8101
brad.masters@kirkland.com

*Counsel for Abbott Laboratories Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system and/or by e-mail.

*/s/ Michael A. Glick*
Michael A. Glick
