# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In Re: Recalled Abbott Infant Formula Products Liability Litigation <br><br> THIS DOCUMENT RELATES TO: <br> ALL PERSONAL INJURY CASES | Case No. 22 C 4148 <br> MDL No. 3037 <br><br> Hon. Judge Matthew F. Kennelly |

## DEFENDANT ABBOTT LABORATORIES' BRIEF IN SUPPORT OF
## PROPOSED CASE MANAGEMENT ORDER

Following the August 29, 2024 conference with the Court, Abbott made substantial compromises to the Objecting Plaintiffs with respect to Abbott's original case management order proposal submitted in June. Notwithstanding Abbott's willingness to alleviate certain burdens on Plaintiffs and to impose significant obligations on itself—including serving answers, producing a host of materials specific to Plaintiffs' claims, and agreeing to respond to new interrogatories—the Objecting Plaintiffs continue to seek to minimize their own obligations in the proposed order while asking still-more of Abbott. But the Court should not permit Plaintiffs to shirk common-sense requirements designed to advance the cases of Plaintiffs who opt out of the voluntary settlement program (or any newly filed cases), nor should it allow Plaintiffs to exploit this docket control order to obtain a host of overbroad, burdensome, and irrelevant discovery from Abbott. For these reasons, and those set forth in more detail below, Abbott urges the Court to adopt Abbott's proposed order, as revised and submitted on September 17.

For ease of the Court's reference, Abbott discusses each disputed provision in the row sequence provided in the parties' joint chart being submitted concurrently herewith (Exhibit A).[1]

---

[1] All § and ¶ references herein are to Abbott's September 17, 2024 proposal (attached here as Exhibits B (clean) and C (redline to Abbott's original proposal)), except where specified.

**1. Background and Status of Proceedings (§ I).**  Abbott's version includes citations to cases from the Seventh Circuit and this Court as well as to Fed. R. Civ. P. 16, which confirm this Court's authority to enter an order managing the docket in this complex proceeding.  While those citations are appropriate, Abbott defers to the Court as to the need to include them in this Order.

At the same time, Plaintiffs' version seeks to introduce extraneous background on the MDL proceeding, particularly as to internal discussions amongst Plaintiffs' counsel to which neither Abbott nor the Court were privy.  Those additions are not necessary to the Order.

**2. Preservation Notice Requirements (§ IV.A).**  Abbott proposes to require Plaintiffs to send preservation notices to individuals or entities who may possess records highly relevant to the Plaintiff's claims, including healthcare providers, daycares, and (only if Plaintiff parents are seeking lost wages) employers and tax preparers.  This requirement, which has been adopted by numerous MDL courts, makes sense: given the duration of the settlement process, there is a greater risk of relevant records from such entities being lost if Plaintiffs intend to pursue their already-years-old claims after the settlement process plays out.  *See, e.g.*, *In re Praxda Prods. Liab. Litig.*, MDL No. 2385 (S.D. Ill., May 29, 2014), CMO No. 78; and *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La., Nov. 9, 2007), PTO Nos. 28, & 29.  Moreover, Plaintiffs are in the best position to know about them and inform them of the need preserve.

**3. Rule 26(a)(1) Disclosures (¶ 13(a); Pltf. ver. ¶ 18).**  Abbott's proposal strikes the requirement to provide Rule 26(a)(1) disclosures for <u>both</u> Plaintiffs and Abbott.  Given the other materials called for in the Order (and provided previously in discovery), separate Rule 26(a)(1) disclosures would be superfluous.

**4. Plaintiffs' Provision of Medical Records (¶ 13(b)).**  Both sides agree that Plaintiffs shall produce medical records pursuant to the Order.  Only Abbott's version, however, specifies

that the records subject to production shall include laboratory tests and records related to *Cronobacter*, *Salmonella*, and Meningitis, to the extent they exist. Given the centrality of these types of bacteria (or Meningitis diagnoses) to the cases in the MDL—which were brought based on allegations that they were present at and triggered a recall from an Abbott manufacturing facility—it is critical for Plaintiffs to provide records related to these bacteria to evaluate the viability of their claims; Plaintiffs' objection on this score is baffling.

**5. Investigation Records (¶ 13(c)).** Both sides' versions provide that Plaintiffs shall produce records in their possession regarding investigations into their injuries conducted by government agencies and health departments. While the parties agree that privileged materials need not be produced, only Abbott's version clarifies—consistent with prevailing law—that investigation materials obtained from third parties are not privileged simply because they were obtained by counsel. *See, e.g.*, *Brown v. Hart, Schaffner & Marx*, 96 F.R.D. 64, 68 (N.D. Ill. 1982). Additionally, Plaintiffs seek to include a clause stating that the obligation to produce investigation records extends only to documents in a Plaintiff's possession. But that proviso is unnecessary: as both sides' proposed orders make clear, the *entirety* of the production obligations set forth in Proposed Section IV.B.1 are limited to "such records from all available sources in the Plaintiff's possession, custody, or control" (including counsel's). *See* Abbott Proposal at ¶ 14.

**6. Employment Records.** Both sides' versions include a provision requiring Plaintiffs (*i.e.*, parents or guardians) who claim lost wages or earnings as part of their relief to provide tax and income records. Abbott's version merely seeks to confirm that this requirement applies *only* to parent/guardian Plaintiffs claiming lost wages; Plaintiffs' version obfuscates this issue.

**7. Affidavit Requirement Regarding Production (¶ 13(e)).** To ensure that Plaintiffs conduct a diligent search and production of the records called for in Proposed Section IV.B
3

(Plaintiff Fact Sheet, Medical Records, Investigation Records, and (where applicable) Employment Records), Abbott proposes that a Plaintiff's counsel execute an affidavit that the Plaintiff has complied with his or her requirements, reasonably collected relevant materials, and produced them (or state that such materials do not exist). Given the categories called for in this section, such a certification should be straightforward and will help ensure obligations are met.

**8. Obligations Relating to Potentially Produced Materials (¶ 14).** Abbott acknowledges that it may already possess medical and other records regarding certain Plaintiffs to whom the Order may apply—either through the Plaintiff Fact Sheet or bellwether processes. Accordingly, Abbott's proposal provides that Plaintiffs who believe Abbott already possesses records subject to production under the Order may confer with Abbott to confirm what is in Abbott's possession and assess what additional records may need to be produced. By contrast, Plaintiffs' proposal blanketly states that Plaintiffs need not re-produce records or authorizations that were previously produced (without a conferral obligation). Plaintiffs' proposal is not workable: because certain records may have been obtained from third parties (pursuant to Plaintiff authorizations), Plaintiffs may not have complete insight into what Abbott possesses as well as the cut-off date for such records (particularly for Plaintiffs who are continuing to receive care). Thus, Plaintiffs cannot unilaterally determine what has been "previously produced." Abbott's proposal ensures the parties will be on the same page as to required supplementation.

**9. Proof of Purchase and Use (§ IV.B.2).** Abbott's proposal seeks basic documentation and information exclusively within Plaintiffs' knowledge and control regarding their purchase and their child's consumption of the subject Abbott formula. Specifically, Abbott seeks (i) records and documentation evidencing purchase of Abbott formula, (ii) available documents regarding use and/or consumption, and (iii) a declaration from Plaintiff setting forth dates and

locations pertaining to purchase and use. And Abbott is clear that if a Plaintiff does not possess records or documentation, he or she may state as much in the declaration.

Plaintiffs *agree* to provide category (i), but *object* as to (ii) and (iii). That position is unreasonable. Evidence of formula purchase and use is fundamental to Plaintiffs' claims. For instance, it is critical to determining whether Abbott's formula (or some other source) is what caused Plaintiffs' injuries as well as (among other things) the circumstances of any breach of warranty or representation-based claims. Moreover, providing this information now—particularly the information sought in the requested declaration—will ensure information is memorialized before memories of already-years-old purchases and consumption further fade.

**10. Continuing Injury Attestation (§ IV.B.3).** Both sides' versions require Plaintiffs to provide a Plaintiff attestation describing the full extent of any continuing or ongoing injuries that they allege their child is suffering. Plaintiffs' version, however, would limit the use of such attestations to be for settlement purposes only. Abbott disagrees. Such a limitation would only invite gamesmanship by inviting Plaintiffs to lie in wait regarding the full extent of their injuries. Abbott is entitled—for all purposes—to know what injuries Plaintiffs are claiming, which will implicate Abbott's potential exposure (if any), govern what additional discovery may be necessary, and otherwise affect the parties' litigation strategies going forward.

**11. Causation & Injury Expert Report (¶ 17(a)).** As the Court is aware, Abbott, the PSC, the Special Master, and the Court itself invested substantial time and resources in negotiating the voluntary settlement program currently underway. Given those efforts, Plaintiffs opting out of the program should be obligated to demonstrate that their claims are viable, including that they have a basis to contend Abbott's formula caused their injuries. Based on discovery and Plaintiff Fact Sheets produced thus far, there is no evidence that any Plaintiff can

establish a causal link between Abbott's formula and alleged illness—which available testing and investigations into certain Plaintiff's injuries have confirmed to date.  Thus, to the extent Plaintiffs are opting out of the reasonable settlement program, Abbott believes it critical to have Plaintiffs demonstrate their case has a chance of meeting this significant causation hurdle.

Furthermore, the requirements for this report are reasonable and not overly burdensome, as Plaintiffs insist.  First, the proposed reports (particularly as modified by Abbott since its original proposal in June) can likely be prepared predominantly with information and materials that are either (a) in each Plaintiff's possession already, (b) publicly available, (c) already produced by Abbott, or (d) going to be produced by Abbott subject to the Order.  Second, per the Court's direction at the August conference, Abbott has extended the time to afford 150 days for these reports.  And third, Abbott's proposal makes clear that the reports provided under this Order need not be the last word on causation/injury issues: Abbott's ¶ 19 expressly provides that Plaintiffs be permitted to reasonably amend or supplement their reports (as well as the damages report described below) or even to later retain additional experts on these issues if necessary.

12.  **Damages Expert Report (¶ 17(b)).**  Both sides agree that Plaintiffs will serve a case-specific expert report describing their alleged damages, but Plaintiffs again seek to limit the report to be used for settlement purposes only.  Once again, this will only invite Plaintiffs (and their experts) to provide only half-hearted reports that fail to provide Abbott (and the mediator or the Court) with an accurate picture of Plaintiffs' claims and Abbott's exposure.  The materials necessary to provide such a report are squarely in Plaintiffs' possession or control; no discovery from Abbott will affect Plaintiffs' own claimed damages.  And again, Abbott's proposal affords Plaintiffs the opportunity to later amend or supplement their reports if needed.

**13. Abbott Production Requirements vs. Plaintiffs' Proposed Defendant Fact Sheet (Abbott ver. § V.B; Pltfs. ver. ¶ 19 & App'x B).** In response to the Court's comments at the August conference, Abbott has agreed in its proposal to provide Plaintiffs with a host of documents and information related to the production of the formula batches that they allege caused their child's injuries, as well as the conditions at Abbott's Sturgis, Michigan facility around the time of that production. Specifically, Abbott agrees to produce (i) full batch manufacturing and testing records, (ii) environmental testing records from three months before and three months after production, (iii) maintenance and repair records for the month before and month after production, (iv) the product label, (v) the applicable hazard analysis critical control point and/or food safety plans in place during production, and (vi) Abbott's internal complaint file for the batch. This substantial material will allow Plaintiffs to adequately evaluate their claims. And should a Plaintiff's case proceed past the requirements in the Order, such Plaintiff would have an opportunity to seek additional discovery from Abbott at that time.

Unsatisfied with Abbott's meaningful compromise, Plaintiffs (on the eve of the September 17 submissions to the Court) proposed a 4-page "Defendant Fact Sheet" (DFS) requiring Abbott to identify and produce ***20 items*** subject to a penalty-of-perjury certification. As an initial matter, Abbott has already agreed in its Proposed Section V.A to provide information for ***10*** of the categories in the proposed DFS (Nos. 1-7 and 9-11[2]) with the exception that the DFS requests certain records be produced for not only a Plaintiff's actual batch but also adjacent batches in Abbott's production (a request that is overbroad and unnecessary).

The remainder of Plaintiffs' proposed DFS either (at worst) seeks irrelevant information or (at best) goes well beyond the purpose of the Order, which is for the parties to exchange

---

[2] For instance, Abbott's agreement in its Proposed Order ¶ 21 to provide batch manufacturing and testing records would encompass Plaintiffs' DFS Nos. 2, 3, 5, and 11. Abbott's ¶ 22 corresponds to Plaintiffs' No. 6. Abbott's ¶ 23 corresponds to Plaintiffs' No. 4. And so on.

7

relevant information at this unique stage (following the settlement program) to allow the parties to assess the viability of Plaintiffs' claims and Abbott's defenses; it is not intended to be a path to full-blown discovery, which will occur, if necessary, after the parties proceed through this process. The Court should reject these other requests (and the DFS itself) on various grounds:

- ***General Discovery Information.*** Plaintiffs seek a variety of non-case-specific materials better suited (if at all) for general discovery after the docket control order process plays out. This includes "hygienic zoning" information (DFS § II at No. 8), maps and diagrams of the Sturgis facility (No. 10), and a description of Abbott's manufacturing process related to product exposure and contact (No. 14).

- ***Overbreadth.*** Other of Plaintiffs' requests are massively broad, including asking Abbott to identify "all line workers and managers" "involved" in formula production at a plant with hundreds of employees (DFS § II No. 13) as well as "any communications" between Abbott and "any Distributor" and "any Retailer" regarding Abbott's recall (DFS § III No. 2). These requests would be beyond the scope of appropriate discovery in these cases writ-large, let alone as part of this process.

- ***Irrelevant Healthcare Provider Information***. Finally, Plaintiffs would require Abbott to provide a host of information pertaining to Abbott's potential interactions with Plaintiff's healthcare providers, including: identifying sales representatives who called on those providers; producing "all documents" related to formula provided by Abbott to those providers; producing "all documents" related to speaking engagements and other "consultations" with the providers; and producing "all communications" between Abbott and such providers. *See* DFS § IV. But such information, in addition to being overbroad and unduly burdensome, is irrelevant; no Plaintiff alleges that he or she purchased or consumed Abbott formula on the advice of a doctor, making Plaintiffs' need for such information specious at best.

The Court should adopt Abbott's Section V and deny Plaintiffs' DFS request in full.

**14. Interrogatories (§ V.C).** Similar to its willingness to provide Plaintiffs with a range of materials regarding their respective formula batches, Abbott also proposes to respond to up to 5 case-specific interrogatories to be served by Plaintiffs in each case. But yet again, Plaintiffs have taken Abbott's invitation to respond to some reasonable number of interrogatories and now propose to greatly expand it beyond what is necessary and appropriate. The parties' dispute on this issue has at least three dimensions, and the Court should side with Abbott on each one:

***Five is a reasonable number of interrogatories.*** Plaintiffs in these cases have already received a wealth of discovery from Abbott from prior to the stay (including responses to 19 interrogatories, 47 requests for admission, and 111 requests for production served by the PSC—which has yielded 371,000 documents (***2.2 million pages***) from Abbott[3]) *and* stand to receive still-more material as part of the production obligations Abbott has agreed to above. Five (5) additional interrogatories will afford Plaintiffs an appropriate opportunity to obtain further information from Abbott at this threshold stage, balanced against the burdens on Abbott. By contrast, Plaintiffs' proposal of 15 interrogatories per case times just the 7 cases represented by the Objecting Plaintiffs would lead to over 100 interrogatories being served on Abbott. As Abbott has repeatedly made clear in proposing its order, the obligations under the Order are not designed to be the last word in discovery; if cases proceed through the steps in the Order, Plaintiffs in those cases can seek to serve additional interrogatories on Abbott at that time.

***The interrogatories should be case-specific.*** Abbott proposes that the interrogatories to be served be limited to seeking information from Abbott pertaining to a Plaintiff's own claims, injuries, or formula batch, as opposed to broad discovery about Abbott's general practices or activities during a multi-year period. For one, Plaintiffs already have access to Abbott's responses to 19 general interrogatories that were served by the PSC (on behalf of all Plaintiffs). Further, again, allowing each Plaintiff to serve general interrogatories would allow the various Plaintiffs (many of whom are represented by the same counsel and who are already coordinating for purposes of this order) to coordinate their allotted requests, share Abbott's responses, and flout the limitations of the Order by collectively serving dozens of interrogatories.

---

[3] To the extent Objecting Plaintiffs claim that they don't have access to those productions, it is because the PSC has paused the payment for the review platform that houses the productions made by Abbott, which is an administrative matter between the PSC and the Objecting Plaintiffs.

9

***Abbott should have no further obligation at this time as to prior interrogatories.*** Prior to the current stay, Plaintiffs who were part of the bellwether process served interrogatories on Abbott, which Abbott responded to in part. Plaintiffs' proposal would have Abbott respond to those earlier interrogatories <u>and</u> also respond to additional interrogatories from those same Plaintiffs. That is improper. For one, many of the prior interrogatories suffer from the same non-case-specific problem discussed above; requiring Abbott to respond would open the same general discovery floodgate. Furthermore, it would put various Plaintiffs on uneven footing: Plaintiffs in 8 of the 9 bellwether cases served interrogatories, including as many as 16 in one case. Requiring Abbott to respond to those interrogatories (or supplement its prior responses) while also allowing those same Plaintiffs to serve still-more interrogatories would advantage those Plaintiffs over non-bellwether Plaintiffs who have not served interrogatories at all. The cleanest solution is to adopt Abbott's proposal: each Plaintiff can serve five (5) case-specific interrogatories, leaving for later any additional interrogatories, including those served previously.

**15. Status Conference Requirement (§ VI.B).** In the event that the mediation called for under the Order does not resolve a Plaintiff's case, both sides agree a status conference with the Court is a logical next step. The parties differ, however, on who shall be required to attend the conference. For its part, Abbott believes it important for both the Plaintiff and counsel to attend so that the risks and benefits of proceeding with litigation can be explained by the Court.

**16. Compliance and Penalties (§ VI.C).** Both sides agree that failure to comply with the Order may result in potential penalties. Given that the severity of potential infractions is yet to be determined (and will hopefully be avoided altogether), Abbott defers to the Court to later determine appropriate sanctions if and when they arise.

Dated: September 30, 2024	Respectfully submitted,

*/s/ Michael A. Glick*
James F. Hurst, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200
james.hurst@kirkland.com

Michael A. Glick (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-389-5000
Fax: 202-389-5200
michael.glick@kirkland.com

*Counsel for Abbott Laboratories*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system and/or by e-mail.

*/s/ Michael A. Glick*
Michael A. Glick
