**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: RECALLED ABBOTT INFANT FORMULA PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates To:**<br>**All Cases** | )<br>)<br>)  Case No. 22 C 4148<br>)  MDL No. 3037<br>)<br>)  Hon. Judge Matthew F. Kennelly<br>)<br>) |

**JOINT STATUS REPORT
FOR THE APRIL 25, 2025 STATUS CONFERENCE**

At the status conference on April 4, 2025, the Court directed the parties to file a joint status report with additional information on the status of discovery for cases that remain pending in this MDL following the voluntary settlement program, as well as with respect to Plaintiffs' proposed Defendant Fact Sheet. *See* Dkt. 283. The parties have since conferred and provide below their respective position statements with respect to four outstanding areas: (1) disputes regarding the scope and structure of written and document discovery, (2) a dispute over the necessity of Plaintiffs' proposed Defendant Fact Sheet; (3) disputes regarding the scope and structure of deposition discovery, and (4) a joint proposal regarding a plan to address an overall case schedule.

The parties are attaching hereto: (i) the parties' proposed Case Management Order as submitted on March 28, 2025 [ECF 280-1], and (ii) Plaintiffs' proposed Defendant Fact Sheet. The parties acknowledge that certain conforming changes to the Order will be required in accordance with guidance that may be provided by the Court at or after the April 25 status conference, and will be prepared to submit a final conforming order, as necessary, following the conference. The parties reserve the right, and respectfully request the opportunity, to address any parts of the March 28, 2025 proposed Order affected or impacted by the discussion, guidance, and ultimate decisions made by the Court in relation to this Joint Status Report and associated discovery issues.

I. **GENERAL DISCOVERY**

a. **Plaintiffs' Position**

The Original PSC served two sets of Requests for Production and one set of Interrogatories on Abbott. Every request and interrogatory was met with an objection. The Original PSC was in the process of negotiating with Abbott about the general written discovery at the time the stay was entered. PSC II is attempting to pick up these negotiations and address outstanding discovery. PSC II has no desire to duplicate work that has been performed, but Plaintiffs are entitled to challenge Abbott's objections and seek responses to the general written discovery previously served. PSC II believes the best way to organize the general written discovery is to separate it into multiple "Areas of Discovery." These Areas and the relief being sought are included below:

**Area 1** – In recent meet and confers, Abbott agreed to produce or supplement its responses to RFP Nos. 5, 6, and 57 and Interrogatories Nos. 1, 2, 3, 7, 12 and 19. Abbott indicated those productions would be forthcoming and its responses updated upon entry of a case management order. PSC II asks this Court for a CMO requiring Abbott to produce and update as agreed.

**Area 2** – These are RFPs and Interrogatories in response to which Abbott indicated it "will produce" documents (subject to its objections). They are RFP Nos. 1-4, 7, 10-12, 15, 16, 18- 21, 23, 24, 26-35, 38, 40-43, 48, 51-53, 56, 61-70, 73, 76, 83-85, 88-90, 92-94, 95, 97-101, 103-105, 108 and Interrogatory Nos. 11 and 17. Plaintiffs are asking Abbott to produce these documents and update its responses to these RFP's and Interrogatories accordingly. Abbott is taking the position that its custodial file productions relieve them of an obligation to supplement these productions and update the responses, or that the Original PSC's negotiations relieve them of this obligation, which the Original PSC denies. PSC II asks the Court for its guidance on this area of discovery.

**Area 3** – These are RFPs and Interrogatories on which the Original PSC and Abbott previously negotiated and reached an agreement. Plaintiffs are now asking Abbott to remove its objections, supplement its production, and update its responses pursuant to those agreements. They are RFP Nos. 1, 3, 12, 17, 35, 46, 52, 84, 89, 90, 97, 103, 107, and 109, and Interrogatory Nos. 6, 9 and 18. PSC II respectfully requests a CMO ordering Abbott to produce these documents and update its discovery responses consistent with the prior agreements.

**Area 4** – These are RFPs that were in the process of being negotiated between the Original PSC and Abbott prior to the stay. They are RFP Nos. 27, 42, 60, 62, 72, 73, 74, 75, 77, 80, 83, 88, 91, 92, 93, 94, 95, 96, 98, 99, 100, 101, 102, 104, 105, 106, 108, 110, and 111. PSC II asks the Court for a schedule to continue discussions with Abbott and a hearing if necessary.

**Area 5** – This is one RFP that the Original PSC did not previously raise with Abbott that should be addressed: RFP No. 36. This request asks for documents regarding any water events (leaks and condensation) in dry production areas at the Sturgis facility and any related corrective actions. Abbott is taking the position that Plaintiffs have waived their right to address this request because the Original PSC did not raise it. The Original PSC says there was <u>no such agreement</u> that discovery issues not raised prior to the stay could not be raised later. PSC II asks this Court for its guidance on this issue, a schedule to meet and confer with Abbott, and a hearing as necessary.

Additional parameters of general discovery are also still pending, including the following:

**Date Ranges for Discovery Productions** – Abbott's position is that the relevant time period for discovery is January 1, 2020 through March 31, 2022, with the caveat that, per the Court's August 25, 2023 Minute Entry (Document #181), document production only was to extend back to January 1, 2019. Plaintiffs' position is that all discovery should be subject to a time frame that begins on January 1, 2019, and runs to present. Plaintiffs' August 22, 2023 Brief Regarding

3

Abbott's Discovery Responses clearly states that "Plaintiffs define the relevant time period as January 1, 2018 to present." *See* Document #176 at 2. While this Court ruled that the timeframe for document production would begin with January 1, 2019, nothing in the Court's ruling limited the timeframe to end on March 31, 2022. *See* Minute Entry on August 25, 2023 (Document #181).

Moreover, no agreement between the parties was ever reached to have an end date of March 31, 2022. Abbott's proposed cut-off is a mere six weeks after the recall was announced, before the Federal Government's Complaint for Permanent Injunction was filed against Abbott based on the same conduct and violations alleged in Plaintiffs' Complaints. Further, additional lawsuits have been filed against Abbott based on the same violations that were the subject of these 2022 Complaints, alleging a timeframe of this same conduct that has continued well into 2023 and 2024.

**Privilege Log** – Abbott agreed to serve a privilege log upon entry of a case management order. PSC II asks this Court for a CMO ordering same.

**Future General Discovery** –Again, although Plaintiffs do not intend to duplicate any prior discovery efforts, PSC II anticipates the need to request, with good cause shown, additional discovery as they learn about other potential categories of documents and key witnesses.

b. **Abbott's Position**

Discovery from Abbott in this MDL has already been massive. In response to 111 Requests for Production, 19 Interrogatories, and 47 Requests for Admission served by the Original Plaintiffs' Steering Committee (the "Original PSC"), Abbott had already produced 370,000 documents (over 2 million pages) from 32 document custodians and numerous non-custodial sources. Those efforts were the product of extensive negotiations and compromises reached with the Original PSC (which was appointed to represent Plaintiffs in more than 100 cases) across 18 months, including dozens of letters, emails, and multi-hour meet-and-confers, as well as through submission of disputes to

4

the Court. At the time the parties reached an agreement in principle to settle the MDL personal injury cases, the deadline for Abbott to certify completion of its document productions was weeks away, *see* ECF 216 (setting Rule 26(g) Certification deadline of April 11, 2024), and with the exception of a handful of outstanding issues that the parties continued to actively negotiate at the time of the stay, the scope of Abbott's general discovery obligations was settled.

Abbott recognizes that more discovery is still to be done with respect to the remaining Plaintiffs (the "Opt-Out Plaintiffs"). Throughout the negotiation of a post-settlement case management, Abbott has maintained three principles: (1) the Opt-Out Plaintiffs should have access to the enormous discovery already produced by Abbott to the Original PSC; (2) notwithstanding the dramatic change in the scope of the MDL following the settlement, Abbott is fully prepared to honor its commitment to complete production of the documents and supplement certain interrogatory responses that it agreed to with the Original PSC; and (3) Abbott would invite additional discovery requests from the Opt-Out Plaintiffs on a case-specific basis—that is, discovery that a remaining plaintiff may request specific to their individual batches or injuries.

Unsatisfied, however, the Opt-Out Plaintiffs want even more and now seek to re-open the scope of Abbott's general discovery obligations, including re-visiting issues settled between Abbott and the Original PSC and raising new purported deficiencies in Abbott's discovery responses that the Original PSC never asserted in the 18 months of active discovery negotiations between the parties. While Abbott is willing to address with the Opt-Out Plaintiffs disputes that were still the subject of ongoing discussions at the time of the stay or even a limited number of new discrete requests, the Opt-Out Plaintiffs should not be permitted to raise issues with Abbott's general discovery obligations that were settled or that the original PSC had not raised at the time.

Specifically, based on Abbott's prior commitment to the Original PSC, as well as additional measures it has agreed to in recent negotiations with the Opt-Out Plaintiffs, Abbott is prepared to:

- Complete production of non-custodial documents, including but not limited to in response to RFP Nos. 5, 6, and 57; and remaining files from network drives;

- Finish its review and production of remaining documents (both electronic and hard copy) from 18 agreed-upon custodians (of the over 30 custodians in total) for which Abbott had already substantially completed production;

- Serve a privilege log for withheld or redacted documents not included in the log served by Abbott to the Original PSC on January 12, 2024;

- Expand the range of consideration for Abbott's interrogatory responses to extend back to January 1, 2019 to account for the date of injury in the *San Miguel* opt-out case, and amend its responses to the extent necessary based on that modification; and

- Otherwise supplement its responses to Interrogatory Nos. 1, 2, 3, 7, 12, and 19.

Beyond those matters, however, Abbott's general discovery obligations should be satisfied.

The Opt-Out Plaintiffs' purported basis for upending 18 months of discovery negotiations is unpersuasive. During the recent meet-and-confer, Plaintiffs asserted that because there was no formal written agreement prior to the stay that the Original PSC would not raise new disputes, nothing bars the Opt-Out Plaintiffs from re-trading on the Original PSC's agreements or re-raising issues the Original PSC failed to pursue. This overlooks the practical reality that Abbott was mere weeks away from certifying its production, and if the Original PSC had intended to raise concerns, it would have had to do so long beforehand for Abbott to be able to comply.

As importantly, the scope of Abbott's general discovery obligations—and its commitments in response to the Original PSC—were proportional to the needs of the MDL at that time (when there were over 100 active cases). Following the settlement, however, there are now just four active opt-out cases, and the Opt-Out Plaintiffs have already received far more discovery on account of Abbott's work with the Original PSC than any one Plaintiff (or even four) could have reasonably expected to receive consistent with the proportionality requirements of Rule 26.

Accordingly, Abbott requests that the Court's case management order reflect that general discovery be deemed complete subject to Abbott's production and service of the materials identified above, and that the Opt-Out Plaintiffs are barred from raising new disputes or re-visiting issues with Abbott's discovery responses that were earlier compromised with the Original PSC.

## II. DEFENDANT FACT SHEET

### a. Plaintiffs' Position

Abbott should be required to provide a limited Defendant Fact Sheet (DFS) in addition to case specific discovery to any current and future plaintiff in the form attached as **Exhibit A**. Abbott objects to the DFS since the information sought can be obtained through a case-specific interrogatory. This suggestion is flawed. Abbott is in the best position to provide detailed product information and can do so through a DFS without the need for judicial intervention. Further, Abbott seeks to significantly limit case-specific interrogatories while simultaneously trying to push plaintiffs to use case-specific interrogatories to gather information. The DFS gets right at much of the information that every plaintiff needs (or will need) so that discovery can be more efficient going forward. The requirement of a DFS has been found to be reasonable in other MDLs.

**In re Taxotere (E.D. La., MDL No. 2740)** - Taxotere CMO 12 and its amendment, CMO 12A, outline a structured discovery process initially requiring plaintiffs to make reasonable efforts to obtain product information. (CMO 12A ¶1–3, pages 1-3). If a plaintiff could not obtain the information, the burden of product identification shifted to defendants. Specifically, defendants must actively search their own records for product identification information and request product ID information from third party labs/facilities.

**In re Philips CPAP (W.D. Pa., MDL No. 3014)** - The Philips CPAP MDL adopted a detailed "Defendant Fact Sheet" to standardize discovery. Under this DFS, defendants were

7

required to provide exact details including the product's date of manufacture, date of sale, and notably, the precise lot, serial numbers, and the "Device History Record" (DFS Section II, pg. 6; Section VII(2), pg. 14). Responses were to be provided without objection . Additionally, PTO 26(b) carved out 10 additional case-specific interrogatories in "cases selected for further discovery."

Courts managing multidistrict litigation routinely recognize plaintiffs' limitations in accessing detailed product identification information. In both the Taxotere MDL (CMO 12A) and the Philips CPAP MDL (PTO 26(b) and its DFS), the court implemented detailed, structured product identification protocols explicitly requiring defendants to investigate and produce critical product-specific information, particularly when plaintiffs cannot reasonably obtain such information independently. This was in addition to case-specific interrogatories. Here, Abbott has maintained the position that it is plaintiffs' burden to provide the batch number of their product to answer any lot specific or batch specific interrogatories or requests. This is not plaintiffs' burden: Abbott is the party with the information available to it and should be required to produce it.

Further, Plaintiffs' proposal to implement a uniform Defendant Fact Sheet (DFS) along with an additional, uniform set of interrogatories is both reasonable and consistent with MDL practice. Given this precedent, Plaintiffs' request for structured and limited discovery is neither excessive nor unreasonable, but rather a sensible means to efficiently facilitate discovery. Additionally, a DFS does not involve further judicial intervention to referee disputes over scope and language, while the responses provide a clear baseline of information. A completed DFS short-cuts this process and will be essential to Plaintiffs who may later join this litigation.

b. **Abbott's Position**

Plaintiffs' proposed Defendant Fact Sheet remains unnecessary given the relatively small number of cases left in the MDL, as well as the expansive discovery Abbott has already produced

in the MDL, and Abbott's willingness to engage with Opt-Out Plaintiffs on case-specific written and document discovery during the upcoming discovery period. While Plaintiffs made modest revisions to their proposed Defendant Fact Sheet following the April 4 hearing, their current proposal would still require Abbott to prepare and submit written answers and produce documents responsive to over 50 questions (including subparts) for each outstanding case (without a process for negotiation), and to do so within *15 days* of the entry of the CMO while Abbott simultaneously responds to separate written interrogatories, requests for admission, and document requests in each case and completes its general discovery obligations as outlined above. The Court should reject this unduly burdensome and entirely superfluous requirement.

Each of the questions in Plaintiffs' proposed Defendant Fact Sheet seeks either (1) information covered by discovery requests previously served by the Original PSC, for which responsive documents either have already been produced or are forthcoming; or (2) information that is best obtained (if it exists at all and is relevant to Opt-Out Plaintiffs' claims) by case-specific interrogatories or requests for production served by individual Plaintiffs. As just a few examples:

- Subparts (a) and (b) to Question 4 of the proposed sheet would ask Abbott to provide the name and employment status for "each employee/operator who signed any document of the Challenged Formula's Manufacturing (Batch) records," and these individuals' managers or supervisors. Similarly, proposed Question 15 seeks identifying information for "all line workers, managers, and supervisors involved in the production of the Challenged Formula." Notwithstanding any objections Abbott may have (particularly to overbreadth and relevance), individual Plaintiffs can serve interrogatories seeking this information. In fact, at least one remaining Plaintiff served a similar interrogatory during bellwether discovery.

- Question 9 of the proposed sheet asks Abbott to provide "all applicable hazard analysis and risk assessment documents in effect at the time of the Challenged Formula's manufacture," and Question 12 asks for "all food safety plan documents relevant to the production of the Challenged Formula." Yet, in response to a request served by the Original PSC, Abbott already produced hazard analyses and food safety plans in effect during the relevant time period for *all* products manufactured at the Sturgis facility. To the extent the Opt-Out Plaintiffs now seek something different, they may serve a case-specific request for production—which could be discussed between the parties.

- Question 19 of the proposed sheet asks Abbott to "[l]ist all sales representatives who contacted healthcare providers in the year before the injury regarding the Challenged Formula." Again, to the extent this information is at all relevant (which could differ by Plaintiff and the claims they assert), Plaintiffs can serve case-specific interrogatories seeking it. Again, two of the remaining Plaintiffs did so in bellwether discovery, and Abbott substantively responded to the extent that it could provide such information.

Given Abbott's willingness to engage with the Opt-Out Plaintiffs on case-specific written discovery, the additional obligation of a Defendant Fact Sheet is duplicative, unduly burdensome, and would only delay discovery and progress of these cases. By Abbott's conservative count, Plaintiffs' proposed fact sheet includes the equivalent of at least 40 interrogatories and 17 requests for production. When combined with general and case-specific discovery, this would afford Plaintiffs far more discovery than contemplated by the Federal Rules, or necessary for these cases.

The fact that the Court imposed a *Plaintiff* Fact Sheet Process early in this MDL is irrelevant. Not only was that process imposed at a far different stage of the MDL and for a very different purpose (*i.e.*, for early case evaluation and to identify potential bellwether cases at a time when there were approximately 100 cases pending in the MDL), but critically, that Plaintiff Fact Sheet process proceeded at a point in time when *no other discovery on Plaintiffs was permitted*. Here, Abbott has agreed to engage with the Opt-Out Plaintiffs on case-specific discovery; the additional make-work of a Defendant Fact Sheet simply makes no sense and should be denied.[1]

### III. DEPOSITION DISCOVERY

#### a. Plaintiffs' Position

Plaintiffs propose a total of 60 Rule 30(b)(1) depositions. While Plaintiffs are hopeful that the total number of deponents is ultimately not that extensive, the information disclosed in this

---

[1] To the extent the Court is inclined to impose a Defendant Fact Sheet, it should bar Opt-Out Plaintiffs from also serving interrogatories and requests for production. In other words, Plaintiffs should get a Defendant Fact Sheet <u>or</u> leave to serve written discovery requests, but not both.

10

case already proves this number to be reasonable. In Abbott's Responses and Objections to Plaintiffs' First Set of Interrogatories, served in this case on December 20, 2022, attached as **Exhibit B**, Abbott identified fifteen (15) different individuals with knowledge of issues related to these cases, not including Abbott's full Executive Team. Additionally, a review of the materials produced in this case reveals that there are approximately 54 custodians. And Plaintiffs are still in the process of identifying custodians, as Abbott's interrogatory answers largely sent Plaintiffs searching for this information themselves. Just the original Responses and identified custodians leaves Plaintiffs with a list of potential witnesses over 70 deep.

Further, according to Abbott, it will need 60 to 90 days to complete the production of documents that it agreed to produce before the stay and supplement responses. It is reasonable to expect this production will lead to the identification of additional Rule 30(b)(1) depositions.

*In re TRT* (E.D. Ill., MDL No. 2545) involved a class-action MDL products liability litigation wherein this Court adopted a nuanced approach by establishing a global cap on the number of depositions, and allotted Plaintiffs a certain amount per defendant. *In re TRT* Case Management Order #21 (Deposition Protocol), Document #676. The cap applied to both "individual fact witnesses and depositions of corporate representatives designated pursuant to Federal Rule of Civil Procedure 30(b)(6)." *See In re TRT* Case Management Order #21 (Deposition Protocol), Document #676. Plaintiffs in *In re TRT* pointed to the number of custodians and relevant witnesses to support their contention that a capped limit was premature. *See In re TRT* Case Management Order #21 (Deposition Protocol), Document #539-2, Pg. 4. Defendants sought to cap the total number of depositions at 75 while Plaintiffs asked for no presumptive limit. *See* In re TRT Case Management Order #21 (Deposition Protocol), Document #538-3, Pg. 2. The final order far

exceeded the cap of 75 defendants sought while recognizing the case's breadth and need for comprehensive discovery. *See In re TRT* Case Management Order #21, Document #676.

The issues at play here warrant a similar deviation from the standard. Plaintiffs' proposed limit of 60 is reasonable given the complexity of the case. Defendants propose limiting Plaintiffs to ten (10) 30(b)(1) depositions and capping third-party depositions at five (5), which fails to consider the key third-party labs and treating physicians involved, numerous custodians, line workers, microbiologists, and other personnel involved in the manufacturing process. Plaintiffs and Defendants have already agreed on 30 custodians, with more identified as the case progressed.

Defendants' proposed caps are unreasonable given the complexity of this case, which involves catastrophic injuries, complex tort theories, and highly technical issues related to microbiology, testing standards, and manufacturing practices. Rule 26 states, in part, that when a court evaluates whether to limit discovery, it must consider "the needs of the case, the amount in controversy, the ***parties' resources***, the ***importance of the issues at stake in the action***, and the ***importance of the discovery in resolving the issues***." F.R.C.P. 26(b)(2)(C)(iii)(emphasis added). Plaintiffs' proposal for 60 Rule 30(b)(1) depositions, along with a reasonable number of third-party depositions, mirrors the court's approach in *In re TRT*.

### b. Abbott's Position

At the April 4 status conference, the Court suggested that the deposition proposal set forth by Plaintiffs in the March 28 joint report—which sought unlimited depositions of third parties and more than 60 depositions of Abbott employees—was overly broad and inconsistent with the Federal Rules. The Court also requested that Plaintiffs identify the rationale behind their request for 60 depositions of Abbott, so that the Court could evaluate Plaintiffs' request and determine whether there is a reason to believe that there are even 60 relevant employees to be deposed.

Despite this guidance, in the ensuing three weeks, Plaintiffs have not amended their deposition proposal, nor have they explained to Abbott why anything close to 60 depositions would be necessary. Plaintiffs' continued request for *unlimited* third-party depositions and 60 depositions of Abbott employees remains as unduly burdensome and unworkable as it was before.

Abbott's proposed deposition limits are more consistent with the Federal Rules and would allow Plaintiffs to obtain necessary discovery while promoting efficiency and discouraging waste. Abbott's proposal, which offers 10 coordinated depositions of Abbott witnesses and a Rule 30(b)(6) deposition of Abbott of up to 14 hours (in addition to a specified number of third-party depositions), is eminently reasonable given that the remaining cases all involve similar factual allegations (for instance, related to the same factory, the same or similar production and testing processes, and the same general time period). The individuals that Plaintiffs will likely seek to depose did not materially change over the course of the discovery period (nor have Plaintiffs identified any turnover in key positions that would require more depositions). Similarly, Abbott's proposed limit of five third-party depositions per case is reasonable. In total, Abbott has proposed that each Plaintiff can get deposition discovery from at least 16 individuals for use in their case (the 11 coordinated depositions of Abbott witnesses (including the Rule 30(b)(6) deposition, which could be split across numerous Abbott designees) as well as 5 case-specific third-party witnesses). This proposal is more than sufficient under the circumstances.

To support their request for more expansive deposition discovery, Plaintiffs have pointed to Abbott's identification of 11 individuals with potentially relevant knowledge in response to Plaintiffs' interrogatories. But that does not change anything; the mere identification of an individual in response to an interrogatory request does not mean that such individual necessarily must be deposed (and, in any event, Abbott has agreed to 11 depositions of Abbott employees and

former employees, including a 30(b)(6) deposition). Moreover, should Plaintiffs exhaust Abbott's proposed limits and still wish to seek further depositions, Abbott's proposal permits them to seek leave of Court to obtain further depositions for good cause shown, providing flexibility for any necessary adjustments as the cases progress.

## IV.  CASE SCHEDULE

In the parties' March 28 joint status report and proposed case management order [ECF 280 & 280-1], the parties raised certain proposals regarding the schedule for the remaining cases. As to some case events, the parties had been able to reach agreement as to the schedule; with respect to other activities, the parties previously submitted dueling proposals.

In conferring regarding the submission of the present report, the parties attempted to reach agreement as to prior areas of scheduling dispute. However, the parties mutually recognize that the needs and contours of the schedule will likely depend upon the Court's resolution of certain case management issues discussed above, including, *inter alia*, the scope of general discovery, whether the Court orders the execution of a Defendant Fact Sheet, and the contours of deposition discovery. Accordingly, the parties now propose that the Court afford them leave to negotiate a case schedule after entry of a case management order governing discovery for the remaining cases. Specifically, the parties agree to confer following the entry of a discovery order from the Court and to submit a jointly proposed schedule (or, if necessary, competing proposals) for case activities through the resolution of motions for summary judgment within 14 days of entry of the Court's discovery order. For present purposes, the parties agree that Abbott will answer the operative complaint in any case in which it has not already done so no later than June 2, 2025.

\*    \*    \*

The Parties jointly request that the Court resolve the portions of the proposed Case Management Order that remain in dispute, enter a Case Management Order, and lift the stay.

Respectfully submitted,

/s/ *Michael A Glick*

James F. Hurst, P.C.
Andrew A. Kassof, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200
james.hurst@kirkland.com
akassof@kirkland.com

Michael A. Glick (*pro hac vice*)
Katherine R. Katz (*pro hac vice*)
Erin E. Cady (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-389-5000
Fax: 202-389-5200
michael.glick@kirkland.com
katherine.katz@kirkland.com
erin.cady@kirkland.com

Brad Masters (*pro hac vice*)
KIRKLAND & ELLIS LLP
60 East South Temple
Salt Lake City, UT 84111
Tel: 801-877-8143
Fax: 801-877-8101
brad.masters@kirkland.com

*Counsel for Abbott Laboratories*

/s/ *Thomas J. Preuss*

Thomas J. Preuss, MO #54923
PREUSS | FOSTER
11141 Overbrook Road, Ste. 104
Leawood, KS 66211
Tel: 816-307-2788
Fax: 816-336-9705
tjpreuss@pflaw.com

/s/ *Douglas E. Dilley*

Douglas E. Dilley (*pro hac vice*)
DILLEY LAW FIRM, P.C.
315 E. Commerce St., Ste. 203
San Antonio, Texas 78205
Tel: (210) 225-0111
Fax: (210) 228-0493
douglas@dilleylawfirm.com

/s/ *Daniel J. T. Sciano*

Daniel J. T. Sciano (*pro hac vice*)
State Bar No. 17881200
TINSMAN & SCIANO, INC.
10107 McAllister Freeway
San Antonio, TX 78216
Tel: (210) 225-3121
Fax: (210) 225-6235
dsciano@tsslawyers.com

/s/ *Marc Matthews*

Marc Matthews
Florida Bar No. 711098
MCINTYRE THANASIDES BRINGGOLD ELLIOTT GRIMALDI & GUITO, P.A.
1228 E. 7th Avenue, Suite 200
Tampa, FL 33605
Tel: (813) 530-1000
marc@mcintyrefirm.com

*Reorganized Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system and/or by e-mail.

*Michael A. Glick*
Michael A. Glick
