**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **In re: RECALLED ABBOTT INFANT FORMULA PRODUCT LIABILITY LITIGATION** | **Case No. 22 c 4148** |
| | **MDL No. 3037** |
| **This Document Relates to:** **All Cases** | **Hon. Judge Matthew F. Kennelly** |

<u>**SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING COMMON BENEFIT ORDER**</u>

### I.    Introduction and Background

On October 28, 2022, this Court entered Case Management Order ("CMO") No. 7 which, *inter alia*, established a Common Benefit Time and Expense Reporting Protocol that set forth rules governing common benefit time submission deadlines, defined Shared and Held Costs, set forth limitations regarding such Shared and Held Costs, and defined common benefit work that would be eligible for fee awards. Doc. No. 55. CMO No. 4 further provided a determination of appropriate assessment amounts for both attorneys' fees and expenses would be determined at a later time. Subsequently, on September 5, 2024, the Court entered CMO No. 19 to establish holdback percentages from the Gross Monetary Recovery of 8% for common benefit attorneys' fees and 2% for common benefit expenses. Doc. No. 251. On October 16, 2023, the Court entered CMO No. 14 appointing me as Settlement Special Master. Doc. No. 190.  In that role, I assisted the Parties in settlement negotiations and oversaw the allocation of settlement funds among participating claimants.

On June 26, 2024, the Parties in this litigation sought a stay of the MDL proceedings after having reached a global, confidential settlement with Abbott Laboratories ("Abbott") to resolve product liability claims related to the Recalled Powdered Infant Formula that were pending as of

June 26, 2024, which settlement was memorialized in a confidential Master Settlement Agreement ("MSA"). Doc. No. 226.

During the Status Conference on April 4, 2025, the Court directed me to assist in distribution of the Common Benefit Funds. On August 13, 2025, the Court entered CMO No. 26, establishing an application procedure to seek reimbursement of time and expenses submitted pursuant to the common benefit time and expense protocol. Doc. No. 322. The Court set the deadline for the submission of applications of September 15, 2025. Doc. No. 323.

Over the past several weeks, Applications and other materials were submitted by nine firms that are seeking: (i) reimbursement of common benefit assessments and common benefit expenses appropriately submitted as Held Costs, as applicable, and/or (ii) awards of common benefit fees. I have reviewed the submitted materials and consulted with members of the Firms and PSC.

For the reasons discussed below, it is an appropriate time for funds to be released to reimburse common benefit assessments and expenses and attorneys' fees. At this time, my recommendations are as follows:

1. Firms that have paid common benefit assessments into the Expense Fund should have the full amount of those assessments reimbursed to them, without interest. Those common benefit assessments total $650,000.00.

2. Those common benefit expenses that were appropriately submitted as Held Costs pursuant to CMO No. 4 should be reimbursed to the firms claiming them. Those expenses total $107,075.36.

3. The remainder of the Common Benefit Fund shall be distributed as common benefit attorneys' fees. The common benefit attorneys' fees total: $1,227,924.64.

## II.  History of the Recalled Abbott Infant Formula Litigation

### A.  Creation of the MDL and Appointment of Plaintiffs' Leadership

On August 5, 2022, the Judicial Panel on Multidistrict Litigation centralized the Recalled Abbott Infant Formula cases pending in various federal courts and transferred those cases to the United States District Court for the Northern District of Illinois, thus creating MDL 3037, *In re: Recalled Abbott Infant Formula Products Liability Litigation*. Doc. No. 1.

Pursuant to CMO No. 2, (Doc. No. 23), the Plaintiffs' Leadership structure for this MDL appointed by the Court is as follows:

| Attorney | Firm | Position(s) |
|---|---|---|
| Stacy K. Hauer | Johnson Becker | Co-Lead Counsel |
| E. Samuel Geisler | Aylstock, Witkin, Kreis, & Overholtz | Co-Lead Counsel |
| Kiley Grombacher | Bradley Grombacher | PSC Member and Co-Chair Class Committee |
| Marjorie Levin | Romano Law Firm | PSC Member |
| Patrick Luff | Luff Law Firm | PSC Member |
| B. Kristian Rasmussen | Milberg[1] | PSC Member |
| David Silverman[2] | Schlesinger Law Offices | PSC Member |
| Daniel J.T. Sciano | Tinsman & Sciano | PSC Member |
| Jonathon Sedgh | Morgan & Morgan | PSC Member |
| Jason Thompson | Sommers Schwartz | PSC Member and Co-Chair Class Committee |
| Roy Willey | Poulin Willey Anastopoulo | PSC Member |
| James Dugan, II | Dugan Law Firm | PSC Member |

On April 25, 2025, the Court entered CMO No. 21 appointing a Reorganized Plaintiff's Leadership Structure for those cases who are continuing to litigate their cases, which replaces the

---

[1] At the time CMO No. 2 was issued, Mr. Rasmussen was a partner at Milberg. Since that time, Mr. Rasmussen has left Milberg.

[2] Originally, CMO No. 2 appointed Cristina Sabbagh from the Schlesinger Law Offices. On March 31, 2023, a motion was made to substitute David Silverstein in place of Ms. Sabbagh. Doc. No. 101. The Court granted that motion on April 6, 2023. Doc. No. 108.

original Co-Lead Counsel and PSC.

### B. Litigation History

My discussions and interactions with the Co-Lead Counsel, members of the PSC and with other Plaintiffs' Counsel have demonstrated that, after the Court appointed Plaintiffs' Leadership, they worked quickly and diligently, conducting extensive discovery and beginning work with experts. The PEC's Memorandum in Support of its Motion to Establish Holdback Percentages describes in detail the significant amount of work performed by Plaintiffs' Counsel for the common benefit of Plaintiffs in this MDL. Doc. No. 227.

Numerous Plaintiffs' Counsel have stressed to me the importance of the selection and extensive workup of bellwether cases to achieve a global settlement of the cases in this MDL. Pursuant to CMO Nos. 13 and 15, nine cases were chosen for case-specific fact discovery. Doc. Nos.174 and 200. Simultaneously with the workup of the bellwether cases, extensive briefing and oral argument were held on economic class action cases.

Plaintiffs' Counsel also informed me that it was apparent early in the litigation that establishing liability for the recall of the powdered infant formula would be critical. As such, much of the first thirty-six months of the litigation centered around the circumstances at the factory and testing procedures in the Sturgis, Michigan facility prior to the recall.

### C. Settlement

After several months of negotiations, on June 26, 2024, the Parties announced that they had entered into an MSA intended to resolve all cases pending in this MDL. Doc. No. 226. The settlement program included only personal injury cases. Class representatives for the economic loss cases were not eligible to participate in the settlement program relating to economic loss claims. Since that announcement, Plaintiffs' Leadership has worked diligently to ensure the

success of the settlement. To that end, only five cases opted not to participate in the program and continue to litigate their claims.

While the details on the confidential settlement program remain confidential, all claims were subject to multiple levels of review by my office. After firms were notified of the results of my final review, they had a period of time to contest any claim denials and were permitted to appeal a Plaintiff's claims. Again, after reviewing materials and in many cases discussions with Plaintiff's counsel, appropriate adjustments were made.

While the payment process has begun for the majority of claimants participating in the settlement, additional payment lists will be forthcoming with resolution of paperwork and lien issues. Given that funds from the settlement have now begun to flow to the claimants, and consistent with the Court's guidance with respect to the Common Benefit Fund for the original PSC members and the substitution of new leadership for the cases that will continue to litigate, I believe that it is time to address reimbursement of common benefit assessments and expenses to those lawyers whose years of work led to the creation of the settlement fund.

## III.    Recommendations

The litigation has been pending for approximately three years. The firms who have submitted Applications and/or other materials seeking reimbursement of common benefit assessments and expenses have performed a significant volume of work, resulting in a successful global settlement in a tort that presented challenging legal and scientific issues.

### A.  Recommendation Regarding Common Benefit Assessments

Pursuant to CMO No. 2, the PSC had the authority to make assessments on an as-needed basis for the common costs of the litigation. Doc. No. 55 at 14 and 20. Over the course of the litigation, Plaintiffs' Leadership firms contributed a total of $650,000.00 to the Shared Expense

Fund, which was audited by the Court-appointed CPA, Randall L. Sansom. Doc. No. 55 at 3. I understand that the Shared Expense Fund was used to pay Shared Costs such as a document production and review platform, court reporting and translation services, general expert fees, Special Master fees, Settlement Master fees, and fees for the Court-appointed CPA. Requests for payment from the Abbott Expense Fund were reviewed by the CPA, and payments were made only after approval of Co-Lead Counsel. Doc. No. 55 at 3. I have been informed by the Court Appointed CPA that $607,389.73 has been paid out from the Shared Expense Fund to pay Shared Costs, there are outstanding invoices of $6,112 and an anticipated return of a $25,000 retainer from an expert leaving a projected balance of $91,225.60 in the Fund. I also reviewed the expenses paid from the Shared Expense Fund.

Not all firms elected to apply for reimbursement of common benefit fees and expenses. Regardless of whether a firm applied for reimbursement of expenses and assessments, I considered the information available from the Court Appointed Accountant. I have reviewed the common benefit assessment information provided by each firm and confirmed with the Court Appointed Accountant that all of these assessments were in fact paid. These funds enabled the litigation to be funded and aggressively pursued. I recommend full reimbursement of each firm's common benefit assessments in the amounts set forth as follows:

| Firm | Assessment |
|---|---|
| Aylstock, Witkin, Kreis, & Overholtz | $75,000.00 |
| Bradley Grombacher | $50,000.00 |
| Dugan Law Firm | $50,000.00 |
| Johnson Becker | $75,000.00 |
| Luff Law Firm | $50,000.00 |
| Milberg | $50,000.00 |
| Morgan & Morgan | $50,000.00 |
| Poulin Willey Anastopoulo | $50,000.00 |
| Romano Law Firm | $50,000.00 |
| Schlesinger Law Offices | $50,000.00 |

| | |
|---|---|
| Sommers Schwartz | $50,000.00 |
| Tinsman & Sciano | $50,000.00 |

## B. Recommendation Regarding Expenses Submitted as Held Costs

Case Management Order No. 7 defines Held Costs as those costs "carried by each attorney in this MDL" that do not fall within CMO No. 4's definition of Shared Costs but are "incurred for the benefit of all plaintiffs." Doc. No. 55 at 17. Limitations on reimbursements of such expenses are set forth in Section II.C.3. of CMO No. 7.

I have familiarized myself with these provisions, and they have informed my review of the submitted expenses. Again, not all firms applied seeking reimbursement of held expenses, but I have undertaken a review of each firm's submitted expenses and consulted with the firms, the Court Appointed CPA and the PSC concerning them. I have eliminated duplicate entries, confirmed that the expenses sought to be reimbursed were all incurred in connection with work on the Abbott litigation, and determined that these expenses were reasonable and necessary for this litigation and consistent with the provisions of CMO No. 4. The total amount of submitted held common benefit expenses is $149,172.58.

Certain held expenses were submitted for time and expenses prior to the formation of this MDL. Consistent with my work in other MDLs, I am excluding certain expenses for work performed prior to the formation of the MDL. After my review, the amount of reimbursable held common benefit expenses is $107,075.36, which excludes all expenses prior to inception of the MDL on August 5, 2022. Based on this review, I recommend reimbursement of common benefit expenses as follows:

| Firm | Submitted Held Expense | Recommended Held Expense Reimbursement |
|---|---|---|
| Aylstock, Witkin, Kreis, & Overholtz | $96,916.24 | $69,512.53 |

| | | |
|---|---|---|
| Dilley Firm | $273.74 | $273.74 |
| Johnson Becker | $33,407.62 | $30,548.88 |
| Poulin Willey Anastopoulo | $5,718.79 | $2,126.56 |
| Sommers Schwartz | $5,415.50 | $0.00 |
| Tinsman & Sciano | $7,440.69 | $4,613.65 |

## C. Recommendation Regarding Common Benefit Attorneys' Fees

CMO No. 7 adopted a protocol for the submission of Compensable Common Benefit Work (Doc. No. 55 at 8). The Order established a protocol for monthly submissions of time and benefit work performed. The Order also provided that any Plaintiffs' Counsel that later seeks reimbursement or compensation for common benefit time and expenses shall comply with the guidelines and deadlines in CMO No. 7. It further acknowledged that evaluating contributions to the common benefit is a qualitative analysis because not all types of work are created equal. Doc. No. 55 at 8. The order also provides examples of compensable vs. non-compensable work.

I have familiarized myself with these provisions, and they have informed my review of the submitted time. I have undertaken a review of each firm's submitted time and consulted with the firms, the Court Appointed CPA and the PSC concerning them. I have eliminated duplicate entries, confirmed that the time sought to be compensated was incurred in connection with work on the Abbott litigation, and determined that this time was authorized, reasonable and necessary for this litigation and consistent with the provisions of CMO No. 7. The total amount of hours submitted in connection with this MDL is 16,125.20. I am aware of ongoing work by the Co-Leads for settlement administration and requests from the Court for which there is ongoing time that has not been submitted.

Not all firms elected to submit an application for reimbursement of common benefit fees and expenses. I have not considered the time expended by any firm that did not submit an application for common benefit fees. The applications I received were from the following firms

and included the following time following ongoing audit during the court of the litigation:

| Firm | Submitted Common Benefit Hours |
|---|---|
| Aylstock, Witkin, Kreis & Overholtz | 5,136.20 |
| Dilley Law Firm | 918 |
| Johnson Becker | 3,543.90 |
| Morgan & Morgan | 3,987.80 |
| Preuss Foster Law | 131.3 |
| Romano Law Group | 88.6 |
| Schlesinger Law Offices, P.A | 193.9 |
| The Dugan Law Firm | 91.5 |
| Tinsman & Sciano, Inc | 123.6 |

Aylstock, Witkin, Kreis & Overholtz: E. Sam. Geisler was appointed by the Court as Co-Lead Counsel. As a Co-Lead, the firm committed a $75,000 assessment contribution and nearly $100,000 in held expenses. The firm also submitted the highest number of hours in the pursuit of the common benefit of this case with 5,136.20. Several attorneys and support staff spent time in advancement of the litigation. The firm's application details work across all litigation areas, including discovery, bellwether selection, experts, and settlement. The firm also submitted time for the economic class action cases.

Dilley Law Firm: The Dilley Firm submitted time for several attorneys with the firm. The Dilley Law Firm was not appointed to the PSC and did not contribute any assessment to fund the litigation. The firm submitted $273 in held expenses. The firm also submitted 918 hours of time. The firm's application details work across discovery, document review, bellwether selection, and experts.

Johnson Becker: Stacy K. Hauer was appointed by the Court as Co-Lead Counsel. As a Co-Lead, the firm committed a $75,000 assessment contribution and over $30,000 in held expenses. The firm submitted 3,543 hours of time. Several attorneys and support staff spent time in advancement of the litigation. The firm's application details work across all litigation areas, including discovery, bellwether selection, experts, and settlement. The firm also submitted time

for the economic class action cases.

Morgan & Morgan: Jonathan Sedgh was appointed to the Plaintiff Steering Committee and the firm contributed $50,000 to assessments. The firm did not submit any held expenses. The firm submitted 3,987 hours of common benefit time. Several attorneys spent time in advancement of the litigation. The firm's application details work including discovery, document review, and law and briefing.

Preuss Foster Law: Preuss Foster Law submitted time for several attorneys with the firm. Preuss Foster was not appointed to the PSC and did not contribute any assessment to fund the litigation. Preuss Foster did not submit any held expenses. The firm also submitted 131 hours of time. The firm's application details work across discovery, document review, bellwether selection, and experts.

Romano Law Group: Marjorie Levine was appointed to the Plaintiff Steering Committee and the firm contributed $50,000 to assessments. The firm did not submit any held expenses. The firm submitted 88 hours of common benefit time and the application details participation in discovery, document review and bellwether work.

Schlesinger Law Offices, P.A: David Silverman was appointed to the Plaintiff Steering Committee and the firm contributed $50,000 to assessments. The firm did not submit any held expenses. The firm submitted 193 hours of common benefit time. The firm's application details work in discovery.

The Dugan Law Firm: James Dugan was appointed to the Plaintiff Steering Committee and the firm contributed $50,000 to assessments. The firm did not submit any held expenses. The firm contributed 91.5 hours of common benefit hours. The firm's application details work in document review and class action work.

Tinsman & Sciano, Inc: Daniel Sciano was appointed to the Plaintiff Steering Committee and the firm contributed $50,000 to assessments. The firm submitted over $5,000 in held expenses. The firm submitted 123 hours in common benefit time. The firm's application details work across discovery, document review, bellwether selection, and experts.

In reviewing the time submissions, I recognize the common benefit assessment funds are not sufficient to recognize all time submitted in pursuit of this case at traditional market rates or lodestar calculations. Considerable work was expended over the economic class action cases, but these cases were dismissed. The dismissal was affirmed by the Seventh Circuit Court of Appeals. As such, I did not consider time for work on the class action cases to be compensable common benefit time. Similarly, certain common benefit work has more value than other. Time spent solely on litigation tasks like document review, while valuable, are less valuable than arguing motions and negotiating the successful resolution of the case. Taking all of these factors into account, after my review of time submitted and payment of the expenses set forth above, I recommend payment of common benefit attorneys' fees as follows:

| Firm | Total Submitted Hours | Recommend Fee Allocation |
|---|---|---|
| Aylstock, Witkin, Kreis, & Overholtz | 5,136.20 | $475,000 |
| Dilley Law Firm | 918 | $52,000 |
| Johnson Becker | 3,543.90 | $420,000 |
| Morgan & Morgan | 3,987.80 | $190,000 |
| Preuss Foster | 131.3 | $20,000 |
| Romano Law Firm | 88.6 | $17,000 |
| Schlesinger Law Offices | 193.9 | $28,000 |
| The Dugan Law Firm | 90.8 | $0 |
| Tinsman & Sciano | 123.6 | $25,000 |

## IV.    Conclusion

For the reasons set forth herein, I recommend that the Court order that the following be paid from the Funds:

1. $650,000.00 to reimburse firms in the amounts set forth herein for their common benefit assessments; and

2. $107,075.36 to reimburse firms in the amounts set forth herein for common benefit expenses.

3. $1,227,924.64 to be awarded to firms for common benefit attorneys' fees.

4.  Any residual funds on the common benefit funds will be subject to a further Order of the Court after payment of any remaining expenses or costs necessary for the administration of the settlement program.

**DATED: December 2, 2025**

*s/ Randi S. Ellis*

**Randi S. Ellis**
**Court-Appointed Special Master**