**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: RECALLED ABBOTT INFANT FORMULA PRODUCTS LIABILITY LITIGATION** | ) ) ) ) ) | Case No. 22 C 4148<br>MDL No. 3037 |
| **This Document Relates To:**<br>**All Cases** | ) ) ) ) | Hon. Judge Matthew F. Kennelly |

**JOINT STATUS REPORT
FOR THE FEBRUARY 6, 2026 CASE MANAGEMENT CONFERENCE**

In advance of the case management conference to be held by video on February 6, 2026 at 9:30 a.m., the parties provide this joint status report setting forth their positions in up to 8 pages per side.  *See* Dkt. 440.

**<span style="color:red">Defendants' Position:</span>** On January 29, 2025, Plaintiffs in four of the remaining cases served amended third-party witness disclosures. As set forth below, those disclosures remain inconsistent with Case Management Order #23, Federal Rule 26, and—most importantly—the Court's direction (and Plaintiffs' own representations) at the January 15 case management conference. Plaintiffs' continued refusal to appropriately narrow their third-party disclosures is reflective of their unfocused and overly broad approach to discovery, and reinforces the need for the Court to impose reasonable limits on both party and third-party depositions in what are five remaining personal injury cases. The Defendants address each issue in turn.

**Plaintiffs' Revised Third-Party Disclosures Remain Non-Compliant.** The Court's Case Management Order #23 required the parties to exchange lists of potential third-party witnesses consistent with Rule 26(a). *See* Dkt. 302, ¶ 22. The *Hernandez*, *San Miguel*, *Pelizzaro*, and *Rossick* Plaintiffs initially disclosed over 350 third-party witnesses, violating the spirit of CMO #23 and caselaw governing Rule 26. *See* Dkt. 422. Abbott, on the other hand, made reasonable disclosures totaling 45 witnesses across five cases, an average of 9 per case. *Id.*

At the January 15 conference, the Court made clear that Plaintiffs' disclosures were overbroad and required significant narrowing. *See* 1/15/2026 Hrg. Tr. at 26-42. After the Court threatened to take a "meat ax" to Plaintiffs' lists, Plaintiffs asked for a chance to revisit them. To stave off the Court's intervention, Plaintiffs proposed to (1) provide shorter lists, and (2) "prioritize" the individuals to make clear who they were more likely to rely on. *Id.* at 30. The Court accepted that proposal and gave Plaintiffs until January 29 to provide "shorter lists with descriptions and prioritization":

2

THE COURT: You're going to get a second crack at these, and we're going to convene shortly after that, and I'm going to see what happens.

MR. GLICK: Your Honor, if I may, in addition to the lopping which I'll call it, we do think that the prioritization that Ms. Bowen has committed to --

THE COURT: That's what I understood people were agreeing to do.

MS. BOWEN: Yes, your Honor.

MR. GLICK: A shorter list with descriptions and prioritization.

THE COURT: Right.

MR. GLICK: Thank you, your Honor.

MS. BOWEN: Thank you, your Honor.

*Id.* at 42 (emphasis added).

On January 29, Plaintiffs in four cases served revised disclosures, this time collectively identifying *253* potential third-party witnesses. Moreover, Plaintiffs in three of the four cases made no attempt to offer "prioritization" at all, whereas Plaintiffs in the fourth case "prioritized" 35 of the 44 individuals they identified.

Abbott respectfully submits that it is time for the proverbial "meat ax." ***First***, Plaintiffs' disclosures remain unreasonably long and in violation of Rule 26. For example, the *Hernandez* list still includes nearly 100 individuals, and the *Pelizzaro* Plaintiffs only reduced their list from 77 to 72 individuals. The *San Miguel* and *Rossick* Plaintiffs made more substantial cuts, but they still list over 40 individuals in each case (nearly the same number that Abbott listed across all five cases) and include categorical disclosures such as "the FDA," which leaves open the possibility that they could add numerous agency employees. Indeed, across the four cases, Plaintiffs designated 158 medical providers, despite the Court's instruction that even 150 medical providers would be far too many. 1/15/2026 Hrg. Tr. at 31:3-13 ("[I]n four trials, there's not going to be 150 medical people called. It's just not going to happen."). Plaintiffs' overbroad "laundry list[s]" "do

not provide [Abbott] with enough meaningful information to make an informed decision regarding discovery and trial preparation" in violation of Rule 26.  *Davis v. Hughes*, 2025 WL 2732287, at *12 (S.D. Ill. Sept. 25, 2025) ("A list of 300 [for six plaintiffs] is simply too many …."); *see also EEOC v. Vill. at Hamilton Pointe LLC*, 2020 WL 1663130, at *3 (S.D. Ind. Jan. 16, 2020) ("The purpose of a [Rule 26] witness list is … not to impose a tea leaves-reading burden on the opposing party.").

**Second**, Plaintiffs did not implement the "prioritization plan" that they proposed at the January 15 conference, and which the Court endorsed.  The *Hernandez*, *San Miguel*, and *Pelizzaro* Plaintiffs failed to designate **any** individuals as a "priority."  And the *Rossick* Plaintiffs' listing of 80% of their list (35 of 44) as "prioritized" renders such designation essentially meaningless.

At this point, given Plaintiffs' failure to apply the Court's earlier guidance or abide by their own proposal, Defendants believe strict third-party disclosure limits are necessary to ensure that they receive meaningful information to allow them to make informed decisions regarding discovery and trial preparation.[1]  The Court should compel Plaintiffs to provide revised third-party disclosures by February 20, 2026 with a cap of 15 named individuals each.

**The Court Should Impose Reasonable Deposition Limits.**  Particularly in light of Plaintiffs' inability to appropriately restrain themselves as to potential third-party witnesses, the Court should set sensible deposition limits to control remaining discovery of both parties and third parties.  Defendants originally set forth their deposition proposal in the January 8 status report (Dkt. 433) and briefly summarize the key points again here.  Specifically, Defendants propose:

---

[1] Plaintiffs argue (repeatedly) that *Abbott* has not sufficiently disclosed the witnesses it intends to rely on.  This is a red hearing.  Abbott made adequate and judicious third-party disclosures as required by CMO 23 and the Court.  Last Friday, Plaintiffs served a motion for leave to serve additional discovery in which they requested additional witness disclosures from Abbott for the first time.  Abbott is evaluating Plaintiffs' motion and will respond at an appropriate time.

- <u>Depositions of Plaintiffs/Non-Plaintiff Parents</u>:  Defendants shall be entitled to depose each Plaintiff parent and any non-Plaintiff parent of a child whose injuries are the subject of a pending case, for a total of 2 Plaintiff/parent depositions in each case. (Defendants do not understand this to be disputed.)

- <u>Depositions of Defendants</u>:

  - Plaintiffs shall <u>collectively</u> be entitled to depose Abbott pursuant to Rule 30(b)(6). (Abbott does not understand this to be disputed.)

  - Plaintiffs in the *Rossick* matter only shall be entitled to depose Amazon pursuant to Rule 30(b)(6).  (Amazon does not understand this to be disputed.)

  - Plaintiffs shall <u>collectively</u> be entitled to take up to a combined total of 10 depositions of current or former Abbott employees pursuant to Rule 30(b)(1). Plaintiffs can determine how to divide up those depositions without regard to any "general" or "case-specific" designation of a particular deponent.

- <u>Depositions of Third Parties (Other Than Non-Plaintiff Parents)</u>:

  - Plaintiffs—as a <u>collective</u>—shall be entitled to notice up to 5 depositions of <u>general</u> (non-case-specific) third parties.

  - Defendants (Abbott and Amazon) <u>collectively</u> shall be entitled to notice up to 5 depositions of <u>general</u> (non-case-specific) third parties.

  - Plaintiffs <u>in each individual case</u> shall be entitled to notice up to 5 depositions of <u>case-specific</u> third parties.

  - Each Defendant <u>in each individual case</u> shall be entitled to notice up to 5 depositions of <u>case-specific</u> third parties.

Defendants' proposal therefore differs from Plaintiffs' proposal in two material respects: (1) the number of depositions of Abbott employees and third parties, and (2) whether depositions of Abbott employees should be broken into two categories: "general" and "case-specific."

***Defendants' Proposal Affords More Than Sufficient Depositions.***  Defendants' proposal is reasonable and would allow Plaintiffs in each case to take up to 21 depositions (22 in the case of the *Rossick* Plaintiffs, who can also depose Amazon) compared to 12 for Defendants:

|  | Plaintiffs | Defendants |
|---|---|---|
| Rule 30(b)(6) Deposition of Abbott | 1 |  |
| Rule 30(b)(1) Depositions of Abbott employees | 10 |  |
| "General" Third Party Depositions | 5 | 5 |
| "Case-Specific" Third Party Depositions | 5 | 5 |
| Plaintiffs/Parent Depositions |  | 2 |
| **Total Depositions** | **21** | **12** |

This is more than sufficient to cover the spectrum of potentially relevant subject matters while (i) ensuring that Plaintiffs pursue only the depositions that they actually need to litigate their cases and (ii) reducing burdens on Defendants, their employees, and third-party deponents. Notably, this is more than *double* the number of depositions to which Plaintiffs in each case would presumptively be entitled if these cases were being litigated as individual personal injury cases outside of an MDL.

Plaintiffs' proposal, on the other hand, does not reflect a serious or realistic effort to focus these cases. By Defendants' math, Plaintiffs' plan would collectively allow for up to *337 depositions*—including *96 depositions of Abbott* alone and *230 depositions of third parties*[2], plus 10 total depositions of Plaintiffs/parents (two per case) and a deposition of Amazon. In fact, using the same analysis as above, under Plaintiffs' proposal, each set of Plaintiffs would afford themselves a remarkable *91 depositions for each case* (*111 depositions* in the case of *San Miguel*):

---

[2] *As to depositions of Abbott, Plaintiffs' proposal would allow*: 1 Rule 30(b)(6) deposition + 50 "general" depositions of current/former employees + 45 "case-specific" depositions of current former employees (25 for one of the remaining cases alone and 5 for each of the other four cases).

*As to Third Parties, Plaintiffs' proposal would allow*: 30 "general" third-party depositions (15 per side) + 200 "case-specific" depositions (20 per side in each of the five remaining cases).

|  | *San Miguel* Plaintiffs | Other Plaintiffs |
|---|---|---|
| Rule 30(b)(6) Deposition of Abbott | 1 | 1 |
| "General" Abbott employee Depositions | 50 | 50 |
| "Case-Specific" Abbott employee Depositions | 25 | 5 |
| "General" Third Party Depositions | 15 | 15 |
| "Case-Specific" Third Party Depositions | 20 | 20 |
| **Total Depositions** | **111** | **91** |

Indeed, even after the Court (i) imposed a fact discovery deadline of June 26, 2026, and (ii) commented at the January 15 hearing that Plaintiffs would not "get anywhere close to" the number of depositions they were proposing, *see* 1/15/2026 Hrg. Tr. at 33:24-35:2, Plaintiffs made no effort to reduce their proposals. Given the June 26 fact discovery deadline, Plaintiffs' proposal allowing up to 337 depositions would call for the parties to participate in an average of ***3.5 depositions every single weekday*** (including holidays) through the June 26 deadline.

Plaintiffs' proposal is not calibrated to the needs of the remaining cases and will only invite waste and abuse of the discovery process, creating astronomical costs, and serving only to harass and disrupt Abbott's business as well as third parties with no stake in these actions. *See, e.g.*, *CFTC v. Commodity Inv. Grp., Inc.*, 2005 WL 3030816, at *1 (S.D.N.Y. 2005) (deposition limits in the Federal Rules were "enacted to control discovery costs and prevent harassment or undue delay"); *Moore v. Abbott Labs.*, 2009 WL 73876, at *1 (S.D. Ohio Jan. 8, 2009) (deposition limits designed to "curb abusive discovery practices"). Nor do the remaining cases lend themselves to such burdensome discovery. At bottom, each of the five remaining cases is a personal injury products liability action regarding a single can of formula sourced from a single formula batch produced at a specific point in time, which was purchased or obtained from a single retailer or healthcare provider, and which involves an illness treated by a finite set of doctors. For reference,

7

Abbott recently completed discovery in a federal case advancing similar allegations of contaminated formula wherein the parties took 7 fact depositions *in total*: the 2 Plaintiff parents, 4 current/former Abbott employees, and 1 third party (a physician). Plaintiffs' proposal here would invite the Plaintiffs in each case alone to take ***more than ten times that amount***.[3]

Respectfully, this is not a circumstance where a mid-point compromise between the two sides' positions would be appropriate (as Plaintiffs' extreme proposal appears designed to invite). Indeed, even a fraction of Plaintiffs' proposal is more than these cases require. The Court should reject Plaintiffs' proposal and adopt Defendants' reasonable plan.

***Plaintiffs' proposed categories for Abbott depositions are improper.*** Plaintiffs' proposal to divide Abbott depositions into "general" and "case-specific" categories is also inappropriate.

First, as a practical matter, there is little means of policing "general" versus "case-specific" questions in the context of the deposition of an Abbott employee. Plaintiffs will undoubtedly have to ask even so-called "case-specific" witnesses various non-case-specific questions that will bear relevance to other cases. And once testimony is elicited, Plaintiffs will seek to use it across cases.[4]

Second, Plaintiffs cannot explain what material knowledge they seek to obtain from "case-specific" depositions. Their request seems to suggest that they want to haul in a series of

---

[3] That Plaintiffs may be interested in questioning certain employees referenced somewhere in Abbott's voluminous document productions is of no moment. "[T]he mere fact that many individuals may have discoverable information does not necessarily entitle[ ] a party to depose each such individual." *PeopleFlo Mfg., Inc. v. Sundyne, LLC*, 2022 WL 1062706, at *2 (N.D. Ill. Apr. 8, 2022). Instead, the deposition limits in the Federal Rules "contemplate[] that in most cases, witnesses who have some relevant knowledge but who are not central to the case will probably not be deposed." *Moore*, 2009 WL 73876, at *2 (S.D. Ohio Jan. 8, 2009).

[4] By contrast, Defendants do not oppose the Court setting limits on third-party depositions broken down as between "general" deponents and "case-specific" deponents; unlike Abbott employees, third-party deponents—such as medical professionals who treated an individual child, retailers who sold a particular unit of formula to a particular Plaintiff, or authorities who investigated an individual child's illness—are more likely to possess information unique to an individual case (and only that case) in a way that an employee of Abbott would not.

employees to question them about the production of specific batches or batch records—a project that would serve little purpose than to waste the employees' time and the parties' resources. The employees in question were likely involved in the production of thousands of batches over the course of their tenure; asking them to recall the specifics of formula batches that were produced in some cases more than a half decade ago is a fool's errand (particularly because, as Plaintiffs are well aware, the manufacturing and testing records for the at-issue batches do not reflect *any* irregularities or testing issues at all). If Plaintiffs wish to question anyone at Abbott regarding the production of specific batches, they can attempt to do so in the context of the prescribed Rule 30(b)(6) deposition or as part of their allotment of Rule 30(b)(1) depositions.

Third, Plaintiffs' approach risks Abbott employees having to sit for deposition more than once if, for instance, a given "case-specific" witness is identified by more than one set of Plaintiffs (or first as a "general" deponent and then for one or more purportedly "case-specific" purposes). The better approach is to require any Abbott employee who any Plaintiff wishes to question to sit one time, with questioning coordinated amongst the Plaintiffs in the manner of their choosing. Indeed, that is what the Deposition Protocol case management order already entered by the Court (at the request of the parties) requires. *See* Dkt. 442 (CMO #28) at II.A (requiring each Abbott Rule 30(b)(1) deponent to appear one time for 7 hours split by Plaintiffs).

The Court should set a single number of depositions of current and former Abbott personnel (per above, Abbott's proposal is 10), which Plaintiffs can divvy up in the manner of their choosing without artificially identifying "general" versus "case-specific" deponents, and one 30(b)(6) deposition notice that can also address case-specific issues.[5]

---

[5] In the event that the Court allows some form of "case-specific" depositions, such depositions should be as part of—not in addition to—the 10 depositions proposed by Abbott. Moreover, such "case-specific" depositions should be strictly limited to questioning pertinent to the individual

**Plaintiffs' Position:**

On January 29, 2026, Plaintiffs served amended disclosures of case-specific third-party witnesses who have discoverable information and who may be used to support Plaintiffs' claims pursuant to the Court's rulings at the January 15, 2026, status conference (including the associated minute entry order, ECF No. 440), and CMO #23, which incorporates the provisions of Federal Rule of Civil Procedure 26(a)(1)(A). Some of the individuals who possess discoverable information that the Plaintiffs may use to support their claims were added to the initial disclosures after the Plaintiffs reviewed and made production of the ESI document collections performed via search terms on productions Plaintiffs' electronically stored information including their cell phones, computers, emails, text messages and social media. While Abbott contends that Plaintiffs' disclosures remain overly broad, Plaintiffs' narrowed disclosures of third-party witnesses that Plaintiffs may use to support their claims were made in accordance with the Court's rulings and the federal rules of civil procedure. *See* Exhibits B, C, D, and E (Plaintiffs' Amended Exchange of List of Potential Case-Specific Third-Party ***Witnesses***)(emphasis added).

Federal Rule of Civil Procedure 26(a)(1)(A) provides "Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing ***party may use to support its claims or defenses***, unless the use would be solely for impeachment." (emphasis added) Fed. R. Civ. P. 26. Abbott's argument that Plaintiffs' disclosures are overly broad is purely an attempt to limit the number of

---

formula batch(es) or infants at issue, and attendance at such depositions (as well as the distribution of transcripts and information therefrom) should be cabined to case-specific counsel.

depositions the parties are entitled to take in this litigation, which involves a complex manufacturing process and infant Plaintiffs with catastrophic brain injuries. At the January 15, 2026 status conference, the Court instructed Plaintiffs to narrow their disclosures to include (1) "people who have discoverable information" ***and*** (2) "that the disclosing party may use to support its claims or defenses." *See* 1/15/2026 Hrg. Tr., at p. 37:11-18.

Most of the individuals listed in Plaintiffs' case-specific third-party disclosures include healthcare professionals who have provided treatment to the four minor injured children who suffered catastrophic injuries. These children's injuries are permanent in nature and require treatment from several different specialists on a continuing basis. The healthcare professionals include emergency room personnel, hospitalists, intensive care doctors, various types of neuroradiologists, neurologists, neurosurgeons, various types of therapists, and more. While the number of healthcare professionals listed on the disclosures may appear high on its face, each of the healthcare providers listed possess discoverable information that the Plaintiffs may use to support their claims because (1) the severity of the injuries, which requires treatment from countless specialists, (2) the age at which the minors were when they first suffered the catastrophic injuries, and (3) each of the Plaintiffs require ongoing treatment.[6] Failure to include these individuals in the case-specific third-party disclosures would violate Federal Rule of Civil Procedure 26 and the Court's orders, in which case Abbott would likely contend Plaintiffs' disclosures are overly narrow and seek to exclude evidence from any non-disclosed witness.

Abbott's contention that Plaintiffs' disclosures are overly broad ***ignores the inadequacy of its own of Rule 26 disclosures***. Each of Abbott's disclosed witnesses are the minor Plaintiffs'

---

[6] The *Pelizzaro* and *Rossick* Plaintiffs listed their case-specific third-party witnesses in their respective disclosures in priority order. The *San Miguel* and *Hernandez* Plaintiffs are amending their disclosure to include a prioritized list and intend to serve on or before February 4, 2026.

health care providers or caretakers. *See* Exhibit A (Abbott's Initial Exchange of Potential Third-Party ***Deponents***)(emphasis added). In the *San Miguel* case, Abbott has listed two (duplicative) third parties it intends to use to support its defense of its case. This use of a limited number of persons to support their case is certainly Abbott's prerogative, but Abbott's interests in disclosures is distinctive and far afield from Plaintiffs' ***right*** and ***obligation*** to identify witnesses who may possesses discoverable information that they may use to support their claims under Rule 26.

Abbott's contention that Plaintiffs' case-specific third-party disclosures are overly broad is a red herring that Abbott uses to aid in its argument that the limits on the number of depositions should be severely limited in these cases. If Abbott was required to serve disclosures as required by Rule 26 (including general and case-specific non-third-parties), the number of individuals included in Abbott's disclosures would undoubtedly amount to an equal or similar number of individuals listed in Plaintiffs' disclosures. However, Abbott has not been required to make general and case-specific non-third-party Rule 26 disclosures in this case, and then wields as a sword the number of individuals Plaintiffs properly listed in case-specific third-party disclosures under the requirements of this case to argue that Plaintiffs' disclosures are overly broad, and attempts to disproportionately tip the scales in favor of Abbott's argument for a limited number of depositions.

Plaintiffs requested leave to serve two general discovery requests on January 29, 2026. *See* ECF No. 447. Both of these general discovery requests ask Abbott to make Rule 26 disclosures. *See id*. These requests are intended to level the playing field by requiring Abbott to disclose the individuals with discoverable information it intends to use to support its defenses, which Abbott has not done outside of providing a duplicative list of healthcare providers already identified by the Plaintiffs.

This Court should find that Plaintiffs have properly complied with their obligations under Federal Rule 26, CMO 23, and the Court's directive at the January 15 hearing. Abbott has avoided the requirement under Federal Rule 26 to provide "each individual likely to have discoverable information. . .that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Abbott repeatedly argues that Plaintiffs ask for more discovery yet conveniently ignore the fact that Abbott has still not made Rule 26 disclosures. Abbott also downplays Plaintiffs' obligation in this case to complete Plaintiff Fact Sheets, which include responses to 86 questions (not including subparts), numerous requests for production including ESI production of Plaintiffs' text messages, emails, and cell phone and computer forensic searches, interrogatory responses, and Rule 26 disclosures.

Meanwhile, Plaintiffs made good-faith efforts to properly disclose persons with knowledge of relevant facts that the Plaintiffs may use to support their causes of action in amending and narrowing the disclosures consistent with the Court's direction. Plaintiffs narrowed the list of individuals originally disclosed, but Abbott will fail to point out that the number of individuals listed were offset by individuals added to the most recent disclosures that were discovered through the Plaintiffs' ESI productions only recently required by ECF No. 405 (requiring Plaintiffs to run search terms across their electronically stored information including cell phones, computers, and social media).[7]

Abbott's lack of disclosure is the primary reason Plaintiffs' disclosures may, at first glance, appear disproportionate. The real problem lies with Abbott's lack of proper disclosures as called for under Rule 26 and in CMO No. 23. Abbott cannot avoid its disclosure obligations and then

---

[7] For example, the *Pelizzaro* Plaintiffs initial list of third-party disclosures identified 77 individuals. The *Pelizzaro's* amended list identifies 72 individuals. Sixteen (16) of the now 72 individuals were witnesses not originally identified but discovered through the ESI production.

wield that very avoidance as a sword to argue that Plaintiffs' properly identified persons with knowledge of relevant facts are excessive when measured against Abbott's own deficient disclosures. That argument is fundamentally unsound and should be rejected.

Plaintiffs sought to address this disparity through Case Management Order No. 23, which ordered the parties (including Abbott) to "exchange initial lists of potential case-specific third-party witnesses (e.g. Caretakers, Medical Providers, Regulators, Auditors, Inspectors, Third Party Labs, Distributors, Retailers, Contractors of Abbott, or any other entity or individual likely to have discoverable information) and, for each third party, the information provided for in Federal Rule of Civil Procedure 26(1)(A)(i) to the extent known." (emphasis added) (Doc. 302). Abbott's third-party disclosures include only caretakers, medical providers and in some instances third-party labs. Abbott does not list a single regulator, auditor, inspector, distributor, retailer, contractor of Abbott, or any other entity or individual likely to have discoverable information that it intends to use to support its defense of these cases in its disclosures.

Because Abbott did not disclose any individual or entity outside of Plaintiffs' healthcare providers or caretakers, Plaintiffs sought leave to serve two narrowly tailored discovery requests. These requests are intended to level the playing field by requiring Abbott to disclose the individuals with discoverable information it intends to use to support its defenses, which Abbott has not done outside of providing a limited list of healthcare providers already identified by the Plaintiffs. Abbott's assertion that Plaintiffs' disclosures are either meaningless or excessive is a red herring, designed to distract from the central fact that Abbott has not provided the same. Underscoring the manufactured nature of this dispute, Defendant has not even raised a single issue with Plaintiffs regarding the amended lists.

14

As this court noted at the last hearing, "We all know what people use 26(a)(1) disclosures for. They use it as kind of a guide to who they should take … depositions of. Right? That's kind of the key purpose of them. Who do I need to depose? ***Who are the other people that the other side might call to support their case***, and who do I need to depose?" *See* 1/15/2026 Hrg. Tr., at pp. 26:24-27:4 (emphasis added). Abbott has not disclosed a single third-party not already contained within Plaintiffs records.

Plaintiffs' disclosures properly included treating medical providers; government agencies that investigated Abbott's powdered infant formula and Plaintiffs' injuries; Plaintiffs' caretakers, and Abbott contractors who conducted product testing or performed relevant equipment repairs. Each of the Plaintiffs were diagnosed with catastrophic brain injuries requiring treatment from countless specialists that has been ongoing for several years now. In stark contrast, Abbott's disclosures primarily identify only Plaintiffs' medical providers and caretakers. Notably absent is any reference to the FDA, which investigated and shut down Abbott's Sturgis facility due to contamination issues. Importantly, the Court acknowledged Rule 26 "says that the disclosing party may use to support its claims or defenses." *See* 1/15/2026 Hrg. Tr., at pp. 37:16-18.

More importantly, Abbott's own disclosures fail to provide the meaningful identification required by Rule 26, even though they cite to and quote from such a requirement in their disclosures, namely "([T]he name and, if known, the address and telephone number of each individual likely to have discoverable information along with the subjects of that information that the disclosing party may use to support its claims or defenses" (Abbott's Initial Exchange of Potential Third-Party Deponents, citing Rule 26 verbatim). Abbott's exchange of potential third-party deponents also incorporate by reference the individuals listed in Plaintiffs' disclosures. Therefore, Abbott is complaining about a list that is just as large as Plaintiffs' lists.

Abbott argues that these disclosures are intended to identify who should be deposed and complains that Plaintiffs have not sufficiently narrowed the list or provided a neat, curated set of physicians for deposition. That argument mistakes the point in time at which the parties currently stand. Abbott seeks disclosures more akin to pretrial disclosures, as laid out in Preparation of Final Pretrial Order for Civil Cases before Judge Kennelly, No. 4.: "Witnesses. A list of names and addresses of all witnesses: (a) who will be called; (b) who may be called; and (c) whose deposition will be used." [8] Only initial disclosures are required at this juncture. Abbott's disclosures likewise fail to meaningfully identify anyone beyond individuals Plaintiffs had already disclosed. Yet now, after Plaintiffs have treated with additional medical providers and appropriately added them to their disclosures, Abbott complains that the list is too long and should be capped. Plaintiffs' disclosure numbers appear disproportionate only because Abbott has avoided its own obligation to disclose the individuals it intends to use to support its defenses.

Abbott's attempt to impose an arbitrary limitation is unsupported. Plaintiffs have properly complied with their obligations under Federal Rule 26, CMO #23, and the Court's directive at the January 15 hearing. Abbott has been in possession of, or had access to, Plaintiffs' medical records for several years. Plaintiffs have conducted a good-faith effort to identify the individuals who have discoverable information that the Plaintiffs may use to support their claims. *See* 1/15/2026 Hrg. Tr., at p. 37:11-18. Abbott seemingly does not understand that it has this information in its possession and fails to consider what witnesses it may want to use to support its defense.

---

[8] *See* Preparation of Final Pretrial Order for civil cases before Judge Kennelly, Revised 11/20, available at
http://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/KENNELLY/FinalPretrialOrder.pdf

This Court should find that Plaintiffs have properly complied with their obligations under Federal Rule 26, CMO #23, and the Court's directive at the January 15 hearing. Paragraph 22 of CMO #23 expressly contemplates broad identification of "any other entity or individual likely to have discoverable information" and makes clear that the purpose of the exchange is to facilitate efficient discovery, not to restrict it. Abbott's attempt to impose an arbitrary limitation is unsupported. While Plaintiffs do not seek such relief here, they note that sanctions are available for failure to provide Rule 26 disclosures as required by Federal Rule of Civil Procedure 26(a)(1).[9] Plaintiffs here properly disclosed individuals with knowledge of discoverable information that the Plaintiffs may use to support their claims. Abbott has not reciprocated and instead continues to complain to this Court that Plaintiffs have failed to narrow their witness list into a neat, curated package, something not required by the Rules and more properly associated with pretrial disclosures.

---

[9] U.S. District Court Western District of Texas (San Antonio), CASE #: 5:18-cv-00555-XR, Doc. #148, 9/25/2019 Hrg. Tr., at p. 6 Lines 2-4, 7-12.

Respectfully submitted,

February 3, 2026

/s/ Michael A. Glick

/s/ Thomas J. Preuss

James F. Hurst, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200
james.hurst@kirkland.com

Thomas J. Preuss (*pro hac vice*)
PREUSS | FOSTER
11141 Overbrook Road, Ste. 104
Leawood, KS 66211
Tel: 816-307-2788
Fax: 816-336-9705
tjpreuss@pflaw.com

Michael A. Glick, P.C. (*pro hac vice*)
Katherine R. Katz (*pro hac vice*)
Erin E. Cady (*pro hac vice*)
Alyssa M. McClure (*pro hac vice)*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, DC 20004
Tel: 202-389-5000
Fax: 202-389-5200
michael.glick@kirkland.com
katherine.katz@kirkland.com
erin.cady@kirkland.com
alyssa.mcclure@kirkland.com

Claudia I. Guerrero (*pro hac vice*)
DILLEY LAW FIRM, P.C.
315 E. Commerce St., Ste. 203
San Antonio, Texas 78205
Tel: (210) 225-0111
Fax: (210) 228-0493
claudia@dilleylawfirm.com

Daniel J. T. Sciano (pro hac vice)
10107 McAllister Freeway
San Antonio, TX 78216
Tel: (210) 225-3121
Fax: (210) 225-6235
dsciano@tsslawyers.com

Brad Masters (*pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Tel: 801-877-8143
Fax: 801-877-8101
brad.masters@kirkland.com

Marc Matthews (*pro hac vice*)
McIntyre Thanasides Bringgold Elliott
Grimaldi & Guito, P.A.
1228 E. 7th Avenue, Suite 200
Tampa, FL 33605
Tel: (813) 530-1000
marc@mcintyrefirm.com

*Counsel for Abbott Laboratories*

*PSC II*

*/s/ Jamie L. Lanphear*

J. David Bickham (*pro hac vice*)
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Tel: (415) 543-8700
dbickham@reedsmith.com

Lisa M. Baird (*pro hac vice*)
Reed Smith LLP
200 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Tel: (786) 747-0200
lbaird@reedsmith.com

Jamie L. Lanphear (pro hac vice)
Reed Smith LLP
1301 K St. NW, #1100
Washington, D.C. 20005
Tel: (202) 414-9217
jlanphear@reedsmith.com

*Counsel for Amazon.com, Inc.*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2026, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system and/or by e-mail.

/s/ *Michael A. Glick*
Michael A. Glick